# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

**FILED**

JUN **2 8** 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| SUZETTE RICHARDS,<br>P.O. Box 223875<br>Christiansted, St. Croix 00822-3875<br>(340) 277-4808<br>        PLAINTIFF,<br><br>      v.<br><br>DUKE UNIVERSITY, DUKE UNIVERSITY<br>SCHOOL OF LAW, DUKE UNIVERSITY<br>BOARD OF TRUSTEES, NANNERL<br>KEOHANE, in her personal and official<br>Capacity as President of Duke University,<br>GEORGETOWN UNIVERSITY,<br>GEORGETOWN UNIVERSITY LAW CENTER,<br>ALBERTO GONZALES, in his official capacity<br>as Attorney General of the United States,<br>FEDERAL BUREAU OF INVESTIGATION,<br>U.S. DEPARTMENT OF JUSTICE,<br>JOHN AND JANE DOES 1-10,<br>WILLIAM H. GATES, III, in his personal and<br>official capacity as Chairman of Microsoft<br>Corporation, STEVE BALLMER, in his personal<br>and official capacity as Chief Executive Officer<br>of Microsoft Corporation, MICROSOFT<br>CORPORATION, MICROSOFT EMPLOYEES<br>A-J, and MELINDA GATES,<br><br>        DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL NO. *06-1179 RCL*

ACTION FOR DAMAGES,
DISCRIMINATION, AND
DECLARATORY AND
INJUNCTIVE RELIEF

**JURY TRIAL DEMANDED**

## PLAINTIFF'S OPPOSITION TO THE GOVERNMENT DEFENDANTS' MOTION TO DISMISS

    **COMES NOW**, Plaintiff, *pro se*, and hereby opposes the Government Defendants'

Motion to Dismiss that was brought pursuant to Rule 12(b)(1) and Rule 8 of the Federal Rules of

Civil Procedure. In support of this opposition, Plaintiff has submitted a Memorandum of Law

and a Counterstatement of Facts, which have been contemporaneously filed herewith.

**RECEIVED**

JUN **1 2** 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 2

Respectfully submitted,
ATTORNEY FOR PLAINTIFF,

DATED: June 10, 2006

Suzette Richards, Esquire, *Pro Se*
P.O. Box 223875
Christiansted, St. Croix  00822-3875
Telephone: (340) 277-4808
Fax: (340) 772-5785

## CERTIFICATE OF SERVICE

I hereby certify that on this _10th_ day of June, 2006, a true and exact copy of the foregoing document was caused to be served, via facsimile, and via the United States Postal Service, first class postage prepaid, upon:

Simone R. D. Francis, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802

Richard Hunter, Esquire
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820

Henry Feuerzeig, Esquire
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804

Ernest Batenga, Esquire
Assistant United States Attorney
United States Attorney's Office
1108 King Street, Suite 201
Christiansted, St. Croix  00820

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUZETTE RICHARDS,<br>P.O. Box 223875<br>Christiansted, St. Croix 00822-3875<br>(340) 277-4808<br>　　　　　　PLAINTIFF,<br><br>　　　　　　v.<br><br>DUKE UNIVERSITY, DUKE UNIVERSITY<br>SCHOOL OF LAW, DUKE UNIVERSITY<br>BOARD OF TRUSTEES, NANNERL<br>KEOHANE, in her personal and official<br>Capacity as President of Duke University,<br>GEORGETOWN UNIVERSITY,<br>GEORGETOWN UNIVERSITY LAW CENTER,<br>ALBERTO GONZALES, in his official capacity<br>as Attorney General of the United States,<br>FEDERAL BUREAU OF INVESTIGATION,<br>U.S. DEPARTMENT OF JUSTICE,<br>JOHN AND JANE DOES 1-10,<br>WILLIAM H. GATES, III, in his personal and<br>official capacity as Chairman of Microsoft<br>Corporation, STEVE BALLMER, in his personal<br>and official capacity as Chief Executive Officer<br>of Microsoft Corporation, MICROSOFT<br>CORPORATION, MICROSOFT EMPLOYEES<br>A-J, and MELINDA GATES,<br><br>　　　　　　DEFENDANTS. | CIVIL NO. _____<br><br>ACTION FOR DAMAGES,<br>DISCRIMINATION, AND<br>DECLARATORY AND<br>INJUNCTIVE RELIEF<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S COUNTERSTATEMENT OF FACTS

**COMES NOW**, Plaintiff, *pro se*, and hereby submits her Counterstatement of Facts in

support of her Opposition to the Government Defendants' Motion to Dismiss.

The Government Defendants, in support of their Motion to Dismiss, submitted a

purported "Statement of Undisputed Facts" where the proceeded to misrepresent allegations in

Plaintiff's Complaint. Specifically, the Government Defendants claimed that 1) Defendant

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Plaintiff's Counterstatement of Facts in Dispute
Page 2

Alberto Gonzales, in his official capacity as Attorney General for the United States, Defendant

U.S. Department of Justice ("DOJ"), and Defendant Federal Bureau of Investigation ("FBI"),

acted solely under color of federal law; 2)  Defendants John and Jane Does 1-10 (hereinafter

"Doe Defendants") acted solely under color of federal law; 3) the Doe Defendants acted in their

official capacity; and 4) the Doe Defendants acted within the scope of their Federal employment.

Govts' Undisputed Statement of Material Facts at 1-2.  While Plaintiff had set out the factual

background of this case in her Memorandum of Law, which is being filed contemporaneously

herewith, she writes separately to dispute the facts that the Government Defendants have

included in their purported "Undisputed Statement of Material Facts".

 The Government Defendants have claimed the facts listed above are based on allegations

in paragraphs 23 and 69 of Plaintiff's Complaint.  However, a review of those paragraphs

demonstrates that at no time did Plaintiff allege that any of the Government Defendants acted

*solely* under color of federal law, or that the Doe Defendants were acting within the scope of

their federal employment.  Paragraph 23 of the Complaint, provides as follows:

> 23.  The Government Defendants referred to herein are federal actors who act
> under color of law.

First Am. Compl. at ¶ 23.  On the other hand, Paragraph 69 states the following:

> 69.  That while the Government Defendants have provided the material and
> support to *illegally* place Plaintiff under electronic surveillance, the
> information from this surveillance has been intercepted by and disseminated
> to numerous people who NOT law enforcement personnel.

First Am. Compl. at ¶ 69 (emphasis added).

 It is clear that neither of these paragraphs, whether read by themselves, or in conjunction

with the other allegations in the Complaint, supports the conclusion that the Government

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Plaintiff's Counterstatement of Facts in Dispute
Page 3

Defendants were acting *solely* under color of law or that the Doe Defendants were acting within the scope of their Federal Employment.  Instead, a fair and accurate reading of the Complaint will reveal the following facts:

1.  The illegal surveillance began because Plaintiff objected to discriminatory practices against Plaintiff and other minority students at Duke Law.  First Am. Compl. at ¶ 58, 68.

2.  The Duke Defendants conspired with the Government Defendants to illegally place Plaintiff under electronic surveillance so that they could obtain information to continue to discriminate against Plaintiff, as well as harass and degrade Plaintiff, to essentially undermine and discredit any claim of discrimination that Plaintiff might make against them.  First Am. Compl. at ¶ 38, 49, 142-43, 147, 178.

3.  The Georgetown Defendants and the Microsoft Defendants joined in this conspiracy to keep Plaintiff under surveillance.  First Am. Compl. at ¶¶ 39, 40.

4.  While the Complaint was filed in May of 2003, the illegal electronic surveillance extended as far back as 1998, and has continued through today.  First Am. Compl. at ¶¶ 38, 44.

5.  The Government Defendants have provided the material and support to illegally place Plaintiff under surveillance.  First Am. Compl. at ¶ 69.

6.  The Government Defendants decision to place and keep Plaintiff under surveillance was been motivated by a racial animus.  First Am. Compl. at ¶¶ 49, 57-58.

