# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

SUZETTE RICHARDS,      )
       )
     PLAINTIFF,      )
       )
     v.      )
       )
DUKE UNIVERSITY, DUKE UNIVERSITY   )
SCHOOL OF LAW, DUKE UNIVERSITY   )
BOARD OF TRUSTEES, NANNERL   )
KEOHANE, in her personal and official   )
Capacity as President of Duke University,   )
GEORGETOWN UNIVERSITY,   )
GEORGETOWN UNIVERSITY LAW CENTER, )
ALBERTO GONZALES, in his official capacity )
as Attorney General of the United States,   )
FEDERAL BUREAU OF INVESTIGATION,   )
U.S. DEPARTMENT OF JUSTICE,   )
JOHN AND JANE DOES 1-10,   )
WILLIAM H. GATES, III, in his personal and   )
official capacity as Chairman of Microsoft   )
Corporation, STEVE BALLMER, in his personal )
and official capacity as Chief Executive Officer )
of Microsoft Corporation, MICROSOFT   )
CORPORATION, MICROSOFT EMPLOYEES   )
A-J, and MELINDA GATES,   )
       )
     DEFENDANTS.      )
———————————————————— )

CIVIL NO. _06-1179(RCL)_____

ACTION FOR DAMAGES,
DISCRIMINATION, AND
DECLARATORY AND
INJUNCTIVE RELIEF

**JURY TRIAL DEMANDED**

## PLAINTIFF'S OPPOSITION TO THE MICROSOFT DEFENDANTS' MOTION TO DISMISS

**COMES NOW**, Plaintiff, *pro se*, and hereby opposes the Microsoft Defendants' Motion to Dismiss that was brought pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this opposition, Plaintiff has submitted a Memorandum of Law which has been contemporaneously filed herewith.

# RECEIVED

JUL 7 - 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 2

Respectfully submitted,
ATTORNEY FOR PLAINTIFF,

DATED: June 29, 2006

Suzette Richards, Esquire, *Pro Se*
P.O. Box 223875
Christiansted, St. Croix  00822-3875
Telephone: (340) 277-4808
Fax: (340) 772-5785

## CERTIFICATE OF SERVICE

I hereby certify that on this _21_ st day of June, 2006, a true and exact copy of the foregoing document was caused to be served, via facsimile, and via the United States Postal Service, first class postage prepaid, upon:

Simone R. D. Francis, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802

Richard Hunter, Esquire
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820

Henry Feuerzeig, Esquire
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804

Ernest Batenga, Esquire
Assistant United States Attorney
United States Attorney's Office
1108 King Street, Suite 201
Christiansted, St. Croix  00820

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUZETTE RICHARDS, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL NO. _____ |
| | ) | |
| v. | ) | ACTION FOR DAMAGES, |
| | ) | DISCRIMINATION, AND |
| DUKE UNIVERSITY, DUKE UNIVERSITY | ) | DECLARATORY AND |
| SCHOOL OF LAW, DUKE UNIVERSITY | ) | INJUNCTIVE RELIEF |
| BOARD OF TRUSTEES, NANNERL | ) | |
| KEOHANE, in her personal and official | ) | |
| Capacity as President of Duke University, | ) | |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY LAW CENTER, | ) | |
| ALBERTO GONZALES, in his official capacity | ) | |
| as Attorney General of the United States, | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | **JURY TRIAL DEMANDED** |
| JOHN AND JANE DOES 1-10, | ) | |
| WILLIAM H. GATES, III, in his personal and | ) | |
| official capacity as Chairman of Microsoft | ) | |
| Corporation, STEVE BALLMER, in his personal | ) | |
| and official capacity as Chief Executive Officer | ) | |
| of Microsoft Corporation, MICROSOFT | ) | |
| CORPORATION, MICROSOFT EMPLOYEES | ) | |
| A-J, and MELINDA GATES, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MICROSOFT DEFENDANTS' MOTION TO DISMISS

**COMES NOW**, Plaintiff, *pro se*, and hereby respectfully submits this Memorandum of

Law in support of her Opposition to the Microsoft Defendants' Motion to Dismiss that was

brought pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 2

## COUNTERSTATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Plaintiff's Complaint against Defendants Bill Gates, Steve Ballmer, Microsoft Corporation, and Melinda Gates (collectively "the Microsoft Defendants"), stems from the discrimination she experienced while she was in law school. Plaintiff had began law school at the Duke University School of Law (hereinafter "Duke Law") in the fall of 1997 and had realized, from her first year of law school, that Duke Law had in place a system of discrimination, that had been used to discriminate against minorities, particularly black students, for the more than twenty (20) years that black students had attended the school. First Am. Compl. at ¶¶ 35-36, 107. Indeed, as a result of this system of discrimination, black students had been excluded from participation on the school's two most prestigious journals, received lower grades than white students, and had been denied the honors they would otherwise have received if it were not for the system of discrimination. First Am. Compl. at ¶¶ 107-08, 112, 117. The discrimination also had the effect of preventing minorities from obtaining certain jobs considered to be prestigious in the legal profession, like clerkships on the federal appellate and district court level. First Am. Comp. ¶ 111.

As a first year law student at Duke Law, Plaintiff discovered that one of the ways Duke Law facilitated this overall system of discrimination was by lying to students about how to take exams. First Am. Compl. at ¶ 105-06. Specifically, Dean Susan Sockwell, the Dean of Students, intentionally and willfully lied to students about how to take exams, which in turn ensured that they would receive lower grades, making their selection for prestigious journals and their receipt of honors, next to impossible. First Am. Comp. at ¶¶ 106, 113, 117-22. Plaintiff had relied on Dean Sockwell's fraudulent misrepresentation about how to take law school exams, and after

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 3

receiving her grades, and reviewing other exams, felt she had been injured by the

misrepresentation. First Am. Compl. at ¶¶ 124, 127.

Thereafter, because Plaintiff felt that Dean Sockwell's actions were discriminatory, she

went to speak to Dean Sockwell about her fraudulent misrepresentations. First Am. Compl. at ¶

133. Although Dean Sockwell acted as though she did not know her instructions were

fraudulent, and that she had made an innocent error, the intentional and willfulness of her acts,

and the fact that it was done to facilitate the overall system of discrimination at that school, is

evidenced by the fact that after Plaintiff spoke to her, she did absolutely nothing to correct her

misrepresentations, and final exams, at that time, were about one (1) month away. First Am.

Compl. at ¶ 136-37. Plaintiff, who was so disgusted with the racism and bigotry at Duke Law,

and other discriminatory acts that she had experienced, decided to e-mail all of the black students

who were on the Black Law Students Association e-mail list what she had learned about the

taking of law school exams. First Am. Comp. at ¶ 138. Though Plaintiff considered suing Duke

Law because of the discrimination she experienced during her first year of law school, and even

told a classmate about this, she ultimately opted to transfer to Defendant Georgetown University

Law Center ("Georgetown Law"). First Am. Compl. at ¶ 139, 32.

However, the Duke Defendants continued to fear that Plaintiff would sue the school for

the discrimination they had subjected her to, which might in turn have exposed the system of

discrimination at the school and also lowered the school's rank on the U.S. News and World

Report Law School Rankings. First Am. Compl. at ¶ 150. The Dean of Duke Law at the time,

Pamela Gann, even told Saundra Dockery, who had supervised Plaintiff when she worked at a

work study job during undergrad at Duke University ("Duke"), that she would do "anything" to

keep the law school in the top ten. First Am. Compl. at 156. In fact, the Duke Defendants were

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 4

so afraid that Plaintiff would file an action against them for discrimination, that they did not just

contact Saundra Dockery, but also contacted the Government Defendants, and illegally conspired

with the Government Defendants to place Plaintiff under electronic surveillance so they could

obtain information to continue to discriminate against Plaintiff, to essentially undermine and

discredit any claim of discrimination that Plaintiff might make against them. First Am. Compl.

at ¶¶ 38, 49, 142-43, 147, 178, 186-91.

Indeed, it should be noted that from the outset, the surveillance that Plaintiff has been

subjected to, which has included listening devices and video surveillance, was always illegal as

there was no basis in law or fact to place Plaintiff under any electronic surveillance. First Am.

Compl. at ¶ 48, 54. In fact, the electronic surveillance that Plaintiff has been subjected to was

never related to any criminal investigation and at no time has there ever been probable cause to

place Plaintiff under any electronic surveillance. First Am. Compl. at ¶52-53. Instead, it was

Plaintiff's objection to discriminatory practices at Duke Law that prompted the illegal

surveillance that not only allowed the Duke Defendants, the Georgetown Defendants and the

Microsoft Defendants to obtain information to discriminate against Plaintiff, but also allowed for

private information, including medical information about Plaintiff, to be disseminated to many

people. First Am. Compl. at ¶¶ 60, 68-69, 71-72. Although Plaintiff graduated from law school

in late May of 2000, the illegal electronic surveillance that she was placed under has continued

ever since and has followed Plaintiff no matter where she has lived or where she has went, for

more than five (5) years. First Am. Compl. at ¶¶ 32, 38-40, 43-46, 49.

Nevertheless, the Duke Defendants were also so afraid that Plaintiff would sue them for

discrimination that they not only illegally placed Plaintiff under electronic surveillance, but also

placed <u>one</u> black female student on one of the school's most prestigious journal's, right after

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 5

Plaintiff transferred from the school, for the first time in the history of the school. First Am.

Compl. at ¶ 110. Still, the Duke Defendants were so afraid that Plaintiff would sue them for

discrimination that they actually contacted persons at Defendant Georgetown Law to interfere

with Plaintiff professionally, personally and academically. First Am. Comp. at ¶¶ 170, 173,

Persons at Duke Law conspired with persons at Defendant Georgetown Law to adversely affect

Plaintiff's overall educational experience at Georgetown Law, including lowering Plaintiff's

grades. First Am. Comp. at ¶¶ 170, 175-79, 186-91. The discrimination Plaintiff experienced at

Georgetown Law continued from the time Plaintiff matriculated to that school in the Fall of 1998

through her graduation in May of 2000. First Am. Comp. at ¶¶ 32, 177. The Duke Defendants

and Georgetown Defendants have even continued to interfere with Plaintiff personally and

professionally since Plaintiff graduated from law school in May of 2000. First Am. Compl. at ¶¶

230-31, 287, 291-92.

