### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUZETTE RICHARDS, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL NO. 06-01179 (RCL) |
| | ) | |
| v. | ) | ACTION FOR DAMAGES, |
| | ) | DISCRIMINATION, AND |
| DUKE UNIVERSITY, DUKE UNIVERSITY | ) | DECLARATORY AND |
| SCHOOL OF LAW, DUKE UNIVERSITY | ) | INJUNCTIVE RELIEF |
| BOARD OF TRUSTEES, NANNERL | ) | |
| KEOHANE, in her personal and official | ) | |
| Capacity as President of Duke University, | ) | |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY LAW CENTER, | ) | |
| ALBERTO GONZALES, in his official capacity | ) | |
| as Attorney General of the United States, | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | **JURY TRIAL DEMANDED** |
| JOHN AND JANE DOES 1-10, | ) | |
| WILLIAM H. GATES, III, in his personal and | ) | |
| official capacity as Chairman of Microsoft | ) | |
| Corporation, STEVE BALLMER, in his personal | ) | |
| and official capacity as Chief Executive Officer | ) | |
| of Microsoft Corporation, MICROSOFT | ) | |
| CORPORATION, MICROSOFT EMPLOYEES | ) | |
| A-J, and MELINDA GATES, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT GEORGETOWN UNIVERSITY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)

**COMES NOW**, Plaintiff, *pro se*, and hereby Defendant Georgetown University's

Motion to Dismiss that was brought pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal

Rules of Civil Procedure. In support of this opposition, Plaintiff has submitted a Memorandum

of Law which has been contemporaneously filed herewith.

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 2

Respectfully submitted,
ATTORNEY FOR PLAINTIFF,

DATED: July 26, 2006

Suzette Richards, Esquire, *Pro Se*
P.O. Box 223875
Christiansted, St. Croix  00822-3875
Telephone: (340) 277-4808
Fax: (340) 772-5785

## CERTIFICATE OF SERVICE

I hereby certify that on this __26th__ day of July, 2006, a true and exact copy of the foregoing document was caused to be served via the United States Postal Service, first class postage prepaid, upon:

Simone R. D. Francis, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802

Michael J. Murphy, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, N.W., Fifth Floor
Washington, D.C. 20037

Henry Feuerzeig, Esq.
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804

Charles E. Buffon, Esq.
Harry B. Roback, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

Richard Hunter, Esq.
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820

Elizabeth O'Brien, Esq.
Williams & Connolly LLP
725 Twelfth Street
Washington, D.C.  20002

Benton G. Peterson, Esq.
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W., Room E4905
Washington, D.C. 20530

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SUZETTE RICHARDS, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL NO. 06-01179 (RCL) |
| | ) | |
| v. | ) | ACTION FOR DAMAGES, |
| | ) | DISCRIMINATION, AND |
| DUKE UNIVERSITY, DUKE UNIVERSITY | ) | DECLARATORY AND |
| SCHOOL OF LAW, DUKE UNIVERSITY | ) | INJUNCTIVE RELIEF |
| BOARD OF TRUSTEES, NANNERL | ) | |
| KEOHANE, in her personal and official | ) | |
| Capacity as President of Duke University, | ) | |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY LAW CENTER, | ) | |
| ALBERTO GONZALES, in his official capacity | ) | |
| as Attorney General of the United States, | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | **JURY TRIAL DEMANDED** |
| JOHN AND JANE DOES 1-10, | ) | |
| WILLIAM H. GATES, III, in his personal and | ) | |
| official capacity as Chairman of Microsoft | ) | |
| Corporation, STEVE BALLMER, in his personal | ) | |
| and official capacity as Chief Executive Officer | ) | |
| of Microsoft Corporation, MICROSOFT | ) | |
| CORPORATION, MICROSOFT EMPLOYEES | ) | |
| A-J, and MELINDA GATES, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT GEORGETOWN UNIVERSITY'S MOTION TO DISMISS**

     **COMES NOW**, Plaintiff, *pro se*, and hereby respectfully submits this Memorandum of

Law in support of her Opposition to Defendant Georgetown University's[1] Motion to Dismiss that

---

[1] In the Georgetown University's Motion to Dismis, and Memorandum of Law that was
submitted in support thereof, it has against stated that "[t]he Georgetown University Law Center
is not a separate entity from Georgetown University capable of being sued". However, the
Complaint in this case has named both Georgetown University and the Georgetown University
Law Center as defendants in this action, *see* First Am. Compl. at ¶¶ 8-9, and there is certainly no

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 2

was brought pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil

Procedure.[2]

## FACTUAL BACKGROUND

Plaintiff filed the initial Complaint in this matter on May 8, 2003 to obtain relief for

outrageous acts of discrimination, that are rooted in an extraordinary degree of racism and

bigotry, that Plaintiff has been continuously subjected to for more than a five (5) year period of

time. Compl. at ¶ 45. The defendants named in the initial Complaint included Duke University

("Duke"), Duke University School of Law ("Duke Law"), Duke University Board of Trustees

and Nannerl Keohane (collectively "Duke Defendants), Georgetown University and Georgetown

University Law Center (collectively "Georgetown Defendants"), and the Federal Bureau of

Investigation ("FBI"), U.S. Department of Justice ("DOJ"), and John and Jane Does 1-10, who

are past or present employees of the FBI and DOJ. Compl. at 2-3. On June 5, 2003, shortly after

the initial Complaint was filed, Richards filed the First Amended Complaint. First Am. Compl.

at 56. The Amended Complaint named William H. Gates, III ("Bill Gates"), Steve Ballmer,

---

Court Order that has altered this in any way. In fact, this lawsuit is essentially an action against
the principal, Georgetown University, and its agent, the Georgetown University Law Center,
which, incidentally, is the entity that Georgetown University has specifically designated to
handle matters related to legal education. Indeed, it should be noted that if law schools, which
would presumably include the Georgetown University Law Center, are sufficiently proper parties
to be able to have an injury for which they can give an association standing to sue, *see Forum for
Academic and Institutional Rights, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 286-91 (D.N.J. 2003),
then it really is disingenuous for Georgetown University to now claim that the Georgetown
University Law Center is not a legal entity that can be sued.

