**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

SUZETTE RICHARDS,              )
                                      )
              Plaintiff,      )
                                      )
      v.                       )      Civil No.  06-1179 (RCL)
                                        )
DUKE UNIVERSITY, et al.      )
                                      )
                                      )
              Defendants.   )
_____)

**REPLY IN SUPPORT OF THE MICROSOFT DEFENDANTS'
RULE 12(b)(1) and 12(b)(6) MOTION TO DISMISS**

      Defendants, **MICROSOFT CORPORATION** ("Microsoft"), **WILLIAM H. GATES, III** ("Bill Gates") and **STEVEN A. BALLMER** ("Ballmer"), to the extent they are sued in their official capacity, and **MELINDA FRENCH GATES**, in her personal capacity, (collectively the "Microsoft Defendants"), through their undersigned attorneys, respectfully submit this Reply to Plaintiff's Opposition to the Microsoft Defendants' Motion to Dismiss ("Plaintiff's Opposition").

      In her opposition, Plaintiff has failed to establish that the Microsoft Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction should not be granted because the claims in her First Amended Complaint ("Complaint") are patently insubstantial. Plaintiff also has failed to establish that Counts 4-8, 12 and 13 should not be dismissed for failure to state a claim upon which relief may be granted.[1]

---

[1] The Microsoft Defendants on May 8, 2006, before this case was transferred to this Court, filed a notice of service of its 12(b)(1) and 12(b)(6) Motion to Dismiss, (V.I. Docket 199), and on June 5, 2006, filed its motion and memorandum with the District Court of the Virgin Islands. V.I. Docket 219, 220. After the case was transferred, the Plaintiff on July 7, 2006, filed her opposition (Docket 3), which was based on District of Columbia statutes and case law. The Microsoft Defendants on July 12, 2006, filed an unopposed motion for an extension of time until August 4, 2006, to file their reply. That motion is pending.

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 2 –

I.   **PLAINTIFF'S CLAIMS ARE PATENTLY INSUBSTANTIAL.**[2]

Federal courts are courts of limited jurisdiction and, "[i]n the Rule 12(b)(1) context, the

plaintiff bears the burden of proving jurisdiction." *Rasul v. Bush*, 215 F.Supp.2d 55, 61 (D.D.C.

2002). "[T]o determine whether it has jurisdiction over the case, the court may consider

materials outside the pleadings. . . . [Accordingly,] the court is not limited to the allegations

contained in the complaint." *Id.*

"The Rule 12(b)(1) 'substantiality' doctrine is, as a general matter, reserved for

complaints resting on truly fanciful *factual* allegations." *Best v. Kelly*, 39 F.3d 328, 331 n.5

(D.C. Cir. 1994). "[A] finding of factual frivolousness is appropriate when the facts alleged rise

to the level of the irrational or the wholly incredible, whether or not there are judicially

noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Plaintiff Suzette Richards ("Richards"), an attorney appearing *pro se*, has the burden to expressly

plead affirmative allegations to establish that this Court has subject matter jurisdiction. *See, e.g.*,

*Thomson v. Gaiskill*, 315 U.S. 442 (1942).[3] Here, Richards has not done so because the fantastic

allegations contained in her Complaint are so "attenuated and unsubstantial as to be absolutely

devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536 (1974) (citations omitted).

A.   **This Court and others routinely have dismissed similar cases for lack of subject matter jurisdiction.**

Like the complaint dismissed in *Carone-Ferdinand v. Central Intelligence Agency*, 131

---

[2]  In addition to the arguments set forth below, the Microsoft Defendants incorporate by reference Georgetown University's Argument I at pages 11-16 of its Motion to Dismiss, pursuant to Rule 12(b)(1).
[3]  Although Richards is a *pro se* plaintiff, she also is a licensed attorney. Therefore, Richards must be held to the more stringent standard for "formal pleadings drafted by lawyers" rather than the less stringent standard for non-attorney *pro se* litigants. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 3 –

F.Supp.2d 232, 235 (D.D.C. 2001), Richards' Complaint "appears to be the very type of 'bizarre

conspiracy theory' that the D.C. Circuit has said warrants dismissal under Rule 12(b)(1)." *Id.*

In *Carone-Ferdinand*, the plaintiffs on behalf of the estate of a purported former Central

Intelligence Agency ("CIA") employee sued the agency and individual government officials

alleging that in the wake of the former agent's death, the defendants stole property belonging to

the estate in order to cover up the agent's role in illegal CIA operations. *Id.* 232.  In reviewing

the allegations, the court stated that "the plaintiffs would have this court believe that Mr. Carone

has played the role of Forrest Gump, popping up as a key player in virtually every prominent

government conspiracy theory promulgated over the past 50 years." *Id.* 236.

Richards' allegations of a wide-ranging conspiracy are also similar to the extraordinary

allegations made in *O'Connor v. United States*, 159 F.R.D. 22, 23 (D. Md. 1994).  In *O'Connor*,

an attorney acting *pro se*, filed a 42-page complaint alleging that he had been subjected to

intensive surveillance by the Drug Enforcement Agency ("DEA") for a period of several years.

