IN THE DISTRICT COURT OF THE
DISTRICT OF COLUMBIA

SUZETTE RICHARDS,             )
                                        )
                Plaintiff      )
                                          )
v.                                   )      CIVIL NO. 1:06-cv-01179-RCL
                                        )
DUKE UNIVERSITY, DUKE UNIVERSITY    )      ACTION FOR DAMAGES
SCHOOL OF LAW, DUKE UNIVERSITY       )      DISCRIMINATION AND
BOARD OF TRUSTEES, NANNERL KEOHANE, )   DECLARATORY AND
in her personal and official capacity as president of )   INJUCTIVE RELIEF
Duke University, and others,            )
                                          )
                Defendants   )
_____)

## DUKE UNIVERSITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendants Duke University, Duke University School of Law, Duke University Board of Trustees and Nannerl Keohane ("Duke"), through their counsel, Ogletree, Deakins, Nash, Smoak & Stewart, LLC, file this memorandum in support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1] In support, Duke shows as follows:

## FACTS

Duke incorporates fully the facts laid out by Microsoft in their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6). In addition, Duke states that Duke University and Duke University School of Law are private educational institutions located in Durham,

---

[1] Duke previously filed a Motion to Dismiss for Lack of Personal Jurisdiction and a Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) which are both still pending. Duke files the instant motion in the alternative to its Motion to Dismiss for Lack of Personal Jurisdiction, should this Court determine that it can exercise jurisdiction over Duke, and as a supplement to its Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6).

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 2

North Carolina and are citizens of North Carolina. (Compl. ¶¶ 4, 5.)  Duke University Board of Trustees ("the Board") is an elected board of thirty-six (36) members.  *Id.* ¶ 6.  The membership changes every two years and the Board has no independent corporate identity.  (Declaration of Kate S. Hendricks ("Hendricks Decl.") ¶ 12.)  Ms. Nannerl Keohane was formerly President of Duke University and now resides in, and is a citizen of, the state of New Jersey.  (Declaration of Nannerl Keohane ("Keohane Decl.") ¶ 2.)

Plaintiff, Suzette, Richards, is a resident of St. Croix, U.S. Virgin Islands.  (Compl. ¶ 3.) She attended Duke University from the fall of 1992 to the spring of 1996. *Id.* ¶ 28.  She attended Duke University School of Law from the fall of 1997 to the spring of 1998 and then transferred to Georgetown Law.  *Id.* ¶¶ 31-32.  Plaintiff graduated from Georgetown Law in the spring of 2000.  *Id.* ¶ 32.

Plaintiff alleges that Duke Defendants discriminated against her while she attended Duke University School of Law. *Id.* ¶¶ 37-42.  She also alleges a broad conspiracy and that "[f]rom the end of Plaintiff's first year of law school, the Duke Defendants conspired with the Government Defendants to illegally place Plaintiff under electronic surveillance to obtain information to continue to discriminate against Plaintiff, as well as to harass, humiliate, degrade, demean, and terrorize Plaintiff." *Id.* ¶ 38.  She also alleges that "[a]fter Plaintiff transferred to Georgetown Law, the Duke Defendants conspired with the Georgetown Defendants and the Government Defendants to continue to illegally keep Plaintiff under electronic surveillance and to discriminate against Plaintiff," *id.* ¶ 39, and that the conspiracy has now spread to world-wide proportions.  *Id.* ¶¶ 46, 47.  According to Plaintiff, the surveillance conspiracy is in fact a conspiracy within a conspiracy.  *Id.* ¶¶ 57, 58.  Allegedly, Defendants "fear that if Plaintiff is not

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 3

kept under this surveillance, Plaintiff may have a relationship with [Bill Gates] a man who is both white and wealthy," *id*. ¶ 57, and this "would interfere with the existing ongoing conspiracy that they have put in place to harass and retaliate against Plaintiff because she objected to the discrimination that exists at Duke Law." *Id.* ¶ 58.

## STANDARD OF REVIEW

In order to survive a 12(b)(6) motion to dismiss, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (*quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957)).  The court must accept as true all well-pleaded factual allegations and grant plaintiff the benefit of all *reasonable* inferences that can be derived from the alleged facts. *Chandamuri v. Georgetown University,* 274 F. Supp. 2d 71, 77 (D.D.C. 2003) ("Even under the generous standard of pleading set forth, conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *citing Conley,* 355 U.S. at 45-46)); *see also Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Judicial Watch, Inc. v. Clinton,* 880 F. Supp. 1, 7 (D.D.C. 1995) (Lamberth, J.). A complaint will be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley,* 355 U.S. at 45-46.

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 4

## ARGUMENT

I.     **COUNT I SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE STATUTE OF LIMITATIONS AND BECAUSE PLAINTIFF HAS NOT ALLEGED THE NECESSARY ELEMENTS OF FRAUD WITH THE SPECIFICITY REQUIRED UNDER FED. R. CIV. P. 9(b)**

A.     **Count I is Barred By The Statute Of Limitations.**

A claim for fraud has a three year statute of limitations in the District of Columbia. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("[Plaintiffs'] three claims are governed by the District of Columbia's three-year statute of limitations for claims based on fraud, intentional infliction of emotional distress, and interference with judgments.); D.C. Code § 12-301(8) (1995). Under District of Columbia law, a tort action accrues "when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989); *see also Goldman v. Bequai*, 19 F.3d 666, 671-72 (D.C. Cir. 1994).

The facts alleged in Plaintiff's Complaint satisfy all of these elements: she was aware of her injury as soon as she received her grades for the first semester of law school; she "knew" that this "injury" was caused by the fraudulent grading scheme (Compl. ¶¶ 105-46), and; she has knowledge of "wrongdoing" as evidenced by her claim that she intended to file a claim against Duke for the fraudulent grading while still at Duke. *Id.* Plaintiff's claim against Duke for fraud, therefore, accrued during her first year of law school. At the very latest this would have been May 1998. Since Plaintiff did not file her Complaint until June 30, 2003, the claim of fraud against Duke is clearly barred by the statute of limitations.

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 5

**B.    Count I Should Be Dismissed Because Plaintiff Has Not Alleged The Necessary Elements Of Fraud With The Specificity Required Under Fed. R. Civ. P. 9(b).**

In the District of Columbia, the requisite elements of fraud are: "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." *Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 613 A.2d 916, 923 (D.C. 1992). The plaintiff must also have suffered some injury as a consequence of his reliance on the fraudulent misrepresentation. *See Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C. 1983).  Under the Restatement (Second) of Torts § 525 (1976) "[o]ne who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."

