UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUZETTE RICHARDS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL NO. 06-001179 (RCL) |
| | ) | |
| DUKE UNIVERSITY, DUKE UNIVERSITY | ) | |
| SCHOOL OF LAW, DUKE UNIVERSITY | ) | |
| BOARD OF TRUSTEES, NANNERL | ) | |
| KEOHANE, in her personal and | ) | |
| official Capacity as President of | ) | |
| Duke University, GEORGETOWN | ) | |
| UNIVERSITY, GEORGETOWN UNIVERSITY | ) | |
| LAW CENTER, ALBERTO GONZALES, | ) | |
| in his official capacity as Attorney General of the | ) | |
| United States, FEDERAL BUREAU OF | ) | |
| INVESTIGATION, U.S. DEPARTMENT OF | ) | |
| JUSTICE, JOHN and JANE DOES 1-10, | ) | |
| WILLIAM H. GATES, III, in his | ) | |
| personal and official capacity | ) | |
| as Chairman of Microsoft Corporation, | ) | |
| STEVE BALLMER, as Chief Executive | ) | |
| Officer of Microsoft Corporation, | ) | |
| MICROSOFT CORPORATION, MICROSOFT | ) | |
| EMPLOYEES, A-J, and MELINDA GATES, | ) | |

**FEDERAL DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

On May 8, 2006, the United States filed a Motion to Dismiss plaintiff's Amended Complaint on several grounds, including lack of subject matter jurisdiction, failure to comply with Rule 8, sovereign immunity, and failure to comply with applicable statutes of limitations. On June 28, 2006, plaintiff filed an Opposition to that Motion, arguing, *inter alia*: that her claims are not fictitious; that she is entitled to injunctive and declaratory relief against the federal

defendants on her constitutional claims; that her constitutional and tort claims against the "John Doe" federal defendants were intended to be in their personal capacities; and that the statutes of limitations do not bar any of her claims because the claims constitute a "continuing violation."

Plaintiff's Counterstatement of Facts include 14 numbered paragraphs, which plaintiff alleges comprise the disputed facts remaining in her Amended Complaint. Paragraphs 1 through 11 of this list all contain essentially the same allegation: that the federal defendants conspired with all the other defendants to place her under illegal surveillance starting in 1998. For the reasons set out in defendant's Motion to Dismiss and below, these factual allegations of a vast conspiracy among defendants are entirely fictitious and without foundation.

Plaintiff's remaining "disputed facts" all concern her legal bases for the claims enumerated in her Amended Complaint. She claims that Counts 4, 5, and 7 are brought against Attorney General Gonzales and the "Doe Defendants" in their official capacities, and DOJ and the FBI, and that she seeks declaratory and injunctive relief for those claims rather than monetary damages. Opp. (Counterstatement of Facts) at ¶¶ 12-13. It therefore appears that plaintiff has abandoned any monetary claims against the named Federal defendants. Federal defendants accept plaintiff's waiver of any claims to monetary damages from defendants Gonzales, DOJ, and the FBI. However, for the reasons set out below, plaintiff is not entitled to declaratory or injunctive relief from these defendants.

Lastly, plaintiff states that she is suing the federal "John Doe" defendants in their personal capacities for purposes of Counts 4-13 of her Amended Complaint. Opp. (Counterstatement of Facts) at 2-3, ¶ 14. For the reasons set out below, plaintiff has failed to state either constitutional or tort claims against these defendants.

ARGUMENT

I.  **Plaintiff's Argument That Her Bizarre Conspiracy Theories Are Not Fictitious Should Be Given No Weight**

Federal defendant's argued in the Motion to Dismiss that plaintiff's allegations are "totally implausible" and should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.  Federal Defendants' Motion to Dismiss at 5-6.  In her Opposition, plaintiff acknowledges that this Court may dismiss a complaint pursuant to Rule 12(b)(1) if it involves "fantastic scenarios that rise to the level of being irrational or wholly incredible."  Opp. at 9-10.  Not surprisingly, however, plaintiff denies that her allegations of a vast conspiracy among the defendants to keep her under constant covert surveillance for a variety of purposes, including preventing defendant Bill Gates from leaving his wife, fall into this category.  *Id.*

