UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUZETTE RICHARDS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DUKE UNIVERSITY, et al., )<br>)<br>Defendants. ) | Case No. 1:06-cv-01179-RCL |

**MEMORANDUM OF WILLIAM H. GATES, III., MELINDA F. GATES,
AND STEVEN A. BALLMER IN SUPPORT OF THEIR
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

Defendants **WILLIAM H. GATES, III, MELINDA F. GATES, AND STEVEN A. BALLMER** (collectively, the "Defendants"), through their undersigned counsel, submit this Memorandum in support of their Motion to Dismiss for Lack of Personal Jurisdiction to the extent they have been sued in their personal capacity.

**I.    STATEMENT OF UNDISPUTED JURISDICTIONAL FACTS[1]**

1.    The Defendants are domiciled in the State of Washington. William H. Gates III ("Bill Gates") Declaration at 3, attached as **Exhibit A**; Melinda F. Gates ("Melinda Gates") Declaration at 2, attached as **Exhibit B**; Steven A. Ballmer ("Ballmer") Declaration at 3, attached as **Exhibit C**; First Amended Complaint (the "Amended Complaint") at ¶¶ 14, 15 and 18.

2.    None of the Defendants ever has been a resident of the District of Columbia, Melinda Gates Dec. at 2; Ballmer Dec. at 3, except Bill Gates who resided in the District for

---

[1] The Court may consider information outside of the pleadings when considering a motion to dismiss for lack of personal jurisdiction. *See e.g., U.S. v. Philip Morris Inc.*, 116 F.Supp.2d 116, 120 fn. 4 (D.D.C. 2000).

three months in 1972.  Bill Gates Dec. at 3.

3. The Defendants do not know the Plaintiff Suzette Richards ("Richards"). Bill Gates Dec. at 7; Melinda Gates Dec. at 8; Ballmer Dec. 8. None of the Defendants ever has met or seen Richards. *Id*.; Amended Complaint at ¶ 225. To the best of their knowledge they have never engaged in any conversations with her or had any form of communication with her. Bill Gates Dec. at 8; Melinda Gates Dec. at 7.

4. The Defendants never have personally owned any real property in the District of Columbia. Melinda Gates Dec. at 3; Ballmer Dec. at 4, Bill Gates Dec. at 4.

5. The Defendants have no bank accounts in the District of Columbia. Bill Gates Dec. at 5; Melinda Gates Dec. at 4; Ballmer Dec. at 5.

6. Although Bill Gates, Melinda Gates and Steve Ballmer have made trips to the District of Columbia for pleasure or business, during which they have met with Government officials and others and have given speeches and made public appearances, those meetings, speeches and appearances by Bill Gates and Steve Ballmer have been in their official capacity on behalf of Microsoft and in their scope of employment for Microsoft, Bill Gates Dec. at 7; Ballmer Dec. at 7, or in the case of Bill Gates and Melinda Gates also in their capacity as co-chairs of the Bill & Melinda Gates Foundation. Bill Gates Dec. at 7; Melinda Gates Dec. at 7.

7. Steve Ballmer does not conduct or transact business in the District of Columbia, except on behalf of and in the scope of his employment for Microsoft. Ballmer Dec. at 6, 7. Bill Gates does not conduct or transact business in the District of Columbia, except on behalf of and in the scope of his employment for Microsoft or on behalf of the Bill & Melinda Gates Foundation. Bill Gates Dec. at 7, 8.

8.  Melinda Gates never has been employed in the District of Columbia and does not conduct or transact business in the District of Columbia, except on behalf of the Bill & Melinda Gates Foundation or in connection with her service on the board of directors of the Washington Post Company since September 2004. Melinda Gates Dec. at 6, 7.

9.  None of the allegations of the First Amended Complaint arise from Bill Gates', Melinda Gates' or Steve Ballmer's personal contacts with the District of Columbia or has any relation to them. Bill Gates Dec. at 9; Melinda Gates Dec. at 7; Ballmer Dec. at 9.

