# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUZETTE RICHARDS, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL NO. 06-01179 (RCL) |
| | ) | |
| v. | ) | ACTION FOR DAMAGES, |
| | ) | DISCRIMINATION, AND |
| DUKE UNIVERSITY, DUKE UNIVERSITY | ) | DECLARATORY AND |
| SCHOOL OF LAW, DUKE UNIVERSITY | ) | INJUNCTIVE RELIEF |
| BOARD OF TRUSTEES, NANNERL | ) | |
| KEOHANE, in her personal and official | ) | |
| Capacity as President of Duke University, | ) | |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY LAW CENTER, | ) | |
| ALBERTO GONZALES, in his official capacity | ) | |
| as Attorney General of the United States, | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | **JURY TRIAL DEMANDED** |
| JOHN AND JANE DOES 1-10, | ) | |
| WILLIAM H. GATES, III, in his personal and | ) | |
| official capacity as Chairman of Microsoft | ) | |
| Corporation, STEVE BALLMER, in his personal | ) | |
| and official capacity as Chief Executive Officer | ) | |
| of Microsoft Corporation, MICROSOFT | ) | |
| CORPORATION, MICROSOFT EMPLOYEES | ) | |
| A-J, and MELINDA GATES, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

## PLAINTIFF'S OPPOSITION TO THE DUKE DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

**COMES NOW**, Plaintiff, *pro se*, and hereby respectfully opposes Defendants Duke

University, Duke University School of Law ("Duke Law"), Duke University Board of Trustees,

and Nannerl Keohane's (collectively "Duke Defendants") Motion to Dismiss that was brought

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure that was filed on August 24,

2006.

**FACTUAL BACKGROUND**

Plaintiff's Complaint in this matter stems from the discrimination she experienced while she was a first year law student at Duke Law.  *See* First Am. Compl.  Plaintiff had realized, from her first year of law school, that Duke Law had in place a system of discrimination, that had been used to discriminate against minorities, particularly black students, for the more than twenty (20) years that black students had attended the school.  First Am. Compl. at ¶¶ 35-36, 107.  Indeed, as a result of this system of discrimination, black students had been excluded from participation on the school's two most prestigious journals, received lower grades than white students, and had been denied the honors they would otherwise have received if it were not for the system of discrimination.  First Am. Compl. at ¶¶ 107-08, 112, 117.  The discrimination also had the effect of preventing minorities from obtaining certain jobs considered to be prestigious in the legal profession, like clerkships on the federal appellate and district court level.  First Am. Comp. ¶ 111.

As a first year law student at Duke Law, Plaintiff discovered that one of the ways Duke Law facilitated this overall system of discrimination was by lying to students about how to take exams.  First Am. Compl. at ¶¶ 105-06.  However, some background is necessary to truly understand what it meant by this statement.  As of the beginning of the 1997-1998 school year, which was Plaintiff's first year of law school, there had never been a black student that had served on either the Duke Law Journal ("DLJ") or the Law and Contemporary Problems, which are two of the most prestigious journals at Duke Law, in the more than twenty years that black students had attended the school.  First Am. Compl. at ¶¶ 107-08.  At the beginning of Plaintiff's first year of law school, a second year black student had explained to Plaintiff that the reason that

there had never been a black person on these journals, in all the years that black students had attended the school, was because black students did not know how to take exams.  First Am. Compl. at ¶ 113.  Indeed, during the 1996-1997 school year, which was the year *immediately before* Plaintiff had started law school, a group of law professors at Duke Law had even taken it upon themselves to volunteer to "help" and work with black students so they could learn how to take exams and do well enough to secure placement on the DJL and other journals at Duke Law. First Am. Compl. at ¶ 119.  Of course, however, even with this "help", and even though all or almost all of the black first year law students competed in the school's write on competition, no black student did well enough to secure placement on either the DLJ or the LCP.  First Am. Compl. at ¶¶ 120-21.  In fact, upon information and belief, even with this "help" no black student did well enough to secure placement on any of the school's journals at the end of the 1996-1997 school year.  First Am. Compl. at 122.

This is the context in which Plaintiff began her first year of law school at Duke Law in the Fall of 1997.  It was later on, in the Fall of 1997, that Dean Susan Sockwell, who was the Dean of Students at the time, gave students instructions on how they should take their law school examinations.  First Am. Compl. at ¶ 106.  Interestingly enough, black students who had been supposedly "helped" by law professors during the 1996-1997 school year, also instructed black first year students to take their examinations in the same manner that Dean Sockwell had instructed.  First Am. Compl. at ¶ 123.  Plaintiff, however, decided to take her first year exams in the way that she did because of the instructions that she had received from Dean Sockwell.  First Am. Compl. at ¶ 124.

After Plaintiff received her grades from the three exams that she had taken during her first semester of law school, they were lower than Plaintiff had expected and this prompted

Plaintiff to ask her law professors to allow her to see the examinations of the students who had received the highest grades in the class so she could see how they had taken their examinations. First Am. Compl. at ¶ 125. Only two of Plaintiff's professors, however, allowed her to see the examinations. First Am. Compl. at ¶ 126. Plaintiff's third professor, who was the professor that had taught Plaintiff Contracts, refused to let Plaintiff see the examinations of the students who had received the highest grades in the class. First Am. Compl. at ¶ 128. It should be noted that Plaintiff's Contracts' Professor was one of the professors who had volunteered to supposedly "help" black students learn how to take exams during the 1996-1997 school year. First Am. Compl. at ¶ 132.

Nevertheless, when Plaintiff reviewed the exams of the students who had received the highest grades in two of the three courses that she had taken during her first semester, she realized that the persons who had received the highest grades in the class were persons who did NOT take their law school examinations in the way that Dean Sockwell had instructed. First Am. Compl. at ¶ 127. Thereafter, because Plaintiff had relied on Dean Sockwell's fraudulent misrepresentation about how to take law school exams and further felt that Dean Sockwell's actions were discriminatory, she went to speak to Dean Sockwell about the instructions she had given. First Am. Compl. at ¶ 124, 133. Although Dean Sockwell acted as though she did not know her instructions were fraudulent, and that she had made an innocent error, the intentional and willfulness of her acts, and the fact that it was done to facilitate the overall system of discrimination at that school, was evidenced by the fact that after Plaintiff spoke to her, she did absolutely nothing to correct her misrepresentations, and final exams, at that time, were about one (1) month away. First Am. Compl. at ¶ 136-37. Plaintiff, who was so disgusted with the racism and bigotry at Duke Law, and other discriminatory acts that she had experienced, decided

4

to e-mail all of the black students who were on the Black Law Students Association e-mail list what she had learned about the taking of law school exams.  First Am. Comp. at ¶ 138.  Though Plaintiff considered suing Duke Law because of the discrimination she experienced during her first year of law school, and even told a classmate about this, she ultimately opted to transfer to Defendant Georgetown University Law Center ("Georgetown Law").  First Am. Compl. at ¶ 139, 32.

However, the Duke Defendants continued to fear that Plaintiff would sue the school because of the discrimination that they had subjected her to, which might in turn have exposed the system of discrimination at the school and also lowered the school's rank on the U.S. News and World Report Law School Rankings.  First Am. Compl. at ¶ 150.  The Dean of Duke Law at the time, Pamela Gann, even told Saundra Dockery, who had supervised Plaintiff when she worked at a work study job during undergrad at Duke, that she would do "anything" to keep the law school in the top ten.  First Am. Compl. at 156.  In fact, the Duke Defendants were so afraid that Plaintiff would file an action against them for discrimination, that they did not just contact Saundra Dockery, but also contacted the Government Defendants, and illegally conspired with the Government Defendants to place Plaintiff under electronic surveillance so they could obtain information to continue to discriminate against Plaintiff, to essentially undermine and discredit any claim of discrimination that Plaintiff might make against them.  First Am. Compl. at ¶¶ 38, 49, 142-43, 147, 178, 186-91.

Indeed, it should be noted that from the outset, the surveillance that Plaintiff has been subjected to, which has included listening devices and video surveillance, was always illegal as there was no basis in law or fact to place Plaintiff under any electronic surveillance.  First Am. Compl. at ¶ 48, 54.  In fact, the electronic surveillance that Plaintiff has been subjected to was

never related to any criminal investigation and at no time has there ever been probable cause to place Plaintiff under any electronic surveillance.  First Am. Compl. at ¶52-53.  Instead, it was Plaintiff's objection to discriminatory practices at Duke Law that prompted the illegal surveillance that not only allowed the Duke Defendants, the Georgetown Defendants and the Microsoft Defendants to obtain information to discriminate against Plaintiff, but also allowed for private information, including medical information about Plaintiff, to be disseminated to many people.  First Am. Compl. at ¶¶ 60, 68-69, 71-72.  Although Plaintiff graduated from law school in late May of 2000, the illegal electronic surveillance that she was placed under has continued ever since and has followed Plaintiff no matter where she has lived or where she has went, for more than five (5) years.  First Am. Compl. at ¶¶ 32, 38-40, 43-46, 49.

Nevertheless, the Duke Defendants were also so afraid that Plaintiff would sue them for discrimination that they not only illegally placed Plaintiff under electronic surveillance, but also placed <u>one</u> black female student on one of the school's most prestigious journal's, right after Plaintiff transferred from the school, for the first time in the history of the school.  First Am. Compl. at ¶ 110.  Still, the Duke Defendants were so afraid that Plaintiff would sue them for discrimination that they actually contacted and conspired with persons at Georgetown Law to adversely affect Plaintiff professionally, personally and academically.  First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91.

