UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUZETTE RICHARDS, | ) | |
| | ) | |
|     PLAINTIFF, | ) | CIVIL NO. 06-01179 (RCL) |
| | ) | |
|     v. | ) | ACTION FOR DAMAGES, |
| | ) | DISCRIMINATION, AND |
| DUKE UNIVERSITY, DUKE UNIVERSITY | ) | DECLARATORY AND |
| SCHOOL OF LAW, DUKE UNIVERSITY | ) | INJUNCTIVE RELIEF |
| BOARD OF TRUSTEES, NANNERL | ) | |
| KEOHANE, in her personal and official | ) | |
| Capacity as President of Duke University, | ) | |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY LAW CENTER, | ) | |
| ALBERTO GONZALES, in his official capacity | ) | |
| as Attorney General of the United States, | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | **JURY TRIAL DEMANDED** |
| JOHN AND JANE DOES 1-10, | ) | |
| WILLIAM H. GATES, III, in his personal and | ) | |
| official capacity as Chairman of Microsoft | ) | |
| Corporation, STEVE BALLMER, in his personal | ) | |
| and official capacity as Chief Executive Officer | ) | |
| of Microsoft Corporation, MICROSOFT | ) | |
| CORPORATION, MICROSOFT EMPLOYEES | ) | |
| A-J, and MELINDA GATES, | ) | |
| | ) | |
|     DEFENDANTS. | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS WILLIAM H. GATES, III, STEVE BALLMER, AND MELINDA GATES' MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)**

**COMES NOW**, Plaintiff, *pro se*, and hereby respectfully opposes Defendants William H. Gates, III ("Bill Gates"), Steve Ballmer and Melinda Gates' (collectively "Microsoft Defendants") Motion to Dismiss the Complaint, to the extent that they have been sued in their personal capacity, that was brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**COUNTERSTATEMENT OF JURISDICTIONAL FACTS**

Plaintiff's Complaint against Defendants Bill Gates, Steve Ballmer, and Melinda Gates, stems from the discrimination she experienced while she was in law school. Plaintiff had began law school at the Duke University School of Law (hereinafter "Duke Law") in the fall of 1997 and had realized, from her first year of law school, that Duke Law had in place a system of discrimination, that had been used to discriminate against minorities, particularly black students, for the more than twenty (20) years that black students had attended the school. First Am. Compl. at ¶¶ 35-36, 107. Indeed, as a result of this system of discrimination, black students had been excluded from participation on the school's two most prestigious journals, received lower grades than white students, and had been denied the honors they would otherwise have received if it were not for the system of discrimination. First Am. Compl. at ¶¶ 107-08, 112, 117. The discrimination also had the effect of preventing minorities from obtaining certain jobs considered to be prestigious in the legal profession, like clerkships on the federal appellate and district court level. First Am. Comp. ¶ 111.

As a first year law student at Duke Law, Plaintiff discovered that one of the ways Duke Law facilitated this overall system of discrimination was by lying to students about how to take exams. First Am. Compl. at ¶¶ 105-06. Indeed, Plaintiff, who was lied to about how law schools exams should be taken, even objected to this discriminatory and fraudulent practice during her first year of law school. First Am. Compl. at ¶¶ 106, 124, 133-34; Ex. 1, Decl. of Plaintiff at ¶¶ 5-10. Plaintiff even considered suing Duke Law because of the discrimination she experienced during her first year of law school, and even told a classmate about this, but she ultimately opted to simply transfer to Defendant Georgetown University Law Center ("Georgetown Law"). First Am. Compl. at ¶¶ 139, 32; Ex. 1, Decl. of at ¶¶ 12, 14.