Suzette Richards v. Duke University, et al.
Civil no. _____
Plaintiff's Counterstatement of Facts in Dispute
Page 4

7.   The surveillance, which included listening devices and video surveillance, was always illegal as there was never any basis in law or fact to place Plaintiff under any form of surveillance. First Am. Compl. at ¶¶ 48, 54.

8.   There was never any probable cause to put Plaintiff under any form of electronic surveillance. First Am. Compl. at ¶ 53.

9.   The information that the Government Defendants obtained from the illegal electronic surveillance was never related to any criminal investigation and was not used for any legitimate law enforcement purpose. First Am. Compl. at ¶ 52, 71.

10. The information obtained from the surveillance, which includes medical information, has been disseminated to many people to allow them to discriminate against, degrade and harass Plaintiff. First Am. Compl. at ¶¶ 38, 60, 168.

11. The Doe Defendants acted beyond any lawful authority they might have had. First Am. Compl. at ¶¶ 38, 48, 52-53, 69.

12. Defendants Alberto Gonzales, DOJ and FBI are being sued solely in an official capacity in Counts 4, 5 and 7, so that Plaintiff may obtain injunctive and declaratory relief. First Am. Compl. at ¶¶ 10-12, 23, p. 55.

13. The Doe Defendants are being sued in their official capacity in Counts 4, 5 and 7 so that Plaintiff may obtain declaratory and injunctive relief. First Am. Compl. at ¶¶ 23, p. 55.

14. The Doe Defendants are also being sued in their personal capacities, for monetary damages, in Counts 4 through 13. First Am. Compl. at ¶¶ 49, 57-58, 68-69, 71, p. 55.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Plaintiff's Counterstatement of Facts in Dispute
Page 5

While Plaintiff did not specify the capacities that the Doe Defendants were being sued in, as she intended to add this information when the Doe Defendants were ascertained and added to the Complaint, *see* First Am. Compl. at ¶ 13, it is clear, from the nature of conduct alleged in the Complaint, that their acts, which constituted a clear violation of Plaintiff's rights, exceeded any lawful authority they may have had, and as such, Plaintiff is seeking damages against them individually. In fact, it should be noted that Government Defendants should have known that Plaintiff was suing Defendants Alberto Gonzales, DOJ, FBI and Does 1-10 in their official capacity, and also suing the Doe Defendants in their personal capacity for money damages, not only from the allegations in the Complaint but also from arguments that Plaintiff made in her Objections to the Magistrate Order dated November 14, 2003. *See* Docket at 87, pp. 45-58 (arguing that sovereign immunity had been waived pursuant to 5 U.S.C. § 702 for injunctive and declaratory relief and that Plaintiff had a *Bivens* cause of action for money damages against Defendant Does 1-10).

In any event, if this Court determines that there is a need for Plaintiff to more clearly state in the Complaint that she is suing Defendants Alberto Gonzales, DOJ, FBI, and Does 1-10 in their official capacity, for injunctive and declaratory relief, in Counts 4, 5 and 7, and that she is also suing Defendant Does 1-10 in their personal capacity for monetary damages in Counts 4-13, Plaintiff request that she be given the opportunity to amend her Complaint to so aver. *See* Fed. R. Civ. P. 15(a) (stating court may amend complaint by leave of court and "leave shall be freely given when justice so requires"); *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (observing that failure to allege capacity is not a fatal defect and allegations in complaint must be examined to determine the nature of a plaintiff's cause of action); *Gray v. University of Kansas Medical*

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Plaintiff's Counterstatement of Facts in Dispute
Page 6


*Ctr.*, 715 F. Supp. 1041, 1043 (D. Kan. 1989) (granting plaintiff leave to amend complaint to

state capacities in which defendants were being sued).


                                    Respectfully submitted,
                                    ATTORNEY FOR PLAINTIFF,


DATED: June 10, 2006

                                    Suzette Richards, Esquire, *Pro Se*
                                    P.O. Box 223875
                                    Christiansted, St. Croix  00822-3875
                                    Telephone: (340) 277-4808
                                    Fax: (340) 772-5785


## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of June, 2006, a true and exact copy of the
foregoing document was caused to be served, via facsimile, and via the United States Postal
Service, first class postage prepaid, upon:


Simone R. D. Francis, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802

Richard Hunter, Esquire
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820


Henry Feuerzeig, Esquire
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804

Ernest Batenga, Esquire
Assistant United States Attorney
United States Attorney's Office
1108 King Street, Suite 201
Christiansted, St. Croix  00820

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUZETTE RICHARDS,<br>P.O. Box 223875<br>Christiansted, St. Croix  00822-3875<br>(340) 277-4808<br>          PLAINTIFF,<br><br>       v.<br><br>DUKE UNIVERSITY, DUKE UNIVERSITY<br>SCHOOL OF LAW, DUKE UNIVERSITY<br>BOARD OF TRUSTEES, NANNERL<br>KEOHANE, in her personal and official<br>Capacity as President of Duke University,<br>GEORGETOWN UNIVERSITY,<br>GEORGETOWN UNIVERSITY LAW CENTER,<br>ALBERTO GONZALES, in his official capacity<br>as Attorney General of the United States,<br>FEDERAL BUREAU OF INVESTIGATION,<br>U.S. DEPARTMENT OF JUSTICE,<br>JOHN AND JANE DOES 1-10,<br>WILLIAM H. GATES, III, in his personal and<br>official capacity as Chairman of Microsoft<br>Corporation, STEVE BALLMER, in his personal<br>and official capacity as Chief Executive Officer<br>of Microsoft Corporation, MICROSOFT<br>CORPORATION, MICROSOFT EMPLOYEES<br>A-J, and MELINDA GATES,<br><br>          DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>CIVIL NO. _____<br><br>ACTION FOR DAMAGES,<br>DISCRIMINATION, AND<br>DECLARATORY AND<br>INJUNCTIVE RELIEF<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE GOVERNMENT DEFENDANTS' MOTION TO DISMISS

    **COMES NOW**, Plaintiff, *pro se*, and hereby respectfully submits this Memorandum of

Law in support of her Opposition to the Government Defendants' Motion to Dismiss that was

brought pursuant to Rule 12(b)(1) and Rule 8 of the Federal Rules of Civil Procedure.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 2

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began law school at the Duke University School of Law (hereinafter "Duke Law") in the fall of 1997. **First Am. Compl. at ¶ .** Plaintiff realized, from her first year of law school, that Duke Law had in place a system of discrimination, that had been used to discriminate against minorities, particularly black students, for the more than twenty (20) years that black students had attended the school. **First Am. Compl. at ¶¶ 35-36, 107.** As a result of this system of discrimination, black students had been excluded from participation on the school's two most prestigious journals, received lower grades than white students, and had also been denied the honors they would otherwise have received if it were not for the system of discrimination. **First Am. Compl. at ¶¶ 107-08, 112, 117.** The discrimination also had the effect of preventing minorities from obtaining certain jobs considered to be prestigious in the legal profession, like clerkships on the federal appellate and district court level. **First Am. Comp. ¶ 111.**

As a first year law student at Duke Law, Plaintiff discovered that one of the ways Duke Law facilitated this overall system of discrimination was by lying to students about how to take exams. **First Am. Compl. at ¶ 105-06.** Specifically, Dean Susan Sockwell, the Dean of Students, intentionally and willfully lied to students about how to take exams, which in turn ensured that they would receive lower grades, making their selection for prestigious journals and their receipt of honors, next to impossible. **First Am. Compl. at ¶¶ 106, 113, 117-22.** Plaintiff had relied on Dean Sockwell's fraudulent misrepresentation about how to take law school exams, and after receiving her grades, and reviewing other exams, felt she had been injured by the misrepresentation. **First Am. Compl. at ¶¶ 124, 127.**