Defendant Melinda Gates, who is married to Defendant Bill Gates, sat on the Duke

University Board of Trustees for the bulk of the time that this discrimination has continuously

existed. First Am. Comp. at ¶¶ 196-97.[1] Defendant Melinda Gates, like other members of the

Duke University Board of Trustees, was aware of the discrimination that Plaintiff experienced

during her first year of law school at Duke Law, as well as the discrimination that she has

continued to experience through today. First Am. Comp. at ¶ 198. However, like other members

of the Board of Trustees, Defendant Melinda Gates did not act to stop the discrimination, but

instead conspired with the Duke Defendants and the Government Defendants in violating

---

[1] The original Complaint in this action was filed in May of 2003. Comp. at 45. While the
Microsoft Defendants have confirmed, in their Motion to Dismiss, that Defendant Melinda Gates
served on the Duke University Board of Trustees from 1996 to 2003, *see* Microsoft Defs.' Mot.
to Dismiss at 3 n. 2, they have not stated exactly when in the year 2003 she left the Board of
Trustees.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 6

Plaintiff's rights, and keeping Plaintiff under illegal electronic surveillance. First Am. Compl. at ¶¶ 46-47, 200. Indeed, Plaintiff knows for a fact that Defendant Melinda Gates has intercepted statements that Plaintiff has made in her home because Plaintiff even read a magazine article where statements that Plaintiff had made in her home were actually attributed to Defendant Melinda Gates. First Am. Comp. at ¶¶ 248-50.

Although Defendant Bill Gates and Defendant Steve Ballmer knew that Plaintiff was being discriminated against by the Duke Defendants, the Government Defendants and the Georgetown Defendants, they nevertheless joined in the conspiracy to discriminate against Plaintiff during Plaintiff's third year of law school at Georgetown Law. First Am. Compl. at ¶¶ 40, 203-04, 262-63. Indeed, both Defendants Bill Gates and Steve Ballmer intercepted the illegal surveillance that Plaintiff was being subjected to, and they further allowed employees at Microsoft Corporation to use corporate resources to intercept the illegal surveillance as well. First Am. Compl. at ¶¶ 46-47, 264-66. The Microsoft Defendants then repeatedly used the information they learned from the illegal electronic surveillance to exploit Plaintiff, benefit themselves financially, and also to harass Plaintiff by putting various things on the company's MSN website and connecting those things to Plaintiff. First Am. Compl. at ¶¶ 214-20, 223-32, 268-77.

On May 8, 2003, Plaintiff commenced the instant action for damages, discrimination, injunctive and declaratory relief, alleging causes of action arising under the First, Fourth, Fifth, Eight, and Thirteenth Amendments to the United States Constitution, 18 U.S.C. §§ 2510-2522, 20 U.S.C. §§ 1681-1688, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and 42 U.S.C. §§ 2000d-2000d-7. First Am. Compl. at ¶¶ 303-27. Plaintiff also sought relief for state and territorial causes of action, including fraud, civil conspiracy, intentional infliction of emotional

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 7

distress, invasion of privacy, interference with prospective advantage, and theft of intellectual property. First Am. Compl. at ¶¶ 294-302, 328-42.  Plaintiff also requested punitive damages because the outrageous acts these Defendants have committed have been so illegal and have been done with such callous disregard for Plaintiff's rights. First Am. Compl. at ¶¶ 343-44. The Complaint was amended on June 5, 2003 to include the Microsoft Defendants (including Defendant Melinda Gates), and Defendant John Ashcroft, who has since been substituted with Alberto Gonzales. *See* First Am. Compl.; Docket at 156.

After being served with Plaintiff's Complaint, the first thing Defendant Duke University did was to file a Motion for Enlargement of Time and for Initial Status Conference wherein they moved the Court to consider employing Rule 17(c) procedures in this case based on the discriminatory acts Plaintiff alleged that they had committed against her. Docket at 55. Thereafter, the Duke Defendants further submitted a report by Dr. Dudley-Grant, a psychologist, wherein Dr. Dudley-Grant, based on her opinion of the allegations in Plaintiff's Complaint, concluded that Plaintiff might be experiencing paranoid schizophrenia or a delusional disorder. The other defendants in this case, which includes the Microsoft Defendants, all joined in this motion. *See* Docket at 53, 58.

Even though, from the outset, Plaintiff argued that the defendants in this case had misconstrued the law, and that Plaintiff's competency would have to be determined based on whether or not Plaintiff was able to protect her own interests, and whether she was able to understand the meaning and effect of the proceedings in this case, Magistrate Judge Jeffrey Resnick rejected Plaintiff's arguments. Instead, based on the conclusions submitted by Dr. Dudley-Grant, Magistrate Judge Resnick ordered Plaintiff to be examined by Dr. Hendricks to determine her competency to prosecute the matter and whether the text of her complaint

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 8

demonstrated "delusional pyschosis, paranoid schizophrenia, or any other mental illness of

abnormality." Docket at 60. Dr. Hendricks then submitted a report, which concluded, based on

his personal opinions of the allegations in Plaintiff's Complaint, that Plaintiff was suffering from

a delusional disorder and was therefore incapable of prosecuting this matter. Plaintiff then

retained her own expert, Dr. Steven Handwerker, who opined that Plaintiff's mental health was

good and stable despite the sorts of stress that the defendants in this case had subjected her to.

Docket at 72, Ex. 1.

Thereafter, despite Plaintiff's continued arguments that the defendants had misconstrued

the law, and Plaintiff's own expert report which stated that her mental health was good and

stable, Magistrate Judge Resnick, relying on Dr. Hendricks and Dr. Dudley-Grant's reports,

decided to go ahead and appoint a guardian *ad litem* to represent Plaintiff in this case. The

District Court Judge Thomas Moore affirmed his decision. Docket at 129. Plaintiff then

appealed both of these erroneous decisions to the Court of Appeals for the Third Circuit, and the

Third Circuit **vacated** the District Court's Order. *See Richards v. Duke University*, No. 05-1170,

2006 WL 162652 at 3 (3d Cir. Jan. 23, 2006). In vacating the District Court's Order, the Third

Circuit held that the District Court had abused its discretion because it failed to apply the correct

standard to determine whether a guardian *ad litem* could be appointed, which is whether a person

is capable of taking care of themselves, or, put another way, whether a person is capable of

protecting their own interests, and understanding the meaning and effect of the legal proceedings

they have instituted. *See id.* In addition, in vacating the District Court's Order, the Third Circuit

also rejected the conclusions that Dr. Hendricks had reached, which had resulted from Magistrate

Judge Resnick's misapplication of the law, and instead concluded, after reviewing information in

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 9

the record, that Plaintiff was competent to proceed *pro se*. *See id.* The Third Circuit then

remanded this matter to the District Court.

On remand, the defendants were given until May 8, 2006 to answer or otherwise respond

to Plaintiff's Complaint. Docket at 182. Although the Microsoft Defendants, like the other

defendants in this case, invoked the subject-matter jurisdiction of this court to attempt to have

Plaintiff declared incompetent, so a guardian *ad litem* could be appointed to represent her, they

have nevertheless now moved to dismiss this action, pursuant to Rule 12(b)(1), for lack of

subject matter jurisdiction, and in the event that this fails, they have moved to dismiss seven of

the eleven counts Plaintiff has stated against them, for failure to state a claim upon which relief

can be granted, pursuant to Rule 12(b)(6). Plaintiff now opposes this motion.

## STANDARD OF REVIEW

### 1. RULE 12(B)(1) STANDARD

"On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1),

the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction."

*Hilska v. Jones*, 297 F. Supp. 2d 82, 86 (D.D.C. 2003). However, "[t]he court may dismiss a

complaint for lack of subject-matter jurisdiction only if 'it appears beyond doubt that the plaintiff

can prove no set of facts in support of [her] claim which would entitle [her] to relief'." *Id.*

(citing *Empagram S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003)

(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"Because subject-matter jurisdiction focuses on the court's power to hear the claim, . . .

the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule

12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim."

*Hilska*, 297 F. Supp. 2d at 87 (citing *Macharia v. United States*, 334 F.3d 61, 64, 60 (D.C. Cir.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 10

2003) and *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C.

2001). However, the court is not limited to the allegations in the complaint, and instead, may

consider matters outside the pleadings, to determine whether it has subject-matter jurisdiction

over the claim. *Hilksa*, 297 F. Supp. 2d at 87 (citing *Hohri v. United States*, 782 F.2d 227, 241

(D.C. Cir. 1986) *vacated on other grounds*, 482 U.S. 64 (1987) and *Herbert v. Nat'l Acad. of*

*Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## 2.  RULE 12(B)(6) STANDARD

"On a motion to dismiss for failure to state a claim upon which relief can be granted,

pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations

and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff

the benefit of all inferences that can be derived from the alleged facts." *Hopkins v. Women's*

*Division General Board of Global Ministries*, 238 F. Supp. 2d 174, 177 (D.D.C. 2002) (citing

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1975)) (citation omitted). "However, the Court need not

accept inferences or conclusory allegations that are unsupported by the facts set forth in the

complaint." *Hopkins*, 238 F. Supp. at 178. "In deciding whether to dismiss a claim under Rule

12(b)(6), the Court is able to only consider the facts alleged in the complaint, documents

attached as exhibits or incorporated by reference in the complaint, and matters about which the

Court may take judicial notice." *Id.* "The Court will dismiss a claim pursuant to Rule 12(b)(6)

only if the defendant can demonstrate 'beyond a reasonable doubt that the plaintiff can prove no

set of facts in support of [her] claim which would entitle [her] to relief'." *Id.*

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 11

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE NOT PATENTLY INSUBSTANTIAL

"Federal courts have subject-matter jurisdiction over a claim arising under federal law

regardless of the plausibility of the plaintiff's allegations." *Hilksa*, 297 F. Supp. 2d at 87 (citing

*Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 623

(D.C. Cir. 1997) and *Smith v. Horner*, 846 F.2d 1521, 1523 (D.C. Cir. 1988)).   However, a court

may, in its discretion, dismiss a claim that is patently insubstantial for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1). *Hilksa*, 297 F. Supp. 2d at 87; *Hagans v. Lavine*, 415

U.S. 528, 536 (1974) (stating that "federal courts are without power to entertain claims otherwise

within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of

merit'"); *Bell v. Hood*, 327 U.S. 678, 682-83 (1946) (noting that a federal claim may be

dismissed for lack of subject matter jurisdiction where it "clearly appears to be immaterial and

made solely for the purpose of obtaining jurisdiction or where such a claim is wholly

insubstantial and frivolous").