[2] Georgetown University has claimed it has "ample additional grounds" to dismiss this action. If
such is the case, then they should file their motion which states these grounds, instead of trying
to cause additional delays in this matter.

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 3

Microsoft Corporation, Microsoft Employees A-J and Melinda Gates (collectively "Microsoft

Defendants") and John Ashcroft[3] as defendants.[4]  First Am. Compl. at 4-5.

      Plaintiff's Complaint against Defendant Georgetown University, and all of the other

defendants in this case, stems from the discrimination she experienced while she was in law

school.  Plaintiff had began law school at Duke Law in the fall of 1997 and had realized, from

her first year of law school, that Duke Law had in place a system of discrimination, that had been

used to discriminate against minorities, particularly black students, for the more than twenty (20)

years that black students had attended the school.  First Am. Compl. at ¶¶ 35-36, 107.  Indeed, as

a result of this system of discrimination, black students had been excluded from participation on

the school's two most prestigious journals, received lower grades than white students, and had

been denied the honors they would otherwise have received if it were not for the system of

discrimination.  First Am. Compl. at ¶¶ 107-08, 112, 117.  The discrimination also had the effect

of preventing minorities from obtaining certain jobs considered to be prestigious in the legal

profession, like clerkships on the federal appellate and district court level.  First Am. Comp. ¶

111.

---

[3]  Defendant John Ashcroft, who was named solely in his official capacity as Attorney General of
the United States, has since been substituted with Alberto Gonzales pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure.  V.I. Docket at 156.  Alberto Gonzales, along with Defendants
DOJ, FBI, and John and Jane Does 1-10, will be referred to herein as the "Government
Defendants".

[4]  The defendants that have been named above are the only defendants in this case.  While this
case does involve the use of illegal electronic surveillance, which has been configured in a way
that allows for many people to illegally intercept private information about Plaintiff, First Am.
Compl. at ¶¶ 47, 69, Plaintiff has sued the defendants named above because they are the ones
that have been responsible for placing and keeping her under illegal electronic surveillance. First
Am. Compl. at ¶¶ 38-46.

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 4

As a first year law student at Duke Law, Plaintiff discovered that one of the ways Duke Law facilitated this overall system of discrimination was by lying to students about how to take exams. First Am. Compl. at ¶ 105-06. Specifically, Dean Susan Sockwell, the Dean of Students, intentionally and willfully lied to students about how to take exams, which in turn ensured that they would receive lower grades, making their selection for prestigious journals and their receipt of honors, next to impossible. First Am. Comp. at ¶¶ 106, 113, 117-22. Plaintiff had relied on Dean Sockwell's fraudulent misrepresentation about how to take law school exams, and after receiving her grades, and reviewing other exams, felt she had been injured by the misrepresentation. First Am. Compl. at ¶¶ 124, 127.

Thereafter, because Plaintiff felt that Dean Sockwell's actions were discriminatory, she went to speak to Dean Sockwell about her fraudulent misrepresentations. First Am. Compl. at ¶ 133. Although Dean Sockwell acted as though she did not know her instructions were fraudulent, and that she had made an innocent error, the intentional and willfulness of her acts, and the fact that it was done to facilitate the overall system of discrimination at that school, is evidenced by the fact that after Plaintiff spoke to her, she did absolutely nothing to correct her misrepresentations, and final exams, at that time, were about one (1) month away. First Am. Compl. at ¶ 136-37. Plaintiff, who was so disgusted with the racism and bigotry at Duke Law, and other discriminatory acts that she had experienced, decided to e-mail all of the black students who were on the Black Law Students Association e-mail list what she had learned about the taking of law school exams. First Am. Comp. at ¶ 138. Though Plaintiff considered suing Duke Law because of the discrimination she experienced during her first year of law school, and even

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 5

told a classmate about this, she ultimately opted to transfer to Defendant Georgetown University

Law Center ("Georgetown Law"). First Am. Compl. at ¶ 139, 32.

However, the Duke Defendants continued to fear that Plaintiff would sue the school

because of the discrimination that they had subjected her to, which might in turn have exposed

the system of discrimination at the school and also lowered the school's rank on the U.S. News

and World Report Law School Rankings. First Am. Compl. at ¶ 150. The Dean of Duke Law at

the time, Pamela Gann, even told Saundra Dockery, who had supervised Plaintiff when she

worked at a work study job during undergrad at Duke University ("Duke"), that she would do

"anything" to keep the law school in the top ten. First Am. Compl. at 156. In fact, the Duke

Defendants were so afraid that Plaintiff would file an action against them for discrimination, that

they did not just contact Saundra Dockery, but also contacted the Government Defendants, and

illegally conspired with the Government Defendants to place Plaintiff under electronic

surveillance so they could obtain information to continue to discriminate against Plaintiff, to

essentially undermine and discredit any claim of discrimination that Plaintiff might make against

them. First Am. Compl. at ¶¶ 38, 49, 142-43, 147, 178, 186-91.

Indeed, it should be noted that from the outset, the surveillance that Plaintiff has been

subjected to, which has included listening devices and video surveillance, was always illegal as

there was no basis in law or fact to place Plaintiff under any electronic surveillance. First Am.

Compl. at ¶ 48, 54. In fact, the electronic surveillance that Plaintiff has been subjected to was

never related to any criminal investigation and at no time was there ever been probable cause to

place Plaintiff under any electronic surveillance. First Am. Compl. at ¶52-53. Instead, it was

Plaintiff's objection to discriminatory practices at Duke Law that prompted the illegal

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 6

surveillance that not only allowed the Duke Defendants, the Georgetown Defendants and the

Microsoft Defendants to obtain information to discriminate against Plaintiff, but also allowed for

private information, including medical information about Plaintiff, to be disseminated to many

people. First Am. Compl. at ¶¶ 60, 68-69, 71-72. Although Plaintiff graduated from law school

in late May of 2000, the illegal electronic surveillance that she was placed under has continued

ever since and has followed Plaintiff no matter where she has lived or where she has went, for

more than five (5) years. First Am. Compl. at ¶¶ 32, 38-40, 43-46, 49.