*Id.* 22-24.  Among other things, O'Connor alleged:

> . . . that the computer on which his pleading was typed is electrically monitored by
> DEA, his telephone is tapped, and his home, including every bedroom and
> bathroom, wired and under video surveillance. Plaintiff's cars have allegedly been wired
> for surveillance and for tracking purposes. His law office is said to have been under
> electronic surveillance and his office phone and computer were similarly monitored. . . .
> In addition to surveillance of his home, office, and vehicles, Plaintiff alleges that he has
> been the subject of surveillance at his parents' home in Pennsylvania, his mother-in-law's
> home in Pennsylvania, his mother's home in Florida, and his sister's home in
> Massachusetts. . . . He has even, he avers, been subjected to electronic surveillance while
> in the District of Columbia Superior Court including while in the Lawyer's Lounge there.

*Id.* 24.

Although the court observed that the complaint was "notable for the lucidity of its prose,"

*id.* 21, it emphasized that "when a court reviews a complaint under factual attack for lack of jurisdiction, no presumption of truthfulness applies to the factual allegations." *Id.* 25. Indeed, "[a]s the finder of fact on a motion pursuant to Rule 12(b)(1), a court may take judicial notice of certain facts under Federal Rule of Evidence 201. It may, for instance, judicially notice 'the world as it is and as it is known in common experience to be,' as well as what is 'normal conduct and abnormal conduct.'" *Id.* (citations omitted). Accordingly, the court took "judicial notice of the fact that there are psychiatric conditions which cause individuals to exaggerate life situations, including ordinary conversations, slights and encounters, and interpret them in highly self-referential fashion." *Id.* The court concluded, "[h]owever lucid Plaintiff's prose may be, however cognizant Plaintiff may claim to be that his allegations only seem 'fantastic and paranoid,' his <u>complaint in fact remains totally divorced from the real world</u>, or in the language of the Supreme Court, 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Id.* 26 (emphasis added).

This case is no different. Richards in her motions and memoranda expresses herself with the lucidity of a competent lawyer; however, the allegations in her complaint are not grounded in reality. She would have this Court believe that she is the subject of a massive conspiracy replete with an advanced illegal electronic surveillance system used by the Defendants and "other persons and companies in corporate America, the media, and all over the world." Complaint ¶44. Richards also claims that the surveillance has existed to "obtain private comments Plaintiff made in her home so the comments could be used by the defendants to criticize and discriminate against Plaintiff," *id.* ¶211, and to "obtain whatever comments Plaintiff makes that are business

related for their own financial gain." *Id.* ¶213.   Richards also asserts that "[t]he illegal surveillance Plaintiff has been subjected to is a roving form of surveillance that goes wherever Plaintiff goes, which includes cars and even planes." *Id.* ¶67.

Like O'Connor, Richards alleges a number of ordinary occurrences that she has interpreted "in [a] highly self-referential fashion" as constituting discrimination. *O'Connor*, 159 F.R.D. at 25.   Most notably, Richards refers to ordinary magazines, television commercials, internet postings and social interactions as evidence of conduct targeting her personally.   For example, she infers discrimination and/or evidence to support her theory of ongoing surveillance from, *inter alia,* a cover photo on the Duke Alumni Magazine featuring "a very dark skinned child," Complaint ¶228, "an article on the MSN website regarding credit cards," *id.* ¶232, a situation where she was "publicly accosted by a man in the Kmart Store" in St. Croix, V.I., *id.* ¶233, an article in an airline magazine about Microsoft entitled "Look Who's Watching," *id.* ¶241, a "magazine article that recited a conversation between Bill and Melinda Gates" where a statement Plaintiff allegedly made in her home was attributed to Melinda Gates, *id.* ¶249-50, and Microsoft television commercials. *Id.* ¶282-84.

According to Richards, the Microsoft Defendants also "repeatedly used information they learned from the illegal electronic surveillance to exploit Plaintiff, benefit themselves financially, and also to harass Plaintiff by putting various things on the company's MSN website and connecting those things to Plaintiff. [*Id.*] ¶¶ 214-20, 223-32." Plaintiff's Opposition at 6.   At the July 24, 2003, status conference, however, plaintiff admitted that there were only two items that she claims appeared on the website that related to her.   The first item was a reference to "Aloha

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 6 –

Joy," which she believes related to her because her middle name is Joy, and the second item was

a picture of a black pregnant woman who, she said, appeared to look like the plaintiff.[4]

Plaintiff's assertion that these two items refer to her is not grounded in reality.

Similarly, in *Shoemaker v. U.S.*, 1997 WL 96543 at *1 (S.D.N.Y. 1997), Calvin L.

Shoemaker, a *pro se* plaintiff sued several federal agencies, Ted Turner, Turner Broadcasting

System, Inc., and Time Warner, Inc.  Shoemaker alleged "the existence of a conspiracy to gather

information about him through the use of electronic surveillance devices located in his home,

and that such conspiracy caused him to suffer emotional distress."  *Id.*  Specifically, in his

43-paragraph complaint, plaintiff assert[ed] various constitutional and tort

---

[4]  Richards repeated these allegations in her December 17, 2003, Reply To Microsoft Defendants Response to Plaintiff's Motion to Reconsider (Under Seal), footnote 4 (V.I. Docket No. 85), in which she stated:

> For the past four (4) years, the Microsoft Defendants have repeatedly put many things on the company's MSN website to harass Plaintiff. In fact, all of the harassment actually began with an article that was put on the website by Defendant Bill Gates on the morning of January 24, 2000. . . . Even though the articles put on the website about pregnancy and other matters did not specifically name Plaintiff, members of the public nevertheless connected the items that appeared on the MSN website to Plaintiff, and Plaintiff was denied pills for her polycystic ovarian condition because of this. At the status conference held on July 24, 2003, and at the November 14, 2003 pretrial conference, Attorney Feuerzeig asked Plaintiff about things that had appeared on the MSN website that specifically related to Plaintiff. . . . This in turn led to Plaintiff's response with respect to the words that read "Aloha Joy", and the picture of Plaintiff that appeared in conjunction with an article on morning sickness. However, it should be noted that there were countless examples of times when things appeared on the website that did not specifically name Plaintiff, but nevertheless necessarily implicated her. . . . [T]he words "Aloha Joy" were put on the MSN website by Bill Gates. A headshot that look liked Plaintiff, where she appeared to look ill, and that appeared in conjunction with an article on pregnancy, specifically morning sickness, was put on the MSN Women website by Bill Gates. There was yet another article . . . about morning sickness that necessarily implicated Plaintiff, though it did not specifically name her. This article was about a miscarriage, and it gave a description of what occurs during a miscarriage and actually stated that the father was sad at the loss of the child. Plaintiff maintains there was never any pregnancy, and therefore, never any miscarriage, despite the fact that both articles taken together, implied that these things occurred. . . . [T]he Microsoft Defendants can not deny that the words "Aloha Joy" appeared on the website, the headshot that looked like Plaintiff in connection with an article on morning sickness appeared on the website, and another article on a miscarriage, which followed the article on morning sickness, appeared on the website, along with countless other articles about pregnancy, and other items generally put there to harass Plaintiff.

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 7 –

claims against the United States, including eavesdropping into his private
residence, computer trespassing into his personal computer system, invasions
of his bodily integrity, and telephone taps. [Furthermore,] Plaintiff allege[d]
violations of the First, Fourth, Fifth, Eighth, Ninth and Fourteenth
Amendments to the United States Constitution, and interposes claims under
the Racketeer Influenced and Corrupt Organizations Act, the New York
Penal Law, the New York Public Health Law, and the New York Civil
Practice Law and Rules.

*Id.*

In reviewing the litany of bizarre allegations, *Shoemaker* concluded that the complaint
contained "only 'conclusory,' 'vague', or 'general allegations' of a **conspiracy** to deprive a
person of constitutional rights" and that such "[d]iffuse and expansive allegations are
insufficient, unless amplified by specific instances of misconduct." *Id.* *4. The court also
concluded that merely stating a "laundry list of wrongful acts" is not enough, *id.,* and held that
"the claims asserted do not provide any facts related to specific events that would substantiate
plaintiff's allegations. This defect renders the complaint 'patently insubstantial' and therefore
dismissible for 'want of subject-matter jurisdiction under . . . Rule 12(b)(1)." *Id.* *5.

Each of the Plaintiff's aforementioned allegations similarly demonstrates that she has
exaggerated ordinary situations and that, in reality, it is patently insubstantial to contend that
Microsoft engaged in any of the conduct alleged in her Complaint. This type of high-tech
conspiracy theory involving a diverse cast of high-profile defendants -- two major universities,
the FBI, the Department of Justice, Microsoft, its CEO and Bill and Melinda Gates -- should be
deemed patently insubstantial because Richards has not provided facts of specific events or any
support for her conclusion that any of these events bore any relationship to her. Instead, her
conclusory allegations state only that she is subject to roving surveillance technology that is

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 8 –

being used by the defendants to constantly capture video and/or sound from Richards at any place, including planes, cars and foreign countries. Richards does not refer to specific events. Instead, she merely presents a "laundry list" of wrongful acts. Because Richards does not have a right to proceed with these attenuated and unsubstantial claims and has not, in reality, been injured by the Microsoft Defendants, this Court should dismiss Counts 4-14 of the Complaint for lack of subject matter jurisdiction.

## II. COUNTS 4-8, 12 AND 13 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Alternatively, for the reasons stated in the Rule 12(b)(6) portion of the Microsoft Defendants' Motion to Dismiss and because the Plaintiff's Opposition has not demonstrated that she has stated valid claims, this Court should dismiss Counts 4-8, 12 and 13.

## A. Because Microsoft is not a state actor, it cannot be held liable for violations of the U.S. Constitution.

Plaintiff opposes the Microsoft Defendants' argument that Count 4 of the Complaint should be dismissed by misstating the holding of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Rather than holding that private parties may be liable if they acted under the color of law, *Bivens* held only "that an individual injured by a federal agent's alleged violation of the Fourth Amendment may bring an action for damages against the agent." *F.D.I.C. v. Meyer*, 510 U.S. 471, 484 (1994). *See also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001) ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."). Part of the *Bivens'* Court's rationale was that there should be an implied cause of action against federal officials because a direct action against the

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 9 –

Government was not available.  *Id*.

The Court has not extended *Bivens* beyond its limited holding to include actions of corporate actors or private citizens.  Indeed, in  *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988), the Court emphasized that "[o]ur more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Id*.  *See also Meyer*, 510 U.S. at 484; *Kauffman v. Anglo-American School of Sofia*,  28 F.3d 1223, 1228 (D.C. Cir. 1994) (noting the Supreme Court's "considerable reluctance to extend *Bivens* remedies beyond the sort of situation involved in *Bivens* itself"); *Briscoe v. Potter*, 355 F.Supp.2d 30, 31 (D.D.C. 2004) (noting consistent refusal to extend *Bivens* liability to any new context or category of defendant); *Kinard v. U.S. Dept. of Justice*, 2006 WL 1774366 at *4 (D.D.C. 2006) ("The scope of the *Bivens* decision is to be narrowly construed.").