The facts alleged by Plaintiff simply do not satisfy the elements of common-law fraud. Plaintiff claims there was a fraudulent grading scheme in place at Duke because the advice the professors gave her, and other students, about how to take exams did not help her achieve the grades she thought she deserved.  (Compl. ¶¶ 123-28.)  Such allegations do not state a claim upon which relief can be granted.  First, there cannot be any truth or falsity, or material facts, in subjective advice from professors on how best to tackle law school exams.  Because there was no misrepresentation as to "facts," Plaintiff has failed to establish the first and second elements of a claim of fraud.  Second, Plaintiff has not alleged how the advice given to her by her professors caused her unsatisfactory exam grades.  Indeed, it is practically impossible that Plaintiff could ever allege any set of facts that would demonstrate causation.  Her allegation that her poor grades

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 6

were a direct result of the advice given to her by her professors is nothing more than a speculative theory that would be impossible to substantiate. Without causation, a claim for fraud will fail. *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 793 (D.C. Cir. 1983) (holding that "damages are restricted in all cases to such damages as were the natural and proximate consequences, or the direct consequences, of the fraud, and to such damages as can be clearly defined and ascertained" *citing* 37 Am.Jur.2d, Fraud & Deceit § 343, at 461)); *see also City Realty, Inc. v. Continental Cas. Co.,* 623 So. 2d 1039, 1043 (Ala. 1993) ("A critical element in a fraud claim is that the plaintiff's damage or loss was a proximate result of the alleged misrepresentation."). Finally, in a claim of fraud, the damage to the plaintiff must be a legal injury, which is defined by the Restatement Second of Torts as "the invasion of any legally protected interest of another." Restatement (Second) Torts, § 7; *see also Dresser,* 465 A.2d at 839. Plaintiff has not alleged any pecuniary loss that would trigger liability under Restatement (Second) of Torts § 525, and the loss she has claimed, namely satisfactory grades, is not a legally protected interest. Because Plaintiff has failed to allege any redressable, legal injury, she has failed to state a claim of fraud upon which relief can be granted.

Furthermore, in addition to making a *prima facie* showing of the necessary elements, "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "[B]oilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir. 1997) (*citing Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284-85 (3d Cir. 1992)); *see also Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 745 (8th Cir. 2002); *Suna v. Bailey*

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 7

*Corp.,* 107 F.3d 64, 68 (1st Cir. 1997); *Chill v. General Elec. Co.,* 101 F.3d 263, 267 (2d Cir.

1996). The circumstances of the fraud that must be plead with particularity are "the time, place,

and content" of the misrepresentations, "the misrepresented fact, and what the opponent retained

or the claimant lost as a consequence of the alleged fraud." *United States ex rel. Fisher v.*

*Network Software Assoc.,* 227 F.R.D. 4, 9 (D.D.C. 2005) (*citing United States ex rel. Totten v.*

*Bombardier Corp.,* 286 F.3d 542, 551-52 (D.C. Cir. 2002) (other citation omitted)); *see also*

*Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 920 (8th Cir. 2001) (holding that complaint

must allege "such matters as the time, place and contents of false representations, as well as the

identity of the person making the misrepresentation and what was obtained or given up

thereby.").

In sum, the particularity requirement of Rule 9(b) requires the plaintiff to support an

allegation of fraud "with all of the essential factual background that would accompany 'the first

paragraph of any newspaper story' -- that is, the 'who, what, when, where and how' of the events

at issue." *In re Alpharma Inc. Secs. Litig.,* 372 F.3d 137, 148 (3d Cir. 2004) (*citing In re*

*Rockefeller Center Properties, Inc. Sec. Litig.,* 311 F.3d 198, 217 (3d Cir. 2002)); *see also*

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 29 (1st Cir. 2004); *United States*

*ex rel. Doe v. Dow Chem. Co.,* 343 F.3d 325, 328 (5th Cir. 2003); *DiLeo v. Ernst & Young,* 901

F.2d 624, 627 (7th Cir.) *cert. denied,* 498 U.S. 941, 111 S.Ct. 347 (1990).

Plaintiff's Complaint falls far short of this high standard. Count I alleges that the Duke

Defendants committed fraud, that there was a fraudulent grading scheme in place at Duke School

of Law, that the Duke Defendants made fraudulent representations to Plaintiff, and that the Duke

Defendants conspired with the Georgetown Defendants to continue the fraud once Plaintiff had

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 8

transferred to Georgetown law school.  (Compl. ¶¶ 294-302.)  These claims are based on
Plaintiff's belief that the professors at Duke law school lied to her about how to take her law
school exams and that as a result she did not receive the grades she deserved.  *Id.* ¶¶ 123-28.
Plaintiff's "proof" of the lies and fraud is that students who did not take exams in the style
suggested by the law school received better grades than she did, even though she followed the
professors' suggestions.  *Id.*  None of these broad allegations are specific enough to meet the
requirements of Rule 9(b)'s particularity requirement with regard to the injury suffered by
Plaintiff.

Even taking Plaintiff's allegations as true, Plaintiff has failed to establish a *prima facie*
claim of fraud or to plead the elements of fraud with the required specificity.  Count I of
Plaintiff's Complaint, therefore, must be dismissed for failure to state a claim upon which relief
can be granted.

## II.    COUNTS II AND III SHOULD BE DISMISSED BECAUSE THEY ARE TIME-BARRED AND BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR EITHER RACIAL OR SEXUAL DISCRIMINATION OR HARASSMENT

### A.    Plaintiff's Claims For Racial And Sexual Discrimination Are Barred By The Statute Of Limitations.

Count II of Plaintiff's Complaint alleges violation of Title VI of the Civil Rights Act of
1964, codified at 42 U.S.C.A. § 2000d et seq..  Count III alleges violation of Title IX of the
Education Amendments of 1972, codified at 20 U.S.C. §§ 1621-28.  Since neither of these titles
has their own statute of limitations, courts take the period applicable to 42 U.S.C. § 1983 and 42
U.S.C. § 1981.  In *Wilson v. Garcia*, 471 U.S. 261 (1985) the Supreme Court held that state
statute of limitations for personal injury actions applied to section 1981 and section 1983.  *See*

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 9

also *Stewart v. District of Columbia,* Civil No. 04-1444, 2006 U.S. Dist. LEXIS 12991 (D.D.C.
March 12, 2006) ("Because Title VI, like Section 504, does not contain a specific statute of
limitations, courts have looked to the statute of limitations used in Section 1983 and Section
1981 actions."); *Doe v. Howe Military School,* 227 F.3d 981, 987 (7th Cir. 2000) ("Title IX does
not have its own statute of limitations. The court therefore borrowed the state statute of
limitations for personal injury actions--the state law claim the court viewed as most similar to the
Title IX allegations--and applied it to the Title IX claims."). In the District of Columbia "section
12-301(8)'s three-year statute of limitations applies to all section 1981 claims," *Carney v.
American Univ.,* 151 F.3d 1090, 1096 (D.C. Cir. 1998), which in turn means that there is a three-
year limit on all Title VI and Title IX claims. Under District of Columbia law, a tort action
accrues "when the plaintiff has knowledge of (or by the exercise of reasonable diligence should
have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of
wrongdoing." *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989); *see also Goldman v. Bequai*,
19 F.3d 666, 671-72 (D.C. Cir. 1994). Since Plaintiff was aware of the alleged discrimination
while at Duke, her cause of action for Title VI and Title IX discrimination accrued, at the latest,
in May 1998, when she left Duke and transferred to Georgetown. (Compl. ¶¶ 31-32.) Plaintiff
field her Complaint in June 2003. Therefore, these claims are clearly barred by the statute of
limitations.