Plaintiff defends the validity of her claims by stating that she "certainly has not alleged that the Government Defendants have conspired with civilians to speak to her with props and buzz words, and she certainly has not alleged that license plates, regardless of the letters, or for that matter, the playing of music in stores and restaurants, are really part of some government sponsored plot to harass her."  Opp. at 14-15.  Plaintiff fails to recognize however that while her fact scenario is not the exact scenario of fact patterns that have been found to be incredible, her allegations are nonetheless of the same ilk in that they require the same type of vast conspiracy in order to be true.  The allegations in her Amended Complaint include:  that defendants placed hidden video cameras in her bathroom; Amended Complaint at ¶ 54; that her law school professors were surreptitiously entering her home to monitor whether she was completing her reading assignments; Amended Complaint at ¶ 180-83; that Defendant Bill Gates put untrue

information about her on the MSN website intended to suggest that plaintiff was pregnant with his child; Amended Complaint at ¶¶ 222-227; and that Duke University participated in the dissemination of the false information that plaintiff was carrying Defendant Gates' child by putting photographs in the Duke Alumni Magazine of a white adult with a black child and other pictures of children who appeared biracial.  Amended Complaint at ¶¶ 228-230.

Claims that rest on bizarre, incredible conspiracy claims are, on their face, "essentially fictitious" and can be dismissed under Rule 12 (b)(1).  *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994).  In *Best*, the Court of Appeals recognized that cases wherein a plaintiff claims "bizarre conspiracy theories . . . fantastic government manipulations of their will or mind [or] supernatural intervention," are so patently insubstantial that they may be dismissed without prejudice for want of subject matter jurisdiction under Rule 12(b)(1).  *Id*. at 330; *see also Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989); *Hagans v. Levine*, 415 U.S. 528, 536-37 (1974) (citing cases affirming dismissal of "essentially fictitious" complaints which are "'so attenuated and unsubstantial as to be absolutely devoid of merit'"); *O'Connor v. United States*, 159 F.R.D. 22, 24, 25 (D. Md. 1994) (dismissing the case and asserting that plaintiff's complaint is "totally divorced from the real world and so 'attenuated and unsubstantial as to be absolutely devoid of merit'").  This case greatly resembles *Best*.  Plaintiff asserts a vast conspiracy among many people and entities, including*, inter alia*, Duke and Georgetown University Administrations, Government Law Enforcement Officials, and Bill and Melinda Gates all in an effort to undermine plaintiff's law school grades and legal career.

Plaintiff's own reassertion of the validity of these fantastical conspiracy theories should be given no weight in the Court's analysis of their fictitious nature.  To any reasonable observer, the

claims are entirely irrational. Plaintiff's claim should therefore be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## II.     Plaintiff Has Failed to Satisfy Rule 8(a) in Her Demand for Injunctive or Declaratory Relief Against the Federal Defendants for Constitutional Claims

Rule 8(a), Fed. R. Civ. P., requires that a complaint be a "short and plain" statement showing that the pleader is entitled to relief. *See also* Fed. R. Civ. P. 8(e)(1) ("Every averment of a pleading shall be simple, concise, and direct"). The purpose of this requirement is to provide defendants fair notice of the allegations against them so that a responsive answer can be filed, an adequate defense prepared and a determination made concerning the applicability of the doctrine of res judicata. All material facts upon which plaintiff seeks to establish a right of recovery must be pled with particularity. *Elliot v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985); *Accord United States v. Philadelphia*, 644 F.2d 187, 204 (3rd Cir. 1978). Rule 8(a) also sharpens the issues to be litigated and confines discovery and the presentation of evidence at trial within reasonable bounds. *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977).

Plaintiff asserts that Counts 4, 5, and 7 of her Amended Complaint are brought against Attorney General Gonzales in his official capacity, the "Doe Defendants" in their official capacities, DOJ and the FBI, and that she seeks declarative and injunctive relief for those claims. However, plaintiff has failed to sufficiently plead this claim.

A plaintiff who seeks injunctive relief is required to specify the form of relief sought. *See, e.g., Ward v. Kennard*, 133 F. Supp. 2d 54, 59 (D.D.C. 2001). A failure to do so results in a failure to satisfy the specificity requirements of Fed. R. Civ. P. 8(a), which requires "a demand

for judgment for the relief the pleader seeks." *Id.* Plaintiff's demand for injunctive or declaratory relief in her Amended Complaint is restricted to her mention of the words "declarative and injunctive relief" in her demand for damages. She does not, either in the Amended Complaint or in the Opposition, identify what relief she seeks.