10. None of the Defendants consents to the exercise of personal jurisdiction over them by this Court. Bill Gates Dec. at 7; Melinda Gates Dec. at 7; Ballmer Dec. at 7.

## II. LEGAL STANDARD

In the District of Columbia, a plaintiff has the burden of establishing that personal jurisdiction exists by demonstrating a factual basis for the exercise of such jurisdiction over each defendant. *Atlantigas Corp. v. Nisource, Inc.,* 290 F.Supp.2d 34, 42 (D.D.C. 2003); *see also Novak-Canzeri*, 864 F.Supp. at 205 (citing *First Chicago Int'l*, 836 F.2d at 1378; *Crane*, 894 F.2d at 456; *Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 70 (D.D.C.1992); *Mitchell Energy Corp. v. Mary Helen Coal Co. Inc.,* 524 F.Supp. 558, 561 (D.D.C.1981)). The plaintiff must show sufficient contact with the forum for each defendant. *Id.* (citing *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (rejecting aggregation of co-defendants' forum contacts in determining personal jurisdiction because "the requirements of *International Shoe* [*v. Washington*, 326 U.S. 310 (1945)] must be met as to each defendant over whom a state court exercises jurisdiction")). In attempting to satisfy this burden, a plaintiff may not rest on bare allegations or conclusory statements alone and must make at least a *prima facie* showing to avoid dismissal for want of

jurisdiction. *Id.*; *Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F.Supp.2d 34, 56 (D.D.C. 2005); *see also Novak-Canzeri*, 864 F.Supp. at 205 (citing *First Chicago Int'l*, 836 F.2d at 1378; *Sunlite, Inc. v. BFG Bank AG,* 849 F.Supp. 74, 75 (D.D.C.1994); *Dooley*, 786 F.Supp. at 70). Additionally, under the District of Columbia long-arm statute, D.C. Code Ann. §13-423, a plaintiff must allege specific facts evidencing purposeful activity by defendants in the District of Columbia by which they invoked the benefits and protections of its laws. *First Chicago Int'l*, 836 F.2d at 1378-79; *Meyers v. Smith,* 460 F.Supp. 621, 622 (D.D.C. 1978); *Mitchell Energy Corp.*, 524 F.Supp. at 563.

In determining whether a plaintiff has demonstrated that the defendant's contacts with the forum suffice to justify the exercise of personal jurisdiction, "the Court is no longer bound to treat all of plaintiff's allegations as true." *Id.* (citing *TIFA, Ltd. v. Republic of Ghana,* C.A. No. 99-1513, 1991 WL 179098 *1, *8 (D.D.C. 1991)); *see also Atlantigas Corp.,* 290 F.Supp.2d at 42; *First Chicago Int'l*, 836 F.2d at 1378; *Islamic American Relief Agency*, 394 F.Supp.2d at 56. Accordingly, "[w]hen a court is considering a challenge to its jurisdiction over a defendant or a res, it may receive and weigh declarations and any other relevant matter to assist it in determining the jurisdictional facts." *Id.; see also First Chicago Int'l*, 836 F.2d at 1378; *Islamic American Relief Agency*, 394 F.Supp.2d at 56; *Atlantigas Corp.,* 290 F.Supp.2d at 42; *Asociacion de Reclamantes v. United Mexican States,* 735 F.2d 1517, 1519 n. 1 (D.C. Cir. 1984).

Thus, although genuine factual disputes may be resolved in favor of the plaintiff, when a plaintiff's allegations are called into question by affidavits or declarations, the plaintiff must produce counter-veiling evidence sufficient to create a factual dispute. If there is no genuine factual dispute, the Court should find that it has no personal jurisdiction over the defendants.