More specifically, persons at Duke Law contacted and conspired with persons at Georgetown Law to adversely affect Plaintiff's overall educational experience at Georgetown Law, including lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely affecting Plaintiff's classroom experience, journal experience and job prospects.  First Am. Comp. at ¶¶ 147-48, 175-79, 186-91.  Indeed, this conspiracy that existed

between persons at Georgetown Law and Duke Law, and other defendants named herein, was essentially done to undermine any claim of discrimination that Plaintiff could make against the Duke Defendants, which was always based on Plaintiff's race, ethnicity and gender.  First Am. Compl. at ¶¶ 49, 142-43, 147, 178, 186-91.

In fact, at the end of Plaintiff's second year of law school at Georgetown Law, Plaintiff had submitted a draft of an article that she had worked on, which involved equal protection gender jurisprudence, to the *Georgetown Journal of Gender and the Law*, because Plaintiff had always been interested in issues related to gender.  First Am. Compl. at ¶ 188.  Although Plaintiff was a third year law student at Georgetown Law at the time the draft was being edited, the draft was radically changed to include issues on sexuality, and no one ever advised Plaintiff about any of the changes that were made to the draft.  First Am. Compl. at ¶¶ 189-90.  In fact, even though Plaintiff had contributed little to the article that was ultimately printed, and she had no knowledge of the sexuality issues included in the article, Plaintiff's name nevertheless appeared on the article as though she wrote it.  First Am. Comp. at ¶ 191.  Plaintiff did not even learn about the changes that had been done to the article until she saw copy of the article, for the first time, in December of 2001, which was about a year and a half after she had graduated from law school.  First Am. Compl. at ¶¶ 32, 191.  Still, it should also be noted that during Plaintiff's third year of law school at Georgetown Law, Plaintiff even had a professor announce, in a civil rights class that she was taking, that for the first time in all the years that he had been teaching the class, he was going to include a day on homosexual civil rights issues.  First Am. Compl. at ¶ 192.

Nevertheless, even though Plaintiff graduated from law school in May of 2000, the Duke Defendants and Georgetown Defendants still continued to interfere with Plaintiff personally and

professionally.  First Am. Compl. at ¶¶ 230-31, 287, 291-92.  Indeed, the Duke Defendants, Georgetown Defendants, and Government Defendants, have all continued to conspire to keep Plaintiff under illegal electronic surveillance because they not only want to discriminate against Plaintiff professionally, which is why the illegal surveillance has existed where Plaintiff has worked, but also because they also wish to interfere with Plaintiff personally, as they fear that if Plaintiff is not kept under illegal electronic surveillance Plaintiff could have a relationship with a man who is both white and wealthy.  First Am. Compl. at ¶¶ 46, 57, 64-65, 292.

The Microsoft Defendants did not join the conspiracy to discriminate against Plaintiff until Plaintiff's third year of law school.  First Am. Compl. at ¶ 40.  The Microsoft Defendants intercepted the illegal electronic surveillance that Plaintiff was being subjected to, and repeatedly used information they learned from the illegal electronic surveillance to exploit Plaintiff, benefit themselves financially, and also to harass Plaintiff by putting various things on the company's MSN website and connecting those things to Plaintiff.  First Am. Compl. at ¶¶ 214-20, 223-32, 268-77.

## STANDARD OF REVIEW

"On a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts."  *Hopkins v. Women's Division General Board of Global Ministries*, 238 F. Supp. 2d 174, 177 (D.D.C. 2002) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1975)) (citation omitted).  "However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint."  *Hopkins*, 238 F. Supp. at 178.  "In deciding whether to dismiss a claim under Rule

12(b)(6), the Court is able to only consider the facts alleged in the complaint, documents

attached as exhibits or incorporated by reference in the complaint, and matters about which the

Court may take judicial notice."  *Id.*  "The Court will dismiss a claim pursuant to Rule 12(b)(6)

only if the defendant can demonstrate 'beyond a reasonable doubt that the plaintiff can prove no

set of facts in support of [her] claim which would entitle [her] to relief'."  *Id.*

**ARGUMENT**

## I.  PLAINTIFF HAS STATED A CAUSE OF ACTION FOR FRAUD

The Duke Defendants have alleged that Plaintiff has failed to allege the elements of fraud

with the required specificity.  *See* Duke Defs. Mot. to Dismiss at 5.  However, this argument is

misplaced.  A claim for fraud "must comply with Federal Rule of Civil Procedure 9(b)'s

requirement that circumstances constituting fraud or mistake be stated with particularity."

*United States v. Intrados/International Management Group*, 265 F. Supp. 2d 1, 5-6 (D.D.C.

2002) (citations omitted).  "The elements that must be plead with specificity are matters such as

the time, place, and contents of the false representations, since the rule is chiefly concerned with

the elements of fraud."  *Id.* at 6.  "The particularity requirement, however, does not abrogate the

requirements of Rule 8, and it should be harmonized with the general directives in subdivisions

(a) and (e) of Rule 8 that pleadings contain a short and plain statement of the claim or defense

and that each averment be simple, concise, and direct."  *Id.*  "Furthermore, a plaintiff need not

allege with specificity each element of [her] cause of action if it contains allegations from which

an inference may be drawn that the plaintiff will produce evidence on the essential elements."

*Id.*

Here, Plaintiff has alleged that the Duke Defendants had in place a fraudulent grading

scheme.  First Am. Compl. at ¶ 296.  Plaintiff has further alleged that Dean Sockwell, in

furtherance of this fraudulent grading scheme, lied to Plaintiff about how examinations should be taken. First Am. Compl. at ¶ 297. Plaintiff has alleged that this fraudulent grading scheme allowed the Duke Defendants to grade students on things, like race, which have nothing to do with actual academic performance. First Am. Compl. at ¶ 144. Plaintiff has alleged that because of the discrimination she experienced at Duke Law she decided to transfer to Georgetown Law to complete her legal education. First Am. Compl. at ¶ 35.

Plaintiff has alleged that at Georgetown Law they represent to students that they anonymously grade students, as this is the policy of this school. First Am. Compl. at ¶ 148. However, such a representation was fraudulent as to Plaintiff because Plaintiff was not being anonymously graded during the two years that she was at Georgetown Law. First Am. Compl. at ¶ 148. In fact, even before Plaintiff had began her first day of class at Duke Law, the Duke Defendants had already contacted persons at Duke Law to adversely affect Plaintiff's overall educational experience at Georgetown Law, which included lowering and adversely affecting Plaintiff's grades, and this conduct continued throughout Plaintiff's remaining two years of law school. First Am. Compl. at ¶ 178. Accordingly, for the reasons that have been stated herein, Plaintiff has plead her cause of action for fraud with the required specificity.

## II. PLAINTIFF HAS STATED CLAIMS PURSUANT TO 42 USC § 2000d AND 20 U.S.C. § 1681

The Duke Defendants have argued that Plaintiff has failed to state a claim for racial discrimination or sexual harassment. *See* Duke Def.'s Mot. to Dismiss at 9-12. However, as will be demonstrated below, all of these arguments are misplaced.

### a. The Duke Defendants intentionally discriminated against Plaintiff based on her race and national origin in violation of 42 U.S.C. § 2000d[1]

---

[1]  The reference to Duke Defendants, in relation to arguments made pursuant to 42 U.S.C. § 2000d and 20 U.S.C. § 1681, does not include Nannerl Keohane in her personal capacity.

Title VI of the Civil Rights Act of 1964, which is codified at 42 U.S.C. § 2000d *et seq.*, provides, in pertinent part, as follows: "No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Essentially, Title VI prohibits federally assisted programs or activities, like private educational institutions, from discriminating on the basis of race, color or national origin. *See id.*; 42 U.S.C. § 2000d-4a (defining "program or activity" and "program" to include "all of the operations of a college, university or other postsecondary institution. . . any part of which is extended Federal financial assistance.").

As this Court noted in *Chandamuri v. Georgetown University*, 274 F. Supp. 2d 71, 77-78 (D.D.C. 2003), a plaintiff does not have to set forth the *prima facie* elements of a discrimination claim to survive a motion to dismiss. *See id.*; *Sparrow v. United Air Lines*, 216 F.3d 1111, 1114 (D.C. Cir. 2000). Rather, to satisfy the pleading requirements in a discrimination claim Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'." *Id.* "The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 711 F.2d at 293. Indeed, "[t]he provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." *Id.*

In the case *sub judice*, Plaintiff's Complaint has given the Duke Defendants ample notice of what her claims are, and the basis upon which these claims rest. Plaintiff has alleged that the Duke Defendants have engaged in pattern and practice of discriminating against minorities for years. First Am. Compl. at ¶ 36. Plaintiff has alleged that one of the ways that the Duke Defendants facilitated the system of discrimination was by lying to students about how to take exams. First Am. Compl. at ¶¶ 105-06, 119-27. Plaintiff has alleged that Dean Susan Sockwell lied to Plaintiff about how exams should be taken, and even though Plaintiff spoke to Dean Sockwell about what she had learned about how exams should be taken, Dean Sockwell did nothing to correct what she had told students, even though final exams, at the time, were about a month away. First Am. Compl. at ¶¶ 106, 127, 133-37. Plaintiff has alleged that because of Dean Sockwell's inaction Plaintiff actually ended up e-mailing all of the students on the Black Law Student Association's e-mail list what she had learned about how exams should be taken. First Am. Compl. at ¶ 138.