However, the Duke Defendants continued to fear that Plaintiff would sue the school for the discrimination they had subjected her to, which might in turn have exposed the system of discrimination at the school and also lowered the school's rank on the U.S. News and World Report Law School Rankings. First Am. Compl. at ¶ 150. The Dean of Duke Law at the time, Pamela Gann, even told Saundra Dockery, who had supervised Plaintiff when she worked at a work study job during undergrad at Duke University ("Duke"), that she would do "anything" to keep the law school in the top ten. First Am. Compl. at ¶ 156; Ex. 1, Decl. at ¶ 13. In fact, the Duke Defendants were so afraid that Plaintiff would file an action against them for discrimination, that they did not just contact Saundra Dockery, but also contacted the Government Defendants, and illegally conspired with the Government Defendants to place Plaintiff under electronic surveillance so they could obtain information to continue to discriminate against Plaintiff, to essentially undermine and discredit any claim of discrimination that Plaintiff might make against them. First Am. Compl. at ¶¶ 38, 49, 142-43, 147, 178, 186-91.

Indeed, it should be noted that from the outset, the surveillance that Plaintiff has been subjected to, which has included listening devices and video surveillance, was always illegal as there was no basis in law or fact to place Plaintiff under any electronic surveillance. First Am. Compl. at ¶¶ 48, 54. In fact, the electronic surveillance that Plaintiff has been subjected to was never related to any criminal investigation and at no time has there ever been probable cause to place Plaintiff under any electronic surveillance. First Am. Compl. at ¶¶ 52-53. Instead, it was Plaintiff's objection to discriminatory practices at Duke Law that prompted the illegal surveillance that not only allowed the Duke Defendants, the Georgetown Defendants and the Microsoft Defendants to obtain information to discriminate against Plaintiff, but also allowed for private information, including medical information about Plaintiff, to be disseminated to many

3

people.  First Am. Compl. at ¶¶ 60, 68-69, 71-72.  In fact, it should be noted that although Plaintiff graduated from law school in late May of 2000, the illegal electronic surveillance that she was placed under has continued ever since and has followed Plaintiff no matter where she has lived or where she has went.  First Am. Compl. at ¶¶ 32, 38-40, 43-46, 49.

      Nevertheless, the Duke Defendants were also so afraid that Plaintiff would sue them for discrimination that they not only illegally placed Plaintiff under electronic surveillance, but also placed one black female student on one of the school's most prestigious journal's, right after Plaintiff transferred from the school, for the first time in the history of the school.  First Am. Compl. at ¶ 110.  Still, the Duke Defendants were so afraid that Plaintiff would sue them for discrimination that they actually contacted persons at Defendant Georgetown Law to interfere with Plaintiff professionally, personally and academically.  First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91.  Indeed, persons at Duke Law contacted and conspired with persons at Georgetown Law to adversely affect Plaintiff's overall educational experience at Georgetown Law, including lowering and adversely affecting Plaintiff's grades, First Am. Compl. at ¶¶ 147-48, 175-79, 186-91, and this discrimination continued from the time Plaintiff matriculated to Georgetown Law through her graduation from Georgetown Law in late May of 2000.  First Am. Compl. at ¶¶ 32, 177.  In fact, even though Plaintiff graduated from law school in late of May of 2000, the Duke Defendants, Georgetown Defendants, and Government Defendants, have all continued to conspire to keep Plaintiff under illegal electronic surveillance to discriminate against Plaintiff personally and professionally.  First Am. Compl. at ¶¶ 46, 57, 64-65, 292.

      Defendant Melinda Gates, who is married to Defendant Bill Gates, was on the Duke University Board of Trustees for the entire time that Plaintiff was in law school and was being

4

discriminated against by the Duke Defendants, the Georgetown Defendants and the Government Defendants.  First Am. Compl. at ¶¶ 18, 196-97.[1]  In fact, even after Plaintiff graduated from law school, and continued to be subjected to the illegal electronic surveillance in her home and even at her job, Defendant Melinda Gates continued to sit on the Duke University Board of Trustees, through 2004.  *See id.*