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 3

Thereafter, because Plaintiff felt that Dean Sockwell's actions were discriminatory, she went to speak to Dean Sockwell about her fraudulent misrepresentations. **First Am. Compl. at ¶ 133.** Although Dean Sockwell acted as though she did not know her instructions were fraudulent, and that she had made an innocent error, the intentional and willfulness of her acts, and the fact that it was done to facilitate the overall system of discrimination at that school, is evidenced by the fact that after Plaintiff spoke to her, she did absolutely nothing to correct her misrepresentations, and final exams, at that time, were about one (1) month away. **First Am. Compl. at ¶ 136-37.** Plaintiff, who was so disgusted with the racism and bigotry at Duke Law, and other discriminatory acts that she had experienced, decided to e-mail all of the black students who were on the Black Law Students Association e-mail list what she had learned about the taking of law school exams. **First Am. Comp. at ¶ 138.** Though Plaintiff considered suing Duke Law because of the discrimination she experienced during her first year of law school, and even told a classmate about this, she ultimately opted to transfer to Defendant Georgetown University Law Center ("Georgetown Law"). **First Am. Compl. at ¶ 139, 32.**

However, the Duke Defendants continued to fear that Plaintiff would sue the school for the discrimination they had subjected her to, which might in turn have exposed the system of discrimination at the school and also lowered the school's rank on the U.S. News and World Report Law School Rankings. **First Am. Compl. at ¶ 150.** The Dean of Duke Law at the time, Pamela Gann, even told Saundra Dockery, who had supervised Plaintiff when she worked at a work study job during undergrad at Duke, that she would do "anything" to keep the law school in the top ten. **First Am. Compl. at 156.** In fact, the Duke Defendants were so afraid that Plaintiff would file an action against them for discrimination, that they did not just contact Saundra Dockery, but also contacted the Government Defendants, and illegally conspired with the

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 4

Government Defendants to place Plaintiff under electronic surveillance so they could obtain information to continue to discriminate against Plaintiff, to essentially undermine and discredit any claim of discrimination that Plaintiff might make against them. **First Am. Compl. at ¶¶ 38, 49, 142-43, 147, 178.**

Indeed, it should be noted that from the outset, the surveillance that Plaintiff has been subjected to, which has included listening devices and video surveillance, was always illegal as there was no basis in law or fact to place Plaintiff under any electronic surveillance. **First Am. Compl. at ¶ 48, 54.** In fact, the electronic surveillance that Plaintiff has been subjected to was never related to any criminal investigation and at no time has there ever been probable cause to place Plaintiff under any electronic surveillance. **First Am. Compl. at ¶52-53.** Instead, it was Plaintiff's objection to discriminatory practices at Duke Law that prompted the illegal surveillance which has not only allowed the Duke Defendants and the Georgetown Defendants to obtain information to discriminate against Plaintiff, but has also allowed for private information, including medical information about Plaintiff, to be disseminated to many people. **First Am. Compl. at ¶¶ 60, 68-69, 71.** Although Plaintiff graduated from law school in late May of 2000, the illegal electronic surveillance that she was placed under has continued ever since and has followed Plaintiff no matter where she has lived or where she has went, for more than five (5) years. **First Am. Compl. at ¶¶ 32, 38-40, 43-46, 49.**

Nevertheless, the Duke Defendants were also so afraid that Plaintiff would sue them for discrimination that they not only illegally placed Plaintiff under electronic surveillance, but also placed **one** black female student on one of the school's most prestigious journal's, right after Plaintiff transferred from the school, for the first time in the history of the school. **First Am. Compl. at ¶ 110.** Still, the Duke Defendants were so afraid that Plaintiff would sue them for

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 5

discrimination that they actually contacted persons at Defendant Georgetown Law to interfere

with Plaintiff professionally, personally and academically.  **First Am. Comp. at ¶¶ 170, 173,**

Persons at Duke Law conspired with persons at Defendant Georgetown Law to adversely affect

Plaintiff's overall educational experience at Georgetown Law, including lowering Plaintiff's

grades.  **First Am. Comp. at ¶¶ 170, 175-79.**  The discrimination Plaintiff experienced at

Georgetown Law continued from the time Plaintiff matriculated to that school in the Fall of 1998

through her graduation in May of 2000.  **First Am. Comp. at ¶¶ 32, 177.**  The Duke Defendants

and Georgetown Defendants have even continued to interfere with Plaintiff personally and

professionally since Plaintiff graduated from law school in May of 2000.  **First Am. Compl. at**

**¶¶ 230-31, 287, 291-92.**  Even Defendant Melinda Gates, who is married to Defendant Bill

Gates, and who has sat on Defendant Duke Board of Trustees for the entire five (5) year period

of time that this discrimination has continuously existed, has been aware of the discrimination

Plaintiff experienced, and has conspired with the other Defendants named herein in violating

Plaintiff's rights.  **First Am. Compl. at ¶¶ 102, 193-200.**

      The Microsoft Defendants did not join the conspiracy to discriminate against Plaintiff

until her third year of law school at Georgetown Law.  **First Am. Compl. at ¶ 40.**  The

Microsoft Defendants repeatedly used information they learned from the pre-existing illegal

electronic surveillance to exploit Plaintiff, benefit themselves financially, and also to harass

Plaintiff by putting various things on the company's MSN website and connecting those things to

Plaintiff.  **First Am. Compl. at ¶¶ 214-20, 223-32, 268-77.**

      On May 8, 2003, Plaintiff commenced the instant action for damages, discrimination,

injunctive and declaratory relief, alleging causes of action arising under the First, Fourth, Fifth,

Eight, and Thirteenth Amendments to the United States Constitution, 18 U.S.C. §§ 2510-2522,

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 6

20 U.S.C. §§ 1681-1688, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and 42 U.S.C.

§§ 2000d-2000d-7. **First Am. Compl. at ¶¶ 303-27.** Plaintiff also sought relief for state and

territorial causes of action, including fraud, civil conspiracy, intentional infliction of emotional

distress, invasion of privacy, interference with prospective advantage, and theft of intellectual

property. **First Am. Compl. at ¶¶ 294-302, 328-42.** Plaintiff also requested punitive damages

because the outrageous acts these Defendants have committed have been so illegal and have been

done with such callous disregard for Plaintiff's rights. **First Am. Compl. at ¶¶ 343-44.** The

Complaint was amended on June 5, 2003 to include the Microsoft Defendants (including

Defendant Melinda Gates), and Defendant John Ashcroft, who has since been substituted with

Alberto Gonzales. *See* **First Am. Compl.**; Docket at 156.

After being served with Plaintiff's Complaint, the first thing Defendant Duke University

did was to file a Motion for Enlargement of Time and for Initial Status Conference wherein they

moved the Court to consider employing Rule 17(c) procedures in this case based on the

discriminatory acts Plaintiff alleged that they had committed against her. Docket at 55.

Thereafter, the Duke Defendants further submitted a report by Dr. Dudley-Grant, a psychologist,

wherein Dr. Dudley-Grant, based on her opinion of the allegations in Plaintiff's Complaint,

concluded that Plaintiff might be experiencing paranoid schizophrenia or a delusional disorder.

The other defendants in this case all joined in this motion.

Even though, from the outset, Plaintiff argued that the defendants in this case had

misconstrued the law, and that Plaintiff's competency would have to be determined based on

whether or not Plaintiff was able to protect her own interests, and whether she was able to

understand the meaning and effect of the proceedings in this case, Magistrate Judge Jeffrey

Resnick rejected Plaintiff's arguments. Instead, based on the conclusions submitted by Dr.