Courts have defined patently insubstantial claims to be those that are based on factual

allegations which involve fantastic scenarios that rise to the level of being irrational or wholly

incredible. *Hilksa*, 297 F. Supp. 2d at 88; *Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994)

(describing, as frivolous, a complaint where the plaintiff alleged that "a Secret Branch of the

Federal Government" had taken his face off of his head and then went into his skull to place a

computer chip and camera system which made him project images many feet in front of him).

However, "[n]ot qualifying as frivolous are claims that are implausible, namely those that are

doubtful or of questionable merit." *Hilksa*, 297 F. Supp. 2d at 87-89.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 12

Of course, even though claims may not be considered patently insubstantial pursuant to

Rule 12(b)(1), they may nevertheless warrant dismissal pursuant to Rule 12(b)(6) for failure to

state a claim upon which relief may be granted. *Id.* at 88. As the Supreme Court explained in

*Bell v. Hood,*

> Jurisdiction. . . is not defeated . . . by the possibility that the averments might fail
> to state a cause of action. . . For it is well settled that the failure to state a proper
> cause of action calls for a judgment on the merits and not for a dismissal for want
> of jurisdiction. Whether the complaint states a cause of action on which relief
> could be granted is a question of law and just as issues of fact it must be decided
> after and not before the court has assumed jurisdiction over the controversy. If
> the court does later exercise its jurisdiction to determine that the allegations in the
> complaint do not state a ground for relief, then dismissal of the case would be on
> the merits, not for want of jurisdiction.

372 U.S. at 682, *quoted in Hilksa,* 297 F. Supp. 2d at 88.

Contrary to statements made by the Microsoft Defendants, the allegations in Plaintiff's

Complaint are not outlandish or implausible. Plaintiff has named Melinda Gates, who is married

to Bill Gates, and who was on the Duke University Board of Trustees for the bulk of the time

that Plaintiff was being discriminated against, as a defendant in this case because of her role in

this ongoing conspiracy to violate Plaintiff rights. First Am. Compl. at ¶¶ 18, 196-97; *see infra*

at 26-30. Similarly, Plaintiff has named both Bill Gates and Steve Ballmer as defendants in this

matter because of their role in this conspiracy to discriminate against Plaintiff. *See infra* at 26-

30. In fact, it should be noted that Defendant Bill Gates and Steve Ballmer did not just join in

the conspiracy, as they also allowed their employees to join in this conspiracy, and further use

resources at Microsoft Corporation to intercept the surveillance that Plaintiff has been subjected

to. First Am. Compl. at ¶¶ 54, 233, 240, 264-66.

Plaintiff is aware that she has plead claims that are related to illegal electronic

surveillance. However, this court has already found those sorts of allegations to be justiciable.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 13

In *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144 (D.D.C. 1976), the plaintiffs, which

included the Berlin Democratic Club, which among other activities, had supported the

impeachment proceedings against President Nixon in 1973, brought an action against a number

of Department of Defense Army officials and uniformed personnel. The plaintiffs alleged,

among other things, that they had been subjected to numerous acts of warrantless electronic

surveillance, and that the defendants had maintained "dissidence identification" files and

"blacklists" about them which had been disseminated to military and civilian agencies and

private citizens. *Id.* at 147. The plaintiffs alleged that the defendants had wiretapped their

telephones, disrupted their daily activities, and that the derogatory information that had been

disseminated lead to the termination or restriction of their employment opportunities or forced

them to severely restrict their activities for fear of having additional information disseminated.

*Id.* at 148. Although the Complaint was filed in 1974, the plaintiffs alleged that the illegal

surveillance had extended as far back as 1971, and had continued, in all instances, for at least a

period of months. *Id.* at 148, 161.

Ultimately, in *Berlin Democratic Club*, the court held that the action was justiciable

because "public dissemination of . . . information in a false and defamatory manner and with no

lawful purpose, disruption of legitimate activities, termination of employment, illegal electronic

surveillance, and other forms of harassment" were properly subject to challenge as being beyond

legitimate surveillance activities. *Id.* at 151; *see also Philadelphia Yearly Meeting of the*

*Religious Society of Friends v. Tate*, 519 F.2d 1335, 1338 (3d Cir. 1975) ("It is not apparent how

making information concerning the lawful activities of plaintiffs available to non-police groups

or individuals could be considered within the proper ambit of law enforcement activity,

particularly since it is alleged that plaintiffs are subject to surveillance only because their

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 14

political views deviate from the 'establishment'. We think these allegations, at a minimum, show immediately threatened injury to plaintiffs by way of a chilling of their rights of freedom of speech and associational privacy.")

Furthermore, this court has already held that it had subject-matter jurisdiction where there were allegations of extensive acts of wrongdoing. In *Hilksa v. Jones*, 297 F. Supp. 2d 82 (D.D.C. 2003), the plaintiff, who was a native and citizen of Finland, brought an action against a number of federal, private and foreign defendants. *Id.* at 84. The federal defendants included President George W. Bush, Attorney General John Ashcroft, Senator Hillary Clinton, former President Bill Clinton, and Judy Thomas, a deportation officer with the Immigration and Naturalization Service. *Id.* at 84 n.2. The private defendants included Pierre Sané and Boisfeuillet Jones, Jr. *Id.* The foreign defendants included Substitute for Consul Kimmo Nikkanen of Finland, Minister of Justice Heinrich Koller of Switzerland, Minster of Justice Marylise Lebranchu of France, Attorney General Hans Regner of Sweden, former Finnish Presidents Mauno Koivisto and Marti Ashtisaari, and the current Finnish President Tarja Halonen. *Id.*

In *Hilksa*, the plaintiff alleged that the defendants had wrongfully prevented him from obtaining political asylum in the United States by committing a number of illegal acts. *Id.* at 83. More specifically, the plaintiff alleged that the federal defendants were responsible for a number of offenses, which included forgery, extortion, assault, destruction of documents, torture, and attempted murder. *Id.* at 84. In addition, the plaintiff alleged that Senator Hillary Clinton and former President Bill Clinton had broken into his luggage and stolen its contents while he was at a local airport. *Id.* at 89. The plaintiff further alleged that the federal defendants had instructed a detention center to give him medication that caused him to have "a splitting headache, strong

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 15

pain in his urinary tract and intense tumefaction in [his] feet." *Id.* The plaintiff also alleged that because of instructions that were given by the federal defendants, he was kept "'seriously injured in [a] cold cell for killing purposes' from November 30, 1999 through July 14, 2000." *Id.* Throughout his complaint, and other filings, the plaintiff also accused various individuals of "tightening up his situation." *Id.*

While the court in *Hilksa* did note that the plaintiff's allegations may be implausible, the court nevertheless concluded that the allegations did not qualify as "frivolous" for purposes of Rule 12(b)(1). *Id.* Indeed, the court specifically stated that the "doubtful nature of the plaintiff's claims [would] not defeat the court's jurisdiction." *Id.* Accordingly, the court denied a motion to dismiss for lack of subject matter jurisdiction that had been filed by the federal defendants.

Nevertheless, the Microsoft Defendants appear to invite this court, in considering their motion, to consider an expert report that was previously filed by Dr. Olaf Hendricks in this matter. Microsoft Defs. Mot. to Dismiss at 6. However, this sort of assertion by the Microsoft Defendants is simply improper. Indeed, it should be noted that Dr. Hendricks' reports was really originally filed in connection with the defendants' failed attempt to have a guardian *ad litem* appointed to represent Plaintiff in this case. While the Magistrate Judge relied on Dr. Hendricks' report to appoint a guardian *ad litem*, and the District Court Judge affirmed his decision, Plaintiff appealed all the way to the Court of Appeals for the Third Circuit, which ultimately **vacated** the District Court's Order that affirmed the appointment of a guardian *ad litem*. *See Richards*, 2006 WL 162652 at 3.

In vacating the District Court's Order, the Third Circuit rejected the conclusions that Dr. Hendricks had reached, and instead concluded, after reviewing information in the record, that Plaintiff was competent to proceed *pro se*. *See id.* As such, in light of the Third Circuit's

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 16

decision in this case, it is simply improper for this Court to consider any of the conclusions that were reached by Dr. Hendricks when the Third Circuit has already rejected these conclusions, and held that these conclusions resulted from an erroneous application of law. *See id.* Indeed, it should be noted that these reports, which essentially amount to Dr. Hendricks' personal opinion of the allegations in Plaintiff's Complaint, i.e. Plaintiff's testimony in this case, would not even be admissible in a trial in this matter and should not be considered at any other stage of the proceedings. *See Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 881-84 (8th Cir. 1998) (holding trial court erred in admitting expert testimony that impugned psychiatric credibility of employee and usurped role of jury).

The simple fact of the matter is that no one is above the law, and that includes the Microsoft Defendants. Where, as here, Plaintiff's rights have been continuously violated by the defendants in this case, she is entitled to recover relief in a court of law. *See Marbury v. Madison*, 1 Cranch 137, 163 (1803) (stating "[i]f [a person] has a right, and that right has been violated, do the laws of this country afford [that person] a remedy", as "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury."). Accordingly, for all of the reasons stated herein, this Court has subject-matter jurisdiction to hear this case.