Nevertheless, the Duke Defendants were also so afraid that Plaintiff would sue them for

discrimination that they not only illegally placed Plaintiff under electronic surveillance, but also

placed one black female student on one of the school's most prestigious journal's, right after

Plaintiff transferred from the school, for the first time in the history of the school. First Am.

Compl. at ¶ 110. Still, the Duke Defendants were so afraid that Plaintiff would sue them for

discrimination that they actually contacted and conspired with persons at Georgetown Law to

adversely affect Plaintiff professionally, personally and academically. First Am. Comp. at ¶¶ 39,

59-60, 75, 170, 172-73, 175-79, 186-91.

More specifically, persons at Duke Law conspired with persons at Georgetown Law to

adversely affect Plaintiff's overall educational experience at Georgetown Law, including

lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely

affecting Plaintiff's classroom experience, journal experience and job prospects. First Am.

Compl. at ¶¶ 147-48, 175-79, 186-91. Indeed, this conspiracy that existed between persons at

Georgetown Law and Duke Law, and other defendants named herein, was essentially done to

undermine any claim of discrimination that Plaintiff could make against the Duke Defendants,

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 7

which was always based on Plaintiff's race, ethnicity and gender. First Am. Compl. at ¶¶ 49,

142-43, 147, 178, 186-91.

      In fact, at the end of Plaintiff's second year of law school at Georgetown Law, Plaintiff

had submitted a draft of an article that she had worked on, which involved equal protection

gender jurisprudence, to the *Georgetown Gender Journal*, because Plaintiff had always been

interested in issues related to gender. First Am. Compl. at ¶ 188. Although Plaintiff was a third

year law student at Georgetown Law at the time the draft was being edited, the draft was

radically changed to include issues on sexuality, and no one ever advised Plaintiff about any of

the changes that were made to the draft. First Am. Compl. at ¶¶ 189-90. In fact, even though

Plaintiff had contributed little to the article that was ultimately printed, and she had no

knowledge of the sexuality issues included in the article, Plaintiff's name nevertheless appeared

on the article as though she wrote it. First Am. Compl. at ¶ 191. Plaintiff did not even learn

about the changes that had been done to the article until she saw copy of the article, for the first

time, in December of 2001, which was about a year and a half after she had graduated from law

school. First Am. Compl. at ¶¶ 32, 191. Still, it should also be noted that during Plaintiff's third

year of law school at Georgetown Law, Plaintiff even had a professor announce, in a civil rights

class that she was taking, that for the first time in all the years that he had been teaching the

class, he was going to include a day on homosexual civil rights issues. First Am. Compl. at ¶

192.

      Nevertheless, even though Plaintiff graduated from law school in May of 2000, the Duke

Defendants and Georgetown Defendants still continued to interfere with Plaintiff personally and

professionally. First Am. Compl. at ¶¶ 230-31, 287, 291-92. Indeed, the Duke Defendants,

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 8

Georgetown Defendants, and Government Defendants, have all continued to conspire to keep

Plaintiff under illegal electronic surveillance because they not only want to discriminate against

Plaintiff professionally, which is why the illegal surveillance has existed where Plaintiff has

worked, but also because they also wish to interfere with Plaintiff personally, as they fear that if

Plaintiff is not kept under illegal electronic surveillance Plaintiff could have a relationship with a

man who is both white and wealthy. First Am. Compl. at ¶¶ 46, 57, 64-65, 292.

The Microsoft Defendants did not join the conspiracy to discriminate against Plaintiff

until Plaintiff's third year of law school. First Am. Compl. at ¶ 40. The Microsoft Defendants

intercepted the illegal electronic surveillance that Plaintiff was being subjected to, and repeatedly

used information they learned from the illegal electronic surveillance to exploit Plaintiff, benefit

themselves financially, and also to harass Plaintiff by putting various things on the company's

MSN website and connecting those things to Plaintiff.[5] First Am. Compl. at ¶¶ 214-20, 223-32,

268-77.

---

[5] While Georgetown University, in an attempt to misconstrue the allegations in Plaintiff's
Complaint, has attempted to claim that Plaintiff has alleged that she "purportedly invented the
MSN website" with ideas that "were written at her desk at work and obtained through illegal
electronic surveillance" Georgetown Mot. to Dismiss at 4, this is simply untrue. Plaintiff has
never claimed that she invented the MSN website or any other website. Rather, Plaintiff has
simply stated that while the MSN website is as popular as it is today, which necessarily means it
was already in existence, just not as popular as it is now, because of ideas that came from
Plaintiff during the Fall of 1999 and Spring of 2000, the Microsoft Defendants have used the
MSN website to harass her. First Am. Compl. at ¶ 216. In addition, it should also be noted that
it is clear that these ideas, which came from Plaintiff in the Fall of 1999 and Spring of 2000,
could not be related to any idea which was taken when Plaintiff was working at what is now the
Superior Court of the Virgin Islands, because Plaintiff did not begin working at the Superior
Court until October of 2000. First Am. Compl. at ¶ 64. In fact, the idea that Plaintiff has alleged
was taken while she was at work at the Superior Court, which is the changing of the name of
Web TV to MSN TV, First Am. Compl. at ¶¶ 274-76, does not even have anything to do with
ideas that are related to the MSN website.

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 9

## PROCEDURAL HISTORY

On May 8, 2003, Plaintiff commenced the instant action for damages, discrimination, injunctive and declaratory relief, alleging causes of action arising under the First, Fourth, Fifth, Eight, and Thirteenth Amendments to the United States Constitution, 18 U.S.C. §§ 2510-2522, 20 U.S.C. §§ 1681-1688, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and 42 U.S.C. §§ 2000d-2000d-7. First Am. Compl. at ¶¶ 303-27. Plaintiff also sought relief for state and territorial causes of action, including fraud, civil conspiracy, intentional infliction of emotional distress, invasion of privacy, interference with prospective advantage, and theft of intellectual property. First Am. Compl. at ¶¶ 294-302, 328-42. Plaintiff also requested punitive damages because the outrageous acts these Defendants have committed have been so illegal and have been done with such callous disregard for Plaintiff's rights. First Am. Compl. at ¶¶ 343-44. The Complaint was amended on June 5, 2003 to include the Microsoft Defendants (including Defendant Melinda Gates), and Defendant John Ashcroft, who has since been substituted by Alberto Gonzales. *See* First Am. Compl.; V.I. Docket at 156.