In *Kauffman*, 28 F.3d at 1227, the D.C. Circuit held that *Meyer* prohibits *Bivens* claims against private corporations acting under color of federal law.  In outlining the basis for its opinion, *Kauffman* first referred to the holding in *Meyer* that "*Bivens* liability does not run against a federal agency, but only against individual federal agents." *Id*. at 1226.  Accordingly, the court concluded that because "public federal agencies are not subject to *Bivens* liability, it follows that equivalent private entities should not be liable either. . . . [I]f *Meyer* is correct about the purpose of *Bivens* remedies, then there would seem to be no affirmative reason to allow *Bivens* actions against entities of any sort, private or public." *Id.*  at 1227.

The cases cited in Plaintiff's Opposition were part of a division in "[t]he Courts of Appeals . . . on whether *Meyer* . . . forecloses the extension of *Bivens* to private entities."

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 10 –

*Malesko*, 534 U.S. at 66 n.2 (2001).  *Malesko*, specifically addressed the issue of "whether the

implied damages action first recognized in *Bivens* . . . should be extended to allow recovery

against a private corporation." *Id.* 63.  Following an approach similar to *Kauffman*, the Court in

*Malesko* held "[o]n the logic of *Meyer*, inferring a constitutional tort remedy against a private

entity . . . is therefore foreclosed." *Id.*  at 71.  Accordingly, as "[t]he Supreme Court has held

that there is no private right of action, pursuant to *Bivens*, for damages against private entities

acting under color of federal law," *Rodriguez ex rel. Rodriguez-Hazbun v. National Center for*

*Missing & Exploited Children*, 2005 WL 736526 at *9 (D.D.C. 2005), Plaintiff may not pursue a

cause of action against Microsoft based on alleged violations of her First, Fourth, Fifth, Eighth,

and Thirteenth Amendment rights.

Nothing in *Berger v. Hanlon,* 129 F.3d 505 (9th Cir. 1997), *judgment vacated and*

*remanded, Hanlon v. Berger*, 526 U.S. 808 (1999), *judgment reinstated, Berger v. Hanlon*, 188

F.3d 1155 (9th Cir. 1999), upon which Plaintiff also relies, requires a contrary result.  Unlike this

case, in *Berger* there was a clearly established agreement between agents of the Federal

Government and employees of CNN, thus constituting them as Government actors, who could be

liable under *Bivens*.  Moreover, the *Berger* decision was rendered before the Supreme Court's

decision in *Malesko,* which resolved the issue of whether a private person or entity may be

subject to *Bivens* liability.

**B.    Because Richards is not a prison inmate, she cannot assert an Eighth Amendment
claim against Microsoft.**

Plaintiff does not dispute that the Eighth Amendment is designed to protect <u>prisoners</u>

from cruel and unusual punishment.  Despite understanding that "the protection afforded by the

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 11 –

Eighth Amendment is limited," *Ingraham v. Wright*, 430 U.S. 651, 670 (1977), Plaintiff still

maintains that she is "being subject to what amounts to a criminal punishment" and that she is a

"de facto prisoner."  Plaintiff's Opposition at 20.  In *City of Revere v. Massachusetts General*

*Hosp.*, 463 U.S. 239, 244 (1983), the Supreme Court held that if there has not been a "formal

adjudication of guilt" against a plaintiff, "the Eighth Amendment has no application."  *Id.  See*

*also Ex parte Watkins*, 7 Pet. 568, 573-574 (1833) ("The eighth amendment is addressed to

courts of the United States exercising criminal jurisdiction"); *Browning-Ferris Industries of*

*Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 275 (1989) ("[A]s we earlier have noted, the

text of the Amendment points to an intent to deal only with the prosecutorial powers of

government.").  Because the Eighth Amendment only protects prisoners from cruel and unusual

punishment imposed by the Government, Plaintiff's Eighth Amendment claim against the

Microsoft Defendants must be dismissed.

**C.**     **Plaintiff fails to allege the Microsoft Defendants placed her under a condition of**
        **slavery or involuntary servitude, as contemplated by the Thirteenth Amendment.**

In Plaintiff's Opposition, she claims that "the use of the illegal electronic surveillance has

amounted to a form of physical coercion that has left Plaintiff with no choice but to continue to

be subject to serving the Microsoft Defendants."  Plaintiff's Opposition at 21.  However, the

Complaint is void of allegations that Plaintiff has been forced to continually serve the Microsoft

Defendants.  Indeed, Plaintiff is an attorney employed by a government agency in the United

States Virgin Islands. Complaint ¶51.[5]  Therefore, as Plaintiff is gainfully employed, it is clear

---

[5]  "Although Plaintiff was in private practice when she commenced this action in May of 2003, Plaintiff
subsequently left private practice in August of 2004, so she could begin working in a regulatory capacity, in
September of 2004, with the Division of Banking and Insurance ("Division") in the Office of the Lieutenant

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 12 –

that the Microsoft Defendants have not "enslaved" Plaintiff or placed her in a condition of involuntary servitude as defined by the Supreme Court.

In addition, it is clear that the alleged actions of the Microsoft Defendants do not rise to the level of physical or legal coercion. "The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *U.S. v. Kozminski*, 487 U.S. 931, 942 (1988). Based on the purpose of the Thirteenth Amendment, the Supreme Court concluded that "it was inten[ded] to prohibit compulsion through **physical coercion**." *Id.* (emphasis added). Indeed, "in every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction. . . . [Supreme Court] precedents clearly define a Thirteenth Amendment prohibition of involuntary servitude enforced by the use or threatened use of physical or legal coercion." *Id.* 943-44. "The guarantee of freedom from involuntary servitude has never been interpreted specifically to prohibit compulsion of labor by other means, such as psychological coercion." *Id.* 944.