**B.      Plaintiff Has Failed To State A Claim For Racial Or Sexual Harassment
Upon Which Relief May Be Granted.**

Title VI of the Civil Rights Act of 1964 states that: "No person in the United States shall,
on the ground of ... national origin, be excluded from participation in, be denied the benefits of,

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 10

or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Count II of Plaintiff's Complaint alleges that the "acts of the Duke Defendants and the Georgetown Defendants constitute discrimination on the basis of race and national origin in violation of 42 U.S.C. §2000d-2000d-7."  (Compl. ¶ 304.)

In *Browning v. Clinton,* 292 F.3d 235 (D.C. Cir. 2002), the D.C. Circuit Court held that in order to survive a motion to dismiss a Title VI claim for failure to state a cause of action, the complaint "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests, ... [The court will] accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations." *Browning,* 292 F.3d at 242 (internal citations omitted).  This standard was applied by this Court in *Chandamuri v. Georgetown Univ.,* 274 F. Supp. 2d 71, 77 (D.D.C. 2003), in which the plaintiff claimed violation of Title VI on the grounds that his sanction for plagiarism was racially motivated.  In that case, the Court dismissed the claim holding that "[t]he complaint fails to set forth facts that would provide any basis for an inference that support a reasonable inference that either Dr. Roepe or the Georgetown University Honor Council intentionally disciplined Chandamuri for the purpose of discriminating against him on the basis of his national origin, or in retaliation for his previous encounter with Dr. Roepe. At best, Chandamuri demonstrates that he and Dr. Roepe had a poor relationship. For the reasons discussed in detail *supra,* the Court does not accept the speculative, unsubstantiated assertions and legalistic argumentation set forth by Chandamuri." *Chandamuri,* 274 F. Supp. 2d at 85-6.

Likewise, in this case, Plaintiff's allegations, even taken as true, are nothing more than "conclusory allegations unsupported by any factual assertions."  *Id.* at 77.  Plaintiff broadly

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 11

alleges "a pattern and practice of discrimination against minority students for years." (Compl. ¶ 36.) As for discrimination directed specifically against her, Plaintiff claims that there existed a fraudulent grading scheme, *id.* ¶ 105, that she did not receive the grades she deserved, *id.* ¶ 125, that a white professor made "discriminatory statements toward Plaintiff," *id.* ¶129, that her grades did not improve, *id.* ¶¶ 142-43, and that she was called on more than other students in class. *Id.* ¶ 179. However, nothing in these allegations, even if true, gives grounds for a reasonable inference that such actions were motivated by any racial animus or discriminatory intent.

As for Plaintiff's claims of sexual discrimination and harassment, the Complaint scarcely even touches on the issue. In order to succeed in a Title IX hostile environment claim, the plaintiff must show: "(1) that she belongs to a protected group (e.g., a student at an institution covered by Title IX); (2) that she was subjected to harassment based on her sex; (3) that the harassment was sufficiently severe or pervasive to create an abusive educational environment; and (4) a cognizable basis for imputing institutional liability under Title IX." *Jennings v. Univ. of North Carolina,* 444 F.3d 255, 267-68 (4th Cir. 2006); *see also Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745-53 (2d Cir. 2003); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002).

Aside from claiming that when she considered filing an action against Duke for discrimination Duke "began to seek personal information about Plaintiff, including information of a sexual nature," (Compl. ¶ 154), Plaintiff does not allege any facts that could lead to a reasonable inference of discrimination based on sex that would rise to the level of pervasive or severe. Plaintiff asserts that "to make inquiries of a personal and sexual nature about female

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 12

students, like Plaintiff, and actually use that information to in anyway impact upon them personally, academically, or professionally" is a violation of Title IX of the Education Amendments of 1972, codified at 20 U.S.C. §§ 1621-28.  Assuming *arguendo* that such inquiries were made, Plaintiff's claim would still fail as she has not, nor cannot, allege that such inquiries had any impact on her personal, professional or academic life.  As argued more fully below, Plaintiff completed law school, took, and passed the Virgin Islands bar exam, and was productively employed in the Virgin Islands at the time the Complaint was filed.  (Compl. ¶¶ 33, 41, 65.)  Whether or not conduct rises to the level of actionable harassment depends on "a constellation of surrounding circumstances, expectations, and relationships . . . including, but not limited to, the ages of the harasser and the victim and a number of individuals involved . . . ." *Jennings,* 444 F.3d at 267-68 (*citing Davis v. Monroe County Board of Education*, 526 U.S. 629, 651 (1999)) (internal quotations omitted).  Other than the allegation that Duke sought personal information about Plaintiff, the Complaint gives no indication of the frequency or severity of any sexual harassment, nor identifies the individuals who are the alleged culprits, nor alleges any damage that directly resulted from such alleged harassment.  Without these crucial facts a claim for discrimination or harassment under Title IX must fail.

Plaintiff's theory of discrimination, both racial and sexual, is nothing more than a hunch and is insufficient, even under the liberal standard of a 12(b)(6), to state a claim upon which relief can be granted.  This Court should be guided by its previous holding in *Chandamuri, supra,* and dismiss Counts II and III with prejudice.

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 13

## III.    COUNT IV, ALLEGING VIOLATIONS OF THE CONSTITUTION, SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

In its Motion to Dismiss, Microsoft lays out the standard for the United State's Supreme Court's state action doctrine which provides that constitutional protections of individual rights and liberties apply only to government actors.  (Microsoft Motion to Dismiss, pp. 9-15.)  Duke adopts and incorporates by reference Microsoft's argument of this matter in its entirety and adds that Plaintiff has not alleged that Duke Defendants are state actors.  Plaintiff's claim, therefore, that Duke has violated her constitutional rights must be dismissed for failure to state a claim upon which relief may be granted.

The only paragraph in the Complaint that comes close to making such an allegation is paragraph 19, which states that "Defendants Duke, Duke Law, Georgetown, and Georgetown Law are recipients of federal funds."  (Compl. ¶ 19.)  Assuming, *arguendo*, that Duke does receive federal funds, it is well-settled law that such a connection with the government is insufficient to raise Duke to the level of a "state actor" or to require a conclusion that Duke performs an exclusively public function.  *Spark v. Catholic Univ. of America*, 510 F.2d 1277, 1281-82 (D.C. Cir. 1975).  In *Spark, supra,* the plaintiff claimed federal jurisdiction on the grounds that the defendant university received twenty-five (25) percent of its revenue from government funds.  This Court dismissed the case for lack of subject matter jurisdiction.  In affirming the dismissal, the Court of Appeals stated that "[t]he fact that the Federal Government contributes funds to the University, by itself, is insufficient to show the exercise of influence on University decision-making or the encouragement of specific policies."  *Id*. at 1281-82.