Although complaints drawn by *pro se* litigants are held to a less stringent standard than those drawn by legal counsel, *Haines v. Kerner*, 404 U.S. 519 (1972), there remains a limit to judicial indulgence with such plaintiffs. *Baldwin County Welcome Center v. Brown*, 104 S. Ct. 1723 (1974). *See In re "Santa Barbara Like It Is Today" Copyright Infringement Litigation*, 94 F.R.D. 105, 108 (D. Nev. 1982); *United States ex rel. Dattola v. National Treasury Employees Union*, 86 F.R.D. 496, 499 (W.D. Pa. 1980). Plaintiff's claim for injunctive or declaratory relief against any federal defendants must therefore be dismissed.

**III.    Plaintiff Fails to Establish a <u>Bivens</u> Cause of Action**

In her Opposition, plaintiff for the first time asserts claims against the "John Doe" defendants in their personal capacities, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Opp. at 23. However, plaintiff has failed to state a claim under *Bivens*, and the claim should be dismissed for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

In order to state a constitutional claim against a federal employee under *Bivens*, plaintiff must allege facts showing that her constitutional rights were violated by the defendant federal actor or agent. Bare allegations cannot support plaintiff's *Bivens* claims. In her Amended Complaint, plaintiff provides no facts at all to support her allegations of governmental involvement in the imagined far-reaching conspiracy she describes. The harms she alleges,

6

including poor grades and being called on in class, bear no indication of government involvement. Her sole basis for alleging involvement by any federal actors appears to be her assumption that the imagined surveillance could only have been performed by the government. Opp. at 3-4. This bare allegation, *ipse dixit*, of government involvement is insufficient to state a claim under *Bivens*.

Even if plaintiff had provided such facts, her failure to name or serve any individual federal defendants must lead to the dismissal of any individual-capacity claims against the "John Doe" defendants. Fed. R. Civ. P. 4.[1]

In the event plaintiff ever names or serves any individual federal defendants in this case, the defense of qualified immunity would apply to protect those individuals from liability on any Bivens claims. Immunity is an available defense to a federal government defendant sued for monetary damages. Claims of qualified immunity require a two-step analysis. First, the acts allegedly committed must be shown to be a constitutional violation. *Harris v. D.C.*, 932 F.2d 10, 13 (D.C. Cir. 1991). Then, the Court must consider whether the right was clearly established at the time the acts are alleged to have been committed. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations do not establish the violation of a constitutional right, the officer is entitled to immunity. *Id.* If the allegations could make out a constitutional violation, the court must ask

---

[1] It is well-established that, in an action against a federal employee in his or her individual capacity, the individually sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure. Service on the U.S. Attorney in the district where the action was brought pursuant to Fed. R. Civ. P. 4(i) " does not obviate the requirement of personal service under Fed. R. Civ. P. 4(d)(1) where the action is in substance against a federal official in his individual capacity". *See Lawrence v. Acree*, 79 F.R.D. 669, 670 (D. D.C. 1978). It is equally well-established that plaintiff must bear the burden of establishing the Court's personal jurisdiction over the defendant. *See McNutt v. General Motors Acceptance Corporation*, 298 U.S. 178, 182 (1936); *Tavoulareas v. Comnas*, 720 F.2d 192, 195 (D.C. Cir. 1983).

whether the right was clearly established, that is, whether "it would be clear to a reasonable [federal official ] that his conduct was unlawful in the situation he confronted." *Id.* at 202.

In the instant case, it would be clear to any reasonable person that plaintiff's allegations are entirely products of her own imagination. As detailed above, no objective reviewer could conclude that any federal employees were engaged in surveillance of plaintiff, in her bathroom and otherwise, in order to, *inter alia*, prevent plaintiff from getting good grades in law school and disseminate rumors that plaintiff was pregnant with the child of Defendant Bill Gates. Any *Bivens* claims should therefore be dismissed.

### IV.     Plaintiff's Argument That the FTCA Is Inapplicable to Her Tort Claims Against the Federal Defendants Is Incorrect

Plaintiff's Amended Complaint does not evidence that she exhausted administrative remedies as required by the FTCA. The FTCA is only a limited waiver of sovereign immunity for certain monetary claims against the United States. Absent full compliance with the conditions placed upon waiver of that immunity, the Court lacks jurisdiction to entertain tort claims against the United States. *GAF Corp. v. United States*, 818 F. 2d 901, 904-05 & n. 6 (D.C. Cir. 1987). One such condition - the exhaustion provision - is contained in 28 U.S.C. § 2675, which provides, in part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. 28 U.S.C. § 2675(a); *see also GAF Corp.*, 818 F. 2d at 904 n. 7.