### III.     ARGUMENT

**A.     The Defendants' contacts with the District of Columbia must be based on their personal contacts and not Corporate or Foundation business.**

While the Defendants Bill Gates and Steve Ballmer have been sued in their official capacities as Chairman and Chief Executive Officer, respectively, of Microsoft, they also have been sued personally.  It is well settled that personal jurisdiction over a corporation does not, *ipso facto*, confer jurisdiction over officers of that corporation in their personal capacities.  *See generally Keeton v. Hustler Magazine,* 465 U.S. 770, 780 n. 13 (1984); *see also Shaffer v. Heitner*, 433 U.S. 186, 215-16 (1953).  A corporation's contacts with the District of Columbia are not imputed to the individual acting on behalf of the corporation.  *See, e.g., Overseas Partners, Inc. v. Progen Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti,* 15 F.Supp.2d 47, 51 (D.D.C. 1998) ("A court does not have jurisdiction over individual officers and employees of a corporation just because the court has jurisdiction over the corporation"); *see also Wiggins v. Equifax, Inc.,* 853 F.Supp. 500, 503 (D.D.C. 1994); *Richard v. Bell Atlantic Corp., Inc.,* 976 F.Supp. 40, 49-50 (D.D.C. 1997).  Rather, personal jurisdiction over officers of a corporation in their individual capacities must be based on their *personal* contacts with the forum, not their acts and contacts carried out solely in a corporate capacity.  *Id.* (citing, *inter alia*, *Wiggins,* 853 F.Supp. at 503).

An individual's contact with the District of Columbia undertaken on behalf of a corporation and within the scope of employment are considered a *corporate* contact, not a personal contact.  *See, e.g., Overseas Partners,* 15 F.Supp.2d at 51 (finding that "[a]lthough plaintiff has proffered evidence that [the corporate officer] traveled to the District, engaged in contract negotiations in the District, and ultimately signed a contract with a substantial

connection to the District," this did not subject the officer in his individual capacity to the jurisdiction of the court because "all these activities were apparently carried out on behalf of defendant [corporation]"); *Wiggins*, 853 F.Supp. at 503 (denying personal jurisdiction over corporate officer even where "Plaintiff goes on to assert that [corporate officers] supervised from Virginia various subordinates who collected information and made reports from both Virginia and the District of Columbia," and "followed [corporate officer's] instructions and provided regular consumer [sic] reports from both the District of Columbia and Virginia, orally and in writing, for [the corporation]); *Richard*, 976 F.Supp. at 49-50 (denying jurisdiction over company official because "[a]ll of these alleged jurisdictional facts involve the individual defendants' official duties for Bell Atlantic Corporation-setting policies, communicating with employees, conducting investigations, and making employment decisions"); *but see Schwartz v. CDI Japan, Ltd.*, 938 F.Supp. 1, 6 (D.D.C. 1996) (finding jurisdiction where company official "personally invested" in the program that is the subject matter of the lawsuit).

A contrast of two District of Columbia cases illustrates the extent of personal involvement that must take place before the corporate insulation is shed. In *Richard*, the plaintiff alleged that the court had personal jurisdiction over the Vice-President for Human Resources of Bell Atlantic Corporation because:

> (1) he is "responsible for setting Human relations policies and procedures for BAC and its subsidiaries and [is] able to make decisions concerning the hiring, firing, RIF's, investigations of claims of discrimination, training, and numerous other areas affecting Plaintiff's [sic] employment;" (2) he "intentionally, deliberately and with actual malice [took] actions and made decisions which adversely, directly and disparately impacted upon African-American employees within BAC's over 61,000 employee workforce," resulting in harm to employees in Washington, D.C. and elsewhere; (3) he participated in "Diversity Management Programs" in Washington, D.C.; (4) he was in charge of selecting the type of testing to be administered throughout Bell Atlantic companies; (5) he has

> "condoned and approved racially-segregative policies carried out by Bell Atlantic;" (6) he has made remarks which shows his racial biases; and (7) he has been "involved in the day-to-day employment decision making processes" within the Bell Atlantic companies and directed investigations of employees within those companies.