Plaintiff has alleged that she considered suing Duke Law because of the discrimination she experienced during her first year of law school, and even told a classmate about this, although she ultimately opted to transfer to Georgetown Law. First Am. Compl. at ¶ 139, 32. However, Plaintiff has further alleged that the Duke Defendants were so afraid that Plaintiff would sue them for discrimination that they actually contacted and conspired with persons at Georgetown Law to adversely affect Plaintiff professionally, personally and academically. First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91. More specifically, Plaintiff has alleged that persons at Duke Law contacted and conspired with persons at Georgetown Law to adversely affect Plaintiff's overall educational experience at Georgetown Law, including lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely

affecting Plaintiff's classroom experience, journal experience and job prospects.  First Am.
Comp. at ¶¶ 147-48, 175-79, 186-91.

Plaintiff has alleged that persons at Duke Law did not just contact persons at Georgetown
Law to discriminate against Plaintiff, as they also contacted the Government Defendants and
conspired with them to illegally place and continue to keep Plaintiff under electronic
surveillance, so that they could obtain information to discriminate against Plaintiff.  First Am.
Compl. at ¶¶ 38-39.  Plaintiff has alleged that she has been subjected to a breathtakingly broad
form of surveillance, that began as early as June of 1998, which was at the end of Plaintiff's first
year of law school, and has continued ever since.  First Am. Compl. at ¶¶ 38-46, 60, 64, 165.

Nevertheless, notwithstanding the foregoing, the Duke Defendants have tried to claim
that the allegations in Plaintiff's Complaint are "nothing more than 'conclusory allegations
unsupported by any factual assertions'."  Duke Defs.' Mem. of Law at 10.  However, this
argument is misplaced.  Indeed, even though Plaintiff is not required to set out the precise facts
upon which her claims are based, *see Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983),
Plaintiff's Complaint still states specific factual assertions on which her claims are based, and the
allegations are more than sufficient to give the Duke Defendants notice of what Plaintiff's claims
are and the basis upon which those claims rest.

In fact, the Duke Defendants even go on to list some of the factual assertions that are
listed in six paragraphs in Plaintiff's Complaint and further claim that the assertions they list
would not support a reasonable inference that the acts were motivated by racial animus or
discriminatory intent.  *See* Duke Defs.' Mem. of Law at 11.   However, even this argument is
misplaced.  Indeed, the Supreme Court has already held, in a discrimination context, that a
plaintiff does not even have to allege circumstances which support an inference of discrimination

to survive a motion to dismiss. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002); *see also Phillip v. University of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003). Nevertheless, Plaintiff would note that she has alleged facts that are sufficient to show that the Duke Defendants intended to discriminate against her on the basis on race.

Indeed, it is not just that Plaintiff has specifically alleged that the discrimination was based on race, First Am. Compl. at ¶¶ 37-40, 293, but rather the nature and extent of the Duke Defendants' conduct that establishes an intent to discriminate because of Plaintiff's race and national origin. Indeed, it should be noted that administrators at educational institutions do not usually lie to students about what is expected on examinations. Moreover, students transfer from one institution to another every year, and when these transfers occur, professors at the former school do not contact professors at the school that the student in transferring to in order to discriminate against the student that has transferred. In fact, when students transfer from one institution to another, professors at the former school certainly do not contact persons in the United States Government to put the student under illegal electronic surveillance to obtain information to discriminate against the transferring student. The simple fact of the matter is that the sort of conduct the Duke Defendants have engaged in in this case has been outrageous, and there really is no question that their actions were motivated by racial animus and an intent to discriminate.

### b. The Duke Defendants retaliated against Plaintiff in violation of 42 U.S.C. § 2000d

As this Court stated in *Chandamuri*, "an action for retaliation is implicitly within the scope of Title VI's prohibition against intentional discrimination." *Chandamuri*, 274 F. Supp. 2d at 83. However, "[a]s with a discrimination claim, a plaintiff is not required to set forth the *prima facie* elements of a retaliation claim at the initial stage." *See id.* (citing *Sparrow*, 216 F.3d

at 1116).  Rather, to satisfy the pleading requirements Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure).  "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'." *Id.*

In the case *sub judice*, Plaintiff's Complaint satisfies the pleading standards required by Rule 8(a), as it clearly put the Duke Defendants on notice of Plaintiff's retaliation claim and the basis of that claim.  Indeed, it should be noted that even though Plaintiff is not even required to plead allegations that would state a *prima facie* case for a claim of retaliation, she has nevertheless done so.  "[T]o meet the prima facie elements for a claim of retaliation, a plaintiff must demonstrate that: (1) [she] engaged in a protected activity; (2) [she] was subjected to adverse action and (3) there existed a causal link between the adverse action and the protected activity."  *Chandamuri*, 274 F. Supp. 2d at 84.  In addition, a plaintiff "must also demonstrate that his exercise of protected rights was known to the defendant."  *Id.*  (citations omitted).

A plaintiff can be held to have engaged in protected activity where he or she opposes conduct that he or she reasonably believes to be in violation of Title VI.  *See Carter-Obayuwana v. Howard University*, 764 A.2d 779, 790 (D.C. Ct. App. 2001)  Thus, "[t]o satisfy the first element of a claim for retaliation, [Plaintiff] need only prove that [she] had a reasonable good faith belief that the practice [she] opposed was unlawful under Title VI."  *Chandamuri*, 274 F. Supp. 2d at 84.  In addition, Plaintiff must also demonstrate that she "voice[d the] complaint about . . . the allegedly unlawful activity."  *Carter-Obayuwana*, 764 A.2d at 791.  Plaintiff "need not, however, employ any 'magic words' such as 'discrimination' for the 'communication of a

complaint of unlawful discrimination. . . may be *inferred* or *implied*' from the surrounding facts." *Id.* (emphasis in original).

In the case *sub judice*, Plaintiff has satisfied the first element of a claim for retaliation. Indeed, Plaintiff engaged in protected activity when she went to speak to Dean Sockwell to complain about the erroneous instructions that she had given about the taking of law school examinations. First Am. Compl. at ¶¶ 106, 124, 133-34. In fact, Plaintiff had viewed Dean Sockwell's instructions to be discriminatory because Plaintiff had relied on her instructions, which were the same instructions that black students who had supposedly been helped by law professors during the 1996-1997 school year had given, yet the people who had gotten the highest grades on the exams were people who did NOT take their exams in the way that she had instructed. First Am. Compl. at ¶¶ 123-24, 127. Plaintiff's complaint to Dean Sockwell clearly put Duke Law, and by extension, Duke University, on notice of what Plaintiff considered discriminatory conduct.[2]

Plaintiff has also shown that she was subject to adverse action. In this regard, an adverse action can be regarded as any act of retaliation that would dissuade an individual from making or supporting a claim of discrimination. *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006). Here, Plaintiff had complained to Dean Sockwell about the instructions she had given in early April of 1998. First Am. Compl. at ¶ 136. After Plaintiff had spoken to Dean Sockwell, and after Plaintiff had even mentioned to another first year law student that she was considering filing an action against the school for discrimination, the Duke Defendants began to seek

---

[2] Of course, it should be noted that after Plaintiff spoke to Dean Sockwell, she did not do anything to correct what she had told students and final exams at the time were about a month away. First Am. Compl. at ¶ 137. Accordingly, in light of Dean Sockwell's inaction, Plaintiff went ahead and sent an e-mail to all of the black students who were on the Black Law Student Association's e-mail list so she could tell them what she had learned about the taking of law school exams. First Am. Compl. at ¶ 138 .

personal information about Plaintiff. First Am. Compl. at ¶ 154. Thereafter, from the end of

Plaintiff's first year of law school, the Duke Defendants contacted the Government Defendants

to illegally place Plaintiff under electronic surveillance to obtain information to discriminate

against her, and Plaintiff has remained under surveillance ever since. First Am. Compl. at ¶¶ 38,

43-46, 60, 62,165. Even though Plaintiff transferred from Duke Law to Georgetown Law after

her first year of law school, persons at Duke Law nevertheless contacted persons at Georgetown

Law to adversely affect Plaintiff's overall educational experience at Georgetown Law, including

lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely

affecting Plaintiff's classroom experience, journal experience and job prospects. First Am.

Compl. at ¶¶ 147-48, 175-79, 186-91. Clearly, these acts, which amount to a concerted effort to

destroy Plaintiff personally, professionally, and academically, because she objected to

discriminatory practices at Duke Law, would surely be considered acts that would discourage

any student from objecting to discrimination at that school.