Defendant Melinda Gates, like other members of the Duke University Board of Trustees, was aware of the discrimination that Plaintiff experienced during her first year of law school at Duke Law, as well as the discrimination that she has continued to experience through today.  First Am. Comp. at ¶ 198.  However, even though Defendant Melinda Gates was aware that Plaintiff was being discriminated against because of her race, and was aware that illegal electronic surveillance was used to facilitate the discrimination, Defendant Melinda Gates nevertheless conspired with the Duke Defendants and the Government Defendants in violating Plaintiff's rights, and keeping Plaintiff under illegal electronic surveillance, both while Plaintiff was in law school and after she graduated.  First Am. Compl. at ¶¶ 46-47, 49, 199-200.  Indeed, Plaintiff knows that Defendant Melinda Gates has intercepted statements that Plaintiff has made in her home because Plaintiff even read a magazine article where statements that Plaintiff had made in her home were actually attributed to Defendant Melinda Gates.  First Am. Comp. at ¶¶ 248-50; Ex. 1, Decl. at ¶ 18.

---

[1] Defendant Melinda Gates has now represented, in her Declaration that was filed in support of the Motion to Dismiss, that she served on the Duke University Board of Trustees from 1996 to 2004.  *See* D.C. Docket 43, Ex. B, Decl. of Melinda Gates at ¶ 5.

Although Defendant Bill Gates and Defendant Steve Ballmer, who are respectively the Chairman and Chief Executive Officer ("CEO") of Microsoft,[2] were aware that Plaintiff was being discriminated against by the Duke Defendants, the Government Defendants and the Georgetown Defendants, and that Plaintiff had been placed under illegal electronic surveillance to help facilitate that discrimination, they nevertheless joined in this conspiracy to violate Plaintiff's rights and keep Plaintiff under illegal surveillance. First Am. Compl. at ¶¶ 46-47 203-04, 262-67. Indeed, both Defendants Bill Gates and Steve Ballmer intercepted the illegal surveillance that Plaintiff was being subjected to, and they further allowed employees at Microsoft Corporation to use corporate resources to intercept the illegal surveillance as well. First Am. Compl. at ¶¶ 46-47, 264-66. The Microsoft Defendants then repeatedly used the information they learned from the illegal electronic surveillance to exploit Plaintiff, benefit themselves financially, and also to harass Plaintiff by putting various things on the company's MSN website and connecting those things to Plaintiff. First Am. Compl. at ¶¶ 214-20, 223-32, 268-77.

## STANDARD OF REVIEW

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing a prima facie case that personal jurisdiction exists." *Jin v. Ministry of State Security*, 335 F. Supp. 2d 72, 77 (D.D.C. 2004) (citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). "A prima facie case in this context means that the plaintiff must present evidence sufficient to defeat a motion for judgment as a matter of law." *Jin*, 335 F. Supp. 2d at 77 (citations omitted). Indeed, "[t]he

---

[2] Bill Gates stepped down as the Chief Executive Officer of Microsoft in January of 2000. First Am. Compl. at ¶ 259. Thereafter, he was replaced by Steve Ballmer who has continued to serve as CEO of Microsoft, and has actually been the CEO for most of the time that Plaintiff's rights have been violated. First Am. Compl. at ¶¶ 259-60.

burden is on the plaintiff to articulate specific acts or contacts of the defendant that prove jurisdiction can be exercised." *Johnson v. Long Beach Mortgage Loan Trust*, No. Civ. A. 05-0644 CKK, 2006 WL 2244599 at *5 (D.D.C. Aug. 4, 2006) (citations omitted).

"To determine if a basis for personal jurisdiction exists, the court should resolve factual discrepancies in the complaint and affidavits in favor of the plaintiff." *Jin*, 335 F. Supp. 2d at 77 (citing *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). "However, the court need not treat all of the plaintiff's allegations as true." *Jin*, 335 F. Supp. 2d at 77. Indeed, "the court 'may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts.'" *Id.* (citation omitted).