Suzette Richards v. Duke University, et al.
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 7

Dudley-Grant, Magistrate Judge Resnick ordered Plaintiff to be examined by Dr. Hendricks to

determine her competency to prosecute the matter and whether the text of her complaint

demonstrated "delusional pyschosis, paranoid schizophrenia, or any other mental illness of

abnormality." Docket at 60. Dr. Hendricks then submitted a report, which concluded, based on

his personal opinions of the allegations in Plaintiff's Complaint, that Plaintiff was suffering from

a delusional disorder and was therefore incapable of prosecuting this matter. Plaintiff then

retained her own expert, Dr. Steven Handwerker, who opined that Plaintiff's mental health was

good and stable despite the sorts of stress that the defendants in this case had subjected her to.

Docket at 72, Ex. 1.

Thereafter, despite Plaintiff's continued arguments that the defendants had misconstrued

the law, and her own expert report which stated that her mental health was good and stable,

Magistrate Judge Resnick, relying on Dr. Hendricks and Dr. Dudley-Grant's reports, decided to

go ahead and appoint a guardian *ad litem* to represent Plaintiff in this case. The District Court

Judge Thomas Moore affirmed his decision. Plaintiff then appealed both of these erroneous

decisions to the Third Circuit, and the Third Circuit **vacated** the District Court's Order. *See

Richards v. Duke University*, No. 05-1170, 2006 WL 162652 at 3 (3d Cir. Jan. 23, 2006). In

vacating the District Court's Order, the Third Circuit held that the District Court had abused its

discretion because it failed to apply the correct standard to determine whether a guardian *ad

litem* could be appointed, which is whether a person is capable of taking care of themselves, or,

put another way, whether a person is capable of protecting their own interests, and understanding

the meaning and effect of the legal proceedings they have instituted. *See id.* In addition, in

vacating the District Court's Order, the Third Circuit also rejected the conclusions that Dr.

Hendricks had reached, which had resulted from Magistrate Judge Resnick's misapplication of

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 8

the law, and instead concluded, after reviewing information in the record, that Plaintiff was

competent to proceed *pro se*. *See id.* The Third Circuit then remanded this matter to the District

Court.

On remand, the defendants were given until May 8, 2006 to answer or otherwise respond

to Plaintiff's Complaint. Docket at 182. Although the Government Defendants, like the other

defendants in this case, invoked the subject-matter jurisdiction of this court to attempt to have

Plaintiff declared incompetent, so a guardian *ad litem* could be appointed to represent her, they

have nevertheless now filed a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject

matter jurisdiction, and also for dismissal pursuant to Rule 8 of the Federal Rules of Civil

Procedure. Plaintiff now opposes this motion.

## STANDARD OF REVIEW

"On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1),

the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction."

*Hilska v. Jones*, 297 F. Supp. 2d 82, 86 (D.D.C. 2003). However, "[t]he court may dismiss a

complaint for lack of subject-matter jurisdiction only if 'it appears beyond doubt that the plaintiff

can prove no set of facts in support of [her] claim which would entitle [her] to relief'." *Id.*

(citing *Empagram S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003)

(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"Because subject-matter jurisdiction focuses on the court's power to hear the claim, . . .

the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule

12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim."

*Hilska*, 297 F. Supp. 2d at 87 (citing *Macharia v. United States*, 334 F.3d 61, 64, 60 (D.C. Cir.

2003) and *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 9

2001). However, the court is not limited to the allegations in the complaint, and instead, may

consider matters outside the pleadings, to determine whether it has subject-matter jurisdiction

over the claim. *Hilksa*, 297 F. Supp. 2d at 87 (citing *Hohri v. United States*, 782 F.2d 227, 241

(D.C. Cir. 1986) *vacated on other grounds*, 482 U.S. 64 (1987) and *Herbert v. Nat'l Acad. of

Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE NOT PATENTLY INSUBSTANTIAL

"Federal courts have subject-matter jurisdiction over a claim arising under federal law

regardless of the plausibility of the plaintiff's allegations." *Hilksa*, 297 F. Supp. 2d at 87 (citing

*Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 623

(D.C. Cir. 1997) and *Smith v. Horner*, 846 F.2d 1521, 1523 (D.C. Cir. 1988)).   However, a court

may, in its discretion, dismiss a claim that is patently insubstantial for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1). *Hilksa*, 297 F. Supp. 2d at 87; *Hagans v. Lavine*, 415

U.S. 528, 536 (1974) (stating that "federal courts are without power to entertain claims otherwise

within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of

merit'"); *Bell v. Hood*, 327 U.S. 678, 682-83 (1946) (noting that a federal claim may be

dismissed for lack of subject matter jurisdiction where it "clearly appears to be immaterial and

made solely for the purpose of obtaining jurisdiction or where such a claim is wholly

insubstantial and frivolous").

Courts have defined patently insubstantial claims to be those that are based on factual

allegations which involve fantastic scenarios that rise to the level of being irrational or wholly

incredible. *Hilksa*, 297 F. Supp. 2d at 88; *Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994)

(describing, as frivolous, a complaint where the plaintiff alleged that "a Secret Branch of the

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 10

Federal Government" had taken his face off of his head and then went into his skull to place a

computer chip and camera system which made him project images many feet in front of him).

However, "[n]ot qualifying as frivolous are claims that are implausible, namely those that are

doubtful or of questionable merit." *Hilksa*, 297 F. Supp. 2d at 87-89.

Of course, even though claims may not be considered patently insubstantial pursuant to

Rule 12(b)(1), they may nevertheless warrant dismissal pursuant to Rule 12(b)(6) for failure to

state a claim upon which relief may be granted. *Id.* at 88. As the Supreme Court explained in

*Bell v. Hood,*

> Jurisdiction. . . is not defeated . . . by the possibility that the averments might fail
> to state a cause of action. . . For it is well settled that the failure to state a proper
> cause of action calls for a judgment on the merits and not for a dismissal for want
> of jurisdiction. Whether the complaint states a cause of action on which relief
> could be granted is a question of law and just as issues of fact it must be decided
> after and not before the court has assumed jurisdiction over the controversy. If
> the court does later exercise its jurisdiction to determine that the allegations in the
> complaint do not state a ground for relief, then dismissal of the case would be on
> the merits, not for want of jurisdiction.

372 U.S. at 682, *quoted in Hilksa*, 297 F. Supp. 2d at 88.

Contrary to statements made by the Government Defendants, Plaintiff has not alleged a

bizarre conspiracy, or fanciful, frivolous claims. *See* Govts' Mot. to Dismiss at 4, 9. Rather,

Plaintiff has alleged very serious violations of laws that involves ongoing illegal conduct on the

part of the Government Defendants. Indeed, in the case *sub judice*, Plaintiff has alleged that the

Government Defendants have provided the material and support to place her under illegal

electronic surveillance, which has resulted in an extraordinary degree of harassment and the

abusive dissemination of information about her. **First Am. Compl. at ¶¶ 38-42, 54, 60, 69-70,**

Plaintiff has also alleged that the illegal electronic surveillance has interfered with Plaintiff's

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 11

seeking medical treatment, and has effectively chilled Plaintiff's First Amendment rights. **First Am. Compl. at ¶¶ 61, 62, 75-77.** Plaintiff has also alleged that the information obtained from the surveillance has been used to discriminate against Plaintiff and exploit Plaintiff. **First Am. Compl. at ¶¶ 71-72, 165, 168.**

In fact, Plaintiff has alleged that the reason that she has been placed under surveillance is because she objected to discriminatory practices at Duke Law, and the Duke Defendants, fearful that Plaintiff might sue them for discrimination, conspired with the Government Defendants to put her under surveillance to obtain information to discriminate against her, and to effectively attempt to discredit and undermine any claim of discrimination Plaintiff could make against them. **First Am. Compl. at ¶ 38, 49, 142-43, 147, 178.** Indeed, Plaintiff has also alleged that the Government Defendants, in placing Plaintiff under illegal surveillance, were motivated by a racial animus, and that the surveillance was always illegal as there was never any basis in law or fact to place Plaintiff under surveillance. **First Am. Compl. at ¶¶ 48, 54.** Further, while the Complaint was filed in 2003, Plaintiff has alleged that the acts of illegal surveillance extended as far back as 1998, and has continued through today. **First Am. Compl. at ¶¶ 38, 44.** None of these allegations are frivolous, and they are not even of doubtful or questionable merit.