## II.    PLAINTIFF MAY SUE PRIVATE PARTIES WHO ACT JOINTLY WITH FEDERAL OFFICIALS FOR VIOLATIONS OF HER CONSTITUIONAL RIGHTS

The Microsoft Defendants have argued that Plaintiff's constitutional claims should be dismissed because she did not allege that the Microsoft Defendants were state actors. Microsoft Defs.' Mot. to Dismiss at 9. However, these arguments are misplaced because under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), private parties may be held liable

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 17

for violating an individual's constitutional rights "if [the private parties] are deemed to have acted 'under color of law'." *Berger v. Hanlon*, 129 F.3d 505, 514 (9th Cir. 1997) (citations omitted), *judgment vacated and remanded by Hanlon v. Berger*, 526 U.S. 808 (1999), *judgment reinstated by Berger v. Hanlon*, 188 F.3d 1155 (9th Cir. 1999).

Indeed, private parties can be considered government actors if they are "willful participant[s] in joint action with the [government] or its agents". *Dennis v. Sparks*, 449 U.S. 24, 27 (1980), *cited in Berger*, 129 F.3d at 514. A party can show that there has been joint action between a private party and the government, if they can establish "an agreement or conspiracy between a government actor and a private party." *Berger*, 129 F.3d at 514 (citing *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 152 (1970) ("The involvement of a [government] official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's [constitutional rights], whether or not the actions of the [government official] were officially authorized, or unlawful.") (citations omitted). Usually, courts engage in a factual inquiry to determine whether the conduct of private parties can be considered government action for purposes of *Bivens*. *See Berger*, 129 F.3d at 514 (citations omitted).

In *Berger v. Hanlon*, agents of the United States Fish and Wildlife Service ("USFWS") had commenced an investigation into whether Mr. Berger had poisoned or shot eagles. *Id.* at 508. Upon learning of the investigation, Cable New Network, Inc., and CNN employee Jack Hamann, along with Turner Broadcasting System, Inc., and TBS employees Robery Rainey and Donald Hooper, approached USFWS agents about obtaining footage regarding the investigation for television programs. *Id.* Thereafter, an Assistant United States Attorney entered into agreement with CNN employee Jack Hamann that allowed for CNN to accompany the USFWS agents as they attempted to execute a search warrant on Mr. Berger's ranch. *Id.*

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 18

It was alleged that the day before the search, the media had participated in a "pre-search briefing", where agents of the federal government provided them with information about the search warrant, and supporting materials, that were supposed to remain under seal until the warrant was executed. *Id.* at 508. Then on the day of the search, the government agents and the media gathered on the road leading to Mr. Berger's ranch to discuss the execution of the warrant. *Id.* The government agents and the media crew then proceeded to Mr. Berger's ranch, with media cameras mounted on the government vehicles, or placed in the interior of the vehicles, so that the media could document every move made by the government agents. *Id.* One USFWS agent was even wired with a CNN hidden microphone so he could continuously transmit live audio to the CNN technical crew both before and during the search. *Id.* Ultimately, the media recorded more than eight hours of tape, and they broadcast video footage and sound recordings that were made in Mr. Berger's home. *Id.*

After Mr. Berger was convicted of one misdemeanor count of using a pesticide in a manner inconsistent with its labeling, and acquitted of three felony counts of the killing of at least one eagle, both Mr. Berger and his wife sued the federal agents and the media, under *Bivens*, for violating their constitutional rights.[2] *Id.* at 507. Ultimately, the Court of Appeals for the Ninth Circuit, after examining the joint conduct that had occurred between the government agents and the media, held that the media could be considered governmental actors that would be liable under *Bivens*. *Id.* at 515.

Similarly, an examination of the sort of joint conduct that the Microsoft Defendants, the Government Defendants, and the other defendants in this case have engaged in, evidences that

---

[2] The Bergers also sued the media for violations of the Federal Criminal Wiretapping Statute and various state law provisions, and also to enjoin further broadcasts of the video shot at their ranch. *Berger*, 129 F.3d at 507.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 19

the Microsoft Defendants, and the other private defendants, can all be considered government

actors for purposes of *Bivens*. In the case *sub judice*, the Duke Defendants conspired with the

Government Defendants to illegally place Plaintiff under electronic surveillance so they could

obtain information to continue to discriminate against Plaintiff, and essentially undermine and

discredit any claim of discrimination that Plaintiff might make against them. First Am. Compl.

at ¶¶ 38, 49, 142-43, 147, 178, 186-91. The electronic surveillance included listening devices

and video surveillance and it was the Government Defendants that provided the material and

support to illegally place Plaintiff under electronic surveillance. First Am. Compl. at ¶ 54, 69,

73. Although the Microsoft Defendants were aware that Plaintiff was being discriminated

against, and the illegal electronic surveillance was being used to facilitate the discrimination,

they nevertheless joined in the existing conspiracy to keep Plaintiff under surveillance and

violate Plaintiff's rights. First Am. Compl. at ¶¶ 38, 46, 196-97, 203-04, 263-63. The

surveillance that Plaintiff has been subjected to has continued for a number of years and

continues to exist today. First Am. Compl. at ¶¶ 41-44.

Given the joint and collusive conduct that the Microsoft Defendants, the Government

Defendants, and the other defendants have engaged in, it is clear that all of the private defendants

can be considered governmental actors for purposes of *Bivens*, *see Berger*, 129 F.3d at 515, and

under *Bivens*, Plaintiff may pursue a cause of action for violations of her First, Fourth, Fifth,

Eighth and Thirteenth Amendment rights to the Constitution. *See Berlin Democratic Club*, 410

F. Supp at 1611-62 (recognizing First Amendment cause of action); *Bivens*, 430 U.S. at 389

(recognizing Fourth Amendment cause of action); *Davis v. Passman*, 442 U.S. 228 (1979)

(recognizing Fifth Amendment cause of action); *Carlson v. Green*, 446 U.S. 14 (1980)

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 20

(recognizing Eight Amendment cause of action); *Channer v. Hall*, 112 F.3d 214, 217 (5th Cir. 1997) (recognizing Thirteenth Amendment cause of action).

Nevertheless, the Microsoft Defendants have also argued that Plaintiff still would not be able to state a claim pursuant to the Eighth Amendment, because the Eighth Amendment is designed to "protect prisoners from cruel and unusual punishment" and Plaintiff is not an "inmate". Microsoft Defs.' Mot. to Dismiss at 13-14. Of course, Plaintiff does not dispute that the Supreme Court has held that the Eighth Amendment only protects prisoners. *See e.g. Ingraham v. Wright*, 430 U.S. 651, 663 (1977). However, Plaintiff would still note that the text of the Eighth Amendment to the Constitution does not indicate that this provision should be solely limited to circumstances where a person has been convicted of a crime, *see* U.S. Const. VIII (stating "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted"), and the court should be open to circumstances such as those that exist here, where Plaintiff is being subject to what amounts to a criminal punishment, that is particularly cruel and unusual when one considers that she has not committed any crimes, much less been committed of one. Indeed, the surveillance that Plaintiff has been subjected to in this case has been so outrageous as to render her a de facto prisoner.

The Microsoft Defendants also argue that Plaintiff has failed to state a cause of action for which relief may be granted under the Thirteenth Amendment because the Complaint fails to allege that the Microsoft Defendants placed Plaintiff "into a condition of slavery or involuntary servitude as contemplated by the Thirteenth Amendment". Microsoft Defs.' Mot. to Dismiss at 14. However, this assertion is misplaced. The Thirteenth Amendment provides that "neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been convicted, shall exist within the United States or any place subject to their jurisdiction."

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 21

U.S. Const. amend. XIII, § 1. "The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *United States v. Kozminski*, 487 U.S. 931, 942 (1988).

The term "involuntary servitude" has been defined as "an action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement." *Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990). "When the [individual] has a choice, even though it is a painful one, there is no involuntary servitude." *Id.* Thus there must be a showing of compulsion, through the use or threatened use of physical or legal coercion, to establish involuntary servitude. *See Kozminski*, 487 U.S. at 952.

In the case *sub judice*, the use of the illegal electronic surveillance has amounted to a form of physical coercion that has left Plaintiff with no choice but to continue to be subject to serving the Microsoft Defendants. Indeed, the illegal electronic surveillance that Plaintiff has been subjected to has been widespread and has gone on for a number of years. First Am. Compl. at ¶¶ 32-47. Further, as the surveillance began as a result of a conspiracy with the Duke Defendants and agencies and persons in the federal government, and has grown to include the Georgetown Defendants and the Microsoft Defendants, First Am. Compl. at ¶¶ 10-13, 22, 38-40, Plaintiff has had no way of simply walking away from the illegal surveillance.

The Microsoft Defendants have no reason to end their involvement in this conspiracy to discriminate against Plaintiff, with the help of the illegal surveillance. Indeed, the Microsoft Defendants have already used the surveillance to obtain ideas from Plaintiff, that they have

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 22

profited from free of charge, First Am. Compl. at ¶¶ 207-08, 214, 268-78, and there is no reason for them to end their involvement in this conspiracy when that would necessarily mean they would have to pay Plaintiff for that which the surveillance has provided them with for free. Thus, because of the continuous presence of the illegal electronic surveillance Plaintiff simply has to continue to serve the Microsoft Defendants, and have them use any ideas she may have, as they so choose, free of charge.

Accordingly, for the reasons that have been stated herein, Plaintiff has stated a cause of action against the Microsoft Defendants pursuant to the Thirteenth Amendment to the Constitution.