After being served with Plaintiff's Complaint, the first thing Duke University did was to file a Motion for Enlargement of Time and for Initial Status Conference wherein they moved the Court to consider employing Rule 17(c) procedures in this case based on the discriminatory acts Plaintiff alleged that they had committed against her. V.I. Docket at 55. Thereafter, the Duke Defendants further submitted a report by Dr. Rita Dudley-Grant, a psychologist, wherein Dr. Dudley-Grant, based on her opinion of the allegations in Plaintiff's Complaint, concluded that Plaintiff might be experiencing paranoid schizophrenia or a delusional disorder. The other

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 10

defendants in this case, which includes Georgetown University, all joined in this motion. *See*

V.I. Docket at 53, 58.

Even though, from the outset, Plaintiff argued that the defendants in this case had

misconstrued the law, and that Plaintiff's competency would have to be determined based on

whether or not Plaintiff was able to protect her own interests, and whether she was able to

understand the meaning and effect of the proceedings in this case, Magistrate Judge Jeffrey

Resnick rejected Plaintiff's arguments. Instead, based on arguments by the defendants and the

conclusions submitted by Dr. Dudley-Grant, Magistrate Judge Resnick ordered Plaintiff to be

examined by Dr. Olaf Hendricks to determine her competency to prosecute the matter and

whether the text of her complaint demonstrated "delusional pyschosis, paranoid schizophrenia,

or any other mental illness of abnormality." V.I. Docket at 60. Dr. Hendricks then submitted a

report, which concluded, based on his personal opinion of the allegations in Plaintiff's

Complaint, that Plaintiff was suffering from a delusional disorder and was therefore incapable of

prosecuting this matter. Plaintiff then retained her own expert, Dr. Steven Handwerker, who

opined that Plaintiff's mental health was good and stable despite the sorts of stress that the

defendants in this case had subjected her to.[6] V.I. Docket at 72, Ex. 1.

---

[6] Plaintiff's expert, Dr. Steven Handwerker, was a licensed psychologist from the state of Florida,
who was also licensed in New York and South Dakota. *See* Curriculum Vitae of Dr. Steven
Handwerker, V.I. Docket at 72, Ex. 2. He obtained his doctorate in psychology from New York
University, and his post doctoral certification in clinical psychology from Hofstra University.
*See id.* He served as the Director of Psychological Services at the Holistic Health Center (now
called the New Center for Holistic Education and Research) in Manhasset, New York, from
1978-1988, before starting his private clinical practice. *See id.* He has authored a number of
publications, and has given many presentations. *See id.* He was a board certified expert in
traumatic stress, and was also board certified in forensic medicine and as a forensic examiner.
*See id.*

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 11

Thereafter, despite Plaintiff's continued arguments that the defendants had misconstrued

the law, and Plaintiff's own expert report which stated that her mental health was good and

stable, Magistrate Judge Resnick, relying on Dr. Hendricks and Dr. Dudley-Grant's reports,

decided to go ahead and appoint a guardian *ad litem* to represent Plaintiff in this case. The

District Court Judge Thomas Moore affirmed his decision. Docket at 129. Plaintiff then

appealed both of these erroneous decisions to the Court of Appeals for the Third Circuit, and the

Third Circuit **vacated** the District Court's Order. *See Richards v. Duke University*, No. 05-1170,

2006 WL 162652 at 3 (3d Cir. Jan. 23, 2006). In vacating the District Court's Order, the Third

Circuit held that the District Court had abused its discretion because it failed to apply the correct

standard to determine whether a guardian *ad litem* could be appointed, which is whether a person

is capable of taking care of themselves, or, put another way, whether a person is capable of

protecting their own interests, and understanding the meaning and effect of the legal proceedings

they have instituted.[7] *See id.* In addition, in vacating the District Court's Order, the Third

Circuit also rejected the conclusions that Dr. Hendricks had reached, which had resulted from

Magistrate Judge Resnick's misapplication of the law, and instead concluded, after reviewing

information in the record, that Plaintiff was competent to proceed *pro se*. *See id.* The Third

Circuit then remanded this matter to the District Court.

---

[7] The Third Circuit did also hold that the District Court had abused its discretion because it failed to make any factual findings to support its decision to appoint a guardian *ad litem*. *See Richards*, 2006 WL 162652 at 3 (stating "[w]e conclude that the District Court abused its discretion in appointing a guardian ad litem because it did not apply the correct legal standard or make any factual findings to support such a decision"). Indeed, the Third Circuit, in rendering its decision, noted that the Magistrate Judge, in appointing a guardian *ad litem*, had failed to make any explicit factual findings to support his decision, and the District Court, in affirming the Magistrate's decision, simply stated, without further explanation, that he was doing so because of the reasons given by the defendants in their oppositions. *Id.*

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 12

On remand, the defendants were given until May 8, 2006 to answer or otherwise respond to Plaintiff's Complaint.  V.I. Docket at 182.  Although Georgetown University, like the other defendants in this case, invoked the subject-matter jurisdiction of the court to attempt to have Plaintiff declared incompetent, so a guardian *ad litem* could be appointed to represent her, it has nevertheless now moved to dismiss this action, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, or in the alternative, pursuant to what it has called "the Court's inherent authority under Rule 12(b)(6)".  Georgetown Univ.'s Mem. of Law at 2.  Plaintiff now opposes this motion.

## STANDARD OF REVIEW

### 1.  RULE 12(B)(1) STANDARD

"On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." *Hilska v. Jones*, 297 F. Supp. 2d 82, 86 (D.D.C. 2003).  However, "[t]he court may dismiss a complaint for lack of subject-matter jurisdiction only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief'." *Id.* (citing *Empagram S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"Because subject-matter jurisdiction focuses on the court's power to hear the claim, . . . the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim." *Hilska*, 297 F. Supp. 2d at 87 (citing *Macharia v. United States*, 334 F.3d 61, 64, 60 (D.C. Cir. 2003) and *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C.