Plaintiff alleges no physical or legal coercion. Instead, she alleges a roving illegal electronic surveillance operation that was used to obtain "ideas" and "comments" from Plaintiff. Complaint ¶¶213-214, 216. In addition to failing to allege physical or legal coercion, Plaintiff's

---

Governor. Plaintiff is presently still working with the Division today." Plaintiff's July 18, 2006, Motion for CM/ECF Password, Docket 19 at 2.

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 13 –

Complaint should be dismissed because this Court has held "[t]here is no private cause of action under the Thirteenth Amendment." *Bhagwani v. Howard University*, 355 F.Supp.2d 294, 301 (D.D.C. 2005).

**D.     Plaintiff has failed to state a cause of action pursuant to 42 U.S.C. § 1981.**

In *Domino's Pizza, Inc. v. McDonald*, 126 S.Ct. 1246, 1249 (2006), the Supreme Court held that "[a]ny claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' . . . under which the plaintiff has rights." *See also Walker v. Abbott Labs.*, 340 F.3d 471, 475 (7th Cir. 2003) ("There is no dispute . . . that . . . § 1981's protections still center on contractual rights and that proof of a contractual relationship is necessary to establish a § 1981 claim."). Without referencing specific paragraphs in her Complaint, Plaintiff nonetheless argues the Complaint alleges "the Microsoft Defendants have interfered with Plaintiff's right to contract to obtain a legal education free of racial animus, and they have further interfered with Plaintiff's right to earn a living free of racial discrimination." Plaintiff's Opposition at 22. Based on the allegations in the Complaint, it is unclear how the Microsoft Defendants supposedly interfered with Plaintiff's education and right to earn a living. Indeed, Plaintiff received a legal education at two different law schools, graduated with a law degree, was a summer intern in the U.S. Department of Justice during law school (Complaint ¶50), was in private practice when she filed this action and currently is employed as a lawyer by the Government of the Virgin Islands. *See* n.5 *supra.* Therefore, it is uncontroverted that Plaintiff's contractual relationships were not impaired.

This "Circuit has adopted the *McDonnell Douglas* burden shifting framework to analyze

a § 1981 claim.  Under this scheme, the plaintiff bears the initial burden of establishing a prima

facie case of discrimination."  *Ramey v. Potomac Elec. Power Co.*, 2006 WL 1102836 at *4

(D.D.C. 2006).  *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973);

*Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) ("[T]he plaintiff has the initial

burden of proving, by a preponderance of the evidence, a prima facie case of discrimination.");

*Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005).  "In order to plead a claim of racial

discrimination under § 1981, a plaintiff must allege that (1) the plaintiff is a member of a racial

minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and

(3) the discrimination concerned an activity enumerated in § 1981." *Williams v. Fannie Mae*,

2006 WL 1774252 at *4 (D.D.C. 2006).  *See also Berger v. Iron Workers Reinforced Rodmen

Local 201*, 843 F.2d 1395, 1413 (D.C. Cir. 1988); *Bennett v. U.S. Chess Federation*, 2006 WL

1883424 at *5 (D.D.C. 2006).

"In order to survive a motion to dismiss a section 1981 claim, a 'plaintiff must

specifically allege the events claimed to constitute intentional discrimination as well as

circumstances giving rise to a plausible inference of racially discriminatory intent.'  It is not

enough for a plaintiff to recite mere conclusory accusations. . . . A mere factual assertion of

unequal treatment or race-motivated conduct is insufficient to survive a Rule 12(b)(6) motion."

*Odom v. Columbia Univ.*, 906 F. Supp. 188, 194 (S.D.N.Y. 1995) (citation omitted). *See also

Roberson v. Bowie State Univ.*, 899 F. Supp. 235, 238 (D. Md. 1995) ("[B]are allegations that

negative consequences occurred because one is black . . . do not satisfy the level of pleading

required to state a claim of intentional racial discrimination."). Moreover, "vague and conclusory

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 15 –

allegations about the speculative loss of prospective business opportunities -- in contrast to the actual loss of a specific potential contractual interest -- fail to allege the type of contractual interests enumerated in § 1981's protection of the right 'to make and enforce contracts.'" *Williams*, 2006 WL 1774252 at *5. Plaintiff has failed to allege that the Microsoft Defendants interfered with a contractual relationship or denied her of "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.

Although a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Williams*, 2006 WL 1774252 at *3, like the plaintiff in *Williams*, Richards only presents vague and conclusory allegations that fail to set forth the type of interests protected under § 1981. *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (the Court is not bound by "legal conclusions cast in the form of factual allegations").

**E.      Plaintiff has failed to state a cause of action under 42 U.S.C. § 1985(3).**

"In order to sufficiently plead a conspiracy claim under § 1985, plaintiff must allege that: (1) the conspiracy involved two or more persons; (2) the conspiracy is for the purpose of depriving (directly or indirectly) someone or a group of people of the equal protection of the laws; (3) there has been an overt act in furtherance of the conspiracy; and (4) plaintiff has been deprived of her rights." *Williams*, 2006 WL 1774252 at *7. *See also Brown v. Sim*, 2005 WL 3276190 at *3 (D.D.C. 2005) ("Section 1985(3) of the Civil Rights Act of 1964 provides a civil remedy for conspiracies to interfere with constitutionally or federally protected rights when

motivated by invidiously discriminatory animus.").