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 14

The court went on to hold that a "more fundamental point against plaintiffs is that receipt of money from the State is not, without a good deal more, enough to make the recipient an agency or instrumentality of the Government. Otherwise, all kinds of contractors and enterprises, increasingly dependent upon government business for much larger proportions of income than those here in question, would find themselves charged with 'state action' in the performance of all kinds of functions we still consider and treat as essentially 'private' for all presently relevant purposes." *Id.* (*citing Grossner v. Columbia Univ.*, 287 F. Supp. 535, 547-48 (S.D.N.Y. 1968)); *see also Canady v. Providence Hosp.,* 903 F. Supp. 125, 126 (D.D.C. 1995) ("It is undisputed that Providence Hospital is a private, non-profit hospital, not a government facility. The fact that the hospital accepts Hill-Burton federal funds, absent additional facts indicating the presence of governmental control, does not suffice to render the conduct of its staff and administration state action.").

In this case it is undisputed that Duke University (including the School of Law) is a private educational institution. (Compl. ¶¶ 4, 5.)  Even if Duke receives federal funds, such funds, by themselves, do not establish government involvement in the decision-making process at Duke or government influence over university policy decisions.  The same argument applies to Dr. Keohane to the extent she is being sued in her official capacity as former President of Duke University.  To the extent she is being sued in her personal capacity, the claim set forth in Count IV also must be dismissed as it is clear Dr. Keohane, as a private citizen, is not a state actor.

In short, Plaintiff has not, nor cannot, allege any facts sufficient to argue that Duke is a state actor under the standard set forth by Microsoft in their Motion to Dismiss.  All claims of

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 15

constitutional violations contained in Count IV, therefore, must be dismissed, pursuant to Fed. R.

Civ. P. 12(b)(6), for failure to state a viable claim for relief .

## IV.    COUNT VI SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE STATUE OF LIMITATIONS AND BECAUSE THE DUKE DEFENDANTS HAVE NOT INTEREREFED WITH A CONTRACT AS CONTEMPLATED BY 42 U.S.C. § 1981.

In its Motion to Dismiss, Microsoft lays out the standard for causes of action brought

pursuant to 42 U.S.C. § 1981.  (Microsoft Motion to Dismiss, pp. 15-18.)  Duke adopts and

incorporates by reference Microsoft's argument of this matter in its entirety and adds that

Plaintiff has not alleged that Duke Defendants have interfered with Plaintiff's ability to make or

enforce any contract.

### A.    Plaintiff's Claim, In Count V, Alleging Violations Of 42 U.S.C. § 1981, Is Barred By The Statute Of Limitations.

The "most appropriate or analogous" state law determines the applicable statute of

limitations for section 1981 claims. *Goodman v. Lukens Steel Co*., 482 U.S. 656, 660 (1987).

For statute of limitations purposes, the Supreme Court treats section 1981 claims like claims

under 42 U.S.C. § 1983. *See Goodman*, 482 U.S. at 660-62 (applying the rule that courts should

look to state personal injury statutes to determine the appropriate statute of limitations for section

1983 claims, adopted in *Wilson v. Garcia*, 471 U.S. 261 (1985), to section 1981 claims); *see also*

*Banks v. Chesapeake and Potomac Tele. Co.*, 802 F.2d 1416, 1421-22 (D.C. Cir. 1986) (same).

"The Supreme Court has held that in states with multiple statutes of limitations, claims under

section 1983 are governed by the residual or general personal injury statute of limitations (like

section 12-301(8)), rather than the statute of limitations for enumerated intentional torts (like

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 16

section 12-301(4)). *See Owens v. Okure*, 488 U.S. 235, 243-50 (1989). Accordingly, section 12-301(8)'s three-year statute of limitations applies to all section 1981 claims." *Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998). Since Plaintiff left Duke in May 1998, the statute of limitations for her 42 U.S.C. § 1981 claim against Duke is clearly time-barred. If Plaintiff is claiming a continuous violation, and that Duke is somehow still involved in such violations, her claim must still be restricted by the statute of limitations.

Under District of Columbia law, "[t]he statute of limitations period for continuing torts begins to run once a plaintiff has inquiry notice of a potential cause of action." *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004) (*citing Hendel v. World Plan Executive Council*, 705 A.2d 656, 667 (D.C. 1997)). Thus, a plaintiff may only pursue claims "for injuries attributable to the part of the continuing tort that was committed within the limitations period immediately preceding the date on which suit [was] brought." *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002). Plaintiff's Complaint was filed on June 30, 2003. Since courts have held that the statute of limitations in the District of Columbia for section 1981 claims is three years, Plaintiff may only claim for violations of section 1981 from June 2000 onwards. Given that Plaintiff left Duke in the summer of 1998, and that Plaintiff has not sufficiently alleged the existence of a conspiracy after that point in time (see argument *infra*), this claim is barred as to Duke by the statute of limitations.

**B.     Count VI Must Be Dismissed Because The Duke Defendants Have Not Interfered With A Contract As Contemplated By 42 U.S.C. § 1981.**

Section 1981, as amended by the Civil Rights Act of 1991, reads in relevant part that:

"All persons within the jurisdiction of the United States shall have the same right in every State

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 17

and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  To establish a claim under section 1981, the plaintiffs must show that (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract).  *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994); *Mian v. Donaldson*, *Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  The term "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994) (holding that section 1981 covers "all phases and incidents of the contractual relationship").  Plaintiff's Complaint clearly fails to allege the elements required to maintain a claim under 42 U.S.C. § 1981.  Of the three prongs required, Plaintiff has met only the first one – that she is a minority.

1.    Plaintiff Has Not Alleged Discrimination Sufficient To Meet The Second Prong Of A Claim Under 42 U.S.C. § 1981.

Duke recognizes that Plaintiff has established the first element of a section 1981 claim. However, she has failed to establish either an intent to discriminate based on race, or the impairment of contractual relations.  Plaintiff fails to establish the second prong because she does not allege discrimination with the required specificity.  "A plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 18

discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994) (*citing Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 17 (1st Cir. 1989); *Albert v. Carovano,* 851 F.2d 561, 572-73 (2d Cir. 1988) (*en banc*)); *see also Ryans v. Gresham*, 6 F. Supp. 2d 595, 603-604 (E.D. Tex. 1998) (holding that failure to include in complaint more that subjective belief that arrest was racially motivated precluded consideration of section 1981 claim); *Odom v. Columbia Univ.*, 906 F. Supp. 188, 194 (S.D.N.Y. 1995) (holding insufficient to state a claim pursuant to section 1981 allegations of racial discrimination and unequal treatment where plaintiff failed to allege a single example of a student treated differently by university).