This requirement is jurisdictional and cannot be waived. *Hohri v. United States*, 782 F.2d 227, 245-46 (D.C. Cir. 1986), *reh. denied*, 793 F.2d 304 (D. C. Cir. 1987), *rev'd. on other grounds sub nom.*, *United States v. Hohri*, 482 U.S. 64 (1987).

In her Opposition, plaintiff misconstrues the provisions of the Federal Tort Claims Act, mistakenly asserting that the administrative exhaustion requirements do not apply to her tort claims. She argues that her tort claims against individual government defendants are not precluded by the FTCA, or by her failure to exhaust its administrative requirements, because she has filed these tort claims against the government "John Doe" defendants solely in their personal capacities.[2] Opp. at 24-25.

Plaintiff misconstrues the FTCA in this argument. Although she states in her Amended Complaint that the John Doe federal defendants were acting under color of law, she adds in her Opposition that she did not intend to suggest that they were acting as federal employees.

---

[2]Although Plaintiff identifies "John Doe" defendants, it is well settled that unless an unnamed/unidentified defendant voluntarily makes an appearance or otherwise waives the lack of personal jurisdiction defense, the Court lacks personal jurisdiction over that individual. e.g., *Shipkovitz v. Mosbacher*, Civ. A. No. 90- 2159 (CRR), 1991 WL 251864 (D.D.C. Nov. 12, 1991), *aff'd*, 1992 WL 394489 (D.C. Cir. Nov. 5, 1992)(dismissing claims against John Doe defendant because D.C. Code does not provide for such constructive service). Plaintiff does not cite and Federal Defendants are not aware of any controlling authority that allows Plaintiff to sue "John Doe" defendants under *Bivens*. Accordingly, Plaintiff's claims against the " John Doe" defendants should be dismissed on jurisdictional grounds. To the extent that Plaintiff identifies an individual federal defendant that she alleges committed a common law tort against her in his/her individual capacities, the United States reserves the right to substitute itself as the sole federal defendant if it determines that person acted within the scope of his/her employment. *See* Westfall Act, 28 U.S.C. § 2679(d) (2000) and 28 C.F.R. § 15.3(a) (2002).

Amended Complaint at ¶ 23; Opp. (Counterstatement of Facts) at 1-2. Plaintiff appears to conflate the requirements of stating an FTCA claim with those of stating a *Bivens* claims.[3]

As described *supra*, plaintiff argues repeatedly that the alleged surveillance was committed by the federal government in violation of her constitutional rights. Opp. at 20-22. Immediately following that argument, however, plaintiff alleges that the federal actors engaged in this alleged surveillance were not acting on behalf of the federal government. Opp. at 22-25. She appears to be attempting to pursue common law tort claims against these "John Doe" federal defendants in their personal capacities as private individuals, oblivious to the fact that this argument would entirely undermine her constitutional claims against all federal defendants.

Therefore if the Court accepts plaintiff's apparent 'alternative' argument that the alleged surveillance was performed by individuals in their private capacities, plaintiff's constitutional claims against the FBI and the United States, and all federal defendants in their official capacities, must be dismissed. If, however, the Court accepts plaintiff's argument that the imagined surveillance was performed by federal employees acting under color of federal law, then plaintiff's tort claims must be dismissed because she has failed to exhaust the administrative remedies of the FTCA.

---

[3]  A *Bivens* constitutional tort theory fails to state a claim against Federal Defendants in their official capacities. *See Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *Deaf Smith County Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1210 (D.C. Cir. 1998). Therefore to the extent Plaintiff makes allegations against the defendants in their official capacities those claims must be dismissed with prejudice. The only claims which are permissible under a *Bivens* theory are those against defendants in their individual capacities. *Meyer*, 510 at 475. Therefore, to the extent plaintiff asserts claims for damages against defendants in their official capacities and the FBI and DOJ as agencies, such claims must be dismissed for lack of subject matter jurisdiction. The only waiver exposing the United States or its agencies to tort liability is the Federal Tort Claims Act (28 U.S.C. §§ 2671-2680), which does not apply to constitutional torts. *Risley v. Hawk*, 918 F. Supp. 18 (D.D.C. 1996).

### V.     Plaintiff's Allegations Do Not Constitute a Continuing Violation

Plaintiff argues in her Opposition that the statutes of limitations for both constitutional claims and FTCA claims are inapplicable in this case because the alleged surveillance constitutes a continuing violation. Plaintiff's waiver of any claim for monetary damages for her constitutional claims may well render the first part of this argument moot. Regardless, however, both statutes of limitations remain applicable because plaintiff has failed to demonstrate a continuing violation.