*Richard,* 976 F.Supp. at 50 (internal quotations omitted) (bracketing in original).  The Court summarily found that because "[a]ll of these alleged jurisdictional facts involve the individual defendants' official duties for Bell Atlantic Corporation-setting policies, communicating with employees, conducting investigations, and making employment decisions," there could be no jurisdiction over the corporate official in his individual capacity.  *Id.*

Conversely, in *Schwartz*, the Court asserted personal jurisdiction over a corporate official in his individual capacity where the corporation was private, closely held and the official not only was a personal signatory to the assignment of the contract at issue but had personally invested in the program and as such was conducting business not only on behalf of CDI-Japan but also as an individual investor in connection with the contract that gave rise to the lawsuit. The present case is more analogous to *Richard* than *Schwartz*.  Microsoft is a publicly traded company like Bell Atlantic in *Richard* and unlike CDI-Japan in *Schwartz*.

For the same reasons that Bill Gates and Steve Ballmer cannot be subject to jurisdiction based on their Microsoft contacts, personal jurisdiction cannot be asserted over Bill Gates and Melinda Gates based on their Bill & Melinda Gates Foundation contacts.

Bill Gates, Melinda Gates and Steve Ballmer are afforded another layer of protection because under District of Columbia law, government contacts are exempted from jurisdictional analysis.  Under the "Government Contacts" exception to personal jurisdiction, "a person or company does not subject itself to the jurisdiction of the courts of the District of Columbia

merely by filing an application with a government agency . . . or by seeking redress of grievances from the Executive Branch or Congress." *Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.*, 989 F.Supp. 265, 271 (D.D.C. 1998) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983), *cert denied*, 467 U.S. 1210 (1984); *Freiman v. Lazur*, 925 F.Supp. 14, 24 (D.D.C. 1996); *Environmental Research Int'l., Inc. v. Lockwood Greene Engineers, Inc.,* 335 A.2d 808, 813 (*en banc*)). "Furthermore, under the government contacts exception, a person or entity that has unsuccessfully petitioned the Executive Branch, an independent agency or Congress and then seeks redress before the federal or local courts in the District of Columbia is not thereby 'transacting business' for purposes of the long-arm statute." *Id.*

Notably, this Court has recently clarified the extensive scope of the Government Contacts exception. In *World Wide Minerals Ltd. v. Republic of Kazakstahn*, 116 F.Supp.2d 98, 105-06 (D.D.C. 2000), the issue before the court was whether a corporation's meetings with government officials, membership in trade organizations and signing of a bi-lateral agreement between two nations fell within the Government Contacts exception. The Court held that membership in trade organizations and signing a bi-lateral agreement fell under the exception, but meetings with government officials did not because they were proprietary in nature. *Id.* at 106. Although this Court considered the meetings with government officials in its jurisdictional analysis, the Court did not find personal jurisdiction over the corporation because the plaintiff failed to "demonstrate a sufficient connection" between the meetings and the alleged causes of action.

Here, any contact with Washington, D.C., conducted by Bill Gates or Steve Ballmer on behalf of Microsoft, which is within the scope of their employment duties, may not properly be

utilized by the Court in its jurisdictional analysis. Nor may the contacts by Bill and Melinda Gates on behalf of the Bill & Melinda Gates Foundation within the scope of their duties on behalf of the Foundation be utilized by this court for personal jurisdiction over them.

**B.    This Court lacks personal jurisdiction under District of Columbia and Federal law.**

Rule 4(k)(1)(A) permits a federal court to obtain jurisdiction over a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state or territory in which the district court is located. Similarly, Rule 4(e) authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits. In an action brought in the District of Columbia against a non-resident, "the Court may look to the District of Columbia long-arm statute to determine whether it has personal jurisdiction," *Novak-Canzeri v. Saud*, 864 F.Supp. 203, 205 (D.D.C. 1994) (citing *Crane v. Carr,* 814 F.2d 758, 762 (D.C.Cir.1987)), "and it is established that the long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause of the Constitution." *Id.* (citing *First Chicago Int'l v. United Exchange Co. Ltd.,* 836 F.2d 1375, 1377 (D.C.Cir.1988); *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 810-811 (D.C.App.1976) (*en banc*)).