Finally, Plaintiff has established a causal link between the adverse action and the

protected activity. In fact, Plaintiff has specifically alleged that the illegal electronic surveillance

was prompted by the fact that Plaintiff objected to discriminatory practices at Duke Law. First

Am Compl. at ¶ 68. Plaintiff has also alleged that the illegal surveillance was used to obtain

information to discriminate against Plaintiff to attempt to cover up the discrimination at Duke

Law, and persons at Duke Law contacted persons at Georgetown Law to adversely affect

Plaintiff professionally, academically and personally, in furtherance of the conspiracy to

discriminate against Plaintiff. First Am. Compl. at ¶¶ 49, 173. However, notwithstanding the

foregoing, the simple fact of the matter is that the mere fact that the Duke Defendants engaged in

these acts after Plaintiff complained about Dean Sockwell's fraudulent instructions is sufficient

to establish a causal link. *See, e.g.*, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980) (noting that a causal connection can be established by showing that protected activity is followed by discriminatory treatment).

### c. The Duke Defendants discriminated against Plaintiff on the basis of sex in violation of 20 U.S.C. § 1681

Title IX of the Education Amendments of 1972, which is codified at 20 U.S.C. §§ 1681-88, provides, in relevant part, as follows: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Essentially, Title IX, like Title VI, prohibits federally assisted programs or activities, like private educational institutions, from discriminating on the basis of sex. *See id.*; 20 U.S.C. § 1687 (defining "program or activity" and "program" to include "all of the operations of a college, university or other postsecondary institution. . . any part of which is extended Federal financial assistance."). Indeed, "Title IX was enacted to supplement the Civil Rights Act of 1964's ban on racial discrimination in the workplace and in universities." *Yusuf v. Vassar*, 35 F.3d 709, 714 (2d Cir. 1994). In fact, "[b]ecause Title IX mirrors the substantive provisions of Title VI of the Civil Rights Act of 1964, courts have interpreted Title IX by looking to the body of law developed under Title VI, as well as by caselaw interpreting Title VII." *Id.* (citations omitted).

As this Court noted in *Chandamuri*, a plaintiff does not have to set forth the *prima facie* elements of a discrimination claim to survive a motion to dismiss. *See Chanramuri*, 274 F. Supp. 2d at 77-78; *Sparrow*, 216 F.3d at 1114. Rather, to satisfy the pleading requirements in a discrimination claim Plaintiff's Complaint need only contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure).

In the case *sub judice*, Plaintiff has stated a cause of action for discrimination on the basis of sex.  After Plaintiff had spoken to Dean Sockwell about the erroneous instructions that she had given with respect to the taking of law school exams, and after Plaintiff had mentioned to another first year law student that she was considering filing an action against the school for discrimination, the Duke Defendants began to seek personal information about Plaintiff, including information of a sexual nature.  First Am. Compl. at ¶ 154.  Thereafter, from the end of Plaintiff's first year of law school, the Duke Defendants contacted the Government Defendants and conspired with them to illegally place Plaintiff under electronic surveillance to obtain information to discriminate against her, and Plaintiff has remained under surveillance ever since. First Am. Compl. at ¶¶ 38, 43-46, 60, 62,165.

The surveillance has been a breathtakingly broad form of surveillance which has consisted of video surveillance and listening devices in Plaintiff's home and even her place of employment.  First Am. Compl. at ¶ 54.  There has been information of a medical nature that has been released into the public domain because of the illegal electronic surveillance, and Plaintiff continues to be subject to the illegal surveillance not only because the Duke Defendants want to interfere with Plaintiff professionally, but because they want to interfere with Plaintiff personally as well.  First Am. Compl. at ¶¶ 60, 62, 165, 292.  Indeed, the conspiracy to place Plaintiff under illegal electronic surveillance, which has continued for more than a five (5) year period of time, and which has been incredibly intrusive and degrading, was done not only because Plaintiff is black, but also because she is a woman.  First Am. Compl. at ¶¶ 54, 43-44, 293.

> **d.  The actions of the Duke Defendants constituted sexual harassment in violation of 20 U.S.C. § 1681**

A plaintiff does not have to set forth the *prima facie* elements of a discrimination claim to survive a motion to dismiss. *See Chandamuri*, 274 F. Supp. 2d at 77-78; *Sparrow*, 216 F.3d at 1114. Rather, to satisfy the pleading requirements in a discrimination claim Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure). Nevertheless, in order to state a claim for sexual harassment pursuant to Title IX, a plaintiff must show "(1) that she was student, (2) who was subjected to harassment (3) based upon sex; (4) that the harassment was sufficiently severe and pervasive to create an abusive educational environment; and (5) that a cognizable basis for institutional liability exists." *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 66 (1st Cir. 2002). "To satisfy the fifth part of this formulation, [a] plaintiff must prove that a school official authorized to take corrective action had actual knowledge of the harassment, yet exhibited deliberate indifference to it." *Id.*

In the case *sub judice*, Plaintiff has stated a cause of action for sexual harassment. Plaintiff transferred from Duke Law to Georgetown Law to complete her legal education. First Am. Compl. at ¶ 32. However, the Duke Defendants had nevertheless contacted and conspired with the Government Defendants to place Plaintiff under a breathtakingly broad form of illegal electronic surveillance which continued throughout Plaintiff's time at Georgetown Law and which has continued since. First Am. Compl. at ¶ 38. The surveillance included video surveillance and listening devices in Plaintiff's home. First Am. Compl. at ¶ 54. The surveillance even resulted in the dissemination of private medical information about Plaintiff into the public domain while she was a student at Georgetown Law. First Am. Compl. ¶ 60. The purpose of the surveillance was to obtain information to discriminate against Plaintiff and

adversely affect Plaintiff's educational environment and deprive Plaintiff of her right to have an equal educational opportunity. First Am. Compl. at ¶ 71. Defendant Nannerl Keohane, who was President of Duke University at the time, along with other persons on the Duke University Board of Trustees, had knowledge of the conduct, but did nothing to stop it and in fact joined in the conspiracy to violate Plaintiff's rights. First Am. Compl. at ¶¶ 99-102. Indeed, the conspiracy to place Plaintiff under illegal electronic surveillance, which has continued through Plaintiff's two years at Georgetown Law, and which was incredibly intrusive and degrading, was done not only because Plaintiff is black, but also because she is a woman. First Am. Compl. at ¶¶ 54, 43-44, 293.

### III. PLAINTIFF HAS STATED A CAUSE OF ACTION AGAINST THE DUKE DEFENDANTS FOR VIOLATIONS OF HER CONSTITUTIONAL RIGHTS

The Duke Defendants have incorporated and adopted, by reference, the arguments made by the Microsoft Defendants with respect to the constitutional violations that are alleged in Count IV of the Complaint. *See* Duke Defs. Mem. of Law at 13. Accordingly, Plaintiff hereby incorporates and adopts by reference all of the arguments that she made in her Opposition to the Microsoft Defendants Motion to Dismiss, in response to those arguments. *See* Pl.'s Opp'n to Microsoft Defs.' Mot. to Dismiss at 16-22.

### IV. PLAINTIFF HAS STATED A CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1981

The Duke Defendants have adopted and incorporated, by reference, the arguments that the Microsoft Defendants made in their Motion to Dismiss regarding 42 U.S.C. § 1981. *See* Duke Defs.' Mem. of Law at 15. Accordingly, Plaintiff hereby adopts and incorporates by reference all of the arguments she submitted in her Opposition to the Microsoft Defendants' Motion to Dismiss regarding 42 U.S.C. § 1981. *See* Pl.' Opp'n to Mot. to Dismiss at 22-32.

Plaintiff, however, nevertheless adds that contrary to arguments made by the Duke Defendants, Plaintiff has stated a cause of action against them pursuant to 42 U.S.C. § 1981.

>    **a.  Plaintiff has stated a cause of action against the Duke Defendants for violations of her rights pursuant to 42 U.S.C. § 1981**

The Duke Defendants have argued that Plaintiff has failed to "allege discrimination with the required specificity." Duke Defs.' Mem. of Law at 17. The Duke Defendants have also argued that "the Duke Defendants have not interfered with a contract as contemplated by 42 U.S.C. § 1981" and that Plaintiff has failed to establish that "the discrimination concerned one or more of the activities enumerated in" 42 U.S.C. § 1981. *Id.* at 15-16, 20. However, all of these arguments are misplaced.

First, the Supreme Court has already held, in a discrimination context, that a plaintiff does not have allege to circumstances which support an inference of discrimination to survive a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 515; *see also Phillip*, 316 F.3d at 298. Rather, to satisfy the pleading requirements in a discrimination claim Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'." *Id.*

While the Duke Defendants have relied on *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994), *Dartmouth Reivew v. Darmouth College*, 889 F.2d 13, 17 (1st Cir. 1989); *Albert v. Carovano*, 851 F.2d 561, 572-73 (2d Cir. 1988) (en banc), *Ryans v. Gresham*, 6 F. Supp. 2d 595, 603-04 (E.D. Tex. 1998), and *Odom v. Columbia University*, 906 F. Supp. 188, 194 (S.D.N.Y. 1995), to support their claim that Plaintiff is required to "allege events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially

discriminatory intent", Duke Defs.' Mem. of Law 17-18, their reliance on these cases is

misplaced.  Indeed, all of these cases were decided prior to the Supreme Court's decision in

*Swierkiewicz*, where the Court clearly held, in a discrimination context, that a plaintiff does not

have to allege circumstances which support an inference of discrimination to survive a motion to

dismiss.  *See Swierkiewicz*, 534 U.S. at 515.  The simple fact of the matter is that contrary to

arguments that have been put forth by the Duke Defendants, civil rights cases are not subject to

any heightened pleading standard.  *See Swierkiewicz*, 534 U.S. at 515; *Sparrow*, 216 F.3d at

1115.