## ARGUMENT

**UNDER THE CONSPIRACY DOCTRINE, THIS COURT HAS JURISDICTION OVER BILL GATES, STEVE BALLMER, AND MELINDA GATES, PURSUANT TO SECTION 13-423(a)(3) OF THE D.C. LONG ARM STATUTE AND THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION**

In order "to establish personal jurisdiction over a non-resident defendant, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements."[3] *GTE New Media Services Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

The District of Columbia's long-arm statute provides, in relevant part, that a "court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's (3) causing tortious injury in the District of Columbia by an act

---

[3] When subject matter jurisdiction is predicated on a federal question, as is the case here, Plaintiff must rely on the District of Columbia's long-arm statute to sue non-resident defendants where no federal long-arm statute applies. *Edmond v. United States Postal Service General Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991).

7

or omission in the District of Columbia." D.C. Code Ann. § 13-423(a)(3) (2001). The statute also provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* 13-423(b).

However, even where the requirements of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction would be permissible under the Due Process Clause. As such, "a plaintiff must show 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE*, 199 F.3d at 1347 (quoting *International Shoe Co. v. Washington*, 326 U.S. 316 (1945)). Indeed, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Jin*, 335 F. Supp. 2d at 78 (citations omitted). In sum, "the defendant's conduct with the forum State [must be] such that he should reasonably anticipate being haled into court there." *GTE*, 199 F.3d at 1347 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).

Under the theory of conspiracy jurisdiction, "the defendant's 'contact' with the forum consists of the acts of the defendant's co-conspirators within the forum." *Jin*, 335 F. Supp. 2d at 78. As the Court explained in *Jin* "[b]ecause the District of Columbia long-arm statute provides for jurisdiction over persons acting directly *and* their agents, courts deem the defendant's co-conspirator the defendant's agent." *Id.* (citations omitted). However, "[a]s with other forms of personal jurisdiction, conspiracy jurisdiction requires a prima facie showing of pertinent jurisdictional facts." *Id.* As such, to prevail under a theory of conspiracy jurisdiction, courts

8

require "a prima facie showing of (1) a conspiracy[4] (2) in which the defendant participated and (3) a co-conspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the conspiracy." *Id.* (citing *Jung v. Ass'n of American Med. Colleges*, 300 F. Supp. 2d 119, 141 (D.D.C. 2004). In addition, at least one Court in this jurisdiction has held that in addition to these three elements, a plaintiff must also show that a defendant purposely availed itself of the privilege of conducting activities in the forum to ensure that the Court's exercise of personal jurisdiction comports with the Due Process Clause. *Jin*, 335 F. Supp. 2d at 80.

In the case *sub judice*, it is clear that this Court may exercise personal jurisdiction Defendants Bill Gates, Steve Ballmer, and Melinda Gates, under the conspiracy doctrine. Indeed, even though Plaintiff had been discriminated against during her first year of law school at Duke Law, she nevertheless chose to transfer to Georgetown Law, which is located in the District of Columbia, to complete her legal education. First Am. Compl. at ¶¶ 31-32, 34-37, 104-06, 124-31; Ex. 1, Decl. at ¶ 14. However, persons at Duke Law nevertheless contacted and conspired with persons at Georgetown Law to continue to discriminate against Plaintiff, and adversely affect her academically, professionally and personally, to essentially undermine and discredit any claim of discrimination that Plaintiff could make against them. First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91.

In fact, persons at Duke Law did not just contact persons at Georgetown Law to discriminate against Plaintiff. Rather, they also contacted the Government Defendants and conspired with them to illegally place and continuously keep Plaintiff under electronic

---

[4] The four elements of civil conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of the conspiracy. *Jin*, 335 F. Supp. 2d at 79 n.4. In addition, "a party seeking to recover for civil conspiracy must allege an underlying tortious act." *Id.*

9

surveillance wherever Plaintiff has been, including in the District, so that they could obtain information to discriminate against Plaintiff.  First Am. Compl. at ¶¶ 38-39.  In fact, Plaintiff first realized she had to have been placed under some form of illegal electronic surveillance when a conversation she had had in her home, in Durham, North Carolina, at the end of her first year at Duke Law, about medical information, appeared to have been disclosed to persons who should not have had that information.  First Am. Compl. at ¶ 165; Ex. 1, Decl. at ¶ 15.  Indeed, even after Plaintiff transferred to Georgetown Law, and was living in Washington, D.C.[5], it nevertheless appeared, again, that medical information from an examination she had had at the Gewirz Student Center, at Georgetown Law, had been disseminated to persons who should not have had that information because of the illegal electronic surveillance.  First Am. Compl. at ¶ 60; Ex. 1, Decl. at ¶ 16.