In fact, this court has already found the sorts of allegations that have been alleged in Plaintiff's Complaint to be justiciable. In *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144 (D.D.C. 1976), the plaintiffs, which included the Berlin Democratic Club, which among other activities, had supported the impeachment proceedings against President Nixon in 1973, brought an action against a number of Department of Defense Army officials and uniformed personnel. The plaintiffs alleged, among other things, that they had been subjected to numerous acts of warrantless electronic surveillance, and that the defendants had maintained "dissidence

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 12

identification" files and "blacklists" about them which had been disseminated to military and

civilian agencies and private citizens. *Id.* at 147. The plaintiffs alleged that the defendants had

wiretapped their telephones, disrupted their daily activities, and that the derogatory information

that had been disseminated lead to the termination or restriction of their employment

opportunities or forced them to severely restrict their activities for fear of having additional

information disseminated. *Id.* at 148. Although the Complaint was filed in 1974, the plaintiffs

alleged that the illegal surveillance had extended as far back as 1971, and had continued, in all

instances, for at least a period of months. *Id.* at 148, 161.

Ultimately, in *Berlin Democratic Club*, the court held that the action was justiciable

because "public dissemination of . . . information in a false and defamatory manner and with no

lawful purpose, disruption of legitimate activities, termination of employment, illegal electronic

surveillance, and other forms of harassment" were properly subject to challenge as being beyond

legitimate surveillance activities. *Id.* at 151; *see also Philadelphia Yearly Meeting of the*

*Religious Society of Friends v. Tate*, 519 F.2d 1335, 1338 (3d Cir. 1975) ("It is not apparent how

making information concerning the lawful activities of plaintiffs available to non-police groups

or individuals could be considered within the proper ambit of law enforcement activity,

particularly since it is alleged that plaintiffs are subject to surveillance only because their

political views deviate from the 'establishment'. We think these allegations, at a minimum,

show immediately threatened injury to plaintiffs by way of a chilling of their rights of freedom of

speech and associational privacy.")

Furthermore, this court has already held that it had subject-matter jurisdiction where there

were allegations of extensive acts of wrongdoing. In *Hilksa v. Jones*, 297 F. Supp. 2d 82

(D.D.C. 2003), the plaintiff, who was a native and citizen of Finland, brought an action against a

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 13

number of federal, private and foreign defendants. *Id.* at 84. The federal defendants included

President George W. Bush, Attorney General John Ashcroft, Senator Hillary Clinton, former

President Bill Clinton, and Judy Thomas, a deportation officer with the Immigration and

Naturalization Service. *Id.* at 84 n.2. The private defendants included Pierre Sané and

Boisfeuillet Jones, Jr. *Id.* The foreign defendants included Substitute for Consul Kimmo

Nikkanen of Finland, Minister of Justice Heinrich Koller of Switzerland, Minster of Justice

Marylise Lebranchu of France, Attorney General Hans Regner of Sweden, former Finnish

Presidents Mauno Koivisto and Marti Ashtisaari, and the current Finnish President Tarja

Halonen. *Id.*

    In *Hilksa*, the plaintiff alleged that the defendants had wrongfully prevented him from

obtaining political asylum in the United States by committing a number of illegal acts. *Id.* at 83.

More specifically, the plaintiff alleged that the federal defendants were responsible for a number

of offenses, which included forgery, extortion, assault, destruction of documents, torture, and

attempted murder. *Id.* at 84. In addition, the plaintiff alleged that Senator Hillary Clinton and

former President Bill Clinton had broken into his luggage and stolen its contents while he was at

a local airport. *Id.* at 89. The plaintiff further alleged that the federal defendants had instructed a

detention center to give him medication that caused him to have "a splitting headache, strong

pain in his urinary tract and intense tumefaction in [his] feet." *Id.* The plaintiff also alleged that

because of instructions that were given by the federal defendants, he was kept "'seriously injured

in [a] cold cell for killing purposes' from November 30, 1999 through July 14, 2000." *Id.*

Throughout his complaint, and other filings, the plaintiff also accused various individuals of

"tightening up his situation." *Id.*

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 14

While the court in *Hilksa* did note that the plaintiff's allegations may be implausible, the court nevertheless concluded that the allegations did not qualify as "frivolous" for purposes of Rule 12(b)(1). *Id.* Indeed, the court specifically stated that the "doubtful nature of the plaintiff's claims [would] not defeat the court's jurisdiction." *Id.* Accordingly, the court denied a motion to dismiss for lack of subject matter jurisdiction that had been filed by the federal defendants.

Nevertheless, notwithstanding the foregoing, the Government Defendants, in support of their assertion that Plaintiff's claims are frivolous, have primarily relied on *O'Connor v. United States*, 159 F.R.D. 22 (D. Md. 1994), a District Court case from the state of Maryland that would not be binding on this Court, and whose facts are easily distinguishable from the facts in this case. In *O'Connor*, the plaintiff did allege that he was placed under an extensive amount illegal surveillance which would clearly be actionable under the Fourth Amendment to the Constitution and 18 U.S.C. § 2520. *See id.* at 23-24. However, the plaintiff in *O'Connor* went further, apparently alleging that the U.S. Drug Enforcement Administration ("DEA") had enlisted the help of a large number of civilians to speak to him in buzz words like "no way", "can't win", and "I'll show you", and that the civilians further displayed props. *Id.* at 24. Indeed, the plaintiff alleged that "he rarely goes into a store or restaurant, walks for a few blocks, or gets on the subway 'without being imposed upon by the presence of several civilian volunteers chattering away with DEA-prepared dialogue." *Id.* According to the plaintiff in *O'Connor*, a license plate with the letters "TNT" meant he was "playing with dynamite". *Id.* The Plaintiff also alleged that the DEA had contacted stores and restaurants, "which then play music over the PA systems in an effort to control his environment and him that resistance is hopeless." *Id.*

In *O'Connor*, the court, relying primarily on the allegations regarding the use of the DEA-prepared dialogue, the props, like a license plate with the letters "TNT", and the playing of music

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 15

in a stores, i.e. ordinary conversations and encounters, led her to conclude that the plaintiff's

claims were divorced from the real world and therefore frivolous for purposes of Rule 12(b)(1)..

*Id.* at 25. Needless to say, in the case *sub judice*, Plaintiff certainly has not alleged that the

Government Defendants have conspired with civilians to speak to her with props and buzz

words, and she certainly has not alleged that license plates, regardless of the letters, or for that

matter, the playing of music in stores and restaurants, are really part of some government

sponsored plot to harass her.

Nevertheless, the Government Defendants also invite the court, in considering their

motion, to consider the reports that were previously filed by Dr. Dudley-Grant and Dr. Hendricks

to purportedly put the allegations in Plaintiff's Complaint in perspective. However, this sort of

assertion by the Government Defendants is simply improper. Indeed, it should be noted that Dr.

Dudley-Grant and Dr. Hendricks' reports were really originally filed in connection with the

defendants failed attempt to have a guardian *ad litem* appointed to represent Plaintiff in this case.

While the Magistrate Judge relied on those reports to appoint a guardian *ad litem*, and the

District Court Judge affirmed his decision, Plaintiff appealed all the way to the Court of Appeals

for the Third Circuit, which ultimately **vacated** the District Court's Order that affirmed the

appointment of a guardian *ad litem*. *See Richards*, 2006 WL 162652 at 3. In vacating the

District Court's Order, the Third Circuit rejected the conclusions that Dr. Hendricks and Dr.