## III.    PLAINTIFF HAS STATED A CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1981

The Microsoft Defendants have argued that Plaintiff has failed to state a cause of action pursuant to 42 U.S.C. § 1981 because they claim that Plaintiff has failed to identify any contractual relationship that was impaired by the Microsoft Defendants. *See* Microsoft Defs.' Mot. to Dismiss at 17. In addition, the Microsoft Defendants, relying on three paragraphs in Plaintiff's Complaint, have also claimed that Plaintiff has not stated a cause of action under Section 1981 because the allegations in the three paragraphs that they rely on do not "evince an intent to discriminate on the basis of race." *Id.*

However, the Microsoft Defendants arguments are misplaced because the allegations in Plaintiff's Complaint clearly show that the Microsoft Defendants have interfered with Plaintiff's right to contract to obtain a legal education free of racial animus, and they have further interfered with Plaintiff's right to contract to earn a living free of racial discrimination. Further, Plaintiff would note that the her right to "make and enforce contracts" is not the only right that has been

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 23

impaired by the discriminatory conduct of the Microsoft Defendants under Section 1981, as

Plaintiff has also been denied her right to the "full and equal benefit of all laws and proceedings

for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.

In addition, it should be noted that the Supreme Court has already held, in a

discrimination context, that a plaintiff does not have allege to circumstances which support an

inference of discrimination to survive a motion to dismiss. *See Swierkiewicz v. Sorema*, 534 U.S.

506, 515 (2002); *see also Phillip v. University of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003).

Rather, to satisfy the pleading requirements in a discrimination claim Plaintiff's Complaint need

only contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil

Procedure). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's

claim is and the grounds upon which it rests'." *Id.* "The simplified notice pleading standard

relies on liberal discovery rules and summary judgment motions to define disputed facts and

issues and to dispose of unmeritorious claims." *Id.* Indeed, "[t]he provisions for discovery are

so flexible and the provisions for pretrial procedure and summary judgment so effective, that

attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the

gravamen of the dispute brought frankly into the open for the inspection of the court." *Id.*

Nevertheless, Plaintiff would note that she has alleged facts that are sufficient to show

that the Microsoft Defendants intended to discriminate against her on the basis on race. Indeed,

it is not just that Plaintiff has specifically alleged that the discrimination was based on race, First

Am. Compl. at ¶¶ 37-40, 293, but rather the nature and extent of the Microsoft Defendants'

conduct, which has gone on for years, that establishes an intent to discriminate because of

Plaintiff's race.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 24

Section 1981 provides as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory *to make and enforce contracts,* to sue, be parties, give evidence, *and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,* and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by the section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981 (emphasis added).

In order to state a claim under Section 1981, plaintiff must show: "1) plaintiff's membership in a racial minority; 2) discrimination based on one or more of the activities enumerated in the section; and 3) an intent to discriminate on the basis of race by the defendant." *Tripp v. Long Island University*, 48 F. Supp. 2d 220, 223 (E.D.N.Y. 1999). No state action is required, as the rights that are protected under Section 1981(a) are protected against impairment from private discrimination. *See* 42 U.S.C. § 1981(c) (stating "rights protected by the section are protected against impairment by nongovernmental discrimination"); *Vietnamese Fishermen's Ass'n*, 518 F. Supp. 993, 1008 (S.D. Tex. 1981) (stating "under 42 U.S.C. § 1981 private citizens are proper defendants"); *Phillip*, 316 F.3d at 299 (holding "that the equal benefit clause of Section 1981(a) does not require state action"); *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 25

Cir. 2003) (holding that "Section 1981 plainly protects against impairment of its equal benefit clause by private discrimination").

In the case *sub judice*, Plaintiff has stated a cause of action against the Microsoft Defendants under Section 1981. Indeed, Plaintiff, as a black woman, has clearly met the first factor. In addition, Plaintiff has also met the second and third factors as the Microsoft Defendants have not only engaged is discriminatory conduct, based on Plaintiff's race, that was meant to deprive Plaintiff of her right to "make and enforce contracts", but they have also engaged in discriminatory conduct, based on Plaintiff's race, that was meant to deny Plaintiff "the full and equal benefit of . . . laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.

First, Plaintiff had a right to contract to pursue the profession of her choosing, free of any racial animus, and the discriminatory conduct of the Microsoft Defendants denied Plaintiff this right. When Plaintiff enrolled at the Duke University School of Law, and then later enrolled at the Georgetown University Law Center, an implied contract arose between Plaintiff and these institutions. *See Tripp*, 48 F. Supp. 2d at 224 ("[C]ourts have held that when student enrolls at a university, an implied contract arises."); *Pride v. Howard University*, 384 A.2d 31, 34 (D.C. 1978) (recognizing "a contractual relationship exists between a university and its students"). Further, with respect to any place that Plaintiff has worked, she clearly contracted to earn a living. *Cf. Vietnamese Fishermen's Ass'n*, 518 F. Supp. at 1008.

The express language of Section 1981 states the term "make and enforce contracts" not only includes the "making, performance, modification and termination of contracts" but also "the enjoyment of *all* benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Clearly, a term of the implied contract to obtain a legal education was

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 26

Plaintiff's right to obtain her law degree without being subject to any discriminatory conduct.

*Cf. Tripp*, 48 F. Supp. 2d at 224. Similarly, a term of Plaintiff's contract to earn a living was the

right to work at her job without being subject to any discrimination. *Cf. id.*; *see also Vietnamese

Fisherman's Ass'n*, 518 F. Supp. at 1008.

However, in the case *sub judice*, Plaintiff was simply denied the right to contract to

obtain a legal education or to earn a living, free of racial animus. It should be noted that Plaintiff

was discriminated against on the basis of race while she was a first year law student at Duke

Law. First Am. Compl. ¶¶ 123-27, 133-37, 142-44. Even though Plaintiff had told a fellow

classmate that she was considering legal action against Duke Law because of the discrimination

against minorities at that school, Plaintiff instead decided to transfer to Georgetown Law after

the end of her first year. First Am. Compl. at ¶ 139. However, the Duke Defendants, who feared

Plaintiff would take legal action against them because of the discriminatory practices at that

school, contacted the Government Defendants, and conspired with the Government Defendants

to illegally place Plaintiff under electronic surveillance so they could obtain information to

continue to discriminate against Plaintiff, and essentially undermine and discredit any claim of

discrimination that Plaintiff might make against them. First Am. Compl. at ¶¶ 38, 49, 142-43,

147, 178, 186-91.

Indeed, the Duke Defendants did not just contact the Government Defendants, as they

also contacted and conspired with the Georgetown Defendants to adversely affect Plaintiff's

overall educational experience at Georgetown Law, including lowering Plaintiff's grades. First

Am. Compl. at ¶¶ 170, 175-79, 186-91. In fact it should be noted that even since Plaintiff

graduated from law school, Plaintiff has still continued to be subjected to the illegal electronic

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 27

surveillance that began while she was in law school, even at places of employment. First Am.

Compl. at ¶¶ 41-44, 62-65.

Defendant Melinda Gates, who is married to Defendant Bill Gates, sat on the Duke

University Board of Trustees for the entire time that Plaintiff was in law school and was being

discriminated against by the Duke Defendants, the Georgetown Defendants and the Government

Defendants. First Am. Compl. at ¶¶ 196-97. In fact, even after Plaintiff graduated from law

school, and continued to be subjected to the illegal electronic surveillance in her home and even

at her job, Defendant Melinda Gates continued to sit on the Duke University Board of Trustees,

through 2003 (presumably up until the filing of this Complaint). *See id.*; *see also supra* note 1.

Defendant Melinda Gates, like other members of the Duke University Board of Trustees,

was aware of the discrimination that Plaintiff experienced during her first year of law school at

Duke Law, as well as the discrimination that she has continued to experience through today.

First Am. Comp. at ¶ 198. However, even though Defendant Melinda Gates was aware that

Plaintiff was being discriminated against because of her race, and was aware that illegal

electronic surveillance was used to facilitate the discrimination, Defendant Melinda Gates

nevertheless conspired with the Duke Defendants and the Government Defendants in violating

Plaintiff's rights, and keeping Plaintiff under illegal electronic surveillance, both while Plaintiff

was in law school and after she graduated. First Am. Compl. at ¶¶ 46-47, 49, 199-200. Indeed,

Plaintiff knows that Defendant Melinda Gates has intercepted statements that Plaintiff has made

in her home because Plaintiff even read a magazine article where statements that Plaintiff had

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 28

made in her home were actually attributed to Defendant Melinda Gates.[3] First Am. Comp. at ¶¶ 248-50.

Although Defendant Bill Gates and Defendant Steve Ballmer, who are respectively the Chairman and Chief Executive Officer of Microsoft,[4] were aware that Plaintiff was being discriminated against by the Duke Defendants, the Government Defendants and the Georgetown Defendants, and that Plaintiff had been placed under illegal electronic surveillance to help facilitate that discrimination, they nevertheless joined in this conspiracy to violate Plaintiff's rights and keep Plaintiff under illegal surveillance. First Am. Compl. at ¶¶ 46-47 203-04, 262-67. In fact, the Microsoft Defendants intercepted statements that Plaintiff made in her home about wireless technology, in November 1999, which resulted in them creating MSN Mobile. First Am. Compl. at ¶¶ 207-08, 214. While the Microsoft Defendants could have decided at that point, to cease intercepting information from the illegal surveillance, as they had to have known

---

[3] Of course, it should be noted that the Microsoft Defendants have attempted to claim that Plaintiff has sued Defendant Melinda Gates because she is married to Defendant Bill Gates. *See* Microsoft Defs.' Mot. to Dismiss at 3 n. 2. However, such an assertion is patently false. Melinda Gates has been named as a defendant because of her role in this ongoing conspiracy to violate Plaintiff's rights. First Am. Compl. at ¶¶ 46-47, 49, 196-200, 248-50. In fact, it should also be noted that while the Microsoft Defendants have also attempted to claim that aside from Defendant Melinda Gates, "no other current or former member of the Duke Board of Trustees, either in his or her personal or official capacity, is named as a defendant in this action", *see* Microsoft Defs.' Mot. to Dismiss at 3 n.2, such an assertion is also absolutely false. In fact, Plaintiff has also sued Defendant Nannerl Keohane, who was the President of Duke University when the discriminatory acts that are alleged in Plaintiff's Complaint occurred, in her personal and official capacity, for her role in this ongoing conspiracy to violate Plaintiff's rights, First Am. Compl. at ¶¶ 46-47, 49, 99-100, 228-30, and Defendant Nannerl Keohane, by virtue of her position as President of Duke University, was a member of the Duke University Board of Trustees. First Am. Compl. at ¶ 6.