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 13

2001). However, the court is not limited to the allegations in the complaint, and instead, may consider matters outside the pleadings, to determine whether it has subject-matter jurisdiction over the claim. *Hilksa*, 297 F. Supp. 2d at 87 (citing *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986) *vacated on other grounds*, 482 U.S. 64 (1987) and *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## 2. RULE 12(B)(6) STANDARD

"On a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts." *Hopkins v. Women's Division General Board of Global Ministries*, 238 F. Supp. 2d 174, 177 (D.D.C. 2002) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1975)) (citation omitted). "However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint." *Hopkins*, 238 F. Supp. at 178. "In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is able to only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Id.* "The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief'." *Id.*

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 14

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE NOT PATENTLY INSUBSTANTIAL

"Federal courts have subject-matter jurisdiction over a claim arising under federal law regardless of the plausibility of the plaintiff's allegations." *Hilksa*, 297 F. Supp. 2d at 87 (citing *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 623 (D.C. Cir. 1997) and *Smith v. Horner*, 846 F.2d 1521, 1523 (D.C. Cir. 1988)).   However, a court may, in its discretion, dismiss a claim that is patently insubstantial for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Hilksa*, 297 F. Supp. 2d at 87; *Hagans v. Lavine*, 415 U.S. 528, 536 (1974) (stating that "federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit'"); *Bell v. Hood*, 327 U.S. 678, 682-83 (1946) (noting that a federal claim may be dismissed for lack of subject matter jurisdiction where it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous").

Courts have defined patently insubstantial claims to be those that are based on factual allegations which involve fantastic scenarios that rise to the level of being irrational or wholly incredible. *Hilksa*, 297 F. Supp. 2d at 88; *Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994) (describing, as frivolous, a complaint where the plaintiff alleged that "a Secret Branch of the Federal Government" had taken his face off of his head and then went into his skull to place a computer chip and camera system which made him project images many feet in front of him); *Bestor v. Lieberman*, No. Civ. A. 03-1470(RWR), 2005 WL 681460 (D.D.C. Mar. 11, 2005) (dismissing, as frivolous, a complaint where the plaintiff alleged that "a system of

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 15

neuroprosthetics was implanted in his skull and brain" which allegedly allowed "human

operators" the ability to "induce image and audio sequences in [the] plaintiff's brain").

However, "[n]ot qualifying as frivolous are claims that are implausible, namely those that are

doubtful or of questionable merit." *Hilksa*, 297 F. Supp. 2d at 87-89 (citing *Goosby v. Osser*,

409 U.S. 512, 518 (1973) and *Best*, 39 F.3d at 330-31).

Of course, even though claims may not be considered patently insubstantial pursuant to

Rule 12(b)(1), they may nevertheless warrant dismissal pursuant to Rule 12(b)(6) for failure to

state a claim upon which relief may be granted. *Id.* at 88. As the Supreme Court explained in

*Bell v. Hood*,

> Jurisdiction. . . is not defeated . . . by the possibility that the averments might fail
> to state a cause of action. . . For it is well settled that the failure to state a proper
> cause of action calls for a judgment on the merits and not for a dismissal for want
> of jurisdiction. Whether the complaint states a cause of action on which relief
> could be granted is a question of law and just as issues of fact it must be decided
> after and not before the court has assumed jurisdiction over the controversy. If
> the court does later exercise its jurisdiction to determine that the allegations in the
> complaint do not state a ground for relief, then dismissal of the case would be on
> the merits, not for want of jurisdiction.

372 U.S. at 682, *quoted in Hilksa*, 297 F. Supp. 2d at 88.

In the case *sub judice,* Plaintiff has alleged that she was discriminated against while she

was a first year law student at Duke Law. First Am. Compl. at ¶¶ 35-38, 105-46. Plaintiff has

further alleged that although Plaintiff transferred to Georgetown Law, the Duke Defendants

nevertheless contacted and conspired with persons at Georgetown Law to continue to

discriminate against Plaintiff to adversely affect her professionally, personally and academically.

First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91. More specifically, Plaintiff

has alleged that persons at Duke Law conspired with persons at Georgetown Law to adversely

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 16

affect Plaintiff's overall educational experience at Georgetown Law, including lowering and

adversely affecting Plaintiff's grades in a number of courses, as well as adversely affecting

Plaintiff's classroom experience, journal experience and job prospects. First Am. Comp. at ¶¶

147-48, 175-79, 186-91. Plaintiff has alleged that the discriminatory acts that Plaintiff was

subjected to was because of her race, ethnicity and gender. First Am. Compl. at ¶ 293.

　　　None of these allegations are attenuated, implausible or patently insubstantial as Courts

routinely exercise subject matter jurisdiction over these sorts of claims and further reach the

merits of disputes that involve these sorts of claims, as the claims simply involve discrimination

that is alleged to have been committed by educational institutions. *See e.g., Phillip v. University

of Rochester*, 316 F.3d 291 (2d Cir. 2003); *Williams v. Lindenwood University*, 288 F.3d 349

(8th Cir. 2002); *Tripp v. Long Island University*, 48 F. Supp. 2d 220 (E.D.N.Y. 1999). In fact, it

should be noted that when a complaint raises claims under the Civil Rights Statutes, as is the

case here, the more judicious approach is for a court to assume jurisdiction and then decide

whether the complaint states a claim for which relief can be granted. *Stambler v. Dillon*, 302 F.

Supp. 1250, 1252 (S.D.N.Y. 1969).

　　　Further, Plaintiff has alleged claims that are related to the use of illegal electronic

surveillance because one of the ways that the defendants facilitated the discrimination that

Plaintiff has been subjected to, both while she was in law school and after she left, was with the

use of illegal electronic surveillance. First Am. Compl. at ¶¶ 38-42, 46, 292. However, there is

nothing attenuated, implausible or patently insubstantial about these claims, as this court has

already found allegations related to the extensive use of illegal electronic surveillance to be

justiciable. In *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144 (D.D.C. 1976), the

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 17

plaintiffs, which included the Berlin Democratic Club, which among other activities, had

supported the impeachment proceedings against President Nixon in 1973, brought an action

against a number of Department of Defense Army officials and uniformed personnel. The

plaintiffs alleged, among other things, that they had been subjected to numerous acts of

warrantless electronic surveillance, and that the defendants had maintained "dissidence

identification" files and "blacklists" about them which had been disseminated to military and

civilian agencies and private citizens. *Id.* at 147. The plaintiffs alleged that the defendants had

wiretapped their telephones, disrupted their daily activities, and that the derogatory information

that had been disseminated lead to the termination or restriction of their employment

opportunities or forced them to severely restrict their activities for fear of having additional

information disseminated. *Id.* at 148. Although the Complaint was filed in 1974, the plaintiffs

alleged that the illegal surveillance had extended as far back as 1971, and had continued, in all

instances, for at least a period of months. *Id.* at 148, 161.