"Additionally, 'in a section 1985(3) action . . . the facts detailing the conspiratorial agreement can be pleaded generally, while those facts documenting the overt acts must be pleaded specifically.'" *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F.Supp. 2d 1028, 1032 (D. Ill. 1998) (citations omitted). *See also Martin v. Delaware Law School of Widener University*, 625 F.Supp. 1288, 1297 (D. Del. 1985) ("Broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted."); *Boykin v. Bloomsburg University of Pennsylvania*, 893 F.Supp. 378, 398 (M.D. Pa. 1995) ("[S]uspicions, speculation, and feelings [do not] support [a] claim of conspiracy"). "[I]n ruling on a Rule 12(b)(6) motion, courts can and should reject 'legal conclusions,' 'unsupported conclusions,' 'unwarranted references,' 'unwarranted deductions,' 'footless conclusions of law,' and 'sweeping legal conclusions in the form of actual allegations.'" *Perry*, 371 F.Supp.2d at 626.

In her Complaint, Plaintiff relies entirely on unsupported conclusions rather than actual factual allegations. Although Plaintiff asserts she sued "the Microsoft Defendants pursuant to Section 1985(3) because they have violated her rights under the Thirteenth Amendment . . . and § 1981," Plaintiff's Opposition at 33, there are no factual allegations of involuntary servitude, enslavement or a thwarted contractual relationship. Instead, Richards alleges only that the Microsoft Defendants, "unlike the Duke Defendants, Georgetown Defendants and Government Defendants," Complaint ¶212, joined an alleged ongoing conspiracy involving illegal electronic surveillance so that it could "obtain whatever comments Plaintiff makes that are business related

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 17 –

for their own financial gain." *Id.* ¶ 213.

Although the Complaint includes conclusory statements, such as "joined in this conspiracy to discriminate against Plaintiff," *id.* ¶213, these statements constitute pure speculation. Moreover, Plaintiff emphasizes that corporate America, including the Microsoft Defendants, were motivated by the prospect of obtaining valuable information from Plaintiff. *Id.* Yet, participating in a conspiracy to obtain ideas for financial gain does not constitute participating in a conspiracy to engage in racial discrimination. In *United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825 (1983), the Supreme Court narrowed the scope of § 1985(3) by specifically excluding "conspiracies motivated by economic or commercial animus." *Id. See also Hoai v. Vo*, 290 U.S. App. D.C. 142 (D.C. Cir. 1991) ("[I]t is clear that the kind of class-based animus contemplated by section 1985(3) does not include discrimination against classes defined by economic status or activity."); *Hobson v. Wilson*, 737 F.2d 1, 28 (D.C. Cir. 1984). Therefore, even if Richards' wild assertions are taken as true, she has not stated a valid § 1985 claim because her allegations pertaining to the Microsoft Defendants' involvement in the alleged conspiracy do not adequately describe a racist motive.

Even if this Court were to conclude that Plaintiff's § 1985(3) claim is based on her allegations under the Thirteenth Amendment and § 1981, Plaintiff still fails to state a valid claim. As pointed out *supra* at 11-13, *U.S. v. Kozminski*, 487 U.S. at 942, precludes any claim under the Thirteenth Amendment.

**F.    Plaintiff's claims under 42 U.S.C. § 1986 should be dismissed.**

"In relevant part, § 1986 provides a cause of action against 'every person who, having

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 18 –

knowledge that any of the wrongs [described in § 1985] conspired to be done . . . are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed.' A colorable claim under § 1985 is a precondition to asserting a claim under § 1986." *Bowie v. Gonzales*, 2006 WL 1319549 at *3 (D.D.C. 2006). *See also Adickes v. S. H. Kress & Co.*, 90 S.Ct. 1598, 1629 (1970) (stating that the "scope [of § 1986] is keyed to that of § 1985"); *Bennett*, 2006 WL 1883424 at *6 (same). "[T]here can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985." *Hicks v. Williams*, 2005 WL 3560678 at *3 (D.D.C. 2005). Because Plaintiff has not alleged sufficient facts to state a § 1985(3) claim against the Microsoft Defendants, she cannot state a claim under § 1986.

**G.    Plaintiff has failed to state a cause of action under 18 U.S.C. § 2520.**

Plaintiff's Opposition incorrectly argues that her claims under the Federal Criminal Wiretapping Statute, codified at 18 U.S.C. §§ 2510-2522, are not time-barred because the alleged wiretapping involves a continuing injury. Plaintiff's Opposition at 41. However, the Federal Wiretapping Act contains a specific statute of limitations governing civil actions. It provides "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). "In other words, the statute bars a suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts." *Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002).

Taking Richards' allegations as true, she discovered an alleged violation sometime in

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 19 –

1999 and drew a connection to the Microsoft Defendants by concluding that "shortly after" they created MSN mobile based on her comments.  Complaint ¶¶213-214.  In civil actions brought pursuant to § 2520, "the cause of action accrues when the claimant has a reasonable opportunity to discover the violation."  *Andes v. Knox*, 905 F.2d 188, 189 (8th Cir. 1990).  Accordingly, the continuing tort doctrine simply is not applicable.  *See, e.g., Perkins v. Nash*, 697 F. Supp. 527, 533 (D.D.C. 1988) ("The continuing tort doctrine appears in the case law only in certain, unusual circumstances"); *Starchild v. FBI*, 1991 U.S. Dist. LEXIS 7077 (D.D.C. 1991) ("The doctrine, however, applies only to acts which are by nature of a repetitive character and for which no single act can be identified as the significant harms. A continuous, cumulative chain of tortious activity does not include the uncorrected denial of one's constitutional rights, even when done by a conspiracy over time.  If it did, then all civil conspiracy cases would fall within its ambit, greatly expanding the doctrine beyond its original intent."); *United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence.").