Plaintiff's Complaint merely alleges that "[p]ersons at Duke Law have engaged in a pattern and practice of discrimination against minority students for years and they continue to engage in that pattern and practice of discrimination through today." (Compl. ¶ 36.) Plaintiff claims she was discriminated against "on the basis of race, national origin and sex by the Duke Defendants while she was a student at Duke Law, and the discrimination continued after Plaintiff transferred from that school." *Id.* ¶¶ 37, 38. Plaintiff further contends that "the discrimination Plaintiff has experienced has been designed to protect the system of discrimination against minorities that is in existence at Duke Law." *Id.* ¶ 103. These claims of discrimination are based on the allegation of a fraudulent grading scheme, *id.* ¶ 105, on the allegation that a black person had never served on the Duke Law Journal or the Journal of Law and Contemporary Problems, *id.* ¶¶ 107-108, and on the allegation that the Dean of Students at Duke Law lied to students about how to take exams in order to discriminate. *Id.* ¶¶ 106, 134.

Plaintiff's allegations, however, are nothing more than delusional conjectures, which even she acknowledges are unsubstantiated: "Plaintiff *suspected* . . . there may not have been any

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 19

minority students on either of those two law journals . . ." *id.* ¶ 109; "Plaintiff was also not *aware*

of any black person that had ever clerked on the federal appellate level and *suspected* that there

were very few . . ." *id.* ¶ 111; "Plaintiff also *suspected* that . . . there may never even have been

any black person, or minority, that had graduated from Duke Law with high honors . . ." *id.* ¶ 112

(emphasis added).  Plaintiff's allegations fail to satisfy the second prong because they are merely

subjective, conclusory assertions not one of which gives rise to a plausible inference of

discriminatory intent.  *Albert v. Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1988) (en banc)

(holding that plaintiff's complaint must assert "that the defendant['s] acts were purposefully

discriminatory. . . and racially motivated" in order to withstand motion to dismiss).  Furthermore,

Plaintiff's allegations do not demonstrate discrimination that is specific to her.  The claim that a

pattern and practice of discrimination existed at Duke is simply too broad an allegation to meet

the requirement of section 1981 and receiving unsatisfactory grades does not infer discriminatory

intent merely because the recipient is a minority.  *See, e.g., Bray v. RHT, Inc.*, 748 F. Supp. 3, 5

(D.D.C. 1990), *aff'd*, 976 F.2d 45 (D.C. Cir. 1992) ("In order to pursue a cause of action under §

1981, plaintiff cannot merely invoke his race in the course of a claim's narrative and

automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that

demonstrate that his race was the reason for defendant's actions.") (internal citations omitted).

Plaintiff's allegations of discrimination clearly fail to meet the requirements of section 1981 and

therefore Count VI should be dismissed for failure to state a claim upon which relief can be

granted.

> 2.    <u>The Alleged Discrimination Has Not Interfered With Plaintiff's Contractual Rights Sufficient To Meet The Third Prong Of A Claim Under 42 U.S.C. § 1981.</u>

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 20

Even if Plaintiff had alleged acts sufficient make a *prima facie* showing of discrimination, her claim under 42 U.S.C. § 1981 still fails as she has not satisfied the third prong of the test, namely that "the discrimination concerned one or more of the activities enumerated in the statute." *Morris v. Office Max, Inc*., 89 F.3d 411, 413 (7th Cir. 1996). In addition to the right to make and enforce contracts, the rights protected under 42 U.S.C. § 1981 are the right "to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." Since Plaintiff has not alleged a violation of any of these additional rights the only claim this Court need address is the alleged violation of the right to make and enforce contracts.

Despite a fertile imagination, all Plaintiff manages to allege is that the discrimination was intended to "adversely affect Plaintiff personally, academically and professionally," (Compl. ¶ 103), and was "designed to lower and adversely affect Plaintiff's grades, journal experience, and job prospects, including any job applications for judicial clerkships." *Id.* ¶ 104. Plaintiff never once mentions a specific contract that was interfered with by Duke. To the extent that contracts can be implied between students and universities, Plaintiff contracted with Duke to receive a legal education and a juris doctor degree and, until her transfer to Georgetown, this is precisely what she received. As Plaintiff was able to carry out her contract under the same terms and conditions as white people, there is no basis for a claim under § 1981. *Morris*, 89 F.3d at 414 (holding that plaintiffs failed to establish a § 1981 claim against the defendant store because they "were denied neither admittance or service, nor were they asked to leave the store"). The fact that she did not receive the grades she felt she was entitled to does not constitute contractual

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 21

interference.  Plaintiff is not the first, nor will she be the last, disgruntled law student to believe

her grades did not accurately reflect her ability or effort.  As Duke never contracted, either

explicitly or implicitly, to give Plaintiff the grades she felt she merited, or to place her on a

journal, or to teach her how to take exams, there has been no interference with Plaintiff's right to

enjoy the benefit of her implied educational contract.  *Bray,* 748 F. Supp. at 5 (dismissing section

1981 claim because "plaintiff has not even presented a scintilla of evidence that he was

prevented from entering into a "contractual" relationship with Rumors due to his race, in

violation of § 1981").

Any allegations that Plaintiff makes regarding impairment of prospective contracts

should likewise be held insufficient to state a claim upon which relief can be granted.  In a claim

under 42 U.S.C. § 1981, a plaintiff cannot argue that a defendant interfered with prospective

contractual relations if the plaintiff has not alleged a specific contract into which they were

prevented from entering.  *See, e.g., Morris*, 89 F.3d at 414 ("A claim for interference with the

right to make and enforce a contract must allege the actual loss of a contract interest, not merely

the possible loss of future contract opportunities."); *Jackson v. Tyler's Dad's Place, Inc*., 850 F.

Supp. 53 (D.D.C. 1994) (no discrimination because plaintiffs "never asked to be seated during

the second visit," and "never sought to enter a contractual relationship on that occasion").  Vague

allegations about lost job prospects are, therefore, not enough; Plaintiff must allege a specific

employment contract, or other contract, that Duke prevented her from entering.  Since she has

not done this, and is in fact gainfully employed in the U.S. Virgin Islands, Plaintiff's claim under

42 U.S.C. § 1981 fails to state a claim upon which relief can be granted and must be dismissed.

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 22

## V.    COUNT VII SHOULD BE DISMISSED AS PLAINTIFF'S CLAIM THAT DEFENDANTS VIOLATED 42 U.S.C. § 1985 FAILS TO ALLEGE ANY DEPRIVATION OF A RIGHT GUARANTEED AGAINST PRIVATE IMPAIRMENT

In its Motion to Dismiss, Microsoft lays out the standard for causes of action brought pursuant to 42 U.S.C. § 1985.  (Microsoft Motion to Dismiss, pp. 18-23.)  Duke adopts and incorporates by reference Microsoft's argument of this matter in its entirety and adds that Plaintiff has failed state a *prima facie* claim that Duke conspired with the other named Defendants to violate rights guaranteed against private impairment or that any such conspiracy was motivated by invidious discriminatory animus.