It is generally held that a cause of action will accrue, and start the limitation period running, when the elements of a tortious act by defendant and a legal injury to plaintiff coalesce. *Perkins v. Nash, et al.*, 697 F. Supp. 527, 532 (D.D.C. 1988). The continuing tort doctrine is an exception to this rule, applicable only in certain, unusual circumstances. *Id*. at 533. These circumstances include: where no single incident can be identified as the cause of significant harm; where a party continues to reap benefits from previous tortious conduct; and where it would be absurd to require a wronged patient to interrupt ongoing corrective efforts by suing her doctor. *Id. See also*, *Mittleman v. United States Dept. of Treasury*, 919 F.Supp. 461, 466-67 (D.D. C. 1995), *aff'd in part and remanded on other grounds*, 104 F.3d 410 (D.C. Cir. 1997).

None of these circumstances exists in this case. Plaintiff's Amended Complaint identifies numerous discrete instances of alleged surveillance, each resulting in a particular alleged harm. For example, plaintiff alleges that in early June of 1998, government defendants engaged in a conspiracy with Duke University to monitor plaintiff's private conversations in her home, and she was aware of the surveillance because Duke was aware of her intended transfer to Georgetown Law School and acted on that information to harass, humiliate, embarrass, and discriminate

against plaintiff. Amended Complaint at ¶¶ 165-175. These alleged harms, including that plaintiff was the first person called on in her Civil Rights class at Georgetown, occurred at discrete moments five years prior to the filing of this Amended Complaint. *Id.*

As another example, during her time at Georgetown Law School (presumably 1998-2000), plaintiff also alleges discrete acts of surveillance of her home to see if she had completed her homework assignments, and a resulting discrete harm, *i.e.*, a negative effect on her grades. Amended Complaint at ¶¶ 180-183. Plaintiff also alleges that in November, 1999, defendants illegally monitored a conversation in her home where she mentioned the potential for wireless technology to effect certain markets. Defendants then allegedly used this information to establish the MSN website, based on plaintiff's illegally intercepted ideas. Amended Complaint at ¶¶ 207-216.

Each of these allegations contains specific and discrete (if utterly fantastical) allegations of illegal actions and resulting harms. These types of claims do not establish a continuing violation. Moreover, plaintiff admits that she reported the alleged surveillance to various government agencies as early as July, 2002. Amended Complaint at ¶¶ 78, 80-87, 90. She offers no explanation for her failure to file suit until the following year.

The cases plaintiff cites in support of her continuing violation argument are inapplicable to her allegations. In *Page v. United States*, 729 F.2d 818 (D.C. Cir. 1984), the plaintiff's allegations concerned exposure to harmful drugs during the course of medical treatment. The court found a continuing violation where the injury was "gradual, resulting from the cumulative impact." The Court followed a well-established tolling doctrine of "continuous treatment" in medical malpractice cases in tolling the statute of limitations. Likewise, in *Havens Reality Corp.*

*v. Coleman, et al.*, 455 U.S. 363 (1982), plaintiffs challenged an alleged "pattern and practice" of discrimination in violation of the Fair Housing Act. The Court applied the continuing violation doctrine, within the context of what the Court regarded as the "broad remedial intent of Congress embodied in the [Title VII ]Act."

By contrast, plaintiff is not alleging a gradual history of illegal, conspiratorial surveillance that accumulated slowly over time to cause one injury. Rather, her Amended Complaint alleges a number of distinct incidents of surveillance which led to distinct harms. These claims do not constitute a continuing violation. Therefore, the two-year statute of limitations applicable to both constitutional claims arising in the Virgin Islands and to FTCA claims bar any claims arising prior to May 9, 2001 (two years prior to the date of plaintiff's Amended Complaint).

### VI. Conclusion

For all the foregoing reasons, and for the reasons stated in Federal Defendants' Motion To Dismiss, federal defendants should be dismissed from Plaintiff's Amended Complaint.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

                                                    _____
                                                    BENTON G. PETERSON, WI. Bar #1029849
                                                    Assistant United States Attorney
                                                    Judiciary Center Building
                                                    555 4th Street, N.W. – Civil Division
                                                    Washington, D.C.  20530
                                                    (202) 514-7238 514-8780 (Facsimile)
                                                     **Benton.Peterson@usdoj.gov**