The District of Columbia has general jurisdiction statutes that pertain to foreign corporations, D.C. Code Ann. § 13-334, and resident individuals, D.C. Code Ann. § 13-422, but no general jurisdiction statute that pertains to non-resident individuals. Since service outside of the District of Columbia only is allowed where authorized by D.C. Code Ann. § 13-424, and because a federal court only is authorized to assert jurisdiction over a non-resident to the extent available under District of Columbia law, *see* Fed. R. Civ. P. 4(e), the Court may only assert

jurisdiction over the Defendants pursuant to the long-arm statute.

### 1. The District of Columbia long-arm statute does not vest jurisdiction over the Defendants due to the lack of a significant connection between them and the allegations in the Amended Complaint.

The District of Columbia Long-Arm Statute, D.C. Code Ann. § 13-423(b), provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him."[2] This section merely is a

---

[2] The entire statute provides:

    (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --

      (1) transacting any business in the District of Columbia;

      (2) contracting to supply services in the District of Columbia;

      (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

      (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

      (5) having an interest in, using, or possessing real property in the District of Columbia;

      (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

      (7) marital or parent and child relationship in the District of Columbia if:

        (A) the plaintiff resides in the District of Columbia at the time the suit is filed;

        (B) such person is personally served with process; and

        (C) in the case of a claim arising from a marital relationship:

          (i) the District of Columbia was the matrimonial domicile of the parties immediately prior to their separation, or

          (ii) the cause of action to pay spousal support arose under the laws of the District of Columbia or under an agreement executed by the parties in the District of Columbia; or

        (D) in the case of a claim affecting the parent and child relationship:

          (i) the child was conceived in the District of Columbia and such person is the parent or alleged parent of the child;

          (ii) the child resides in the District of Columbia as a result of the acts, directives, or approval of such person; or

          (iii) such person has resided with the child in the District of Columbia.

      (E) Notwithstanding the provisions of subparagraphs (A) through (D), the court may exercise personal jurisdiction if there is any basis consistent with the United States Constitution for the

codification of a longstanding constitutional threshold for specific jurisdiction.[3] *See generally*, *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 326 (D.C.App. 2000). The court must resolve these questions based on the circumstances that the particular case presents. *Burger King v. Rudzewicz,* 471 U.S. 462, 485 (1985).

This Court has pronounced that "D.C. Code Ann. § 13-423(b) requires a *significant connection* between the claim and alleged contact with the forum." *World Wide Minerals*, 116 F.Supp.2d 98, 106 (emphasis added). From the declarations of the Defendants it is clear that the allegations of the Amended Complaint are not in any way connected to their contacts with the District of Columbia, let alone significantly connected. Since the burden to demonstrate

---

exercise of personal jurisdiction.
(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

[3] Section 13-423(b) of the long-arm statute essentially codifies the first prong of *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). In accord with *International Shoe*, a two-prong test is applied to determine whether a court may constitutionally gain personal jurisdiction over a nonresident: (1) "the defendant must have made constitutionally sufficient 'minimum contacts' with the forum" and (2) "if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.'" *Id.* Under the first prong of *International Shoe*, the key focus is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (punctuation omitted). Reasonable anticipation means that the defendant must have "purposefully directed his [or her] activities at residents of the forum," *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984), and the litigation must have resulted from alleged injuries that "arise out of or relate to those activities." *Burger King,* 471 U.S. at 472. It also is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253 (1958).

The policy behind the forseeability norm is that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" *Burger King,* 471 U.S. at 475 (citations omitted). The key to the constitutional analysis this Court must undertake is the nexus between the contacts purposefully established within the forum by the defendant and the alleged injury. *Burger King*, 471 U.S. at 475 ("Jurisdiction is proper. . .where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.") (emphasis in original) (citations omitted).

personal jurisdiction is on Richards, *Atlantigas*, 290 F.Supp.2d at 42; *Novak-Canzeri*, 864 F.Supp. at 205, should she be unable to produce evidence of a significant connection between the Defendants' personal contacts with the District of Columbia and the allegations contained in her Amended Complaint, then the Court should find the District of Columbia long-arm statute does not provide personal jurisdiction over the Defendants in their personal capacities.