        Nevertheless, notwithstanding the foregoing, Plaintiff would note that she has alleged

facts that are sufficient to show that the Duke Defendants intended to discriminate against her on

the basis on race.  Indeed, it is not just that Plaintiff has specifically alleged that the

discrimination was based on race, First Am. Compl. at ¶¶ 37-40, 293, but rather the nature and

extent of the Duke Defendants' conduct, which has gone on for years, that establishes an intent

to discriminate because of Plaintiff's race.

        In addition, the Duke Defendants' arguments are also misplaced because the allegations

in Plaintiff's Complaint clearly show that the Duke Defendants have interfered with Plaintiff's

right to contract to obtain a legal education free of racial animus, and that they have further

interfered with Plaintiff's right to contract to earn a living free of racial discrimination.  Further,

while it is not entirely clear what the Duke Defendants mean when they claim that they have not

interfered with a contract as contemplated by 42 U.S.C. § 1981, Plaintiff would submit that third

parties can be held liable for violating and conspiring to violate an individual's contract rights

under 42 U.S.C. § 1981.  *See Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir. 1975); *Vietnamese

Fishermen's Ass'n*, 518 F. Supp. at 1008.; *Sullivan v. Little Hunting Park*, 396 U.S. 229, 237

(1969) (holding, in the context of 42 U.S.C. § 1982, that the right to lease was protected against the actions of third parties and the immediate lessor).  As such, the Duke Defendants can be held liable for interfering with Plaintiff's contract to obtain a legal education from the Georgetown Defendants, and her contracts for employment after she left law school.

In order to state a claim under Section 1981, plaintiff must show: "1) plaintiff's membership in a racial minority; 2) discrimination based on one or more of the activities enumerated in the section; and 3) an intent to discriminate on the basis of race by the defendant." *Tripp v. Long Island University*, 48 F. Supp. 2d 220, 223 (E.D.N.Y. 1999).  No state action is required, as the rights that are protected under Section 1981(a) are protected against impairment from private discrimination.  *See* 42 U.S.C. § 1981(c) (stating "rights protected by the section are protected against impairment by nongovernmental discrimination"); *Vietnamese Fishermen's Ass'n*, 518 F. Supp. 993, 1008 (S.D. Tex. 1981) (stating "under 42 U.S.C. § 1981 private citizens are proper defendants"); *Phillip*, 316 F.3d at 299 (holding "that the equal benefit clause of Section 1981(a) does not require state action"); *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (holding that "Section 1981 plainly protects against impairment of its equal benefit clause by private discrimination").

In the case *sub judice*, Plaintiff has stated a cause of action against the Duke Defendants under Section 1981.  Indeed, Plaintiff, as a black woman, has clearly met the first factor.  In addition, Plaintiff has also met the second and third factors as the Duke Defendants have not only engaged is discriminatory conduct, based on Plaintiff's race, that was meant to deprive Plaintiff of her right to "make and enforce contracts", but they have also engaged in discriminatory conduct, based on Plaintiff's race, that was meant to deny Plaintiff "the full and

equal benefit of . . . laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981.

First, Plaintiff had a right to contract to pursue the profession of her choosing, free of any racial animus, and the discriminatory conduct of the Duke Defendants denied Plaintiff this right. When Plaintiff enrolled at the Duke University School of Law, and then later enrolled at the Georgetown University Law Center, an implied contract arose between Plaintiff and these institutions.  *See Tripp*, 48 F. Supp. 2d at 224 ("[C]ourts have held that when student enrolls at a university, an implied contract arises."); *Pride v. Howard University*, 384 A.2d 31, 34 (D.C. 1978) (recognizing "a contractual relationship exists between a university and its students"). Further, with respect to any place that Plaintiff has worked, she clearly contracted to earn a living.  *Cf. Vietnamese Fishermen's Ass'n*, 518 F. Supp. at 1008.

The express language of Section 1981 states the term "make and enforce contracts" not only includes the "making, performance, modification and termination of contracts" but also "the enjoyment of ***all*** benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Clearly, a term of the implied contract to obtain a legal education was Plaintiff's right to obtain her law degree without being subject to any discriminatory conduct.  *Cf. Tripp*, 48 F. Supp. 2d at 224.  Similarly, a term of Plaintiff's contract to earn a living was the right to work at her job without being subject to any discrimination.  *Cf. id.*; *see also Vietnamese Fisherman's Ass'n*, 518 F. Supp. at 1008.

However, in the case *sub judice*, Plaintiff was simply denied the right to contract to obtain a legal education or to earn a living, free of racial animus.  It should be noted that Plaintiff was discriminated against on the basis of race while she was a first year law student at Duke Law.  First Am. Compl. ¶¶ 123-27, 133-37, 142-44.  Even though Plaintiff had told a fellow

classmate that she was considering legal action against Duke Law because of the discrimination against minorities at that school, Plaintiff instead decided to transfer to Georgetown Law after the end of her first year.  First Am. Compl. at ¶ 139.  However, the Duke Defendants, who feared Plaintiff would take legal action against them because of the discriminatory practices at that school, contacted the Government Defendants, and conspired with the Government Defendants to illegally place Plaintiff under electronic surveillance so they could obtain information to continue to discriminate against Plaintiff, and essentially undermine and discredit any claim of discrimination that Plaintiff might make against them.  First Am. Compl. at ¶¶ 38, 49, 142-43, 147, 178, 186-91.

Indeed, the Duke Defendants did not just contact the Government Defendants, as they also contacted and conspired with the Georgetown Defendants to adversely affect Plaintiff's overall educational experience at Georgetown Law, including lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely affecting Plaintiff's classroom experience, journal experience and job prospects.  First Am. Comp. at ¶¶ 147-48, 175-79, 186-91.  In fact it should be noted that even since Plaintiff graduated from law school, Plaintiff has still continued to be subjected to the illegal electronic surveillance that began while she was in law school, even at places of employment.  First Am. Compl. at ¶¶ 41-44, 62-65.

While the Duke Defendants have claimed that any claim that Plaintiff makes based on a prospective contract would be insufficient to state a claim under Section 1981, *see* Duke Defs.' Mem. of Law at 21, Plaintiff would note that she has not alleged a violation of Section 1981 based on a prospective contract.  Rather Plaintiff has alleged that since she left law school, she has continued to be subject to illegal electronic surveillance, even at places of employment, *see* First Am. Compl. at ¶¶ 41-44, 62-65, and this constitutes a violation of Section 1981.  Indeed,

Plaintiff has a right to contract to work at a job without being subject to the illegal electronic surveillance that Plaintiff has been continuously subjected to and which sole purpose has been to facilitate discrimination against her.

Further, Plaintiff would note that contrary to what the Duke Defendants have claimed, Plaintiff need not allege that the Duke Defendants prevented her from entering into a contract to state a violation of Section 1981.  Rather, Plaintiff may state a claim pursuant to Section 1981 for the Duke Defendants interference with existing contracts, which would include her contract to obtain a legal education from the Georgetown Defendants and her contracts to obtain employment.  *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994) (recognizing the 1991 amendment to Section 1981, and explaining that the amendment "provides that § 1981'a prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship").

In addition, contrary to arguments put forth by the Duke Defendants, Plaintiff's right to "make and enforce contracts" is not the only right that has been impaired by the discriminatory conduct of the Duke Defendants.  Rather, under Section 1981, Plaintiff has also been denied her right to the "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," 42 U.S.C. § 1981, and Plaintiff is entitled to pursue these claims as well.  Indeed, while the Duke Defendants have attempted to claim that Plaintiff did not specifically allege a violation of these additional rights, and that therefore the only claim this Court need address is the alleged violation of the right to make and enforce contracts, Plaintiff disagrees with this assertion.[3]

---

[3]  It should be noted that to the extent the Duke Defendants, in claiming that Plaintiff has not alleged a violation of the additional rights stated in Section 1981(a), were really trying to imply that Plaintiff was somehow supposed to specifically state that she was alleging violations for

In fact, as Plaintiff stated in her Opposition to the Microsoft Defendants Motion to Dismiss, *see* Opp'n to Mot. to Dismiss at 31, Plaitniff has been deprived of all the protections that are afforded by federal, state and territorial wiretapping statutes, which include (1) that any electronic surveillance be authorized by a court; (2) that the surveillance be for legitimate law enforcement purposes; (3) that a government entity establish probable cause to secure court authorization for any electronic surveillance; and (4) that the information obtained from the surveillance be subject to legal limitations as to how it may be used and to whom it can be disclosed. *See* 18 U.S.C. §§ 2510-2522; N.C. Gen. Stat. 15A-286-298; D.C. Code Ann. §§ 23-541-556; V.I. Code Ann. tit. 5, §§ 4101-4107.