     Defendant Melinda Gates was on the Duke University Board of Trustees while Plaintiff was being subject to this discrimination at Georgetown Law.  First Am. Compl. at ¶ 197; D.C. Docket 43, Ex. B, Decl. of Melinda Gates at ¶ 5.  However, like other members of the Board of Trustees, Defendant Melinda Gates did not act to stop the discrimination, but instead conspired with the Duke Defendants and the Government Defendants in violating Plaintiff's rights, and keeping Plaintiff under illegal electronic surveillance.  First Am. Compl. at ¶¶ 46-47, 200.  In fact, Plaintiff knows that Defendant Melinda Gates intercepted statements that Plaintiff made in her home because Plaintiff even read an article where statements that Plaintiff had made in her home in the Spring of 2000, while she was living in the District of Columbia, were actually

---

[5] Plaintiff lived in Washington, D.C. from January of 1999 through May of 1999 and from August of 1999 through August of 2000.  Ex. 1, Decl. at ¶ 22.

10

attributed to Defendant Melinda Gates in the article.  First Am. Comp. at ¶¶ 248-50; Ex. 1, Decl. at ¶ 18.

Although Defendant Bill Gates and Defendant Steve Ballmer knew that Plaintiff was being discriminated against by the Duke Defendants, the Government Defendants and the Georgetown Defendants, and that the illegal electronic surveillance that Plaintiff was being subjected to was being used to facilitate this discrimination, they nevertheless joined in the conspiracy to discriminate against Plaintiff during Plaintiff's third year of law school at Georgetown Law.  First Am. Compl. at ¶¶ 40, 46, 203-04, 262-63.  In fact, the Microsoft Defendants intercepted statements that Plaintiff made in her home about wireless technology, in November 1999, which resulted in them creating MSN Mobile.  First Am. Compl. at ¶¶ 207-08, 214; Ex. 1, Decl. at ¶ 17.  At the time these statements were intercepted, Plaintiff was a third year law student at Georgetown Law, and was actually on Thanksgiving break in North Carolina.  Ex. 1, Decl. at ¶ 17.

While the Microsoft Defendants could have decided at that point, to cease intercepting information from the illegal surveillance, as they had to have known that Plaintiff, who was a law student at the time, was being subject to severe emotional distress by having her privacy invaded and her rights recklessly disregarded because of the illegal surveillance, First Am. Compl. at ¶ 73, they did not do so.  Instead, they continued to illegally intercept information from the illegal electronic surveillance and in September of 2000, they intercepted and used ideas that Plaintiff had written, in the same home that she was staying in in November of 1999, regarding the use of e-mails to generate revenue.  First Am. Compl. at ¶¶ 268-70; Ex. 1, Decl. at ¶ 19.  Then in February or March of 2001, they further intercepted and used ideas Plaintiff had written regarding changing the name of Web TV to MSN TV, while Plaintiff was a law clerk at

what is now the Superior Court of the Virgin Islands. First Am. Compl. at ¶¶ 273-76; Ex. 1, Decl. at ¶ 20. At no time, however, did the Microsoft Defendants compensate Plaintiff for any of the ideas that they implemented and that Microsoft Corporation profited from, and they certainly did not stop intercepting the surveillance. First Am. Compl. at ¶¶ 42-46, 278.