Dudley-Grant had reached, and instead concluded, after reviewing information in the record, that

Plaintiff was competent to proceed *pro se*. *See id.* As such, in light of the Third Circuit's

decision in this case, it is simply improper for this Court to consider any of the conclusions that

were reached by Dr. Dudley-Grant and Dr. Hendricks when the Third Circuit has already

rejected these conclusions, and held that these conclusions resulted from an erroneous

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 16

application of law. *See id.* Indeed, it should be noted that these reports, which essentially

amount to Dr. Dudley-Grant and Dr. Hendricks personal opinion of the allegations in Plaintiff's

Complaint, i.e. Plaintiff's testimony in this case, would not even be admissible in a trial in this

matter and should not be considered at any other stage of the proceedings. *See Nichols v.*

*American Nat'l Ins. Co.*, 154 F.3d 875, 881-84 (8th Cir. 1998) (holding trial court erred in

admitting expert testimony that impugned psychiatric credibility of employee and usurped role of

jury).

The simple fact of the matter is no one is above the law. Where, as here, Plaintiff's rights

have been continuously violated by the defendants in this case, she is entitled to recover relief in

a court of law. *See Marbury v. Madison*, 1 Cranch 137, 163 (1803) (stating "[i]f [a person] has a

right, and that right has been violated, do the laws of this country afford [that person] a remedy",

as "[t]he very essence of civil liberty certainly consists in the right of every individual to claim

the protection of the laws, whenever he receives an injury."). Accordingly, for all of the reasons

stated herein, this Court has subject-matter jurisdiction to hear this case.

## II.    PLAINTIFF'S COMPLAINT IS IN COMPLIANCE WITH RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE

The Government Defendants have argued that this court should dismiss Plaintiff's

Complaint because it fails to comply with Rule 8 of the Federal Rules of Civil Procedure. *See*

Govt's Mot. to Dismiss at 10. However, this argument is without merit.

"Rule 8(a) prescribes the minimum standard for the sufficiency of a complaint." *See*

*Hilksa v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003) (citing Fed. R. Civ. P. 8(a)). Indeed, pursuant

to Rule 8(a), a pleading need only state a "short and plain statement of the claim". Fed. R. Civ.

P. 8(a). "The guiding purpose of Rule 8(a) is to ensure the adverse party has fair notice of the

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 17

pleader's claims so as to provide the adverse party the opportunity to file a responsive answer

and to prepare an adequate defense." *Hilksa*, 217 F.R.D. at 20 (citing *Swierkiewicz v. Sorema,*

*N.A.*, 534 U.S. 506 (2002) (other citations omitted). "Rule 8(a)'s simplified notice-pleading

standard relies on the discovery process and summary-judgment practice to define the disputed

facts in the case and to dispense with unmeritorious claims." *Hilksa*, 217 F.R.D. at 20 (citations

omitted). As such, "[b]y its liberal terms,. . .Rule 8(a) erects a powerful presumption against

dismissing pleadings as deficient." *Id.* (citation omitted).

In the case *sub judice*, the Government Defendants do not allege that the Complaint fails

to give them fair notice of Plaintiff's claims. Indeed they can not so allege because simply put,

the Complaint provides them with sufficient notice of the very serious causes of action that

Plaintiff has charged they committed. Further, the Government Defendants do not cite to any

allegations in the Complaint that they contend is immaterial. Indeed Plaintiff has sued a number

of defendants and has therefore had to state allegations sufficient to give each defendant notice

of what Plaintiff's claims are.

Instead, the Government Defendants have moved this court to dismiss Plaintiff's

Complaint pursuant to Rule 8(a) because of the length and number of paragraphs in the

Complaint, and further because Plaintiff has incorporated, by reference, paragraphs in the

Complaint. *See* Govts' Mot. to Dismiss at 10. However, as the court noted in *Ciralsky v.*

*Central Intelligence Agency*, 355 F.3d 661, 670 (D.C. Cir. 2004), "Rule 8 does not require a

'short and plain *complaint*,' but rather a 'short and plain statement of the *claim*'." In fact, the

court further observed that "it is 'each averment of a pleading' that Rule 8(e)(1) states 'shall be

simple, concise, and direct' – not each pleading itself." *Id.* Further, it should be noted that

pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, a plaintiff may incorporate, by

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 18

reference, paragraphs that may be stated in a different part of the Complaint. *See* Fed. R. Civ. P.

10(c) (stating that "[s]tatements in a pleading may be adopted by reference in a different part of

the same pleading").

It is interesting that the Government Defendants would even take issue would the length

of Plaintiff's Complaint given their tendency to submit complaints that are even lengthier when

they are the plaintiff in an action.  Indeed, as the court observed in *Ciralsky*:

> [T]he government is no foe of lengthy complaints when it finds itself in the
> position of plaintiff. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp.
> 2d 131 (D.D.C. 2000) (government complaint consisting of 88 pages and 211
> paragraphs with attached 43-page appendix); *United States v. Bonanno*, 683 F.
> Supp. 1411 (E.D.N.Y. 1988) (70-page government complaint accompanied by
> 250-page binder of exhibits)

355 F.3d at 670.

Nevertheless, the simple fact of the matter is that Plaintiff's Complaint does put the

Government Defendants on notice of what her claims are, and it provides them with enough

information to frame a response.  Accordingly, the Government Defendants motion to dismiss

pursuant to Rule 8 must be denied. *See, e.g., Government Guarantee Fund v. Hyatt Corp.*, 166

F.R.D. 321, 324, 330 (D.V.I. 1996) (denying motion to dismiss and stating that while 98-page

first amended complaint was 'hardly a paragon of pithiness", it was comprehensible and

provided sufficient information for the defendant to formulate a response).

However, in the event that this court should find that Plaintiff's Complaint does not

comply with Rule 8(a), Plaintiff requests that she be granted leave to amend the Complaint to

comply with whatever directives this court may give. *See* Fed. R. Civ. P. 15(a) (stating that court

may grant leave to amend complaint, and "leave shall be freely given when justice so requires");

*see also Ciralsky*, 355 F.2d at 670, 674 (observing that "[t]he Federal Rules reject the approach

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 19

that pleading is a game of skill. . . and accept the principle that the purpose of pleading is to

facilitate a proper decision on the merits."). Indeed, Plaintiff would especially request leave to

amend the complaint to make sure that claims that are brought against the educational defendants

in Counts 1 through 3 of the Complaint would not be time barred under the District of

Columbia's three year statute of limitation. *See* D.C. Code Ann. § 12-301; *see also See Egerdahl*

*v. Hibbing Community College*, 72 F.3d 615, 617-18 (8th Cir. 1995) (comparing claims brought

pursuant to 42 U.S.C. § 2000d with 42 U.S.C. § 1983 claims); *Wilson v. Garcia*, 471 U.S. 261,

279, 105 S. Ct. 1938, 1949 (1985) (holding that statute of limitations for § 1983 actions is

relevant state's personal injury statute of limitations).

### III.    PLAINTIFF MAY OBTAIN INJUNCTIVE AND DECLARATORY RELIEF AGAINST THE GOVERNMENT DEFENDANTS PURSUANT TO 5 U.S.C. § 702

The Government Defendants have argued that Plaintiff's causes of action against them in

Count 4, 5 and 7 are barred because of the doctrine of sovereign immunity. Govts' Mot. to

Dismiss at   However, this argument is misplaced.

Plaintiff is suing Defendant Alberto Gonzales, the FBI, DOJ, and Does 1-10, in their

official capacity, for injunctive and declaratory relief pursuant to 5 U.S.C. § 702, in Counts 4, 5

and 7. *See* Pl.'s Counterstatement of Facts at ¶¶ 12-13. Section 702 of Title 5 of the United

States Code provides as follows:

> A person suffering legal wrong because of agency action, or adversely affected or
> aggrieved by agency action within the meaning of a relevant statute, is entitled to
> judicial review thereof. An action in a court of the United States seeking relief
> other than money damages and stating a claim that an agency or an officer or
> employee thereof acted or failed to act in an official capacity or under color of
> legal authority shall not be dismissed nor relief therein be denied on the ground
> that it is against the United States or that the United States is an indispensable
> party. The United States may be named as a defendant in any such action, and a
> judgment or decree may be entered against the United States: *Provided*, That any

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 20

> mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein
>
> (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground, or
>
> (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. 702.