[4] Bill Gates stepped down as the Chief Executive Officer of Microsoft in January of 2000. First Am. Compl. at ¶ 259. Thereafter, he was replaced by Steve Ballmer who has continued to serve as CEO of Microsoft, and has actually been the CEO for most of the time that Plaintiff's rights have been violated. First Am. Compl. at ¶¶ 259-60.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 29

that Plaintiff, who was a law student at the time, was being subject to severe emotional distress

by having her privacy invaded and her rights recklessly disregarded because of the illegal

surveillance, First Am. Compl. at ¶ 73, they did not do so.

Instead, almost a year later, in September of 2000, they intercepted and used ideas that

Plaintiff had written, in the same home that she was staying in in November of 1999, regarding

the use of e-mails to generate revenue. First Am. Compl. at ¶¶ 268-70. Then in February or

March of 2001, they further intercepted and used ideas Plaintiff had written regarding changing

the name of Web TV to MSN TV, while Plaintiff was a law clerk at what is now the Superior

Court of the Virgin Islands. First Am. Compl. at ¶¶ 273-76. At no time, however, did the

Microsoft Defendants compensate Plaintiff for any of the ideas that they implemented and that

Microsoft Corporation profited from, and they certainly did not stop intercepting the

surveillance. First Am. Compl. at ¶¶ 42-46, 278. Indeed, it should be noted that this is not a

situation where the surveillance occurred for a day or a week. Rather, the surveillance that

Plaintiff has been subjected to has occurred over a number of years, and continues through today,

and Defendant Bill Gates and Defendant Steve Ballmer have even allowed employees at

Microsoft Corporation to use corporate resources to intercept the surveillance, which has

included listening devices and video surveillance, to obtain information to degrade and harass

Plaintiff. First Am. Compl. at ¶¶ 42-46, 54, 233, 240, 264-66. In fact, in April of 2003, Plaintiff

was even publicly accosted by a man in a local Kmart store because of nonsense that the

Microsoft Defendants put on their MSN website.[5] First Am. Compl. at ¶ 233.

_____

[5]  Plaintiff filed her amended Complaint, which named the Microsoft Defendants as defendants
in this matter, on June 5, 2003, which was about two months after this incident.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 30

Of course it should be noted that Defendants Melinda Gates, Bill Gates, and Steve Ballmer are not individuals that are unfamiliar with laws that protect privacy rights or intellectual property rights, as they all make sure that they are afforded all the protections that the law affords.[6] First Am. Compl. at ¶¶ 242-47, 253-58. However, while they expect that the law will protect their rights, because they are white, they have no problem callously disregarding Plaintiff's rights, because they do not believe that Plaintiff, who is black, has any rights that can be violated. In fact, the sheer length of time that the illegal surveillance has existed, and the fact that it still exists today, to allow these defendants and others to violate Plaintiff's rights and discriminate against her, evidences that these defendants have absolutely no regard for Plaintiff's rights at all.

Accordingly, for all the foregoing reasons, Plaintiff has pleaded sufficient facts to show that the Microsoft Defendants acted with racial animus and engaged in discriminatory conduct that impaired Plaintiff's her right to contract for a legal education and to contract to earn a living,

---

[6] In the section of the Microsoft Defendants' Motion to Dismiss where they purport to state the facts of this case, they attempt to claim that allegations that Plaintiff has made against the Microsoft Defendants, which really go to how aggressively they act to protect their own privacy and intellectual property rights, have no relevance to any wrongdoing in this case. *See* Microsoft Defs.' Mot. to Dismiss at 4-5. However, Plaintiff vehemently disagrees with these assertions. Indeed, contrary to claims by the Microsoft Defendants, Plaintiff has specifically alleged 1) Microsoft's unwillingness to give information about Steve Ballmer for a book; 2) Melinda Gates' refusal to give interviews, which has had to be respected; and 3) Plaintiff's lack of knowledge as to the intimate details of Bill and Melinda Gates' life, First Am. Compl. at ¶¶ 242-47, 254, to help illustrate how these defendants, who have callously disregarded and violated her rights because she is black, nevertheless make sure that they, as persons who are white, work to protect their own rights. In fact, Plaintiff would further state that she has also specifically made these allegations to support her claim for punitive damages against the Microsoft Defendants for the reckless, willful, and wanton manner that they have violated her rights. *See e.g. Merrill Lynch v. SORAC, Inc.*, Civ. A. No. 90-0606, 1992 WL 18268 at *4 (July 14, 1992 D.D.C.) (stating that punitive damages are warranted when a defendant commits a tortious act that is accompanied by "fraud, ill-will, recklessness, wantonness, oppressiveness, willful disregard of plaintiff's rights, or other circumstances tending to aggravate the injury" and that a defendant's intent "may be inferred from the surrounding facts and circumstances of the case")

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 31

and as such, Plaintiff has stated a cause of action under the clause of Section 1981(a) that relates to making and enforcing contracts.

However, it should also be noted that Plaintiff has stated a cause of action under Section 1981(a) because the Microsoft Defendants denied Plaintiff of "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens", 42 U.S.C. § 1981(a).  Indeed here, the Microsoft Defendants have deprived Plaintiff of all the protections that are afforded by federal, state and territorial wiretapping statutes, which include (1) that any electronic surveillance be authorized by a court; (2) that the surveillance be for legitimate law enforcement purposes; (3) that a government entity establish probable cause to secure court authorization for any electronic surveillance; and (4) that the information obtained from the surveillance be subject to legal limitations as to how it may be used and to whom it can be disclosed.  *See* 18 U.S.C. §§ 2510-2522; N.C. Gen. Stat. 15A-286-298; D.C. Code Ann. §§ 23-541-556; V.I. Code Ann. tit. 5, §§ 4101-4107.

Indeed, in the case *sub judice*, the Duke Defendants conspired with the Government Defendants to place Plaintiff under illegal electronic surveillance so they could obtain information to discriminate against Plaintiff, to essentially attempt to undermine and discredit any claim of discrimination that Plaintiff might make against them.  First Am. Compl. at ¶¶ 38, 49, 142-43, 147, 178, 186-91.  However, there was never any probable cause for this surveillance, and the surveillance was never related to any legitimate law enforcement investigation.  First Am. Compl. at ¶¶ 52-53.  Indeed, the surveillance has always been illegal and as such there has never been any court authorization.  First Am. Compl. at ¶ 38.  While the Government Defendants provided the material and support to illegally place Plaintiff under surveillance, the information from the surveillance has been intercepted by and disseminated to

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 32

many people who are not law enforcement personnel. First Am. Compl at ¶ 69. Indeed, the Microsoft Defendants knew that the surveillance was illegal, but they nevertheless joined in the ongoing conspiracy to discriminate against Plaintiff and keep Plaintiff under illegal electronic surveillance. First Am. Compl. at ¶¶ 38-40, 46, 196-97, 203-04 262-63. Although Plaintiff has already specifically stated that discrimination she experienced was based on race, First Am. Compl. at ¶¶ 37-40, 293, it is the sheer nature and extent of the Microsoft Defendants conduct that help to evidence their racial animus. *See supra* at 26-30.

Accordingly, for the reasons stated herein, Plaintiff has also pleaded sufficient facts to show that the Microsoft Defendants acted with racial animus and engaged in discriminatory conduct that deprived Plaintiff of her right to full and equal benefit of all laws and proceedings for the security of persons and property, and as such, Plaintiff has stated a cause of action under the clause of Section 1981(a). *See Phillip*, 316 F.3d at 298.

## IV.  PLAINTIFF HAS STATED A CAUSE OF ACTION UNDER 42 U.S.C. § 1985(3)

The Microsoft Defendants have claimed that Plaintiff has failed to state a cause of action under 42 U.S.C. § 1985(3) because the allegations in Plaintiff's Complaint are "void of any race-based motivations". Microsoft Defs.' Mot. to Dismiss at 21. The Microsoft Defendants further claim that in their reading of the Complaint, the only right that they allegedly violated was Plaintiff's right to privacy, and since the right to privacy is not a right that is guaranteed from impairment under Section 1985(3), Plaintiff have failed to state a cause of action under this section. *Id.* at 22-23.

However these arguments are misplaced. First of all, as Plaintiff has already noted herein, she is not required to allege circumstances which support an inference of discrimination

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 33

to survive a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 515; *see also Phillip*, 316 F.3d at

298. Rather, to satisfy the pleading requirements in a discrimination claim Plaintiff's Complaint

need only contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil

Procedure). Nevertheless, even though Plaintiff is not required to plead allegations to support an

inference of discrimination based on race, she has still specifically alleged that the discrimination

was based on race, First Am. Compl. at ¶¶ 37-40, 293, and further alleged circumstances that

show that the Microsoft Defendants discriminatory conduct was motivated by racial animus. *See

supra* at 26-30.

    Second, Plaintiff has sued the Microsoft Defendants pursuant to Section 1985(3) because

they have violated her rights under the Thirteenth Amendment to the Constitution and 42 U.S.C.

§ 1981, and the rights provided in these provisions are protected from impairment under Section

1985(3). *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (observing

that the right to be free from involuntary servitude pursuant to Thirteenth Amendment of the

Constitution is a right protected from impairment under Section 1985(3)); *Spectronics Corp. v.

TCI/TKR of Jefferson County, Inc.*, 17 F. Supp. 2d 669, (W.D. Kentucky 1998) (holding that

rights created under Section 1981 are protected from impairment under Section 1985(3));

*Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 470, 480 (D.D.C. 1994) (stating that rights protected

under Section 1981 are protected from impairment under Section 1985(3)).