Ultimately, in *Berlin Democratic Club*, the court held that the action was justiciable

because "public dissemination of . . . information in a false and defamatory manner and with no

lawful purpose, disruption of legitimate activities, termination of employment, illegal electronic

surveillance, and other forms of harassment" were properly subject to challenge as being beyond

legitimate surveillance activities. *Id.* at 151; *see also Philadelphia Yearly Meeting of the*

*Religious Society of Friends v. Tate*, 519 F.2d 1335, 1338 (3d Cir. 1975) ("It is not apparent how

making information concerning the lawful activities of plaintiffs available to non-police groups

or individuals could be considered within the proper ambit of law enforcement activity,

particularly since it is alleged that plaintiffs are subject to surveillance only because their

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 18

political views deviate from the 'establishment'.  We think these allegations, at a minimum,

show immediately threatened injury to plaintiffs by way of a chilling of their rights of freedom of

speech and associational privacy.")

Furthermore, this court has already held that it had subject-matter jurisdiction where there

were allegations of extensive acts of wrongdoing by a number of people.  In *Hilksa v. Jones*, 297

F. Supp. 2d 82 (D.D.C. 2003), the plaintiff, who was a native and citizen of Finland, brought an

action against a number of federal, private and foreign defendants.  *Id.* at 84.  The federal

defendants included President George W. Bush, Attorney General John Ashcroft, Senator Hillary

Clinton, former President Bill Clinton, and Judy Thomas, a deportation officer with the

Immigration and Naturalization Service.  *Id.* at 84 n.2.  The private defendants included Pierre

Sané and Boisfeuillet Jones, Jr.  *Id.*  The foreign defendants included Substitute for Consul

Kimmo Nikkanen of Finland, Minister of Justice Heinrich Koller of Switzerland, Minster of

Justice Marylise Lebranchu of France, Attorney General Hans Regner of Sweden, former Finnish

Presidents Mauno Koivisto and Marti Ashtisaari, and the current Finnish President Tarja

Halonen.  *Id.*

In *Hilksa*, the plaintiff alleged that the defendants had wrongfully prevented him from

obtaining political asylum in the United States by committing a number of illegal acts.  *Id.* at 83.

More specifically, the plaintiff alleged that the federal defendants were responsible for a number

of offenses, which included forgery, extortion, assault, destruction of documents, torture, and

attempted murder.  *Id.* at 84.  In addition, the plaintiff alleged that Senator Hillary Clinton and

former President Bill Clinton had broken into his luggage and stolen its contents while he was at

a local airport.  *Id.* at 89.  The plaintiff further alleged that the federal defendants had instructed a

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 19

detention center to give him medication that caused him to have "a splitting headache, strong

pain in his urinary tract and intense tumefaction in [his] feet." *Id.* The plaintiff also alleged that

because of instructions that were given by the federal defendants, he was kept "'seriously injured

in [a] cold cell for killing purposes' from November 30, 1999 through July 14, 2000." *Id.*

Throughout his complaint, and other filings, the plaintiff also accused various individuals of

"tightening up his situation." *Id.*

        While the court in *Hilksa* did note that the plaintiff's allegations may be implausible, the

court nevertheless concluded that the allegations did not qualify as "frivolous" for purposes of

Rule 12(b)(1). *Id.* Indeed, the court specifically stated that the "doubtful nature of the plaintiff's

claims [would] not defeat the court's jurisdiction." *Id.* Accordingly, the court denied a motion

to dismiss for lack of subject matter jurisdiction that had been filed by the federal defendants.

        Nevertheless, Georgetown University, primarily relying on two cases, *O'Connor v.*

*United States*, 159 F.R.D. 22 (D. Md. 1994) and *Carone-Ferdinand v. Central Intelligence*

*Agency*, 131 F. Supp. 2d 232 (D.D.C. 2001), claims that Plaintiff's Complaint should be

dismissed for lack of subject matter jurisdiction. *See* Georgeotown Univ.'s Mem. of Law at 13-

18. However, both of these cases are easily distinguishable from the case at bar. In *O'Connor*,

the plaintiff did allege that he was placed under an extensive amount illegal surveillance which

would clearly be actionable under the Fourth Amendment to the Constitution and 18 U.S.C. §

2520. *See id.* at 23-24. However, the plaintiff in *O'Connor* went further, apparently alleging

that the U.S. Drug Enforcement Administration ("DEA") had enlisted the help of a large number

of civilians to speak to him in buzz words like "no way", "can't win", and "I'll show you", and

that the civilians further displayed props. *Id.* at 24. Indeed, the plaintiff alleged that "he rarely

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 20

goes into a store or restaurant, walks for a few blocks, or gets on the subway 'without being imposed upon by the presence of several civilian volunteers chattering away with DEA-prepared dialogue." *Id.* According to the plaintiff in *O'Connor*, a license plate with the letters "TNT" meant he was "playing with dynamite". *Id.* The Plaintiff also alleged that the DEA had contacted stores and restaurants, "which then play music over the PA systems in an effort to control the environment around him and convince him that resistance is hopeless." *Id.*

In *O'Connor*, the court, relying primarily on the allegations regarding the use of the DEA-prepared dialogue, the props, like a license plate with the letters "TNT", and the playing of music in a stores, i.e. ordinary conversations and encounters, led her to conclude that the plaintiff's claims were divorced from the real world and therefore frivolous for purposes of Rule 12(b)(1)..
*Id.* at 25. Needless to say, in the case *sub judice*, Plaintiff certainly has not alleged that Georgetown University has conspired with civilians to speak to her with props and buzz words, and she certainly has not alleged that license plates, regardless of the letters, or for that matter, the playing of music in stores and restaurants, are really part of some government sponsored plot to harass her. Indeed, contrary to Georgetown University's embellished assertions, Plaintiff has not alleged that she has received terrorizing messages "at every corner [she] turns" or that "other people have reacted to these harassing MSN 'headlines,' causing her to be publicly accosted in shopping centers". Georgetown Univ.'s Mot. to Dismiss at 16. Rather, Plaintiff has alleged that on one occasion, in April of 2003, she was accosted by a man in a local Kmart Store, on St. Croix, in connection with a headline that appeared on the MSN website. First Am. Compl. at ¶ 233. Indeed, within two months of this incident, Plaintiff had already filed suit against the Microsoft Defendants.