Plaintiff has not alleged facts demonstrating that the Microsoft Defendants used electronic devices to intercept her communications in her home, car or elsewhere.  In fact, she alleges nothing with respect to where any devices were implanted in her home, car or elsewhere by any of the defendants.  Although a Complaint need only contain a short and plain statement of the claim, it must allege a specific instance of surveillance activity.  Instead of any factual

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 20 –

allegation of actual surveillance activity, Plaintiff claims electronic surveillance can be inferred

from particular actions of the Microsoft Defendants such as their decision to create MSN mobile

and invest in wireless technology.    Complaint    ¶213-214.    Merely alleging unsupported

connections between separate events is not sufficient to state a claim.    For example, in

*Stephenson v. Veterans Admin.*, 1991 WL 208898 at *5 (E.D. Pa. 1991), the court dismissed the

plaintiff's claim because the "Plaintiff's complaint . . . fails to allege even one specific instance

of defendants' intercepting, disclosing, or intentionally using any of plaintiff's communications."

*Id.*  Thus, even if Plaintiff's allegations are true, the mere coincidental occurrences of Plaintiff's

comments and the Microsoft Defendants' subsequent business decisions do not state a valid

claim of intentional interception of communications using a device.   *See, e.g., Rogers v. Mount*

*Union Borough*, 816 F. Supp. 308, 314 (D. Pa. 1993) ("Mere conclusory allegations that a

conspiracy existed will not survive a motion to dismiss."); *Atamian v. Masland*, 2001 U.S. Dist.

LEXIS 9300 (D. Pa. 2001)(dismissing complaint because Plaintiff offers no facts suggesting the

"events are anything more than unfortunate coincidence"); *Palumbo v. Weil*, 2001 U.S. Dist.

LEXIS 25728 (D. Conn. 2001) (when defendant states only that surveillance was conducted and

a subsequent event coincides, "liability cannot be predicated on such thin allegation"); *Tacker v.*

*Wilson*, 830 F. Supp. 422, 427 (W.D. Tenn. 1993) ("[P]leadings filled with nothing but

conclusory allegations that do not afford notice to the court or to the opposing parties violate

Rule 8.").

Even if this Court were to find Plaintiff stated a claim under § 2520, the Microsoft

Defendants would not be liable because it is not unlawful to access or intercept a communication

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 21 –

"that is configured so that such electronic communication is readily accessible to the general

public." 18 U.S.C. § 2511(2)(g)(i). Furthermore, it is not unlawful to "to intercept any radio

communication which is transmitted -- by any governmental, law enforcement, civil defense,

private land mobile, or public safety communications system, including police and fire, readily

accessible to the general public." *Id.* § 2511(2)(g)(ii)(II). Plaintiff alleges the Government

Defendants began the illegal surveillance and that, "unlike . . . the Government Defendants,

many persons in corporate America . . . illegally **intercept[ed]** the surveillance, including the

Microsoft Defendants." Complaint ¶212. Stating that the Microsoft Defendants intercepted the

surveillance means that they allegedly obtained the transmission or signal being used by the

Government Defendants. In fact, throughout the Complaint, Plaintiff alleges the surveillance is

"disseminated to persons all over the world" and "disseminated widely into the public domain."

*Id.* ¶¶61-62. Assuming the Government Defendants transmitted surveillance information to all

persons and placed this information into the public domain, interception of that surveillance by

the Microsoft Defendants would not violate § 2511(2)(g).

**H.    Plaintiff has failed to state a cause of action for prospective interference with prospective advantage.**

"Intentional interference with prospective economic advantage is based on business

expectations. . . . Specifically, prospective advantage is described as 'business expectancies, not

grounded on present contractual relationships but which are commercially reasonable to

anticipate, [and] are considered to be property.' A 'prospective advantage,' however, may not be

actionable if too attenuated or remote." *Houlahan v. World Wide Ass'n of Specialty Programs &*

*Schs*, 2006 WL 785326 at *4 (D.D.C. 2006) (citations omitted). "This intentional tort . . . has

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 22 –

four elements: '(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach [or] termination of the relationship or expectancy, and (4) resultant damage.'" *Riggs v. Home Builders Inst.*, 203 F.Supp.2d 1, 24 (D.D.C. 2002) (citations omitted). *See also Genetic Systems Corp. v. Abbott Laboratories*, 691 F.Supp. 407, 423 (D.D.C. 1988). "A general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability." *Id.* "Plaintiffs bear the burden of showing that the alleged business opportunities were indeed likely to materialize." *Primedical, Inc. v. Allied Inv. Corp.*, 1994 U.S. Dist. LEXIS 4517 (D.D.C. 1994). In this jurisdiction, a court "never has held that an employee can maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship." *Id.*

As a claim for interference with a prospective advantage requires the existence of a valid business relationship that supposedly was thwarted by the defendant's conduct, Plaintiff has failed to state a claim upon which relief may be granted. Here, the Complaint fails to identify any contract, contractual negotiation or business plan for securing prospective business relations. In spite of these deficiencies, Plaintiff argues that "she has had a reasonable expectancy that she would be able to contract to earn a living" and that the acts of the Duke and Georgetown Defendants impaired her ability to get certain jobs. Plaintiff's Opposition at 43. However, she has not identified a prospective advantage or business relationship that was supposedly thwarted by the Microsoft Defendants. Although Plaintiff argues her ability to "earn a living" is the prospective advantage, the Complaint states that "Plaintiff is an attorney employed in the United

States Virgin Islands." Complaint ¶51.  Thus, it is unclear how Plaintiff supposedly is unable to

earn a living.