It is well settled law that section 1985(3) does not itself create any substantive rights but rather "serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir. 2001) (*citing Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979)).  In order to state a claim for violation of 42 U.S.C. § 1985(3), a plaintiff "must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters and Joiners, Local 610  v. Scott,* 463 U.S. 825, 828-29 (1985).

Starting with an analysis of the last factor renders analysis of the first three unnecessary as Plaintiff has failed to allege an injury to her person her property amounting to violation of a right guaranteed against private impairment.   Plaintiff's convoluted conspiracy allegations

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 23

against Duke can be distilled to the claim that Duke conspired to place Plaintiff under electronic surveillance in order to discriminate against her.  (Compl. ¶¶ 38, 39, 42.)  Even if this Court were to assume the truth of such fanciful allegations, Plaintiff's section 1985 claim would still fail as she has not, nor cannot, allege that she has been deprived of any right or privilege guaranteed against private impairment. *See Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267-68 (1993) (holding that the plaintiff must show that the conspiracy was "aimed at interfering with rights that are protected against private, as well as official, encroachment") (internal citations omitted).

The only rights that the Supreme Court has so far held to be covered by section 1985(3) are the rights guaranteed by the Thirteenth Amendment, *United States v. Kozminski,* 487 U.S. 931, 942 (1988), and the right of interstate travel, *United States v. Guest,* 383 U.S. 745, 759 n. 17 (1966).  The Supreme Court has specifically held that the right to free speech and the right to privacy are not protected against private infringement.  *See Bray,* 506 U.S. at 278; *Carpenters v. Scott*, 463 U.S. 825, 833 (1983).  Plaintiff's alleged injuries amount to nothing more than a loss of reputation, loss of enjoyment of life and loss of income. (Compl. ¶ 293.)  Even if Defendants' alleged conspiratorial actions amounted to a violation of Plaintiff's right to privacy, she has still failed to identify a right protected against private action.  *See Bray*, 506 U.S. at 278.  Analysis of the other three prongs, therefore, is unnecessary and Plaintiff's section 1985 claim must be dismissed for failure to state a claim upon which relief can be granted.

**VI.    COUNT VIII, ALLEGING VIOLATIONS OF 42 U.S.C. § 1986, ALSO FAILS TO STATE A CLAIM AND IS BARRED BY THE STATUTE OF LIMITATIONS**

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 24

In its Motion to Dismiss, Microsoft lays out the standard for causes of action brought pursuant to 42 U.S.C. § 1986.  (Microsoft Motion to Dismiss, pp. 23-25.)  Duke adopts and incorporates by reference Microsoft's argument of this matter in its entirety.  As argued by Microsoft, a claim based on section 1986 is dependent upon a valid section 1985 claim.  Since Plaintiff's section 1985 fails to state a claim upon which relief can be granted, so too does her section 1986 claim.

**VII.    COUNT V, ALLEGING VIOLATIONS OF THE FEDERAL CRIMINAL WIRETAPPING STATUTE, IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

In its Motion to Dismiss, Microsoft argues that Plaintiff's claim that Defendants have violated the federal criminal wiretapping statute is time-barred.  (Microsoft Motion to Dismiss, pp. 25-29.)  Microsoft also argues that, in the alternative, Plaintiff has failed to meet the standard required to state a claim upon which relief can be granted.  Duke adopts and incorporates by reference Microsoft's argument of this matter in its entirety.

**VIII.   BECAUSE PLAINTIFF FAILS TO PRESENT EVIDENCE OF OUTRAGEOUS CONDUCT AND EMOTIONAL INJURY SUFFICIENT TO MEET THE HIGH STANDARD FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, COUNT IX MUST BE DISMISSED**

In order to maintain a claim for intentional infliction of emotional distress, a plaintiff must demonstrate "extreme and outrageous conduct which intentionally or recklessly caused severe emotional distress." *See, e.g., Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C. 1982); *Jackson v. District of Columbia*, 412 A.2d 948, 956-57 (D.C. 1980); Restatement (Second) Torts § 46 (1965).  In order to survive a motion to dismiss, the plaintiff must show the

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 25

existence of *both* extreme and outrageous conduct, *and* severe emotional distress. In this case, Plaintiff has failed to make a *prima facie* showing of either and, therefore, Count IX of her Complaint should be dismissed with prejudice.

A.    **Plaintiff Fails To Allege Any Extreme And Outrageous Conduct Sufficient To Pursue A Claim For Intentional Infliction Of Emotional Distress.**

According to comment d of section 46, "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Restatement (Second) of Torts § 46 cmt. d (1965).  This high standard has been consistently followed by the courts in this jurisdiction since its adoption by the D.C. Court of Appeals in *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. App.), *cert. denied*, 459 U.S. 912 (1982).  *See, e.g., Ponson v. District of Columbia,* No. 01-7096, 2001 U.S. App. LEXIS 27440, at *4 (D.C. Cir. Nov. 9, 2001); *Rogala v. District of Columbia,* 161 F.3d 44 (D.C. Cir. 1998).  Insulting or offensive language or actions are not sufficient to maintain a claim: "Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."  Restatement (Second) of Torts § 46 cmt. d (1965).

Although Plaintiff never identifies which particular acts of the Defendants constitute the outrageous conduct responsible for her alleged emotional distress, it seems most likely that she is basing this claim on the alleged electronic surveillance.  Plaintiff alleges that she has been

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 26

followed wherever she goes (Compl. ¶ 67) and that the Defendants spy on her in her house, at work and at the doctor's office. *Id*. ¶¶ 54-67. The surveillance is conducted as part of a conspiracy with the government to prevent Plaintiff from embarking on a relationship with Bill Gates. *Id.* ¶¶ 57, 194. Assuming *arguendo* that Duke really was involved in such a conspiracy, Plaintiff's claim would still fail. As courts have recognized, electronic surveillance conducted by the government, pursuant to a valid warrant, is not outrageous conduct unless it "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). Establishing that the government's surveillance was outrageous is a very heavy burden. *United States v. Rahman*, 189 F.3d 88, 131 (2d Cir. 1999) ("Especially in view of the courts' well-established deference to the Government's choice of investigatory methods, the burden of establishing outrageous investigatory conduct is very heavy") *cited in U.S.A. v. Usama Bin Laden*, No. 98 Cr. 1023, 2000 U.S. Dist. LEXIS 18957, at *25 (S.D.N.Y. Jan. 2, 2001). Even non-governmental surveillance of a person, done in public, is not grounds for "outrageous conduct" sufficient for a claim of intentional infliction of emotional distress. *See, e.g., Figured v. Paralegal Technical Services, Inc.,* 555 A.2d 663 (N.J. Super. Ct. App. Div. 1990); *Forster v. Manchester,* 189 A.2d 147 (Pa. 1963). To the extent that the alleged surveillance is conducted in public spaces, therefore, Plaintiff's allegations fail to establish any tortious conduct.