    **2.    Asserting personal jurisdiction over the Defendants is inconsistent with bedrock notions of due process.**

Even if the Court were to find that there is a significant connection between the Defendants personal contacts with the District of Columbia and the allegations of the Amended Complaint, then it still must find that doing so comports with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316.

Since the Defendants have directly challenged the alleged personal contacts with the District of Columbia alluded to in the Amended Complaint, Richards must prove the existence of personal contacts with the District of Columbia by Steve Ballmer, Bill Gates, and Melinda Gates and show a significant connection between those contacts and the allegations contained in the Plaintiff's Amended Complaint. To allow personal jurisdiction to vest over the Defendants based merely on the conclusory allegations in plaintiff's Amended Complaint would dismantle the constitutional anchor that is the first prong of *International Shoe* and that has been codified in the D.C. Code.

**IV.    CONCLUSION**

Neither Bill Gates nor Steve Ballmer are subject to the jurisdiction of this Court by virtue of being stockholders or their positions at Microsoft Corporation and neither Bill Gates nor Melinda Gates are subject to the jurisdiction of this Court by virtue of their positions with the

Bill & Melinda Gates Foundation. In addition, there is no basis for exercising jurisdiction over Steve Ballmer or Bill or Melinda Gates under the District of Columbia long-arm statute or the general jurisdictional statutes of the District of Columbia. Accordingly, it is respectfully requested that this Court dismiss the First Amended Complaint against the Defendants Bill Gates, Melinda Gates, and Steven Ballmer to the extent they have been sued personally for lack of personal jurisdiction over them.

September 15, 2006                    Respectfully submitted,

/s/ Charles E. Buffon                    
COVINGTON & BURLING LLP
Charles E. Buffon (D.C. Bar # 29983)
Harry B. Roback (D.C. Bar # 485145)
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291


_____
DUDLEY, TOPPER AND FEUERZEIG, LLP
HENRY L. FEUERZEIG*
Law House
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, VI 00804
Telephone:    (340) 715-4443
Facsimile:    (340) 715-4400
Email: hfeuerzeig@dtflaw.com

Attorneys for William H. Gates, III, Melinda F. Gates and Steven A. Ballmer

_____
*  Application for admission to this Court *pro hac vice* is pending.

## CERTIFICATE OF SERVICE

It is hereby certified that on this the 15th day of September, 2006, a true and exact copy of the foregoing **MEMORANDUM OF WILLIAM H. GATES, III., MELINDA F. GATES AND STEVEN A. BALLMER IN SUPPORT OF THEIR MOTION TO DISMISS** was served, via electronic service, U.S. Mail, postage prepaid, or via e-mail to:

Suzette Richards, Esq.
P.O. Box 223875
Christiansted, St. Croix
U.S. Virgin Islands  00822-3875
E-Mail:  sjrich13@yahoo.com

Richard H. Hunter, Esq.
**HUNTER, COLE & BENNETT**
Pentheny Building - 3rd Floor
1138 King Street - Suite 301
Christiansted, St. Croix
U.S. Virgin Islands  00820
E-Mail:  rhunter@hcbvilaw.com

Simone R.D. Francis, Esq.
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, LLC**
The Tunick Building - Suite 202
1336 Beltjen Road
St. Thomas, Virgin Islands   00802
E-Mail: simone.francis@odnss.com

Benton G. Peterson, Esq.
Assistant U.S. Attorney
**U.S. DEPARTMENT OF JUSTICE**
555 Fourth Street N.W.
Room E4905
Washington D.C.   20530
E-Mail:  benton.peterson@usdoj.gov

Elizabeth A. O'Brien, Esq.
**WILLIAMS & CONNOLLY**
725 12th Street, N.W.
Washington, D.C.   20005
E-Mail:  eobrien@wc.com

Michael J. Murphy, Esq.
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
2400 N Street, N.W.
Fifth Floor
Washington, D.C.   20037-1153
E-Mail:  michael.murphy@odnss.com

/s/ Harry B. Roback
Harry B. Roback