Indeed, in the case *sub judice*, the Duke Defendants conspired with the Government Defendants to place Plaintiff under illegal electronic surveillance so they could obtain information to discriminate against Plaintiff, to essentially attempt to undermine and discredit any claim of discrimination that Plaintiff might make against them. First Am. Compl. at ¶¶ 38, 49, 142-43, 147, 178, 186-91. However, there was never any probable cause for this surveillance, and the surveillance was never related to any legitimate law enforcement investigation. First Am. Compl. at ¶¶ 52-53. Indeed, the surveillance has always been illegal

---

these additional rights in her Complaint, such an assertion would be misplaced. A Complaint does not have to plead law or legal theory. *See Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (1992). In fact, as the Court noted in *Bartholet*, "'[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate the rules contemplate[,]'" Fed. R. Civ. P. 84 [and] [n]one of the forms in the appendix spells out a legal theory." *Id.* Indeed, as the Court stated *Bartholet*, a Court need not focus on whether a specific statute has been cited, but rather should focus on "whether relief is possible under any set of facts that could be established consistent with the allegations." *Id.* Here, although Plaintiff did not specifically state, in her Complaint, that she was alleging a cause of action for the additional rights contained in Section 1981(a), she specifically stated that actions of the defendants constituted violations of 42 U.S.C. § 1981 and this is more than sufficient to satisfy the pleading requirements pursuant to Rule 8 of the Federal Rules of Civil Procedure.

and as such there has never been any court authorization.  First Am. Compl. at ¶ 38.  While the Government Defendants provided the material and support to illegally place Plaintiff under surveillance, the information from the surveillance has been intercepted by and disseminated to many people who are not law enforcement personnel.  First Am. Compl at ¶ 69.  Further, although Plaintiff has already specifically stated that discrimination she experienced was based on race, First Am. Compl. at ¶¶ 37-40, 293, it is the sheer nature and extent of the Duke Defendants conduct that help to evidence their racial animus.

Accordingly, for the reasons stated herein, Plaintiff has also pleaded sufficient facts to show that the Duke Defendants acted with racial animus and engaged in discriminatory conduct that deprived Plaintiff of her right to contract free of racial animus and her right to the full and equal benefit of all laws and proceedings for the security of persons and property, and as such, Plaintiff has stated a cause of action under the clause of Section 1981(a).  *See Phillip*, 316 F.3d at 298.

### b.  Plaintiff's has stated a cause of action for retaliation pursuant to 42 U.S.C. § 1981

The Civil Rights Act of 1991 amended Section 1981 to include, for the first time, a definition for the phrase "make and enforce contracts".  *See Tripp*, 48 F. Supp. 2d at 224 (discussing 1991 amendments).  More specifically, the 1991 Act "clarified that the term 'make and enforce contracts' encompassed 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.'"  *Id.*  "The 1991 Act has been interpreted by most circuits to expand § 1981's scope to include any actions occurring after the initial creation of the . . .contract, including retaliation."  *Glymph v. District of Columbia*, 211 F. Supp. 2d 152,153 (D.D.C. 2002).  "Since

1991, the courts in this Circuit have consistently allowed plaintiffs to proceed with § 1981 retaliation claims." *Id.* (citations omitted).

To state a claim for retaliation under Section 1981, Plaintiff must show that (1) that she engaged in a statutorily protected activity, (2) that was she was subject to adverse action; and (3) that there was a causal connection between the adverse action and the protected activity. *See id.* at 154; *Chandamuri*, 274 F. Supp. 2d at 84. In addition, a plaintiff "must also demonstrate that [her] exercise of protected rights was known to the defendant." *Chandamuri*, 274 F. Supp. 2d at 84 (citations omitted).

In the case *sub judice*, Plaintiff has satisfied the first element of a claim for retaliation. Indeed, Plaintiff engaged in protected activity when she went to speak to Dean Sockwell to complain about the erroneous instructions that she had given about the taking of law school examinations. First Am. Compl. at ¶¶ 106, 124, 133-34. In fact, Plaintiff had viewed Dean Sockwell's instructions to be discriminatory because Plaintiff had relied on her instructions, which were the same instructions that black students who had supposedly been helped by law professors during the 1996-1997 school year had given, yet the people who had gotten the highest grades on the exams were people who did NOT take their exams in the way that she had instructed. First Am. Compl. at ¶¶ 123-24, 127. Plaintiff's complaint to Dean Sockwell clearly put Duke Law, and by extension, Duke University, on notice of what Plaintiff considered discriminatory conduct.

Plaintiff has also shown that she was subject to adverse action. In this regard, an adverse action can be regarded as any act of retaliation that would dissuade an individual from making or supporting a claim of discrimination. *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006). Here, Plaintiff had complained to Dean Sockwell about the instructions she had given in early

April of 1998.  First Am. Compl. at ¶ 136.  After Plaintiff had spoken to Dean Sockwell, and

after Plaintiff had even mentioned to another first year law student that she was considering

filing an action against the school for discrimination, the Duke Defendants began to seek

personal information about Plaintiff.  First Am. Compl. at ¶ 154.  Thereafter, from the end of

Plaintiff's first year of law school, the Duke Defendants contacted the Government Defendants

to illegally place Plaintiff under electronic surveillance to obtain information to discriminate

against her, and Plaintiff has remained under surveillance ever since.  First Am. Compl. at ¶¶ 38,

43-46, 60, 62,165.  Even though Plaintiff transferred from Duke Law to Georgetown Law after

her first year of law school, persons at Duke Law nevertheless contacted persons at Georgetown

Law to adversely affect Plaintiff's overall educational experience at Georgetown Law, including

lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely

affecting Plaintiff's classroom experience, journal experience and job prospects.  First Am.

Compl. at ¶¶ 147-48, 175-79, 186-91.  Clearly, these acts, which amount to a concerted effort to

destroy Plaintiff personally, professionally, and academically, because she objected to

discriminatory practices at Duke Law, would surely be considered acts that would discourage

any student from objecting to discrimination at that school.

     Finally, Plaintiff has established a causal link between the adverse action and the

protected activity.  In fact, Plaintiff has specifically alleged that the illegal electronic surveillance

was prompted by the fact that Plaintiff objected to discriminatory practices at Duke Law.  First

Am Compl. at ¶ 68.  Plaintiff has also alleged that the illegal surveillance was used to obtain

information to discriminate against Plaintiff to attempt to cover up the discrimination at Duke

Law, and persons at Duke Law contacted persons at Georgetown Law to adversely affect

Plaintiff professionally, academically and personally, in furtherance of the conspiracy to

discriminate against Plaintiff.  First Am. Compl. at ¶¶ 49, 173.  However, notwithstanding the foregoing, the simple fact of the matter is that the mere fact that the Duke Defendants engaged in these acts after Plaintiff complained about Dean Sockwell's fraudulent instructions is sufficient to establish a causal link.  *See, e.g.*, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980) (noting that a causal connection can be established by showing that protected activity is followed by discriminatory treatment).

## V.  PLAINTIFF HAS ALLEGED DEPRIVATIONS OF RIGHTS GUARANTEED AGAINST PRIVATE IMPAIRMENT AND AS SUCH, HAS STATED A CAUSE OF ACTION UNDER 42 U.S.C. § 1985(3)

The Duke Defendants have incorporated and adopted, by reference, all of the arguments that were made by the Microsoft Defendants in regards to 42 U.S.C. § 1985(3).  *See* Duke Defs.' Mem. of Law at 22. Accordingly, Plaintiff hereby adopts and incorporates, by reference, all of the arguments that she made in Opposition to the Microsoft Defendants' Motion to Dismiss.  *See* Pl.'s Opp'n to Microsoft Defs. Mot. to Dismiss at 32-36.  The Duke Defendants have also argued that Plaintiff has failed to state a *prima facie* claim that the Duke Defendants conspired with other defendants in violating rights that are guaranteed against private impairment pursuant to 42 U.S.C. § 1985(3).  *See* Duke Defs.' Mem. of Law at 22.  The Duke Defendants have further argued that Plaintiff has failed show that "any such conspiracy was motivated by invidious discriminatory animus."  *Id.*  However, these arguments are misplaced.

First, Plaintiff has sued the Duke Defendants pursuant to Section 1985(3) because they have violated her rights under the Thirteenth Amendment to the Constitution and 42 U.S.C. § 1981, and the rights provided in these provisions are protected from impairment under Section 1985(3).  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (observing that the right to be free from involuntary servitude pursuant to Thirteenth Amendment of the

Constitution is a right protected from impairment under Section 1985(3)); *Spectronics Corp. v. TCI/TKR of Jefferson County, Inc.*, 17 F. Supp. 2d 669, (W.D. Kentucky 1998) (holding that rights created under Section 1981 are protected from impairment under Section 1985(3)); *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 470, 480 (D.D.C. 1994) (stating that rights protected under Section 1981 are protected from impairment under Section 1985(3)).

Indeed, while the Supreme Court has stated that there are few rights that are protected from encroachment pursuant to 42 U.S.C. § 1985(3), and that the Court had "hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude and . . . the right of interstate travel", *Bray*, 506 U.S. at 764, the Supreme Court has never stated that these were the only rights protected from impairment under Section 1985(3). In fact, since *Bray*, a number of courts that have considered the issue have recognized that Section 1985(3) claims may be supported by rights that are created under Section 1981. *See, e.g.*, *Spectronics Corp.*, 17 F. Supp. 2d ; *Wiggins*, 853 F. Supp. at 480; *Weeks v. Coury*, 951 F. Supp. 1264, 1277 (S.D. Tex. 1996). Simply put, as the Court stated in *Spectronics Corp.*, "it would be reading far too much into Justice Scalia's *dicta* in *Bray* to conclude that the Supreme Court has foreclosed the possibility that § 1985(3) could protect federal rights other than those recognized so far." *Spectronics Corp.*, 17 F. Supp. 2d at 671. Accordingly, Plaintiff is entitled to pursue her Section 1985(3) claim for the deprivation of her rights under the Thirteenth Amendment and 42 U.S.C. § 1981. *See Bray*, 506 U.S. at 277; *Spectronics Corp.*, 17 F. Supp. 2d ; *Wiggins*, 853 F. Supp. at 480; *Weeks*, 951 F. Supp. at 1277.