Indeed, it should be noted that this is not a situation where the surveillance occurred for a day or a week. Rather, the surveillance that Plaintiff has been subjected to has occurred over a number of years, in different places that Plaintiff has been, and has continued through today. Indeed, it should be noted that Defendant Bill Gates and Defendant Steve Ballmer have even allowed employees at Microsoft Corporation to use corporate resources to intercept the surveillance, which has included listening devices and video surveillance, to obtain information to degrade and harass Plaintiff. First Am. Compl. at ¶¶ 42-46, 54, 233, 240, 264-66. In fact, in April of 2003, Plaintiff was even publicly accosted by a man in a local Kmart store in the Virgin Islands because of nonsense that the Microsoft Defendants put on their MSN website.[6] First Am. Compl. at ¶ 233.

In the case *sub judice*, it is clear, under the conspiracy doctrine, that when persons at Duke Law contacted and conspired with the Government Defendants to illegally place and keep Plaintiff under electronic surveillance in the District, in furtherance of the existing conspiracy to discriminate against Plaintiff, and the Government Defendants placed Plaintiff under illegal electronic surveillance in the District, the Duke Defendants committed acts within the District. Further, it is also clear that when the Microsoft Defendants joined in this existing conspiracy to discriminate against Plaintiff, and illegally place and keep Plaintiff under illegal electronic

---

[6] Plaintiff filed her amended Complaint, which named the Microsoft Defendants as defendants in this matter, on June 5, 2003, which was about two months after this incident.

surveillance, in the District, as well as other places, and the Government Defendants placed Plaintiff under this surveillance, in the District, as well as other places, then the Microsoft Defendants committed acts in the District as well. Indeed, it should also be noted that Plaintiff's claims in this case arise out of the discrimination and the continuous illegal surveillance that she has been subjected to, in the District, as well as other places. *See* First Am. Compl.

Further, Plaintiff has alleged that as a result of the discrimination that she has experienced, and the presence of the illegal electronic surveillance that has been used to further the discrimination that she has been subjected to, Plaintiff has suffered a number of injuries, which include loss of enjoyment of life, loss of reputation, loss of capacity to earn income, and emotional injuries that occurred here in the District when the acts were committed here against Plaintiff. First Am. Compl. at ¶ 293. In fact, it should be noted that even Plaintiff's expert, Dr. Steven Handwerker, diagnosed Plaintiff with Post Traumatic Stress Disorder because of the sort of discriminatory acts that the defendants in this case had subjected her to. V.I. Docket at 72, Ex. 1.

It should also be noted that the exercise of personal jurisdiction would comport with the Due Process Clause. Indeed, in the case *sub judice*, it is clear that the Defendants Bill Gates, Steve Ballmer, and Melinda Gates, purposely availed themselves of the privilege of conducting activities in this forum. Plaintiff transferred from Duke Law to Georgetown Law, yet persons at Duke Law nevertheless contacted persons at Georgetown Law to continue to discriminate against Plaintiff in the District. In fact, persons at Duke Law even contacted and conspired with the Government Defendants to illegally place and keep Plaintiff under surveillance in a number of places where Plaintiff has lived, and this includes the District.

Defendant Melinda Gates was on the Duke University Board of Trustees when Plaintiff was first placed under illegal electronic at the end of her first year of law school and when Plaintiff continued to be subjected to the illegal electronic surveillance when she left North Carolina to complete her legal education at Georgetown Law.  First Am. Compl. at ¶ 197; D.C. Docket at 43, Ex. B, Decl. of Melinda Gates at ¶ 5.  In fact, Defendant Melinda Gates was aware of the discrimination that Plaintiff was being subjected to, and the way that the illegal electronic surveillance was being used to facilitate this discrimination.  First Am. Compl. at ¶¶ 46, 198.  However, Defendant Melinda Gates nevertheless joined in the conspiracy to discriminate against Plaintiff, and even intercepted statements Plaintiff made in her home, in the District of Columbia, in the Spring of 2000, and this clearly shows that she availed herself of the privilege of conducting activities in this jurisdiction.  First Am. Compl. at ¶¶ 199, 248-52; Ex. 1, Decl. at ¶ 18.