As the court explained in *Presbyterian Church v. United States*, 870 F.2d 518, 524 (9th Cir. 1989), "[s]ection 702 acquired its current form in 1976, when Congress amended it to add the second sentence. . . [and] [t]he clear objective of the 1976 amendment was to waive sovereign immunity as a defense in actions seeking relief other than money damages." In fact, as the court in *Presbyterian Church* observed, "Congress was quite explicit about its goals of eliminating sovereign immunity as an obstacle in securing judicial review of the federal official conduct." *Id.* Indeed, in amending Section 702, Congress specifically stated that "the time [has] come to eliminate the sovereign immunity defense in *all* equitable actions for specific relief against a Federal agency or officer acting in an official capacity." *Id.* at 525 (citing H. Rep. No. 1656, 94th Cong., 2d Sess. 9, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6129). As such, the clear intent of Section 702 was to waive "the defense of sovereign immunity as to any action in a Federal court seeking relief other than money damages and stating a claim based on the assertion of unlawful official action by an agency or by an officer or employee of the agency.'" *Presbyterian Church*, 870 F.2d at 524 (citing H. Rep. No. 1656, 94th Cong., 2d Sess. 9, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6123).

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 21

Accordingly, contrary to claims made by the Government Defendants, Plaintiff may sue

the Governments, pursuant to Section 702, for injunctive and declaratory relief for the violation

of her constitutional rights as is set out in Count 4. *See Presbyterian Church*, 870 F.2d at 523-26

(holding that 5 U.S.C. § 702 waived sovereign immunity for claims for declaratory and

injunctive relief brought against the United States, DOJ, and the Immigration and Naturalization

Service for violations of the Constitution). Similarly, Plaintiff may also obtain declaratory and

injunctive relief against the Government Defendants, in their official capacity, for violating 42

U.S.C. § 1985, which is set out in Count 7. *See* 5 U.S.C. § 702.

Finally, Plaintiff may also obtain injunctive and declaratory relief against the

Government Defendants for violating provisions of the federal criminal wiretapping statute

codified at 18 U.S.C. §§ 2510-2522, which is set out in Count 5. While the Government

Defendants do recognize that Section 2520(a) provides a private cause of action for violations of

the federal criminal wiretapping statute, it nevertheless argues that the statute prohibits such

actions when they are against the United States. *See* Govts' Mot. to Dismiss at 13. However,

this argument is misplaced as Section 702 specifically states that where a claim is brought for

relief other than money damages, the claim "shall not be dismissed nor relief therein be denied

on the ground that it is against the United States." *See* 5 U.S.C. § 702. Indeed, the intent of

Section 702 is to waive the defense of sovereign immunity in all actions seeking equitable relief

against the federal government, its agencies and its employees. *Presbyterian Church*, 870 F.2d

at 524-25.

Of course, Section 702 does provide that nothing in the statute "confers authority to grant

relief if *any other statute that grants consent to suit* expressly or impliedly forbids the relief

which is sought." 5 U.S.C. 702. However, Section 2520(a) is not a statute that grants consent to

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 22

suit. Congress enacted Section 2520 to create a private cause of action for violations of the

federal criminal wiretapping statute. *See* 18 U.S.C. § 2520. As such, Section 2520 does not, in

and of itself, operate to waive the defense of sovereign immunity in actions brought against

United States, and the case that was cited by the Government Defendants held as much. *See*

*Asmar v. United States,* 680 F. Supp. 248, (E.D. Mich. 1987) (holding that Section 2520 did not

constitute waiver of sovereign immunity to allow cause of action against the United States).[1]

However, Section 702, like the Federal Torts Claims Act, does constitute a consent to suit

statute, and it effectively waives the defense of sovereign immunity for claims that request

injunctive and declaratory relief against the United States. *See* 5 U.S.C. § 702; *Presbyterian*

*Church,* 870 F.2d at 524-25 (discussing legislative history of Section 702). Accordingly,

contrary to arguments that have been made by the Government Defendants, the doctrine of

sovereign immunity would not bar Plaintiff's cause of action for violating the federal criminal

wiretapping statute.

## IV.     THE DOCTRINE OF SOVEREIGN IMMUNITY DOES NOT BAR SUITS BROUGHT AGAINST FEDERAL EMPLOYEES IN THEIR PERSONAL CAPACITY

The Government Defendants have claimed that the doctrine of sovereign immunity

would bar the causes of action that Plaintiff has alleged in Count 3 against Defendants John and

Jane Doe 1-10 for violations of the United States Constitution. *See* Gov't Defs.' Mot. to Dismiss

at 11. The Government Defendants have also argued that the doctrine of sovereign immunity

would bar the causes of action that Plaintiff has alleged in Counts 5, 7 and 8 against the Doe

---

[1] It should be noted that the court in *Asmar* did not consider Section 702. *See Asmar,* 680 F. Supp. at 249-51.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 23

Defendants for violations of 18 U.S.C. 2510-2522, 42 U.S.C. § 1985 and 42 U.S.C. § 1986.  *See id.* at 13, 14-15, & 16.

However, Plaintiff is not just suing the Doe Defendants in their official capacity for injunctive and declaratory relief for violations of the Constitution, 18 U.S.C. §§ 2510-2522, and 42 U.S.C. § 1985.  Rather, Plaintiff is also suing the Doe Defendants in their ***personal capacity*** for monetary damages for violations of Constitution, 18 U.S.C. §§ 2510-2522, 42 U.S.C. § 1985 and 42 U.S.C. § 1986, *see* Pl.'s Counterstatement of Facts at ¶ 14, and the doctrine of sovereign immunity would not bar any of these claims.  *See, e.g., Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (recognizing cause of action against federal employee, in their personal capacity, under Section 1985); *Founding Church of Scientology of Washington, D.C. v. Director, Federal Bureau of Investigation*, 459 F. Supp. 748, 753-54 (D.D.C. 1978) (same).  Indeed, it is only suits against federal employees in their official capacities, which are necessarily suits against the United States, that may be barred by the doctrine of sovereign immunity.  *See Kentucky v. Graham*, 437 U.S. 159, 166-67 (1985).

Further, it should be noted that Plaintiff's recovery of monetary damages for violations of her constitutional rights would not even be governed by the doctrine of sovereign immunity, but rather would be governed by *Bivens v. Six Unknown Federal Narcotics Agents*.  In *Bivens*, the Supreme Court held that a litigant could assert a cause of action for money damages against individual federal officers for violating their rights under the Fourth Amendment to the United States Constitution.  *See Bivens*, 430 U.S. 388, 389 (1971).  In fact, since the *Bivens* decision, other cases have extended the doctrine to allow for litigants to assert similar causes of action for violations of the First, Fifth, Eight and Thirteenth Amendments to the Constitution.  *See Berlin Democratic Club*, 410 F. Supp at 1611-62 (recognizing First Amendment cause of action); *Davis*

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 24

*v. Passman*, 442 U.S. 228 (1979) (recognizing Fifth Amendment cause of action); *Carlson v.*

*Green*, 446 U.S. 14 (1980) (recognizing Eight Amendment cause of action); *Channer v. Hall*,

112 F.3d 214, 217 (5th Cir. 1997) (recognizing Thirteenth Amendment cause of action).

## V. 42 U.S.C. § 1981 WOULD NOT BAR SUITS AGAINST FEDERAL EMPLOYEES IN THEIR PERSONAL CAPACITIES

The Government Defendants have claimed that Plaintiff's cause of action under 42

U.S.C. § 1981 should be dismissed because that section only applies to individuals who are

alleged to act under state law and Plaintiff has not alleged that Defendant Does 1-10 were acting

under state law. *See* Gov't's Mot. to Dismiss at 14. However, the Government Defendants

argument is misplaced as the plain language of Section 1981(c) states that "[t]he rights protected

under [the] section are protected from impairment against nongovernmental discrimination and

impairment under color of state law." 42 U.S.C. § 1981(c).