    Section 1985(3), provides, in relevant part, as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the
> highway or on the premises of another, for the purpose of depriving, either
> directly or indirectly, any person or class of persons of the equal protection of the
> laws, or of equal privileges and immunities under the laws. . . [and] in any case of
> conspiracy set forth in this section, if one or more persons engaged therein do, or

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 34

> cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). To state a cause of action under Section 1985(3), Plaintiff must show that

the following:

> (1) The defendants did conspire;

> (2) For the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

> (3) One or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, whereby

> (4) Another was (a) injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States.

*Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Vietnamese Fishermen's Ass'n*, 518 F.

Supp. at 1006. In addition, while state action is not required, Plaintiff must nevertheless, to state

a cause of action under Section 1985(3), show that the there was "some racial or . . .class-based

animus behind the conspirators' action." *Griffin*, 403 U.S. at 101-02.

In the case *sub judice*, Plaintiff has stated a cause of action under Section 1985(3). First,

all of the defendants conspired to violate Plaintiff's rights. The Duke Defendants first conspired

with the Government Defendants to illegally put Plaintiff under surveillance so they could obtain

information to discriminate against Plaintiff, to essentially attempt to undermine and discredit

any claim of discrimination that Plaintiff might make against them. First Am. Compl. at ¶¶ 38,

49, 142-43, 147, 178, 186-91. Thereafter, the Georgetown Defendants and then Microsoft

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 35

Defendants joined in the existing conspiracy to discriminate against Plaintiff and violate

Plaintiff's rights.[7] First Am. Compl. at ¶¶ 39-40.

Of course, it should be noted that while the Microsoft Defendants have misconstrued the

allegations in Plaintiff's Complaint, in what appears to be an attempt to claim that Plaintiff has

alleged two separate conspiracies, one consisting of the Microsoft Defendants and other

companies in corporate America, and then another consisting of the Duke Defendants, the

Georgetown Defendants, and the Government Defendants, where the Microsoft/corporate

conspiracy merely "tapped into" the Duke/Georgetown/Government conspiracy, Microsoft

Defs.' Mot. to Dismiss at 20-23, there is simply no merit to this argument. Indeed, the

allegations in the Complaint clearly allege only one conspiracy among all the defendants in this

case, First Am. Compl. at ¶¶ 38-40, and this Court should not allow the Microsoft Defendants to

attempt to distance themselves from their co-conspirators, just because Plaintiff has now been

forced to sue them for their role in this ongoing conspiracy to discriminate against her.

However, in the event that this Court should find that Plaintiff has alleged two separate

conspiracies, where one conspiracy merely "tapped into" another conspiracy, Plaintiff would

submit that at the moment one conspiracy tapped into the other conspiracy, they both became

just one conspiracy, and the Microsoft Defendants would have to be liable for all acts taken in

furtherance of that conspiracy. *See Qwest Communications Corp. v. Weisz*, 278 F. Supp. 2d

1188, 1190 (S.D. Cal. 2003) ("Through participation in the conspiracy, each coconspirator

'effectively adopts as his or her own the torts of other coconpirators within the ambit of the

conspiracy'.").

_____

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 36

Second, the purpose of the conspiracy was to discriminate against Plaintiff, and use the illegal electronic surveillance to facilitate that discrimination, to deprive Plaintiff of her rights, including her right to make and enforce contracts under 42 U.S.C. § 1981, her right to the full and equal benefit of the laws under 42 U.S.C. § 1981, and her right to be free of any condition of involuntary servitude pursuant to the Thirteenth Amendment of the Constitution. Third, the Government Defendants provided the material and resources to place Plaintiff under surveillance to allow for information about Plaintiff to be intercepted by and disseminated to many people. First Am. Compl. at ¶ 69. Although the Microsoft Defendants were aware that Plaintiff was being discriminated against, and that the illegal electronic surveillance was being used to facilitate that discrimination, they nevertheless joined in the conspiracy to discriminate against Plaintiff, and used corporate resources to intercept the surveillance that Plaintiff was being subjected to. First Am. Compl. at ¶¶ 38-40, 46, 196-97, 203-04 262-66. Indeed, as has already been noted herein, the sheer nature and extent of the Microsoft Defendants participation in this conspiracy evidences that they acted with racial animus. *See supra* at 26-30. Finally, as a result of the conspiracy, Plaintiff was deprived of her rights under 42 U.S.C. § 1981 and the Thirteenth Amendment to the Constitution as has already been established herein. *See supra* at 26-30.

## V.    PLAINTIFF HAS STATED A CAUSE OF ACTION UNDER 42 U.S.C. § 1986, AND THIS CAUSE OF ACTION

The Microsoft Defendants have claimed that Plaintiff has failed to state a claim under 42 U.S.C. § 1986 because she has failed to state a claim under Section 1985(3) which must first be established in order to state a Section 1986 claim. *See* Microsoft Defs.' Mot. to Dismiss at 24. However, this argument is without merit.

Suzette Richards v. Duke University, et al.
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 37

Section 1986 creates a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in Section 1985. . .are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so." 42 U.S.C. § 1985; *Vietnamese Fishermen's Ass'n*, 518 F. Supp. at 1007. Indeed, "[s]ince the language authorizes suit against 'every person' there is no requirement of state action or color of law under [Section] 1986." *Vietnamese Fishermen's Ass'n*, 518 F. Supp. at 1007.

However, as Plaintiff has already demonstrated herein, Plaintiff has established that the Microsoft Defendants violated Section 1985(3). *See supra* at 32-36. Further, as Defendant Melinda Gates had knowledge of the discrimination that Plaintiff was being subjected to, and as she sat on the Duke University Board of Trustees for the bulk of the time that Plaintiff's rights were being violated, First Am. Compl. at ¶¶ 196-97, she certainly had the power to prevent, or aid in preventing the violations of Plaintiff's rights, but she just utterly failed to do so. Indeed, instead of acting to end the discrimination, Defendant Melinda Gates actually joined in this conspiracy to discriminate against Plaintiff and violate Plaintiff's rights. First Am. Compl. at ¶¶ 198-200.

Similarly, it is clear that Defendant Microsoft Corporation, along with its Chairman, Defendant Bill Gates, and its CEO, Defendant Steve Ballmer, had the power to prevent, or aid in preventing the violations of Plaintiff's rights, but simply utterly failed to do so. Indeed, Defendant Bill Gates and Defendant Steve Ballmer did not just join in the conspiracy to discriminate against Plaintiff, as they also allowed employees at Microsoft Corporation to join in the conspiracy and even use corporate resources to intercept the surveillance to degrade and harass Plaintiff. First Am. Compl. at ¶¶ 203-04, 262-66.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 38

## VI.    PLAINTIFF HAS STATED A CAUSE OF ACTION UNDER 18 U.S.C. § 2520

The Microsoft Defendants have claimed that Plaintiff has failed to state a claim under

Section 2520 because she has not alleged "with any semblance of clarity" the five elements that

are necessary to state a claim under Section 2520. Microsoft Defs.' Mot. to Dismiss at 26.  In

addition, the Microsoft Defendants have also claimed that pursuant to certain provisions in

Section 2511 of the Federal Criminal Wiretapping Statute, their conduct would not be considered

unlawful. *Id.* at 28-29.  However, these arguments are without merit.

As has already been noted herein, to satisfy the pleading requirements, Plaintiff's

Complaint need only contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of

Civil Procedure). "Such a statement must simply 'give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests'." *Id.* "The simplified notice pleading

standard relies on liberal discovery rules and summary judgment motions to define disputed facts

and issues and to dispose of unmeritorious claims." *Id.* As such, in this case, Plaintiff has more

than satisfied these pleading requirements and the Microsoft Defendants are keenly aware of

what her claims are and the grounds upon which they rest. *See supra* at 26-30.

However, even if this court were to require that Plaintiff allege the elements that the

Microsoft Defendants have listed, she would submit that she has already done so.  According to

the Microsoft Defendants, to state a claim under Section 2520, Plaintiff must allege "that a

defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to

intercept or endeavor to intercept (3) the contents of (4) an electronic[oral, or wire]

communication (5) using a device." Microsoft Defs.' Mot. to Dismiss at 26 (citing *In re*

*Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003)).

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 39

Here, Plaintiff has alleged that the Microsoft Defendants intentionally and willfully intercepted information from the illegal electronic surveillance that Plaintiff has been subjected to. First Am. Compl. at 70. Plaintiff has further alleged that surveillance has included listening devices and video surveillance, and that the Microsoft Defendants have intercepted a number of Plaintiff's communications, including oral communications, using the resources of Microsoft Corporation. First Am. Compl. at ¶¶ 73, 207-08, 214-05, 265-66. Accordingly, contrary to claims made by the Microsoft Defendants, Plaintiff has alleged the five elements to state a claim under Section 2520, and as Plaintiff's allegations, must, at this stage, be taken as true, Plaintiff has stated a claim for which relief may be granted.

Nevertheless, the Microsoft Defendants have claimed that even if Plaintiff does "satisfy basic pleading requirements", Plaintiff's claim should still be dismissed because pursuant to 18 U.S.C. § 2511(2)(g)(i) and 18 U.S.C. § 2511(2)(g)(ii)(II), their conduct would not be considered unlawful. Microsoft Defs.' Mot. to Dismiss at 28. According to the Microsoft Defendants, they could not have violated the Federal Criminal Wiretapping Statute because under Sections 2511(2)(g)(i) and 2511(2)(g)(ii) it would not unlawful to intercept the surveillance "that the Government configured to be accessible to the public". *See id.* at 28-29. However, the statutory provisions that the Microsoft Defendants are relying on do not support their arguments.