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 21

In *Carone-Ferdinand*, the plaintiffs claimed that the defendants had stolen insurance

policies, bank accounts, and other property that had belonged to Mr. Albert Carone, because of

Mr. Carone's participation in government sanctioned illegal activity that had spanned some sixty

(60) years. *See Carone-Ferdinand*, 131 F. Supp. 2d at 233. According to the plaintiffs, Mr.

Carone had the dual status of a "made" member of the Genovese Crime family, and a New York

Police Department detective, when he was recruited by the Central Intelligence Agency ("CIA").

*Id.* The plaintiffs claimed that on direct orders from the CIA, Mr. Carone imported cocaine into

the United States for over 40-odd years, with the profits going to "CIA-sanctioned, covert, anti-

communist activities." *Id.* The plaintiffs further claimed that Mr. Carone's duties with the CIA

did not just include drug trafficking, but also orders to assassinate President John F. Kennedy, as

well as orders to destroy "an entire village of men, women, and children." *Id.* The court

dismissed the complaint for lack of subject matter jurisdiction as it concluded that the allegations

were essentially fictitious. *Id.* at 235.

Needless, to say, Plaintiff has not alleged that she was recruited by the CIA to traffick

drugs, or to assassinate individuals and wipe out villages of men, women and children, such that

the defendants would want to steal property that belonged to her. Instead, Plaintiff has filed her

Complaint because of outrageous acts of discrimination that she has been subjected to for a more

than five year period of time, which began while she was in law school, and which has

continued, with the use of illegal electronic surveillance, since she graduated from law school.

In addition, while the illegal electronic surveillance that Plaintiff has been subjected to has been

configured in a way that allows many people to illegally intercept private information about

Plaintiff, First Am. Compl. at ¶¶ 47, 69, Plaintiff has only sued the defendants that are named

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 22

herein because they are the ones that have been responsible for placing and keeping her under

illegal electronic surveillance. First Am. Compl. at ¶¶ 38-46.

Nevertheless, Georgetown University in further support of its motion to dismiss, has also

submitted the reports of Dr. Dudley-Grant and Dr. Hendricks, with each of their curriculum

vitae, and a listing of cases in which Dr. Hendricks has previously testified. *See* Georgetown

Univ's Mem. of Law. However, none of this information constitutes evidence that should be

considered by this Court. Neither Dr. Dudley-Grant nor Dr. Hendricks has any personal

knowledge of the allegations in Plaintiff's Complaint. Instead, Dr. Dudley-Grant and Dr.

Hendricks have prepared their reports based on their personal opinions of the allegations in

Plaintiff's Complaint, and Georgetown University is now attempting to proffer these reports as

legal conclusions in the guise of purported medical opinion. This is not permissible. *See*

*Washington Metro. Transit Auth.*, 78 F.3d 682, 684 n.4 (D.C. Cir. 1996).

In fact, it should be noted that these reports would not even be admissible in a trial in this

matter, and should not be admissible at any other stage of these proceedings. Indeed, the reports,

which contain conclusions that have already been rejected by the Third Circuit, are not reliable,

and they are not even relevant, as they are really an attempt to impugn Plaintiff's credibility and

further usurp the role of the jury. *See Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 881-84

(8th Cir. 1998). In fact, Plaintiff has, herewith, filed a motion to strike the exhibits from

Georgetown University's motion, and to further strike the text of all of the defendants motions to

dismiss which in anyway reference or rely on these exhibits.

It should be noted that the most outrageous thing about Georgetown University's motion,

is that Georgetown University is an educational institution, that receives federal money, and that

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 23

has an obligation to treat students in a manner that is consistent with the law, yet Georgetown

University has actually come into this Court and chosen to focus on allegations that involve Bill

Gates[8] and the rest of the Microsoft Defendants, to deflect attention away from the

discriminatory acts that it is alleged to have committed. In fact, along these lines, Plaintiff

submits to this Court that Georgetown University, like other defendants in this case, is in

possession of a great deal of discoverable information regarding Plaintiff's Complaint, and to the

extent this Court should determine that it is in need of additional information to determine

whether it has subject matter jurisdiction, Plaintiff requests that she be granted the opportunity to

obtain discovery on this issue. *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 198

(D.C. Cir. 1992) (stating that "ruling on a Rule 12(b)(1) motion may be improper before the

plaintiff has had a chance to discover the facts necessary to establish jurisdiction" and that while

a "trial court may rule on disputed jurisdictional facts at any time, it they are inextricably

intertwined with the merits of the case, it should usually defer its jurisdictional decision until the

merits are heard.").

       The simple fact of the matter is that no one is above the law, and that includes the

Georgetown University. Where, as here, Plaintiff's rights have been continuously violated by

the defendants in this case, she is entitled to recover relief in a court of law. *See Marbury v.*

*Madison*, 1 Cranch 137, 163 (1803) (stating "[i]f [a person] has a right, and that right has been

violated, do the laws of this country afford [that person] a remedy", as "[t]he very essence of

civil liberty certainly consists in the right of every individual to claim the protection of the laws,

---

[8] Georgetown University has even dubbed Bill Gates a "central focal point" of the Complaint, *see*
Georgetown University's Mem. of Law at 15, even though much of the Complaint involves
discrimination by the Duke Defendants, the Georgetown Defendants, and the Government
Defendants. *See* First Am. Compl.