**I.**     **Plaintiff has failed to state a cause of action for theft of intellectual property.**

It is a fundamental legal principal that "(a)n idea of itself is not patentable."  *Gottschalk*

*v. Benson*, 409 U.S. 63, 67 (1972).  *See also T.H. Symington Co. v. National Malleable Castings*

*Co.*, 250 U.S. 383, 386 (1919); *Pearson v. Dodd*, 410 F.2d 701, 707 (D.C. Cir. 1969) ("The

general rule has been that ideas or information are not subject to legal protection."); *Dastar*

*Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33 (U.S. 2003) ("In general, unless an

intellectual property right such as a patent or copyright protects an item, it will be subject to

copying.").

Despite the fact that Plaintiff's ideas do not constitute intellectual property, Plaintiff

maintains the Microsoft Defendants stole various business ideas she had written concerning

Microsoft.  These alleged ideas included "how Microsoft could generate revenue through e-mail

sales, and even improve e-mails with graphics" and "an idea regarding changing the name of

Microsoft's Web TV to MSN TV." Complaint ¶¶268-76.  It is clear that these "ideas" are not

unique or original in nature.  *See, e.g., Murray v. National Broadcasting Co.*, 844 F.2d 988, 993

(2d Cir. 1988) (rejecting plaintiff's claim that his idea for a situation comedy about a non-

stereotypical black family was appropriated by NBC when NBC produced *The Cosby Show*);

*Ferber v. Sterndent Corp.*, 51 N.Y.2d 782 (1980) ("absent a showing of novelty, plaintiff's action

to recover damages for illegal use of 'confidentially disclosed ideas' must fail as a matter of

law").  Indeed, communication technology has been the subject of public discourse since at least

the year 2000.  Consequently, an enormous amount of information exists in the public domain.

In *Pearson*, 410 F.2d at 707, the D.C. Circuit stated that the critical inquiry for determining whether a defendant could be held liable for conversion of information contained in documents is "whether the information taken from those [documents] falls under the protection of the law of property." *Id.*  Only when "ideas are formulated with labor and inventive genius, as in the case of literary works or scientific researches, [are] they are protected." *Id.*  Therefore, because Richards fails to allege sufficient facts that would give her legal ownership of a cognizable form of intellectual property, Count 13 of the Complaint against the Microsoft Defendants should be dismissed.

## CONCLUSION

For all the foregoing reasons, the Microsoft Defendants respectfully request that this Court dismiss Counts 4-14 for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), or, in the alternative, dismiss Counts  4, 5, 6, 7, 8, 12, and 13, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Charles E. Buffon
**COVINGTON & BURLING, LLP**
**CHARLES E. BUFFON**
D.C. Bar No.: 29983
**HARRY B. ROBACK**[*]
D.C. Bar No. 48514
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
Telephone:     (202) 662-5542
Telecopier:    (202) 778-5542

---

[*]     Application for admission to this Court is pending.

Reply in Support of the Microsoft
Defendants' Motion to Dismiss
Page - 25 –

E-Mail:        cbuffon@cov.com
               hroback@cov.com

**DUDLEY, TOPPER and FEUERZEIG, LLP**
**HENRY L. FEUERZEIG****
Law House
1000 Frederiksberg Gade (P.O. Box 756)
St. Thomas, U.S.V.I.  00804-0756
Telephone:     (340) 774-4422
Telecopier:    (340) 715-4400
E-Mail:        HFeuerzeig@dtflaw.com

Attorneys for William H. Gates, III,
Microsoft Corporation, Steven A. Ballmer
and Melinda Gates

August 4, 2006

---

**      Application for admission *pro hac vice* to this Court is pending.

## CERTIFICATE OF SERVICE

It is hereby certified that on this the 4th day of August, 2006, a true and exact copy of the foregoing **REPLY IN SUPPORT OF THE MICROSOFT DEFENDANTS' RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS** was served via electronic notification to:

Suzette Richards, Esq.
P.O. Box 223875
Christiansted, St. Croix
U.S. Virgin Islands  00822-3875

Richard H. Hunter, Esq.
**HUNTER, COLE & BENNETT**
Pentheny Building - 3rd Floor
1138 King Street - Suite 301
Christiansted, St. Croix
U.S. Virgin Islands  00820
E-Mail:  rhunter@hcbvilaw.com

Simone R.D. Francis, Esq.
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, LLC**
The Tunick Building - Suite 202
1336 Beltjen Road
St.  Thomas, Virgin Islands   00802
E-Mail: simone.francis@odnss.com

Benton G. Peterson, Esq.
Assistant U.S. Attorney
**U.S. DEPARTMENT OF JUSTICE**
555 Fourth Street N.W.
Room E4905
Washington D.C.   20530
E-Mail:  benton.peterson@usdoj.gov

Elizabeth A. O'Brien, Esq.
**WILLIAMS & CONNOLLY**
725 12th Street, N.W.
Washington, D.C.   20005
E-Mail:  eobrien@wc.com

Michael J. Murphy, Esq.
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
2400 N Street, N.W.
Fifth Floor
Washington, D.C.   20037-1153
E-Mail:  michael.murphy@odnss.com