Plaintiff's vague and conclusory allegations of electronic surveillance do not amount to outrageous conduct sufficient to state a claim of intentional infliction of emotional distress. This is particularly so given that Plaintiff is alleging a continuing tort and, therefore, may only pursue claims "for injuries attributable to the part of the continuing tort that was committed within the limitations period immediately preceding the date on which suit [was] brought." *Beard v.*

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 27

*Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002); *see also John McShain, Inc. v. L'Enfant Plaza Props., Inc.*, 402 A.2d 1222, 1231 n.20 (D.C. 1979) ("If . . . the continuing tort is of the type that causes a series of separate or recurrent injuries, then only those damages stemming from conduct occurring within the limitations period are recoverable."). Since Plaintiff filed her Complaint on June 30, 2003, she may only claim for emotional injury suffered in the applicable statute of limitations period preceding this date. Determination of the applicable period depends on the conduct that forms the basis of the emotional distress. If the emotional distress arises out of defamation or false light then there is a one year statute of limitations. *See, e.g., Foretich v. Glamour*, 741 F. Supp. 247, 251 (D.D.C. 1990) (applying one-year period for intentional infliction of emotional distress via libel); *Thomas v. News World Communications*, 681 F. Supp. 55, 72 (D.D.C. 1988). If, however, the emotional distress is grounded in other conduct for which no specific period is prescribed, the three-year default provision applies. *Mittleman v. United States,* 104 F.3d 410, 415-17 (D.C. Cir. 1997) (*citing Saunders v. Nemati*, 580 A.2d 660, 661-62 (D.C. 1990)). At most, therefore, Plaintiff may only claim emotional distress for conduct that occurred from June 2000 to June 2003 (when she filed her Complaint). Given that Plaintiff left Duke in May 1998 (Compl. ¶ 31-32) and that the Complaint does not adequately plead the existence of a conspiracy after that point in time, Plaintiff's claim against Duke for emotional distress caused by outrageous conduct between June 2000 and June 2003 fails to state a claim upon which relief can be granted.

  **B.**  **Plaintiff fails to present evidence of any injury sufficient to pursue a claim for intentional infliction of emotional distress.**

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 28

Not only has Plaintiff failed to allege the necessary conduct by Defendants, she has also failed to allege the necessary injury. A claim for intentional infliction of emotion distress will fail, even if the conduct was intentional, extreme and outrageous, if the plaintiff suffered no severe injury. Restatement (Second) of Torts § 46 cmt. j (1965).

According to the Restatement Second of Torts, the injury must be severe, and the law will intervene "only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46 cmt. j (1965). Absent physical injury the alleged emotional distress must be sufficient to ensure the genuineness of the claim. *See, e.g., Abourezk v. New York Airline, Inc*., 705 F. Supp. 656, 665 (D.D.C. 1989) *aff'd,* 895 F.2d 1456 (D.C. Cir. 1990) (holding that the plaintiff's claim of intentional infliction of emotional distress was deficient because it did not establish that the defendant caused an emotional disturbance so acute in nature that harmful physical consequences would be likely to result). Mere embarrassment and humiliation is not enough. *See, e.g., Waldon v. Covington*, 415 A.2d 1070 (D.C. 1980) (allegations that plaintiff suffered embarrassment and difficulty insufficient to support a finding of severe emotional distress).

In assessing the severity of the alleged injury under the Restatement, courts will look at whether or not it is a typical and common-place reaction to the alleged outrageous conduct, the duration of the injury, and whether or not the plaintiff's regular activities were hampered by the emotional distress. The burden is on the plaintiff to present evidence of severity sufficient for a court to find that emotional distress could exist as a matter of law. *See, e.g., Buckley v. Trenton Sav. Fund Soc'y,* 544 A.2d 857, 864 (N.J. 1988). Unless this Court is to take the Complaint itself as evidence of Plaintiff's severe emotional distress, the injuries that Plaintiff is alleging are

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 29

insubstantial and insufficient and amount to nothing more than embarrassment and humiliation.

(Compl. ¶ 166.)  Such suffering is not severe.  As the Restatement explains: "Complete

emotional tranquility is seldom attainable in this world, and some degree of transient and trivial

emotional distress is a part of the price of living among people."  Restatement (Second) of Torts

§ 46 cmt. j.  Furthermore, if the emotional distress complained of is typical of the situation, no

claim lies for emotional distress.

Moreoever, the Plaintiff has not alleged that the emotional "distress" she suffered

interfered in any way in her daily routine or responsibilities.  Such interruption has been held a

*prima facie* element of emotional distress.  *See, Buckley*, 544 A.2d at 865 (*construing Venerias v.

Johnson*, 622 P.2d 55, 59 (Ariz. Ct. App.1980) ("[*P*]*rima facie* element of severe emotional

distress lacking where there was no proof that plaintiff was hampered in any respect from

performing his daily functions.")).    The court in *Venerias* held that there was nothing in the

record to support a claim for intentional infliction of emotional distress.  There was no evidence

that the plaintiff had suffered any loss of earning, or any physical injury, or that she has

purchased any medication as a result of the alleged conduct, or that she "was hampered in any

respect from performing his daily functions." *Venerias,* 622 P. 2d at 59.  Exactly the same can be

said for the Plaintiff in this case.  She is gainfully employed in the U.S. Virgin Islands, she was

able to complete law school and pass the bar exam, and there is nothing in her Complaint that

indicates that she has been unable to work as a result of the alleged distress.  Indeed, she has not

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 30

alleged that she has been necessary for her to take any medical leave or seek medical treatment, or receive counseling.[2]

In this case both the elements of conduct and injury fall woefully short of the high standard required by this Court to maintain such an action. This Court should be guided by previous applications by District of Columbia courts of the Restatement (Second) of Torts, and dismiss with prejudice the claim of intentional infliction of emotional distress against Duke and Dr. Keohane.

## IX.    COUNT X FAILS TO ALLEGE WITH THE REQUIRED SPECIFICITY THE ELEMENTS NEEDED TO STATE A CLAIM OF CIVIL CONSPIRACY

A *prima facie* showing of a civil conspiracy in the District of Columbia requires satisfaction of four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). The conspiracy must be pled with specificity and mere speculation or "conclusionary statements" that defendants are part of a conspiracy is not sufficient to meet plaintiff's burden. *See, e.g., Jung v. Ass. of Am. Med. Colls.,* 300 F. Supp. 2d 119, 141 (D.D.C. 2004); *Dooley v. United Techs. Corp.,* 786 F. Supp. 65, 78 (D.C.C. 1992); *see also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984). A plaintiff must plead with particularity both the conspiracy and the overt acts within

---

[2]    To the contrary, Plaintiff has steadfastly maintained throughout these proceedings that her emotional health is intact.