Second, as Plaintiff has already noted herein, she is not required to allege circumstances which support an inference of discrimination to survive a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 515; *see also Phillip*, 316 F.3d at 298. Rather, to satisfy the pleading requirements in

a discrimination claim Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure). Nevertheless, even though Plaintiff is not required to plead allegations to support an inference of discrimination based on race, she has still specifically alleged that the discrimination was based on race, First Am. Compl. at ¶¶ 37-40, 293, and further alleged circumstances that show that the Duke Defendants discriminatory conduct was motivated by racial animus.

Moreover, even though Plaintiff is not even required to state a *prima facie* claim at this initial stage, *see Sparrow*, 216 F.3d at 1114-15, she has nevertheless done so. To state a cause of action under Section 1985(3), Plaintiff must show that the following:

> (1) The defendants did conspire;

> (2) For the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

> (3) One or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, whereby

> (4) Another was (a) injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States.

*Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Vietnamese Fishermen's Ass'n*, 518 F. Supp. at 1006. In addition, while state action is not required, Plaintiff must nevertheless, to state a cause of action under Section 1985(3), show that the there was "some racial or . . .class-based animus behind the conspirators' action." *Griffin*, 403 U.S. at 101-02.

In the case *sub judice*, Plaintiff has stated a cause of action under Section 1985(3). First, all of the defendants conspired to violate Plaintiff's rights. Even though Plaintiff transferred to Georgetown Law to complete her legal education, the Duke Defendants nevertheless contacted

and conspired with persons at Georgetown Law to continue to discriminate against Plaintiff and adversely affect Plaintiff's overall educational experience at Georgetown Law, including lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely affecting Plaintiff's classroom experience, journal experience and job prospects. First Am. Comp. at ¶¶ 147-48, 175-79, 186-91. The Duke Defendants also contacted the Government Defendants and conspired with them, and the Georgetown Defendants, to illegally and continuously keep Plaintiff under electronic surveillance so that they could obtain information to discriminate against Plaintiff. First Am. Compl. at ¶¶ 38-39. The Microsoft Defendants then joined in the existing conspiracy to discriminate against Plaintiff and violate Plaintiff's rights. First Am. Compl. at ¶ 40.

Second, the purpose of the conspiracy was to discriminate against Plaintiff, and further use illegal electronic surveillance to facilitate that discrimination, to deprive Plaintiff of her rights, including her right to make and enforce contracts under 42 U.S.C. § 1981, her right to the full and equal benefit of the laws under 42 U.S.C. § 1981, and her right to be free of any condition of involuntary servitude pursuant to the Thirteenth Amendment of the Constitution. Third, as a result of the conspiracy, Plaintiff had grades that were lowered and adversely affected and even had a journal article radically changed to include material that she did not write. First Am. Compl. at ¶¶ 178, 188-91. In addition, the Government Defendants provided the material and resources to place Plaintiff under surveillance to allow for information about Plaintiff to be intercepted by and disseminated to many people, and which resulted in the disbursement of information regarding Plaintiff. First Am. Compl. at ¶ 60, 69, 165. As has already been noted herein, the sheer nature and extent of the Duke Defendants' participation in this conspiracy evidences that they acted with racial animus. Finally, as a result of the conspiracy, Plaintiff was

deprived of her rights under 42 U.S.C. § 1981 and the Thirteenth Amendment to the Constitution as has already been established herein.  *See supra* at 21-30; *see also* Pl. Opp'n to Microsoft Defs.' Mot. to Dismiss at 20-22.

## VI. PLAINTIFF HAS STATED A CAUSE OF ACTION PURSUANT TO 42 U.S.C § 1986

The Duke Defendants have incorporated and adopted, by reference, the arguments that were made by the Microsoft Defendants regarding 42 U.S.C. § 1986.  *See* Duke Defs.' Mem. of Law at 24.  Accordingly, Plaintiff hereby incorporates and adopts by reference all of the arguments that she made in her Opposition to the Microsoft Defendants Motion to Dismiss, in response to those arguments.  *See* Pl.'s Opp'n to Microsoft Defs.' Mot. to Dismiss at 36-37, 41-42.  In addition, Plaintiff would also state that as she has state a valid claim pursuant to 42 U.S.C. § 1985(3) she may indeed pursue a cause of action under 42 U.S.C. § 1986.

## VII. PLAINTIFF HAS STATED A CAUSE OF ACTION PURSUANT TO 18 U.S.C. § 2520

The Duke Defendants have incorporated and adopted, by reference, the arguments made by the Microsoft Defendants regarding 18 U.S.C. § 2520.  *See* Duke Defs.' Mem. of Law at 24.  Accordingly, Plaintiff hereby incorporates and adopts by reference all of the arguments that she made in her Opposition to the Microsoft Defendants Motion to Dismiss, in response to those arguments.  *See* Pl.'s Opp'n to Microsoft Defs.' Mot. to Dismiss at 38-42.

## VIII. PLAINTIFF HAS STATED A CLAIM OF CIVIL CONSPIRACY

The Duke Defendants have argued that Plaintiff has failed to allege the elements of a civil conspiracy with specificity.  Duke Defs. Mem. of Law at 30.  The Duke Defendants have further claimed that Plaintiff has failed to allege any tortious acts or injury underlying the alleged conspiracy.  *Id.* at 32.  However, these arguments are misplaced.

First, it should be noted that there is no heightened pleading standard for civil conspiracy claims. *See Riggs v. Home Builders Institute*, 293 F. Supp. 2d 1, 25 (D.D.C. 2002). Rather, to satisfy the pleading requirement for a civil conspiracy claim, Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure). Indeed, as the Court noted in *Riggs*, "[u]nder the Federal Rules, the purpose of pleading is simply to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests' not to state in detail the facts underlying the complaint." *Riggs*, 293 F. Supp. 2d at 25.

Nevertheless, notwithstanding the foregoing, Plaintiff has stated sufficient allegations to make a *prima facie* showing of her civil conspiracy claim. To state a claim for civil conspiracy, a plaintiff must establish four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Riggs*, 203 F. Supp. 2d at 25.

In the case *sub judice*, even though Plaintiff had been discriminated against during her first year of law school at Duke Law, she nevertheless chose to transfer to Georgetown Law to complete her legal education. First Am. Compl. at ¶¶ 31-32, 34-37, 104-06, 124-31. However, persons at Duke Law nevertheless contacted and conspired with persons at Georgetown Law to continue to discriminate against Plaintiff, and adversely affect her academically, professionally and personally, to essentially undermine and discredit any claim of discrimination that Plaintiff could make against them. First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91.

More specifically, persons at Duke Law contacted and conspired with persons at Georgetown Law to adversely affect Plaintiff's overall educational experience at Georgetown Law, including lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely affecting Plaintiff's classroom experience, journal experience and job prospects. First Am. Comp. at ¶¶ 147-48, 175-79, 186-91. In addition, persons at Duke Law did not just contact persons at Georgetown Law to discriminate against Plaintiff. Rather, they also contacted the Government Defendants and conspired with them to illegally place and continue to keep Plaintiff under electronic surveillance so that they could obtain information to discriminate against Plaintiff. First Am. Compl. at ¶¶ 38-39.

As a result of the discrimination, Plaintiff's overall educational experience at Georgetown Law was adversely affected. First Am. Comp. at ¶¶ 147-48, 175-79, 186-91. Indeed, Plaintiff's grades were lowered and adversely affected, Plaintiff had a journal article that she had submitted that was altered without her knowledge or consent, and Plaintiff was even called on with greater frequency in one of her classes that her other classmates. First Am. Compl. at ¶¶ 178-79, 186-91. In addition, Plaintiff also had private medical information disseminated about her as a result of the illegal electronic surveillance. First Am. Compl. at ¶¶ 59-60, 62, 165. All of these acts were done in furtherance of the conspiracy to discriminate against Plaintiff. First Am. Compl. at ¶¶ 38-39, 173.

In addition, it should be noted that contrary to claims made by the Duke Defendants, Plaintiff has alleged cognizable underlying torts. Indeed, contrary to statements by the Duke Defendants, subjecting someone to illegal electronic surveillance, which is a violation of the federal criminal wiretapping statute, is a tort. *See Brown v. American Broadcasting Co., Inc.,* 704 F.2d 1296, 1301 (4th Cir. 1983). Further, discriminating against an individual, in violation

of the federal civil rights statutes, also constitutes a tort.  *See Overby v. Johnson*, 418 F. Supp.

471, 473 (E.D. Mic. 1976) (noting that violations of federal civil rights acts may be regarded as

action in tort).  In fact, other counts that Plaintiff has stated that the defendants committed, which

include intentional infliction of emotional distress, and invasion of privacy, which, incidentally,

has not even been challenged by the Duke Defendants, are torts.  *See Rochon v. F.B.I.*, 691 F.

Supp. 1548 (D.D.C. 1988) (referring to both claims for intentional infliction of emotional

distress and invasion of privacy as torts).