Similarly, Defendant Bill Gates and Defendant Steve Ballmer knew that Plaintiff was being discriminated against, that Plaintiff had been placed under illegal electronic surveillance to facilitate that discrimination, and that Plaintiff was continuously being subjected to illegal electronic surveillance, even if she went on a break from law school.  First Am. Compl. at ¶¶ 40, 43-46, 203-04, 262-63.  However, Defendant Bill Gates and Defendant Steve Ballmer nevertheless joined in the conspiracy to discriminate against Plaintiff, and intercepted the illegal electronic surveillance, and used ideas that they intercepted from the electronic surveillance to benefit themselves financially.  First Am. Compl. at ¶ 40, 46-47, 204, 207-08, 214, 263, 268-70, 273-77; Ex. 1, Decl. at ¶¶ 17, 19-20.  As such, it is clear that Defendant Bill Gates and Defendant Steve Ballmer, who knowingly joined in this conspiracy to discriminate against Plaintiff, and intercepted the illegal surveillance in the District as well as other places that Plaintiff has been,

First Am. Compl. at ¶¶ 43-47, 203-04, 207-08, 214, 262-63, 268-70, 273-76; Ex. 1, Decl. at ¶ 17, 19-20, also availed themselves of the privilege of conducting activities in this jurisdiction.

Plaintiff is aware that she sued Defendant Melinda Gates in her official capacity as a member of the Duke University Board of Trustees and in her personal capacity.  First Am. Compl. at ¶ 18.  Similarly, Plaintiff is aware that she sued Defendant Bill Gates and Defendant Steve Ballmer in their official capacity as Chairman and Chief Executive Officer, respectively, of Microsoft Corporation, and also in their personal capacity.  First Am. Compl. at ¶¶ 14-15.  However, even though Defendant Melinda Gates was a member of the Duke University Board of Trustees, and Defendants Bill Gates and Steve Ballmer are officers of Microsoft Corporation, these Defendants can still be held liable for civil conspiracy in their personal capacity.

"In order to plead a conspiracy between a corporation and its agents, a plaintiff must claim that the agents were acting outside the scope of employment or [committed acts that] 'were taken solely for personal, non-business motivations.'"  *Wiggins v. Equifax*, 853 F. Supp. 500, 504 (D.D.C. 1994) (citation omitted).  In the case *sub judice*, Plaintiff has brought this action against Defendants Bill Gates, Steve Ballmer, and Melinda Gates, because of their involvement in a conspiracy to discriminate against her based on her race.  First Am. Compl. at ¶¶ 98-100, 229-30, 293.  More specifically, Plaintiff has brought an action against these defendants because of their involvement in a conspiracy to discriminate against Plaintiff with the continuous use of illegal electronic surveillance.  First Am. Compl. at ¶¶ 40-47, 199, 204, 263.  The nature of these acts are such that it is clear that they are far outside the scope of any official duty Melinda Gates would have had as a member of the Duke University Board of Trustees, or any official duty that Bill Gates or Steve Ballmer would have as officers of Microsoft Corporation.

As such, it is clear that these defendants were acting outside the scope of any official duty they would have had, and further committed acts that were solely for personal reasons, because where an individual is motivated by racial bias, as these defendants are here, they are not acting out of concern for the best interests of the corporation. *See Coley v. M & M Mars, Inc*, 461 F. Supp. 1073, 1076-77 (M.D. Ga. 1978) ("Where race relations and not business matters are involved, this court must conclude that such a complaint sufficiently alleges the likelihood of personal, non-business motivation on the part of these two defendants."). Accordingly, all of these defendants can be held liable for civil conspiracy in their personal capacity.