In the case *sub judice*, Plaintiff has sued Defendant Does 1-10 for monetary damages, in

their personal capacity, for acts that are illegal, and that clearly exceeded any authority they may

have had under law. *See* Pl.'s Counterstatement of Facts at ¶¶ 11, 14. Accordingly, contrary to

the arguments made by the Government Defendants, such excessive conduct, done in Doe

Defendants' personal capacities, amounts to a form of nongovernmental discrimination that

would allow for a cause of action under Section 1981. *See* 42 U.S.C. § 1981(c).

## VI. THE FEDERAL TORT CLAIMS ACT IS NOT APPLICABLE TO THIS CASE

Plaintiff has sued the John and Jane Does 1-10 solely in their personal capacity for

various tort claims in Counts 9 through 13 of the Complaint. *See* Pl.'s Counterstatement of Facts

at ¶¶ 13-14. While the Government Defendants have argued that these claims should be

dismissed because Plaintiff has failed to comply with the administrative requirements in the

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 25

Federal Tort Claims Act ("FTCA"), these arguments are misplaced because the FTCA does not

bar damage actions against federal employees who are sued in their personal capacity. *Morris v.*

*United States*, 521 F.2d 872, 874 (9th Cir. 1975). Rather, the FTCA only acts to determine the

sort of tort actions that may brought against the United States. *Id.*

Of course, the Attorney General of the United States can file a certification which states

that the Doe Defendants, who are sued in their personal capacity herein, were acting within the

scope of their official duties, which would then transform the tort claims into causes of action

that are against the United States. *See* 28 U.S.C. § 2679(d). However, given the sorts of illegal,

and frankly, criminal acts that the Doe Defendants have committed, it is difficult to see how such

a certification could be made in this case. As such, because Plaintiff is suing the Doe Defendants

solely in their personal capacity in Counts 9 through 13, Plaintiff did not have to comply with the

administrative requirements of the FTCA, and her failure to comply will not bar her from

recovering for these claims.

## VII.  THE GOVERNMENT DEFENDANTS MAY NOT INVOKE ANY STATUTE OF LIMITATION TO LIMIT THE AMOUNT OF CONDUCT THAT THEY MAY BE HELD LIABLE FOR

The Government Defendants have claimed that this court should apply the personal

injury action statute of limitation, which for the District of Columbia would be three years, *see*

D.C. Code Ann. § 12-301, to bar recovery for any conduct that extends beyond the three (3)

years prior to the date that the Complaint was filed which was May 8, 2003. *See* Gov't Defs.'

Mot. to Dismiss at 11-12, 15-16. In the case of the claim under 42 U.S.C. § 1986, the

Government Defendants have claimed that Plaintiff should be barred from having any recovery

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 26

for any conduct that extends beyond the one (1) year statute of limitation that is stated in that

statute. *See id.* at 16.

However, the Government Defendants' arguments are misplaced. "It is well-settled that

'[w]hen a tort involves continuing injury, the cause of action accrues, and the limitation period

begins to run, at the time the tortious conduct ceases'." *Page v. United States*, 729 F.2d 818, 821

(D.C. Cir. 1984) (holding that plaintiff's cause of action was timely under the continuing tort

doctrine). "Since usually no single incident in a continuous chain of tortious activity can 'fairly

or realistically be identified as the cause of the harm,' it seems proper to regard the cumulative

effect of the conduct as actionable." *Id.* at 822. "Moreover, since 'one should not be allowed to

acquire a right to continue the tortious conduct,' it follows logically that statutes of limitation

should not run prior to its cessation." *Id.*

In fact, the continuing tort doctrine is especially applicable in cases that involve

discrimination, where in order to obtain relief, it is necessary to show sustained conduct or a

pattern and practice. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982).

Indeed, any application of a statute of limitation that bars recovery of continuous acts would only

serve to undermine the broad remedial purposes of civil rights statutes. *See id.* at 380

("Petitioners' wooden application of § 812(a), which ignores the continued nature of the alleged

violation, only undermines the broad remedial intent of Congress embodied in the Act.").

In the case *sub judice*, Plaintiff has alleged claims against the Government Defendants for

violations of the Constitution, the federal criminal wiretapping statute, 42 U.S.C. § 1981, 42

U.S.C. § 1985, 42 U.S.C. § 1986, Intentional Infliction of Emotional Distress, Civil Conspiracy,

Invasion of Privacy, and Interference with Prospective Advantage. **First Am. Compl. at ¶¶**

**309-42.** All of these claims stem from the ongoing presence of the illegal electronic

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 27

surveillance, the abusive dissemination of information from the surveillance to discriminate against Plaintiff, and the ongoing conspiracy amongst the defendants which sustains and perpetuates the existence of the illegal electronic surveillance. **First Am. Compl. at ¶¶ 38-43, 53-55, 60-62, 71, 264-67, 292.** The claims also stems from the discriminatory acts that have been committed by the Duke Defendants and the Georgetown Defendants while Plaintiff was in law school, with the help of the Government Defendants, and the discriminatory acts that have continued to be committed by these Defendants since Plaintiff graduated from law school in May of 2000, as the presence of the illegal electronic surveillance helps to facilitate the discrimination. **First Am. Compl. at ¶¶ 38, 43, 46, 49, 68-71, 103, 230-31, 287, 291-92.** Indeed, Plaintiff has alleged that the Government Defendants decision to put and keep Plaintiff under surveillance was motivated by a racial animus. **First Am. Compl. at ¶¶ 49, 57-58.**

In light of the fact that the Government Defendants have engaged in continuous conduct, and the Government Defendants should be allowed to acquire the right to continue to engage in such tortious conduct, it is clear that the statute of limitations for the claims in this case has not even began to run. *See Page*, 729 F.2d at 821-22. Furthermore, any wooden application of a statute of limitation to limit the conduct for which Plaintiff may recover would only serve to undermine Plaintiff's constitutional rights and further undermine the purposes for which Congress enacted the federal statutes. *See, e.g., Havens Realty Corp.*, 455 U.S. at 380. Accordingly, the Government Defendants can not be allowed to invoke the statute of limitations to bar Plaintiff's recovery for conduct that occurred more than three (3) years before the filing of the Complaint.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Government Defendants' Motion to Dismiss
Page 28

## CONCLUSION

For all the foregoing reasons, the Government Defendants' Motion to Dismiss should be

denied in its entirety.

                                        Respectfully submitted,
                                        ATTORNEY FOR PLAINTIFF,


DATED: June 10, 2006                    _____
                                        Suzette Richards, Esquire, *Pro Se*
                                        P.O. Box 223875
                                        Christiansted, St. Croix  00822-3875
                                        Telephone: (340) 277-4808
                                        Fax: (340) 772-5785


## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of June, 2006, a true and exact copy of the
foregoing document was caused to be served, via facsimile, and via the United States Postal
Service, first class postage prepaid, upon:


Simone R. D. Francis, Esquire                   Richard Hunter, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.  Hunter, Cole & Bennett
The Tunick Building, Suite 202                  Pentheny Bld., 3rd Floor
1336 Beltjen Road                               1138 King Street, Suite 301
St. Thomas, U.S. Virgin Islands  00802          Christiansted, St. Croix  00820


Henry Feuerzeig, Esquire                        Ernest Batenga, Esquire
Dudley, Topper & Feuerzeig                      Assistant United States Attorney
1A Frederiksberg Gade                           United States Attorney's Office
P.O. Box 756                                    1108 King Street, Suite 201
St. Thomas, V.I. 00804                          Christiansted, St. Croix  00820


                                        _____