Section 2511(2)(g)(i) provides, in its entirety, as follows:

> It shall not be unlawful under this chapter or chapter 121 of this title for any person-
>
> (i)    to intercept or access an electronic communication made through an *electronic communication system* that is configured so that such electronic communication is readily accessible to the general public.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 40

18 U.S.C. § 2511(2)(g)(i) (emphasis added).  However, the places that the surveillance has occurred, which include Plaintiff's home and place of employment, are not electronic communication systems.  Pursuant to section 2510 of Title 18 of the United States Code, an electronic communication system is "any wire, radio, electromagnetic, photooptical or photoelectronic *facilities for the transmission of* wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." (emphasis added).  However, places like Plaintiff's home and place of employment are exactly what they are, namely a home and an office.  Plaintiff lives at her home, and she works at her office.  As such, as it is clear that Plaintiff's home and place of employment are not *facilities for the transmission* of any kind of communications, it necessarily follows that Section 2511(2)(g)(i) does not apply to this case.

For similar reasons, Section 2511(2)(g)(ii) (II) does not apply here either.  Section 2511(2)(g)(ii)(II) provides, in its entirety, as follows:

> It shall not be unlawful under this chapter or chapter 121 of this title for any person –
>
> (ii)    to intercept any radio communication which is transmitted
> (II) by any governmental, law enforcement, civil defense, private land mobile, or public safety *communications system* including policy and fire, readily accessible to the general public.

18 U.S.C. 2511(2)(g)(ii)(II)(emphasis added).  However, again, the places where the surveillance has occurred, which include Plaintiff's home and office, are not governmental, law enforcement, or any other type of communications system.  To state it somewhat differently, Plaintiff's home is not the equivalent of an FBI walkie talkie.  Government officials and law enforcement personnel do not communicate with each other through the surveillance in Plaintiff's home such that the Microsoft Defendants would be able to access it.  It is clear the Section

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 41

2511(2)(g)(ii)(II), like Section 2511(2)(g)(i), does not apply to this case, and as such, Plaintiff

has stated a viable cause of action against the Microsoft Defendants.

## VII.    PLAINTIFFS CLAIMS UNDER SECTION 1986 AND 18 U.S.C. § 2520 WOULD NOT BE BARRED BY ANY STATUTE OF LIMITATION

The Microsoft Defendants have claimed that Plaintiff's claims under 42 U.S.C. 1986 and

18 U.S.C. § 2520 would be barred by the statute of limitations. *See* Microsoft Defs.' Mot. to

Dismiss at 24-26. According to the Microsoft Defendants, the statute of limitations started to run

in 1999, when Plaintiff first learned they had joined the conspiracy to discriminate against her,

and therefore any claim under Section 1986 or Section 2520 would now be barred. This

argument, however, is misplaced.

"It is well-settled that '[w]hen a tort involves continuing injury, the cause of action

accrues, and the limitation period begins to run, at the time the tortious conduct ceases'." *Page*

*v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984) (holding that plaintiff's cause of action was

timely under the continuing tort doctrine). "Since usually no single incident in a continuous

chain of tortious activity can 'fairly or realistically be identified as the cause of the harm,' it

seems proper to regard the cumulative effect of the conduct as actionable." *Id.* at 822.

"Moreover, since 'one should not be allowed to acquire a right to continue the tortious conduct,'

it follows logically that statutes of limitation should not run prior to its cessation." *Id.*

In fact, the continuing tort doctrine is especially applicable in cases that involve

discrimination, where in order to obtain relief, it is necessary to show sustained conduct or a

pattern and practice. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982).

Indeed, any application of a statute of limitation that bars recovery of continuous acts would only

serve to undermine the broad remedial purposes of civil rights statutes. *See id.* at 380

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 42

("Petitioners' wooden application of § 812(a), which ignores the continued nature of the alleged

violation, only undermines the broad remedial intent of Congress embodied in the Act.").

In the case *sub judice,* the Microsoft Defendants knew Plaintiff was being discriminated

against but they nevertheless joined the conspiracy to keep Plaintiff under surveillance and

violate her rights. First Am. Compl. at ¶¶ 46, 198-200, 203-04, 262-66.  The surveillance that

Plaintiff has been subjected to has now gone on for years, and in fact still continues through

today. First Am. Compl. at ¶¶ 41-44.  Indeed, over the time the surveillance has existed, the

Microsoft Defendants have engaged in extensive violations of Plaintiff's rights.  *See supra* at 26-

30.  There is no one incident that will be able to be "fairly and realistically" identified as the

cause of any harm that Plaintiff has suffered.

As such, in light of the fact that the Microsoft Defendants have engaged in continuous

conduct, and the Microsoft Defendants should be not allowed to acquire the right to continue to

engage in such tortious conduct, it is clear that the statute of limitations for the claims in this case

has not even began to run. *See Page*, 729 F.2d at 821-22.  Furthermore, any wooden application

of a statute of limitation to limit the conduct for which Plaintiff may recover would only serve to

undermine Plaintiff's constitutional rights and further undermine the purposes for which

Congress enacted the federal statutes. *See, e.g., Havens Realty Corp.*, 455 U.S. at 380.

Accordingly, the Microsoft Defendants can not be allowed to invoke the statute of limitations to

bar Plaintiff's recovery for the continuous conduct that they have engaged in.

## VIII.  PLAINTIFF HAS STATED A CAUSE OF ACTION FOR INTERFERENCE WITH PROSPECTIVE ADVANTAGE

The elements for a claim of interference with prospective business or economic relations

include: (1) the existence of a business relationship or expectancy, with a probability of future

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 43

economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3)

reasonable certainty that absent defendant's intentional misconduct, plaintiff would have

continued in the relationship or realized the expectancy, and (4) damage to plaintiff. *Multicom*

*Inc. v. Chesapeake and Potomac Telephone Co.*, Civ. A. No. 88-1886-OG, 1998 WL 118411

(D.D.C. Oct. 27, 1988).

   In the case *sub judice*, Plaintiff has stated a cause of action for interference with

prospective advantage. From the time Plaintiff has been in law school, she has had a reasonable

expectancy that she would be able to contract to earn a living, which is an expectancy she still

has today. However, even after Plaintiff transferred from Duke Law, the Duke Defendants

continued to engage in a number of acts in furtherance of the conspiracy to discriminate against

Plaintiff, which included contacting the Georgetown Defendants to attempt to obtain information

about employers Plaintiff would be interviewing with so they could attempt to prevent Plaintiff

from getting a job. First Am. Compl. at ¶ 172. Indeed, from the time Plaintiff has been in law

school, the Duke Defendants, and the other defendants named herein, have engaged in

discriminatory acts that were intended to adversely affect Plaintiff academically, professionally

and personally. First Am. Compl. at ¶ 173. In fact, the illegal electronic surveillance continues

to exist today to allow the Duke Defendants and the other defendants in this case to be able to

adversely affect Plaintiff professionally. First Am. Compl. at ¶ 292. There is no question that

but for the discriminatory acts that Plaintiff has continuously been subjected to, she would have

been able to certain jobs while in law school, as well as following her graduation. First Am.

Compl. at ¶ 293.

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 44

While Plaintiff recognizes that none of these allegations implicate the Microsoft

Defendants directly, the Microsoft Defendants, as members of this ongoing conspiracy to violate

Plaintiff's rights, may nevertheless be held liable for the tortious acts of its co-conspirators.

*See Qwest Communications Corp.*, 278 F. Supp. 2d at 1190.

### IX.    PLAINTIFF HAS STATED A CAUSE OF ACTION FOR THE THEFT OF HER INTELLECTUAL PROPERTY

"Conversion is the unauthorized assumption of the right of ownership over the personal

property of another to the exclusion of the owner's rights." *Colton, McMichael, Lester, Auman,*

*Visnovske, Inc. v. Mueller*, 896 S.W.2d 741, 742 (Mo. Ct. App. 1995). "Conversion may be

proved by (1) tortious taking; (2) any use or appropriation to the use of the person in possession,

indicating a claim of right in opposition to the rights of the owner; or (3) refusal to give up

possession to the owner on demand." *Id.* "While conversion does not lie for the appropriation of

an idea or a debt, where intangible property rights are merged in or identified with some

document, conversion may be maintained." *Id.* at 743; Restatement (Second) of Torts, § 242

("One who effectively prevents the exercise of intangible rights of the kind customarily merged

in a document is subject to liability similar to that for conversion, even though the document is

not itself converted."); *see also Pearson v. Dodd,* 410 F.2d 701 (D.C. Cir. 1969) (recognizing

that intangible property rights may sometimes be proper subject of suit for conversion).

Here, the Microsoft Defendants stole Plaintiff's intellectual property, or put another way,

they converted Plaintiff's intangible property. Indeed, on at least two occasions, one occurring

in September of 2000, and another occurring in February or March of 2001, the Microsoft

Defendants appropriated ideas Plaintiff had written in documents through illegal surveillance.

First Am. Compl. at 268-76. This appropriation constituted a conversion of Plaintiff's intangible

*Suzette Richards v. Duke University, et al.*
Civil no. _____
Memorandum of Law in Support of Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss
Page 45

property, and thus contrary to arguments the Microsoft Defendants have made in their Motion to

Dismiss, Plaintiff has stated a cause of action for which relief may be granted.

## CONCLUSION

For all the foregoing reasons, the Microsoft Defendants' Motion to Dismiss should be

denied in its entirety.

Respectfully submitted,
ATTORNEY FOR PLAINTIFF,

DATED: June 29, 2006

Suzette Richards, Esquire, *Pro Se*
P.O. Box 223875
Christiansted, St. Croix  00822-3875
Telephone: (340) 277-4808
Fax: (340) 772-5785

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of June, 2006, a true and exact copy of the
foregoing document was caused to be served, via facsimile, and via the United States Postal
Service, first class postage prepaid, upon:

Simone R. D. Francis, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802

Richard Hunter, Esquire
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820

Henry Feuerzeig, Esquire
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804

Ernest Batenga, Esquire
Assistant United States Attorney
United States Attorney's Office
1108 King Street, Suite 201
Christiansted, St. Croix  00820