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 24

whenever he receives an injury."). Accordingly, for all of the reasons stated herein, Georgetown

University's motion to dismiss this case pursuant to Rule 12(b)(1) must be denied.

**II.      THERE IS NO BASIS TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT
TO RULE 12(b)(6) OR THIS COURT'S INHERENT AUTHORITY**

Georgetown University has moved, in the alternative, to have this Court dismiss this

action pursuant to what it has called "the Court's inherent authority under Fed. R. Civ. P.

12(b)(6)". *See* Georgetown University's Mem. of Law at 17. However, the cases that it has

cited do not support the relief that Georgetown University is requesting. *See Tate v. Burke*, 131

F.R.D. 363 (D.D.C. 1990) (invoking court's inherent authority to dismiss, *sua sponte*, a

complaint as being without any factual and legal basis where the plaintiff alleged that the

president of CBS had televised her in her home on a candid camera for over ten years, and that

she had become aware of these acts because "God [had] slipped all this information into [her]

mind"); *Brown v. District of Unemployment Comp. Bd.*, 411 F. Supp. 1001 (D.D.C. 1975)

(denying motion to reconsider dismissal of complaint as the district court had the inherent

authority to dismiss case *sua sponte*); *Robinson v. Love*, 155 F.R.D. 535, 536 (E.D. Pa. 1994)

(dismissing complaint pursuant to 28 U.S.C. § 1915 as frivolous).

Indeed, none of the cases cited by Georgetown University involves a dismissal that was

done pursuant to Rule 12(b)(6). Further, Georgetown University has not attempted to in any way

show that Plaintiff has failed to state a claim upon which relief may be granted, such that it

would be entitled to a dismissal pursuant to Rule 12(b)(6). As such, to the extent that

Georgetown University has moved this Court to dismiss Plaintiff's complaint pursuant to Rule

12(b)(6) it must be denied.

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 25

In addition, to the extent Georgetown University is asking this Court to invoke its inherent authority to dismiss Plaintiff's Complaint, as the Court did in *Tate* and *Brown*, this request must be denied as well. "[T]he inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments." *Shepherd v. American Broadcasting Companies*, 62 F.3d 1469, 1473 (D.C. Cir. 1995). However, "because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Id.* at 1475. Indeed, the Supreme Court has "cautioned restraint in the use of inherent powers '[b]ecause of their very potency'." *Id.*

Here, there is no basis for this Court to invoke its inherent authority to dismiss Plaintiff's Complaint. Indeed, Plaintiff's Complaint has both a factual and legal basis, and Georgetown University has not demonstrated otherwise. In fact, while Georgetown University has submitted the reports of Dr. Dudley-Grant and Dr. Hendricks in a malicious attempt to malign Plaintiff, these reports can not properly be considered by this Court, and as such, the reports do not in anyway undermine the allegations in Plaintiff's Complaint. Further, Plaintiff has certainly not filed her Complaint for any improper purpose, such as harassing the defendants, and Georgetown University has not and can not demonstrate otherwise. As such, it is clear that Georgetown University's request to have this Court invoke its inherent authority to dismiss this case must be denied.

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 26

## CONCLUSION

Accordingly, for all the foregoing reasons, Defendant Georgetown University's Motion

to Dismiss should be denied in its entirety.

Respectfully submitted,
ATTORNEY FOR PLAINTIFF,

DATED: July 26, 2006

Suzette Richards, Esquire, *Pro Se*
P.O. Box 223875
Christiansted, St. Croix  00822-3875
Telephone: (340) 277-4808
Fax: (340) 772-5785

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Memorandum of Law in Support of Plaintiff's Opposition to Defendant Georgetown University's Motion to Dismiss
Pursuant to Rule 12(b)(1) and Rule 12(b)(6)
Page 27

## CERTIFICATE OF SERVICE

I hereby certify that on this 21ᵗʰ day of July, 2006, a true and exact copy of the foregoing document was caused to be served via the United States Postal Service, first class postage prepaid, upon:

Simone R. D. Francis, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802

Richard Hunter, Esq.
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820

Michael J. Murphy, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, N.W., Fifth Floor
Washington, D.C. 20037

Elizabeth O'Brien, Esq.
Williams & Connolly LLP
725 Twelfth Street
Washington, D.C.  20002

Henry Feuerzeig, Esq.
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804

Benton G. Peterson, Esq.
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W., Room E4905
Washington, D.C. 20530

Charles E. Buffon, Esq.
Harry B. Roback, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SUZETTE RICHARDS, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL NO. 06-01179 (RCL) |
| | ) | |
| | ) | |
| v. | ) | ACTION FOR DAMAGES, |
| | ) | DISCRIMINATION, AND |
| DUKE UNIVERSITY, DUKE UNIVERSITY | ) | DECLARATORY AND |
| SCHOOL OF LAW, DUKE UNIVERSITY | ) | INJUNCTIVE RELIEF |
| BOARD OF TRUSTEES, NANNERL | ) | |
| KEOHANE, in her personal and official | ) | |
| Capacity as President of Duke University, | ) | |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY LAW CENTER, | ) | |
| ALBERTO GONZALES, in his official capacity | ) | |
| as Attorney General of the United States, | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | **JURY TRIAL DEMANDED** |
| JOHN AND JANE DOES 1-10, | ) | |
| WILLIAM H. GATES, III, in his personal and | ) | |
| official capacity as Chairman of Microsoft | ) | |
| Corporation, STEVE BALLMER, in his personal | ) | |
| and official capacity as Chief Executive Officer | ) | |
| of Microsoft Corporation, MICROSOFT | ) | |
| CORPORATION, MICROSOFT EMPLOYEES | ) | |
| A-J, and MELINDA GATES, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## ORDER

This matter, having come before the Court on Defendant Georgetown University's

Motion to Dismiss, and the Court having been advised in its premises, it is hereby

**ORDERED** that the motion is **DENIED**.

**SO ORDERED.**

*Suzette Richards v. Duke University, et al.*
Civil no. 06-01179 (RCL)
Order on Defendant Georgetown University's Motion to Dimiss
Page 2

DATED: _____

_____
Royce C. Lamberth
United States District Judge for the
District of Columbia