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 31

the forum that are taken in furtherance of the conspiracy. *See, e.g., Jung,* 300 F. Supp. 2d at 141;

*U.S.A. v. Philip Morris Inc.,* 116 F. Supp. 2d at 116, 122 (D.D.C. 2000); *Jungquist v. Sheikh*

*Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997).

Plaintiff's allegations of a conspiracy are broadly pled as follows:  "From the end of

Plaintiff's first year of law school, the Duke Defendants conspired with the Government

Defendants to illegally place Plaintiff under electronic surveillance to obtain information to

continue to discriminate against Plaintiff, as well as to harass, humiliate, degrade, demean, and

terrorize Plaintiff."  (Compl. ¶ 38);  "After Plaintiff transferred to Georgetown Law, the Duke

Defendants conspired with the Georgetown Defendants and the Government Defendants to

continue to illegally keep Plaintiff under electronic surveillance and to discriminate against

Plaintiff." *Id.* ¶ 39. "The discriminatory, fraudulent, and criminal acts described herein include,

but is not limited to, the conspiracy between Defendants to place Plaintiff under illegal electronic

surveillance and keep Plaintiff under illegal electronic surveillance in violation of federal

criminal laws and Plaintiff's civil rights." *Id.* ¶ 42.  Because these allegations are nothing more

than "conclusionary statements" that the Defendants conspired to keep Plaintiff under illegal

surveillance, Plaintiff fails to make a *prima facie* claim of a conspiracy.

Furthermore, it is well-settled that "there is no recognized *independent* tort action for

civil conspiracy in the District of Columbia."  *Halberstam,* 705 F.2d at 477.  Instead, liability for

civil conspiracy must find its genesis in some underlying tortious act. *See, e.g.,* Restatement

(Second) of Torts § 876 cmt. b (1977) ("The mere common plan, design or even express

agreement is not enough for liability in itself, and there must be acts of a tortious character in

carrying it into execution"); W. Prosser, Law of Torts § 46, p. 293 (4th ed. 1971) ("It is only

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 32

where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable" (footnotes omitted)); *Mazloum v. District of Columbia,* Civil No. 06-0002, 2006 U.S. Dist. LEXIS 43427 (D.D.C. June 27, 2006) ("It is well-established under District of Columbia law that a common law civil conspiracy depends on the performance of some underlying tortious act, and is thus not an independent action, but instead a means for establishing vicarious liability for the underlying tort." (*citing Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001)). In addition, the underlying tort must itself have caused injury. *See Halberstam,* 705 F.2d at 479 (holding that an "agreement can only lead to liability if an act pursuant to it causes injury"); *see also Blankenship v. Boyle*, 329 F. Supp. 1089, 1099 (D.D.C. 1971) (holding that the "gist of a civil conspiracy . . . is not the agreement . . ., but the civil wrong . . . done pursuant to the agreement") (subsequent history omitted).

Despite the voluminous nature of this Complaint, there is no clear allegation of any tortious acts or injury underlying the alleged civil conspiracy. Plaintiff claims that the electronic surveillance is "in violation of federal criminal laws and Plaintiff's civil rights." (Compl. ¶ 42.) However, these are claims of criminal not tortious activity and so, even if they were true, they would fail to establish a "civil wrong" upon which Plaintiff could base a claim of civil conspiracy. Because Plaintiff has failed to allege any tort (and therefore any injury) in connection with the conspiracy, she has failed to state a claim upon which relief can be granted. Count X of the Complaint should be dismissed.

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 33

## X.    BECAUSE RICHARDS HAS NOT IDENTIFIED THE PROSPECTIVE ADVANTAGE THAT ALLEGEDLY WAS THE SUBJECT OF INTERFERENCE, COUNT XII MUST BE DISMISSED

In its Motion to Dismiss, Microsoft argues that Plaintiff's claim that Defendants have interfered with a prospective advantage fails to state a claim upon which relief can be granted as Plaintiff has failed to identify the prospective advantage allegedly thwarted by Defendants. (Microsoft Motion to Dismiss, pp. 29-31.)    Duke adopts and incorporates by reference Microsoft's argument of this matter in its entirety.

## XI.    BECAUSE RICHARDS HAS NOT ESTABLISHED THAT SHE HAS INTELLECTUAL PROPERTY RIGHTS IN THE IDEAS ALLEGEDLY STOLEN BY THE DEFENDANTS, COUNT XIII MUST BE DISMISSED

In its Motion to Dismiss, Microsoft argues that Plaintiff's claim that Defendants have stolen Plaintiff's intellectual property fails to state a claim upon which relief can be granted as Plaintiff has failed to establish that she had any intellectual property rights in the "property" that was allegedly stolen by Defendants.  (Microsoft Motion to Dismiss, pp. 32-35.)  Duke adopts and incorporates by reference Microsoft's argument of this matter in its entirety.

## <u>CONCLUSION</u>

For the foregoing reasons, Duke Defendants respectfully request that the Court dismiss Counts I-X, XII, XIII pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 34

Respectfully submitted,

DATED: August  24, 2006          **OGLETREE, DEAKINS, NASH, SMOAK &
                                 STEWART, PC**

                       By:    _____/s/_____
                              MICHAEL J. MURPHY
                              2400 N Street, N.W.
                              Fifth Floor
                              Washington, D.C. 20037
                              Telephone: (202) 887-0855
                              Facsimile:  (202) 887-0866


                              SIMONE R. D. FRANCIS*
                              Ogletree, Deakins, Nash, Smoak & Stewart, LLC
                              The Tunick Building, Suite 202
                              1336 Beltjen Road
                              St. Thomas, USVI 00802
                              Telephone: (340) 714-1235
                              Facsimile:  (340) 714-1245


                              Attorneys for Duke University,
                              Duke University School of Law,
                              Duke University Board of Trustees
                              and Nannerl Keohane



*  Application for admission pro hac vice pending.

Suzette Richards v. Duke University, et al.
Civil No. 1:06-cv-01179-RCL
Memorandum of Law in Support of Motion to Dismiss Pursuant to 12(b)(6)
Page 35

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this 24 day of August, 2006, a true and correct copy of the foregoing document was served by placing same in the United States mail, postage prepaid, addressed to:

Richard Hunter, Esq.
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix
U.S. Virgin Islands  00820

Henry Feuerzeig, Esq.
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas
U.S. Virgin Islands 00804-0756

Benton G. Peterson, Esq.
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Room E4905
Washington, D.C.  20530

Suzette Richards, Esq.
P.O. Box 223875
Christiansted, St. Croix
U.S. Virgin Islands  00822-3875

Charles E. Buffon, Esq.
Harry B. Roback, Esq.
Covington & Burlington LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

Elisabeth A. O'Brien, Esq.
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington D.C.  20005

_____/s/_____
Michael J. Murphy