### IX. PLAINTIFF HAS STATED A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Duke Defendants have argued that Plaintiff has failed to make a *prima facie* showing

of her claim for intentional infliction of emotional distress.  Duke Defs.' Mem. of Law at 25.

The Duke Defendants have also claimed that Plaintiff has failed to present evidence of injury

sufficient to pursue a claim for intentional infliction of emotional distress.  *Id.* at 27-28.

However, these arguments are misplaced.

First, Plaintiff is not required to make a *prima facie* showing of her claim for intentional

infliction of emotional distress at this stage.  *See Rochon*, 691 F. Supp. 1548.  Moreover, Plaintiff

is not required offer evidence.  *See Sparrow*, 216 F.3d at 1115.  Rather, to satisfy the pleading

requirements Plaintiff's Complaint need only contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2)

of the Federal Rules of Civil Procedure).  "Such a statement must simply 'give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests'."  *Id.*  Nevertheless,

even though Plaintiff is not required to establish a *prima facie* case of intentional infliction of

emotional distress, she has nevertheless done so.

"[T]o establish a *prima facie* case of intentional infliction of emotional distress, [Plaintiff] must show (1) extreme and outrageous conduct on the part of [the defendants] which (2) either intentionally or recklessly (3) cause[d] [Plaintiff] severe emotional distress." *Carter v. Hahn*, 821 A.2d 890, 892 (D.C. Ct. App. 2003). Liability for intentional infliction of emotional distress is "properly imposed where the conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* "In general, 'a case of intentional infliction of emotional distress is made out only if the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Larijani v. Georgetown University*, 791 A.2d 41, 44 (D.C. Ct. of App. 2002).

In the case *sub judice*, Plaintiff has been subject to a breathtakingly broad form of surveillance that began because she objected to discriminatory practices at Duke Law. First Am. Compl. at ¶ 68. While the Duke Defendants have made statements attempting to imply that whatever surveillance may have been conducted was pursuant to warrant and was therefore valid, *see* Duke Defs. Mem. of Law at 26, such an argument is simply without merit. There was never any basis in law or fact for the surveillance that Plaintiff has been subjected to. First Am. Compl. at ¶ 48. There was never any probable cause for this surveillance, and the surveillance has never been related to any legitimate law enforcement investigation. First Am. Compl. at ¶¶ 52-53.

Indeed, the Duke Defendants conspired with the Government Defendants to place Plaintiff under illegal electronic surveillance so they could obtain information to discriminate against Plaintiff, to essentially attempt to undermine and discredit any claim of discrimination that Plaintiff might make against them. First Am. Compl. at ¶¶ 38, 49, 142-43, 147, 178, 186-91.

Further, the surveillance has included video surveillance and listening devices, in Plaintiff's home and at her job, and has gone on for a more than five (5) year period of time. First Am. Compl. at ¶¶ 43-44, 54, 63-64. While the Government Defendants have provided the material and support to illegally place Plaintiff under electronic surveillance, the information has been intercepted by and disseminated to numerous people who are NOT law enforcement personnel. First Am. Compl. at ¶ 69. The conduct of the Duke Defendants, and their co-conspirators, has been intentional and willful, First Am. Compl. at ¶ 70, and it is the precise sort of outrageous conduct that would support a claim for intentional infliction of emotional distress.

Further, contrary to arguments put forth by the Duke Defendants, Plaintiff has alleged sufficient injury to state a claim for intentional infliction of emotional distress. Plaintiff has alleged that she has suffered emotional and psychological injuries, loss of capacity to earn income, mental anguish, pain and suffering, and loss of enjoyment of life. First Am. Compl. at ¶ 293. This is sufficient to state a claim for intentional infliction of emotional distress. *See Sparshott v. Feld Entertainment*, *Inc.*, 89 F. Supp. 2d 1, 3 (D.D.C. 2000).

## X.  PLAINTIFF HAS STATED A CAUSE OF ACTION FOR INTERFERENCE WITH PERSPECTIVE ADVANTAGE

The Duke Defendants have incorporated and adopted, by reference, the arguments made by the Microsoft Defendants regarding Plaintiff's claim for interference with perspective advantage. *See* Duke Defs.' Mem. of Law at 33. Accordingly, Plaintiff hereby incorporates and adopts by reference all of the arguments that she made in her Opposition to the Microsoft Defendants Motion to Dismiss, in response to those arguments. *See* Pl.'s Opp'n to Microsoft Defs.' Mot. to Dismiss at 42-44.

## XI. PLAINTIFF HAS STATED A CAUSE OF ACTION FOR THE THEFT OF HER INTELLECTUAL PROPERTY

The Duke Defendants have incorporated and adopted, by reference, the arguments made by the Microsoft Defendants regarding Plaintiff's claim for the theft of her intellectual property. *See* Duke Defs.' Mem. of Law at 24. Accordingly, Plaintiff hereby incorporates and adopts by reference all of the arguments that she made in her Opposition to the Microsoft Defendants Motion to Dismiss, in response to those arguments. *See* Pl.'s Opp'n to Microsoft Defs.' Mot. to Dismiss at 44-45. In addition, Plaintiff would also add that the Duke Defendants, like other defendants in this case, should be held liable for all acts that have been done as part of this conspiracy to violate Plaintiff's rights. *See Qwest Communications Corp. v. Weisz*, 278 F. Supp. 2d 1188, 1190 (S.D. Cal. 2003) ("Through participation in the conspiracy, each coconspirator 'effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy'.").

## XII. NONE OF PLAINTIFF'S CLAIMS WOULD BE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff does not dispute that her claims would be governed by section 12-301(8)'s three year statute of limitation. Rather, what Plaintiff does dispute is that this three year statute of limitation could be applied to bar her claims in this case, when she has alleged continuing violations. Indeed, "[i]t is well-settled that '[w]hen a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases'." *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984) (holding that plaintiff's cause of action was timely under the continuing tort doctrine). "Since usually no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of the harm,' it seems proper to regard the cumulative effect of the conduct as actionable." *Id.* at 822.

42

"Moreover, since 'one should not be allowed to acquire a right to continue the tortious conduct,' it follows logically that statutes of limitation should not run prior to its cessation." *Id.*

In fact, the continuing tort doctrine is especially applicable in cases that involve discrimination, where in order to obtain relief, it is necessary to show sustained conduct or a pattern and practice. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982). Indeed, any application of a statute of limitation that bars recovery of continuous acts would only serve to undermine the broad remedial purposes of civil rights statutes. *See id.* at 380 ("Petitioners' wooden application of § 812(a), which ignores the continued nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the Act.").

In the case *sub judice*, this is the case with all civil rights statutes but especially Title VI and Title IX. Indeed, as the Supreme Court noted in *Cannon v. University of Chicago*, 441 U.S. 677, 704 (1979), the United States Congress enacted Title VI and Title IX with two objectives in mind. First, Congress enacted Title VI and Title IX to make sure that money from the United States would not be used to support discriminatory practices. *See id.* Second, Congress enacted Title VI and Title IX to make sure that individual citizens had effective protection against those discriminatory practices. *See id.* It would simply be inconsistent with the broad remedial purposes of these statutes, to allow the Duke Defendants, who are recipients of federal money, *see* First Am. Compl. at ¶ 19, to continuously violate these statutory provisions.

Plaintiff would further submit that she filed the initial Complaint in this matter on May 8, 2003. As such, as long as at least one of the acts that the Duke Defendants have engaged in occurred during the limitations period, Plaintiff would be able to establish a continuing violation. *See Edmondson v. Gallagher*, 790 A.2d 541, 548 (D.C. Ct. App. 2002). Indeed, in light of the continuous nature of the Duke Defendants' acts, and the fact that Plaintiff did not graduate from

law school until late May of 2000, Plaintiff would clearly be able to establish a continuing

violation for all of the causes of action in this case.

## <u>CONCLUSION</u>

Accordingly, for all the foregoing reasons, the Duke Defendants' Motion to Dismiss

pursuant to Rule 12(b)(6) should be denied in its entirety.


                                    Respectfully submitted,
                                    ATTORNEY FOR PLAINTIFF,


DATED: September 22, 2006           _____
                                    Suzette Richards, Esquire, *Pro Se*
                                    P.O. Box 223875
                                    Christiansted, St. Croix  00822-3875
                                    Telephone: (340) 277-4808
                                    Fax: (340) 772-5785

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of September, 2006, a true and exact copy of the foregoing document was caused to be served via electronic notification upon:

Simone R. D. Francis, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802
Simone.francis@ogletreedeakins.com

Richard Hunter, Esq.
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820
rhunter@hcbvilaw.com

Michael J. Murphy, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, N.W., Fifth Floor
Washington, D.C. 20037
Michael.murphy@odnss.com

Elizabeth O'Brien, Esq.
Williams & Connolly LLP
725 Twelfth Street
Washington, D.C. 20002
eobrien@wc.com

Henry Feuerzeig, Esq.
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804
hfeurzeig@dtflaw.com

Benton G. Peterson, Esq.
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W., Room E4905
Washington, D.C. 20530
Benton.peterson@usdoj.gov

Charles E. Buffon, Esq.
Harry B. Roback, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
cbuffon@cov.com
hroback@cov.com

_____/s/_____
Suzette Richards, *Pro Se*