Nevertheless, notwithstanding the foregoing, Defendants Bill Gates, Steve Ballmer and Melinda Gates have tried to claim that this Court may not exercise personal jurisdiction over them because the contacts they have purported to state in their Declarations "are not in any way connected" "let alone significantly connected" to the allegations in the Complaint. D.C. Docket 43, at 11. However, this argument is misplaced. First, it should be noted that Plaintiff seriously questions the veracity of statements that all of these defendants have made in their Declarations. Indeed, all of these defendants have attempted to claim that they had no knowledge of Plaintiff and did not "learn of her existence" until they learned of this lawsuit. D.C. Docket at 43, Ex. A, Decl. of Bill Gates at ¶ 7; Ex. B, Decl. of Melinda Gates at ¶ 8; Ex. C, Decl. of Steve Ballmer at ¶ 8. However, these statements strain credulity.

Notwithstanding the fact that Plaintiff read an article that attributed statements that she had made in her home to Defendant Melinda Gates, the simple fact of the matter is that Melinda Gates has been on the Duke University Board of Trustees for the bulk of the time that Plaintiff has been discriminated against, and not even the Duke Defendants have come into Court and filed Declarations purporting to claim that they had no knowledge of Plaintiff, or more to the

16

point, knowledge of the allegations in Plaintiff's Complaint, which is essentially what these Defendants are trying to claim. Further, even as to Defendants Bill Gates and Steve Ballmer, Plaintiff would note that these are individuals that benefited from ideas that Plaintiff gave to them electronically, and also from ideas that they stole by virtue of the illegal electronic surveillance, Ex. 1, Decl. at ¶¶ 17, 19-20, 22, and their attempt to claim they had no knowledge of Plaintiff begs the question, whose communications did they possibly believe they were intercepting over all of these years? In fact, it should be noted that Plaintiff has moved for leave to take jurisdictional discovery from these defendants, in a motion that has been filed herewith, in part to test the veracity of the statements that these Defendants have made in their Declarations to defeat the jurisdiction of this Court.

However, even with that said, Plaintiff would submit that the simple fact of the matter is that she does recognize that she has the burden of establishing a prima facie case that personal jurisdiction exists, *Jin*, 335 F. Supp. 2d at 77, and she has done so. Indeed, Plaintiff has established that there was a conspiracy, in which Defendants Bill Gates, Steve Ballmer and Melinda Gates participated, and in which the Government Defendants committed overt acts in furtherance of the conspiracy in this forum. Further, Plaintiff has established that Defendants Bill Gates, Steve Ballmer, and Melinda Gates, through their participation in this conspiracy, all purposely availed themselves of the benefits of this forum, which satisfies due process. Accordingly, this Court may exercise personal jurisdiction over all of these Defendants in this case.

## **CONCLUSION**

Accordingly, for the reasons that have been stated herein, Defendants Bill Gates, Steve Ballmer and Melinda Gates' Motion to Dismiss pursuant to Rule 12(b)(2) should be denied in its entirety.

                                                                Respectfully submitted,
                                                                ATTORNEY FOR PLAINTIFF,

DATED: October 6, 2006                        _____/s/_____
                                                                Suzette Richards, *Pro Se*
                                                                P.O. Box 223875
                                                                Christiansted, St. Croix  00822-3875
                                                                Telephone: (340) 277-4808
                                                                Fax: (340) 772-5785

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 6th day of October, 2006, a true and exact copy of the foregoing document was caused to be served via electronic notification upon:

Simone R. D. Francis, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802
Simone.francis@ogletreedeakins.com

Michael J. Murphy, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, N.W., Fifth Floor
Washington, D.C. 20037
Michael.murphy@odnss.com

Henry Feuerzeig, Esq.
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804
hfeurzeig@dtflaw.com

Charles E. Buffon, Esq.
Harry B. Roback, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
cbuffon@cov.com
hroback@cov.com

Richard Hunter, Esq.
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820
rhunter@hcbvilaw.com

Elizabeth O'Brien, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20002
eobrien@wc.com

Benton G. Peterson, Esq.
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W., Room E4905
Washington, D.C. 20530
Benton.peterson@usdoj.gov

                                                                      /s/
                                      Suzette Richards, *Pro Se*