# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUZETTE RICHARDS, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL NO. 06-01179 (RCL) |
| | ) | |
| v. | ) | ACTION FOR DAMAGES, |
| | ) | DISCRIMINATION, AND |
| DUKE UNIVERSITY, DUKE UNIVERSITY | ) | DECLARATORY AND |
| SCHOOL OF LAW, DUKE UNIVERSITY | ) | INJUNCTIVE RELIEF |
| BOARD OF TRUSTEES, NANNERL | ) | |
| KEOHANE, in her personal and official | ) | |
| Capacity as President of Duke University, | ) | |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY LAW CENTER, | ) | |
| ALBERTO GONZALES, in his official capacity | ) | |
| as Attorney General of the United States, | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | **JURY TRIAL DEMANDED** |
| JOHN AND JANE DOES 1-10, | ) | |
| WILLIAM H. GATES, III, in his personal and | ) | |
| official capacity as Chairman of Microsoft | ) | |
| Corporation, STEVE BALLMER, in his personal | ) | |
| and official capacity as Chief Executive Officer | ) | |
| of Microsoft Corporation, MICROSOFT | ) | |
| CORPORATION, MICROSOFT EMPLOYEES | ) | |
| A-J, and MELINDA GATES, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| —————————————————————— | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT GEORGETOWN UNIVERSITY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

**COMES NOW**, Plaintiff, *pro se*, and hereby respectfully opposes Defendant

Georgetown University's Motion to Dismiss that was brought pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure on October 31, 2006. [1]

---

[1] In Georgetown University's Motion to Dismiss, and Memorandum of Law that was submitted
in support thereof, it has again stated that "Georgetown University Law Center is not a separate
entity from Georgetown University capable of being sued".  However, the Complaint in this case

## FACTUAL BACKGROUND

Defendant Georgetown University has incorporated, by reference, the facts stated in its

Motion to Dismiss that was filed on July 13, 2006, along with the facts that were stated in the

Microsoft Defendants' Motion to Dismiss that was filed on May 8, 2006 (hereinafter "Microsoft

Defendants' Rule 12(b)(6) Motion"), and the facts that were stated in the Duke Defendants'

Motion to Dismiss that was filed on August 24, 2006 (hereinafter "Duke Defendants Rule

12(b)(6) Motion"). *See* Georgetown University's Mem. of Law at 2. Accordingly, Plaintiff

hereby incorporates, by reference, the facts stated in her Opposition to each of these motions that

was filed July 7, 2006, July 31, 2006, and September 22, 2006. *See* D.C. Docket at 3, 22 & 44.

Plaintiff's Complaint against Defendants Georgetown University and the Georgetown

University Law Center (collectively "Georgetown Defendants"), stems from the discrimination

she experienced while she was in law school. Plaintiff had began law school at the Duke

University School of Law (hereinafter "Duke Law") in the fall of 1997 and had realized, from

her first year of law school, that Duke Law had in place a system of discrimination, that had been

used to discriminate against minorities, particularly black students, for the more than twenty (20)

years that black students had attended the school. First Am. Compl. at ¶¶ 35-36, 107. Indeed, as

a result of this system of discrimination, black students had been excluded from participation on

---

has named both Georgetown University and the Georgetown University Law Center as
defendants in this action, *see* First Am. Compl. at ¶¶ 8-9, and there is certainly no Court Order
that has altered this in any way. In fact, this lawsuit is essentially an action against the principal,
Georgetown University, and its agent, the Georgetown University Law Center, which,
incidentally, is the entity that Georgetown University has specifically designated to handle
matters related to legal education. Indeed, it should be noted that if law schools, which would
presumably include the Georgetown University Law Center, are sufficiently proper parties to be
able to have an injury for which they can give an association standing to sue, *see Forum for
Academic and Institutional Rights, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 286-91 (D.N.J. 2003),
then it really is disingenuous for Georgetown University to now claim that the Georgetown
University Law Center is not a legal entity that can be sued.

the school's two most prestigious journals, received lower grades than white students, and had

been denied the honors they would otherwise have received if it were not for the system of

discrimination.  First Am. Compl. at ¶¶ 107-08, 112, 117.  The discrimination also had the effect

of preventing minorities from obtaining certain jobs considered to be prestigious in the legal

profession, like clerkships on the federal appellate and district court level.  First Am. Comp. ¶

111.

 As a first year law student at Duke Law, Plaintiff discovered that one of the ways Duke

Law facilitated this overall system of discrimination was by lying to students about how to take

exams.  First Am. Compl. at ¶¶ 105-06.  Indeed, Plaintiff, who was lied to about how law

schools exams should be taken, even objected to this discriminatory and fraudulent practice

during her first year of law school.  First Am. Compl. at ¶¶ 106, 124, 133-34.  Plaintiff even

considered suing Duke Law because of the discrimination she experienced during her first year

of law school, and even told a classmate about this, but she ultimately opted to simply transfer to

the Georgetown University Law Center ("Georgetown Law").  First Am. Compl. at ¶¶ 139, 32.

 However, the Duke Defendants continued to fear that Plaintiff would sue the school

because of the discrimination that they had subjected her to, which might in turn have exposed

the system of discrimination at the school and also lowered the school's rank on the U.S. News

and World Report Law School Rankings.  First Am. Compl. at ¶ 150.  The Dean of Duke Law at

the time, Pamela Gann, even told Saundra Dockery, who had supervised Plaintiff when she

worked at a work study job during undergrad at Duke, that she would do "anything" to keep the

law school in the top ten.  First Am. Compl. at ¶ 156.  In fact, the Duke Defendants were so

afraid that Plaintiff would file an action against them for discrimination, that they did not just

contact Saundra Dockery, but also contacted the Government Defendants, and illegally conspired

with the Government Defendants to place Plaintiff under electronic surveillance so they could obtain information to continue to discriminate against Plaintiff, to essentially undermine and discredit any claim of discrimination that Plaintiff might make against them.  First Am. Compl. at ¶¶ 38, 49, 142-43, 147, 178, 186-91.

Indeed, it should be noted that from the outset, the surveillance that Plaintiff has been subjected to, which has included listening devices and video surveillance, was always illegal as there was no basis in law or fact to place Plaintiff under any electronic surveillance.  First Am. Compl. at ¶ 48, 54.  In fact, the electronic surveillance that Plaintiff has been subjected to was never related to any criminal investigation and at no time has there ever been probable cause to place Plaintiff under any electronic surveillance.  First Am. Compl. at ¶52-53.  Instead, it was Plaintiff's objection to discriminatory practices at Duke Law that prompted the illegal surveillance that not only allowed the Duke Defendants, the Georgetown Defendants and the Microsoft Defendants to obtain information to discriminate against Plaintiff, but also allowed for private information, including medical information about Plaintiff, to be disseminated to many people.  First Am. Compl. at ¶¶ 60, 68-69, 71-72.  Although Plaintiff graduated from law school in late May of 2000, the illegal electronic surveillance that she was placed under has continued ever since and has followed Plaintiff no matter where she has lived or where she has went, for more than five (5) years.  First Am. Compl. at ¶¶ 32, 38-40, 43-46, 49.

Nevertheless, the Duke Defendants were also so afraid that Plaintiff would sue them for discrimination that they not only illegally placed Plaintiff under electronic surveillance, but also placed <u>one</u> black female student on one of the school's most prestigious journals, right after Plaintiff transferred from the school, for the first time in the history of the school.  First Am. Compl. at ¶ 110.  Still, the Duke Defendants were so afraid that Plaintiff would sue them for

discrimination that they actually contacted and conspired with persons at Georgetown Law to adversely affect Plaintiff professionally, personally and academically.  First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91.

More specifically, persons at Duke Law contacted and conspired with persons at Georgetown Law to adversely affect Plaintiff's overall educational experience at Georgetown Law, including lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely affecting Plaintiff's classroom experience, journal experience and job prospects.  First Am. Comp. at ¶¶ 147-48, 175-79, 186-91.  Indeed, this conspiracy that existed between persons at Georgetown Law and Duke Law, and other defendants named herein, was essentially done to undermine any claim of discrimination that Plaintiff could make against the Duke Defendants, which was always based on Plaintiff's race, ethnicity and gender.  First Am. Compl. at ¶¶ 49, 142-43, 147, 178, 186-91.

In fact, it should be noted that persons at Duke Law had already contacted persons at Georgetown Law, in furtherance of the conspiracy to discriminate against Plaintiff, before Plaintiff had even arrived at Georgetown Law.  First Am. Compl. at ¶ 173.  As a result, even though Plaintiff, upon her transfer to Georgetown Law, became one of approximately 1800 students at the school, she was nevertheless the first person called on in her Civil Rights class during her first semester at Georgetown Law, and then, during her second semester, she was called on six or seven times in a Corporations class that she had took, even though there were other students in the class that were called on two or three times, at the most, and there was at least one student that did not appear to have been called on even once.  First Am. Compl. at ¶¶ 174-75, 179.  In fact, on one occasion, during Plaintiff's second semester, Plaintiff, who was living at the Gewirz Student Center on Georgetown Law's campus at the time, even came home

to her apartment to find that her textbooks had been moved from where she had left them, and it appeared that persons at Georgetown Law may have even come into her apartment to look through her law school textbooks to determine whether or not she had done her reading assignments. First Am. Compl. at ¶¶ 181-82.

In fact, it should also be noted that at the end of Plaintiff's second year of law school at Georgetown Law, Plaintiff had submitted a draft of an article that she had worked on, which involved equal protection gender jurisprudence, to the *Georgetown Journal of Gender and the Law*, because Plaintiff had always been interested in issues related to gender. First Am. Compl. at ¶ 188. Although Plaintiff was a third year law student at Georgetown Law at the time the draft was being edited, the draft was radically changed to include issues on sexuality, and no one ever advised Plaintiff about any of the changes that were made to the draft. First Am. Compl. at ¶¶ 189-90. In fact, even though Plaintiff had contributed little to the article that was ultimately printed, and she had no knowledge of the sexuality issues included in the article, Plaintiff's name nevertheless appeared on the article as though she wrote it. First Am. Comp. at ¶ 191. Plaintiff did not even learn about the changes that had been done to the article until she saw copy of the article, for the first time, in December of 2001, which was about a year and a half after she had graduated from law school. First Am. Compl. at ¶¶ 32, 191. Still, during Plaintiff's third year of law school at Georgetown Law, Plaintiff even had a professor announce, in a civil rights class that she was taking, that for the first time in all the years that he had been teaching the class, he was going to include a day on homosexual civil rights issues. First Am. Compl. at ¶ 192.

Nevertheless, even though Plaintiff graduated from law school in May of 2000, the Duke Defendants and Georgetown Defendants still continued to interfere with Plaintiff personally and professionally. First Am. Compl. at ¶¶ 230-31, 287, 291-92. Indeed, the Duke Defendants,

Georgetown Defendants, and Government Defendants, have all continued to conspire to keep Plaintiff under illegal electronic surveillance because they not only want to discriminate against Plaintiff professionally, which is why the illegal surveillance has existed where Plaintiff has worked, but also because they also wish to interfere with Plaintiff personally, as they fear that if Plaintiff is not kept under illegal electronic surveillance Plaintiff could have a relationship with a man who is both white and wealthy.  First Am. Compl. at ¶¶ 46, 57, 64-65, 292.

## STANDARD OF REVIEW

"On a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts."  *Hopkins v. Women's Division General Board of Global Ministries*, 238 F. Supp. 2d 174, 177 (D.D.C. 2002) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1975)) (citation omitted).  "However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint."  *Hopkins*, 238 F. Supp. at 178.  "In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is able to only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Id.*  "The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief'."  *Id.*

## ARGUMENT

**I.   COUNT I IS NOT BARRED BY THE THREE (3) YEAR STATUTE OF LIMITATION AND PLAINTIFF HAS PLEAD THE ELEMENTS OF FRAUD AS IS REQUIRED BY FED. R. CIV. P. (9)(b)**

### a.   Plaintiff's claim for fraud is not barred by the statute of limitation

Plaintiff does not dispute that her claim for fraud would be subject to the three (3) year statute of limitation that is contained in D.C. Code § 12-301(8).  Rather, what Plaintiff does dispute is that this three year statute of limitation could be applied to bar her claim for fraud in this case, when she has alleged continuing violations.  Indeed, under the continuous tort doctrine, "the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases'."  *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984) (holding that plaintiff's cause of action was timely under the continuing tort doctrine).  "Since usually no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of the harm,' it seems proper to regard the cumulative effect of the conduct as actionable."  *Id.* at 822.  "Moreover, since 'one should not be allowed to acquire a right to continue the tortious conduct,' it follows logically that statutes of limitation should not run prior to its cessation."  *Id.*  In fact, the continuing tort doctrine is especially applicable in cases that involve discrimination, where in order to obtain relief, it is necessary to show sustained conduct or a pattern and practice.  *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982), cited in *Beard v. Gallagher*, 790 A.2d 541, 550 (D.C. 2002) (Ruiz, J., concurring).

Under the continuing tort doctrine, "a 'continuing tort' can be established for statute of limitations purposes by showing '(1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act. . . within the limitation period'."  *Beard*, 790 A.2d at 548 (citing *Dekine v. District*

*of Columbia*, 422 A.2d 981, 988 n. 16 (D.C. 1980). In the case *sub judice,* Plaintiff has alleged

that the Georgetown Defendants engaged in continuous acts of discrimination, which occurred

over a period of years, from which Plaintiff sustained damage. First Am. Compl. at ¶¶ 39, 39,

59-60, 75, 170, 172-73, 175-79, 186-91, 293. Specifically, as it relates to Plaintiff's claim for

fraud, persons at Georgetown Law conspired with persons at Duke Law to fraudulently grade

Plaintiff from the time Plaintiff transferred to Georgetown Law in the Fall of 1998, until the time

Plaintiff graduated from Georgetown Law in late May of 2000. First Am. Compl. at ¶¶ 176-78.

Plaintiff filed the initial Complaint in this matter on May 8, 2003. First Am. Compl. at 45. As

such, as the Georgetown Defendants continued to fraudulently grade Plaintiff through her

graduation from Georgetown Law in late May of 2000, under the continuing tort doctrine,

Plaintiff's claim for fraud would not even have started to run until late May of 2000, and as

Plaintiff filed her complaint on May 8, 2003, Plaintiff's claim for fraud would not be barred by

the three (3) year statute of limitation.

      Nevertheless, notwithstanding the foregoing, Defendant Georgetown University has

argued that since Plaintiff was aware of the fraudulent conduct since the Fall of 1998, the three

year statute of limitation would have began to run from this date, and therefore Plaintiff's claim

for fraud would be barred by the three (3) year statute of limitation. *See* Georgetown Univ.

Mem. of Law at 3-5. However, this argument is misplaced. Even if this Court were to find that

the continuing tort doctrine is not applicable to the continuous tortious conduct that the

Georgetown Defendants committed in this case, Plaintiff's fraud claim would still not be barred

by the statute of limitations.

      As Judge Ruiz explained in his concurring opinion in *Beard*, not all continuing torts are

alike. *Beard*, 790 A.2d at 550. Some continuing torts, like those that involve discrimination,

may be subject to the continuing tort doctrine, whereas others may not. *See id.* Where a continuing tort is not subject to continuing tort doctrine, "[t]he statute of limitations period for [the] continuing tort begins to run once a plaintiff has inquiry notice of a potential cause of action." *Jung v. Mundy*, 372 F.3d 429, 433 (D.C. Cir. 2004). However, "in the case of a continuing tort, filing after the limitations period has run does not mean that there can be no recovery." *Id.* Rather, "[t]he plaintiff then may recover only for injuries attributable to the part of the continuing tort that was committed within the limitations period immediately preceding the date on which suit is brought." *Id.* (holding conflict of interest claim was not completely barred by statute of limitations as appellant could still pursue his claim for any damages he sustained in the three year period immediately preceding the filing of the complaint). Indeed, as the U.S. Court of Appeals for the District of Columbia noted in *Jung*, "a contrary rule, barring any recovery for a continuing tort when the victim did not sue within the limitations period after discovery, would have the perverse result of conferring on the tortfeasor the right to continue the tortious conduct and harm the victim anew." *Id.*

In accordance with the foregoing, even if this Court were to find that the statute of limitations for Plaintiff's fraud claim began to run when she transferred to Georgetown Law in the Fall of 1998, Plaintiff would still be able to recover for any fraudulent acts the Georgetown Defendants committed within the three years immediately preceding the filing of the Complaint. Indeed, as the Georgetown Defendants continued to fraudulently grade Plaintiff, through Plaintiff's graduation from Georgetown Law in late May of 2000, Plaintiff would be able to recover for all fraudulent acts that occurred after May 7, 2000, which would constitute the three years immediately preceding the filing of Plaintiff's Complaint.

**b.  Plaintiff has alleged the necessary elements of fraud as is required by Fed. R. Civ. 9(b)**

Georgetown University has adopted and incorporated by reference the argument set forth the Duke Defendants' Rule 12(b)(6) Motion in regard to Plaintiff's claim for fraud.  Georgetown Univ. Mem. of Law at 5.  Accordingly, Plaintiff hereby incorporates and adopts by reference all of the arguments that she made in her Opposition to the Duke Defendants' Motion, in response to those arguments.  *See* Pl.'s Opp'n to Duke Defs.' Mot. to Dismiss at 9-10.

A claim for fraud "must comply with Federal Rule of Civil Procedure 9(b)'s requirement that circumstances constituting fraud or mistake be stated with particularity."  *United States v. Intrados/International Management Group*, 265 F. Supp. 2d 1, 5-6 (D.D.C. 2002) (citations omitted).  "The elements that must be plead with specificity are matters such as the time, place, and contents of the false representations, since the rule is chiefly concerned with the elements of fraud."  *Id.* at 6.  "The particularity requirement, however, does not abrogate the requirements of Rule 8, and it should be harmonized with the general directives in subdivisions (a) and (e) of Rule 8 that pleadings contain a short and plain statement of the claim or defense and that each averment be simple, concise, and direct."  *Id.*  "Furthermore, a plaintiff need not allege with specificity each element of [her] cause of action if it contains allegations from which an inference may be drawn that the plaintiff will produce evidence on the essential elements."  *Id.*

Plaintiff has alleged that at Georgetown Law they represent to students that they anonymously grade students, as this is the policy of this school.  First Am. Compl. at ¶¶ 148, 300.  However, such a representation was false and fraudulent as to Plaintiff because Plaintiff was not being anonymously graded during the two years that she was at Georgetown Law.  First Am. Compl. at ¶¶ 148, 300.  In fact, even before Plaintiff had begun her first day of class at Georgetown Law, the Duke Defendants had already contacted persons at Georgetown Law to

adversely affect Plaintiff's overall educational experience at Georgetown Law, which included fraudulently lowering and adversely affecting Plaintiff's grades in a number of courses throughout Plaintiff's two years of law school at Georgetown Law.  First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91.  Accordingly, for the reasons that have been stated herein, Plaintiff has plead her cause of action for fraud with the required specificity.

## II.  COUNTS II AND III ARE NOT BARRED BY THE STATUTE OF LIMITATION AND PLAINTIFF HAS STATED CLAIMS PURSUANT TO 42 USC § 2000d AND 20 U.S.C. § 1681 FOR WHICH RELIEF MAY BE GRANTED

Defendant Georgetown University has incorporated, by reference, the arguments that were raised by the Duke Defendants in support of their motion to dismiss Counts 2 and 3 of the Complaint.  *See* Georgetown University Mem. of Law at 6.  Accordingly, Plaintiff hereby incorporates and adopts by reference the arguments that she made in her Opposition to the Duke Defendants Motion to Dismiss, in response to those arguments.  *See* Pl.'s Opp'n to Duke Def's Mot. to Dismiss at 10-14, 18—21, 43-44.  In addition, Plaintiff submits that Georgetown University's argument that Plaintiff's claims are barred by the statute of limitations, and that Plaintiff has failed to state a claim for racial or sexual harassment upon which relief may be granted, is misplaced.

### a.  Counts II and III are not barred by the statute of limitations

Plaintiff does not dispute that her claims for discrimination pursuant to 42 U.S.C. § 2000d and 20 U.S.C. § 1681 would be subject to the three (3) year statute of limitation that is contained in D.C. Code § 12-301(8).  Rather, what Plaintiff does dispute is that this three year statute of limitation could be applied to bar her claims for discrimination, when the Georgetown Defendants have engaged in continuous violations of her rights.  Indeed, in the case *sub judice*, Plaintiff has alleged that the Georgetown Defendants have engaged in continuous acts of

discrimination, which have occurred over a period of years, from which Plaintiff sustained damage. First Am. Compl. at ¶¶ 39, 39, 59-60, 75, 170, 172-73, 175-79, 186-91, 293. As such, as the Georgetown Defendants have continued to engage in discriminatory acts, through and beyond the filing of the Complaint, it is clear, under the continuing tort doctrine, that Plaintiff's claims for discrimination would not be barred by any statute of limitation.

However, even if this Court were to find that the continuing tort doctrine were not applicable, Plaintiff would still be able to recover for any acts of discrimination that occurred in the three years preceding the filing of the Complaint. *See Jung,* 372 F.3d at 434. Indeed, as the Georgetown Defendants continued to discriminate against Plaintiff through her graduation from Georgetown Law in late May of 2000, and even after she graduated from law school in May of 2000, Plaintiff would be able to recover for all discriminatory acts that occurred after May 7, 2000.

### b. The Georgetown Defendants intentionally discriminated against Plaintiff based on her race and national origin in violation of 42 U.S.C. § 2000d

Title VI of the Civil Rights Act of 1964, which is codified at 42 U.S.C. § 2000d *et seq.*, provides, in pertinent part, as follows: "No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Essentially, Title VI prohibits federally assisted programs or activities, like private educational institutions, from discriminating on the basis of race, color or national origin. *See id.*; 42 U.S.C. § 2000d-4a (defining "program or activity" and "program" to include "all of the operations of a college, university or other postsecondary institution. . . any part of which is extended Federal financial assistance.").

As this Court noted in *Chandamuri v. Georgetown University*, 274 F. Supp. 2d 71, 77-78 (D.D.C. 2003), a plaintiff does not have to set forth the *prima facie* elements of a discrimination claim to survive a motion to dismiss. *See id.*; *Sparrow v. United Air Lines*, 216 F.3d 1111, 1114 (D.C. Cir. 2000). Rather, to satisfy the pleading requirements in a discrimination claim Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'." *Id.* "The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 711 F.2d at 293. Indeed, "[t]he provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." *Id.*

In the case *sub judice*, Plaintiff's Complaint has given the Georgetown Defendants ample notice of what her claims are, and the basis upon which these claims rest. Plaintiff has alleged that she was discriminated against while she was a first year law student at Duke Law. First Am. Compl. at ¶¶ 35-38, 105-46. Plaintiff has further alleged that although Plaintiff transferred to Georgetown Law, the Duke Defendants nevertheless contacted and conspired with persons at Georgetown Law to continue to discriminate against Plaintiff to adversely affect her professionally, personally and academically. First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91. More specifically, Plaintiff has alleged that persons at Duke Law conspired with persons at Georgetown Law to adversely affect Plaintiff's overall educational experience at

Georgetown Law, including lowering and adversely affecting Plaintiff's grades in a number of courses throughout Plaintiff's two years at Georgetown Law, as well as adversely affecting Plaintiff's classroom experience, journal experience and job prospects.  First Am. Comp. at ¶¶ 147-48, 175-79, 186-91.  Plaintiff has even alleged that the discriminatory acts that Plaintiff was subjected to was because of her race and ethnicity.  First Am. Compl. at ¶ 293.

Plaintiff has also alleged that as early as June of 1998, persons at Duke Law, in furtherance of the conspiracy to discriminate against Plaintiff, had also contacted the Government Defendants, and conspired with the them to illegally place and keep Plaintiff under electronic surveillance, so that they could obtain information to discriminate against Plaintiff. First Am. Compl. at ¶¶ 38-39; 165-70.  Plaintiff has alleged that the she continued to be subject to the illegal electronic surveillance after she transferred to Georgetown Law, and that the Georgetown Defendants conspired with the Duke Defendants and the Government Defendants to keep Plaintiff under illegal electronic surveillance so they could obtain information to discriminate against Plaintiff.  First Am. Compl. at ¶¶ 39, 49, 60, 75.  In fact, Plaintiff has alleged that even though she graduated from law school in late May of 2000, the Duke Defendants, Georgetown Defendants, and Government Defendants, have all continued to conspire to keep Plaintiff under illegal electronic surveillance because they not only want to discriminate against Plaintiff professionally, but also because they also wish to interfere with Plaintiff personally, as they fear that if Plaintiff is not kept under illegal electronic surveillance Plaintiff could have a relationship with a man who is both white and wealthy.  First Am. Compl. at ¶¶ 32, 46, 57, 64-65, 273-76, 292.

Nevertheless, notwithstanding the foregoing, Georgetown University has attempted to claim that Plaintiff has failed to state a claim for racial discrimination because Plaintiff has stated

"general and conclusory allegations" that "does nothing to establish racial animus or discriminatory intent." *See* Georgetown University's Mem. of Law at 6.  However, this argument is misplaced.  First, even though Plaintiff is not required to set out the precise facts upon which her claims are based, *see Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983), Plaintiff's Complaint still states specific factual assertions on which her claims are based, and the allegations are more than sufficient to give Georgetown University notice of what Plaintiff's claims are and the basis upon which those claims rest.  Second, the Supreme Court has already held, in a discrimination context, that a plaintiff does not have to allege circumstances which support an inference of discrimination to survive a motion to dismiss.  *See Swierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002); *see also Phillip v. University of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003).  Nevertheless, Plaintiff would note that she has alleged facts that are sufficient to show that the Georgetown University intended to discriminate against her on the basis on race.

Indeed, it is not just that Plaintiff has specifically alleged that the discrimination was based on race, First Am. Compl. at ¶¶ 37-40, 293, but rather the nature and extent of Georgetown University's conduct that establishes an intent to discriminate because of Plaintiff's race and national origin.  Indeed, it should be noted that students transfer from one institution to another every year, and when these transfers occur, professors at the former school do not contact and conspire with the professors at the school that the student has transferred to in order to discriminate against the student and adversely affect the student's educational experience at the school the student has transferred to.  In fact, when students transfer from one institution to another, professors at the former school certainly do not contact and conspire with professors at the school the student has transferred to, along with persons in the United States Government, to place and keep the student under illegal electronic surveillance, to obtain information to

discriminate against the student. The simple fact of the matter is that the sort of conduct that

Georgetown University has engaged in in this case has been outrageous, and there really is no

question that their actions were motivated by racial animus and an intent to discriminate.

### c. The Georgetown Defendants discriminated against Plaintiff on the basis of sex in violation of 20 U.S.C. § 1681

Title IX of the Education Amendments of 1972, which is codified at 20 U.S.C. §§ 1681-

88, provides, in relevant part, as follows: "No person in the United States shall, on the basis of

sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial assistance."

20 U.S.C. § 1681. Essentially, Title IX, like Title VI, prohibits federally assisted programs or

activities, like private educational institutions, from discriminating on the basis of sex. *See id.*;

20 U.S.C. § 1687 (defining "program or activity" and "program" to include "all of the operations

of a college, university or other postsecondary institution. . . any part of which is extended

Federal financial assistance."). Indeed, "Title IX was enacted to supplement the Civil Rights Act

of 1964's ban on racial discrimination in the workplace and in universities." *Yusuf v. Vassar*, 35

F.3d 709, 714 (2d Cir. 1994). In fact, "[b]ecause Title IX mirrors the substantive provisions of

Title VI of the Civil Rights Act of 1964, courts have interpreted Title IX by looking to the body

of law developed under Title VI, as well as by caselaw interpreting Title VII." *Id.* (citations

omitted).

As this Court noted in *Chandamuri*, a plaintiff does not have to set forth the *prima facie*

elements of a discrimination claim to survive a motion to dismiss. *See Chanramuri*, 274 F.

Supp. 2d at 77-78; *Sparrow*, 216 F.3d at 1114. Rather, to satisfy the pleading requirements in a

discrimination claim Plaintiff's Complaint need only contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure).

In the case *sub judice*, Plaintiff has stated a cause of action for discrimination on the basis of sex.  After Plaintiff had spoken to Dean Sockwell about the erroneous instructions that she had given with respect to the taking of law school exams, and after Plaintiff had mentioned to another first year law student that she was considering filing an action against the school for discrimination, the Duke Defendants began to seek personal information about Plaintiff, including information of a sexual nature.  First Am. Compl. at ¶ 154.  Thereafter, from the end of Plaintiff's first year of law school, the Duke Defendants contacted the Government Defendants and conspired with them to illegally place Plaintiff under electronic surveillance to obtain information to discriminate against her.  First Am. Compl. at ¶ 38.  The illegal electronic surveillance continued after Plaintiff transferred to Georgetown Law, and Plaintiff has remained under surveillance ever since.  First Am. Compl. at ¶¶ 43-46, 60, 62,165.

The surveillance has been a breathtakingly broad form of surveillance which has consisted of video surveillance and listening devices in Plaintiff's home and even her place of employment.  First Am. Compl. at ¶ 54.  There has been information of a medical nature that has been released into the public domain because of the illegal electronic surveillance, and Plaintiff continues to be subject to the illegal surveillance not only because the Duke Defendants and the Georgetown Defendants want to interfere with Plaintiff professionally, but because they want to interfere with Plaintiff personally as well.  First Am. Compl. at ¶¶ 60, 62, 165, 292.  Indeed, the conspiracy to place Plaintiff under illegal electronic surveillance, which has continued for more than a five (5) year period of time, and which has been incredibly intrusive and degrading, was

done not only because Plaintiff is black, but also because she is a woman.  First Am. Compl. at

¶¶ 54, 43-44, 293.

### d.  The actions of the Georgetown Defendants constituted sexual harassment in violation of 20 U.S.C. § 1681

A plaintiff does not have to set forth the *prima facie* elements of a discrimination claim to

survive a motion to dismiss.  *See Chandamuri*, 274 F. Supp. 2d at 77-78; *Sparrow*, 216 F.3d at

1114.  Rather, to satisfy the pleading requirements in a discrimination claim Plaintiff's

Complaint need only contain "a short and plain statement of the claim showing that the pleader is

entitled to relief."  *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of

Civil Procedure).  Nevertheless, in order to state a claim for sexual harassment pursuant to Title

IX, a plaintiff must show "(1) that she was student, (2) who was subjected to harassment (3)

based upon sex; (4) that the harassment was sufficiently severe and pervasive to create an

abusive educational environment; and (5) that a cognizable basis for institutional liability exists."

*Frazier v. Fairhaven School Committee*, 276 F.3d 52, 66 (1st Cir. 2002).  "To satisfy the fifth

part of this formulation, [a] plaintiff must prove that a school official authorized to take

corrective action had actual knowledge of the harassment, yet exhibited deliberate indifference to

it."  *Id.*

In the case *sub judice*, Plaintiff has stated a cause of action for sexual harassment.

Plaintiff transferred from Duke Law to Georgetown Law to complete her legal education.  First

Am. Compl. at  ¶ 32.  However, the Duke Defendants had nevertheless contacted and conspired

with the Government Defendants to place Plaintiff under a breathtakingly broad form of illegal

electronic surveillance which continued throughout Plaintiff's time at Georgetown Law and

which has continued since.  First Am. Compl. at ¶ 38.  The surveillance included video

surveillance and listening devices in Plaintiff's home.  First Am. Compl. at ¶ 54.  The

19

surveillance even resulted in the dissemination of private medical information about Plaintiff into the public domain while she was a student at Georgetown Law.  First Am. Compl. ¶ 60.  The purpose of the surveillance was to obtain information to discriminate against Plaintiff and adversely affect Plaintiff's educational environment and deprive Plaintiff of her right to have an equal educational opportunity.  First Am. Compl. at ¶ 71.  Defendant Nannerl Keohane, who was President of Duke University at the time, along with other persons on the Duke University Board of Trustees, had knowledge of the conduct, but did nothing to stop it and in fact joined in the conspiracy to violate Plaintiff's rights.  First Am. Compl. at ¶¶ 99-102.  The extensive nature of the ongoing acts of surveillance is such that Plaintiff would be able to establish actual notice and deliberate indifference on the part of school officials at Georgetown University.  Indeed, the conspiracy to place Plaintiff under illegal electronic surveillance, which has continued through Plaintiff's two years at Georgetown Law, and which was incredibly intrusive and degrading, was done not only because Plaintiff is black, but also because she is a woman.  First Am. Compl. at ¶¶ 54, 43-44, 293.

### III. PLAINTIFF HAS STATED A CAUSE OF ACTION AGAINST THE GEORGETOWN DEFENDANTS FOR VIOLATIONS OF HER CONSTITUTIONAL RIGHTS

Defendant Georgetown University has incorporated and adopted, by reference, the arguments made by the Duke Defendants with respect to the constitutional violations that are alleged in Count IV of the Complaint.  *See* Georgetown Univ. Mem. of Law at 7.  Accordingly, Plaintiff hereby incorporates and adopts by reference all of the arguments that she made in her Opposition to the Microsoft Defendants Motion to Dismiss, in response to those arguments.  *See* Pl.'s Opp'n to Microsoft Defs.' Mot. to Dismiss at 16-22.

### IV. COUNT VI IS NOT BARRED BY THE STATUTE OF LIMITATIONS AND PLAINTIFF HAS STATED A CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1981

Defendant Georgetown University has adopted and incorporated, by reference, the arguments that the Duke Defendants have made in their Motion to Dismiss regarding 42 U.S.C. § 1981. *See* Georgetown Univ. Mem. of Law at 7. Accordingly, Plaintiff hereby adopts and incorporates by reference all of the arguments she submitted in her Opposition to the Duke Defendants Motion to Dismiss regarding 42 U.S.C. § 1981. *See* Pl.' Opp'n to Duke Defs. Mot. to Dismiss at 21-29, 42-44; Pl.'s Opp'n to Microsoft Defs. Mot. to Dismiss at 22-32. Plaintiff, however, nevertheless adds that contrary to arguments made by Georgetown University, Plaintiff has stated a cause of action against it pursuant to 42 U.S.C. § 1981, and this cause of action is not barred by the statute of limitation.

### a. Plaintiff's claim against Defendant Georgetown University for violation her rights pursuant to Section 1981 is not barred by the statute of limitation

Plaintiff does not dispute that her claim for discrimination pursuant to Section 1981 would be subject to the three (3) year statute of limitation that is contained in D.C. Code § 12-301(8). Rather, what Plaintiff does dispute is that this three year statute of limitation could be applied to bar her claims for discrimination, when the Georgetown Defendants have engaged in continuous violations of her rights. Indeed*,* in the case *sub judice*, Plaintiff has alleged that the Georgetown Defendants have engaged in continuous acts of discrimination, which have occurred over a period of years, from which Plaintiff sustained damage. First Am. Compl. at ¶¶ 39, 39, 59-60, 75, 170, 172-73, 175-79, 186-91, 293. As such, as the Georgetown Defendants have continued to engage in discriminatory acts, through and beyond the filing of the Complaint, it is clear, under the continuing tort doctrine, that Plaintiff's claims for discrimination would not be

barred by any statute of limitation. However, even if this Court were to find that the continuing tort doctrine were not applicable, Plaintiff would still be able to recover for any acts of discrimination that occurred in the three years preceding the filing of the Complaint. *See Jung,* 372 F.3d at 434. Indeed, as the Georgetown Defendants continued to discriminate against Plaintiff through her graduation from law school in late May of 2000, and even after she graduated from law school, Plaintiff would be able to recover for all discriminatory acts that occurred after May 7, 2000.

###### b. Plaintiff has stated a cause of action against the Duke Defendants for violations of her rights pursuant to 42 U.S.C. § 1981

Defendant Georgetown University has argued that Plaintiff "has failed to allege with the required specificity that any actions on the part of Georgetown illustrate an attempt to discriminate on the basis of race." Georgetown Univ. Mem. of Law at 8. However, this argument is misplaced. The Supreme Court has already held, in a discrimination context, that a plaintiff does not have allege circumstances which support an inference of discrimination to survive a motion to dismiss. *See Swierkiewicz,* 534 U.S. at 515; *see also Phillip,* 316 F.3d at 298. Rather, to satisfy the pleading requirements in a discrimination claim Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz,* 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'." *Id.* Indeed, the simple fact of the matter is that contrary to the argument that has been put forth by the Defendant Georgetown University, civil rights cases are not subject to any heightened pleading standard. *See Swierkiewicz,* 534 U.S. at 515; *Sparrow,* 216 F.3d at 1115.

Nevertheless, notwithstanding the foregoing, Plaintiff would note that she has alleged facts that are sufficient to show that Defendant Georgetown University intended to discriminate against her on the basis on race. Indeed, it is not just that Plaintiff has specifically alleged that the discrimination was based on race, First Am. Compl. at ¶¶ 37-40, 293, but rather the nature and extent of Defendant Georgetown University's conduct, which has gone on for years, that establishes an intent to discriminate because of Plaintiff's race.

Defendant Georgetown University has also claimed that Plaintiff has not alleged any conduct that would constitute interference with any contract. Georgetown Univ. Mem. of Law at 8. According to Georgetown University, to the extent Plaintiff "contracted with Georgetown to receive a legal education and a juris doctor degree, that is exactly what she received." *Id.* However, this argument is misplaced. Plaintiff did not just contract to receive a legal education. Rather, she contracted to receive a legal education that was free of racial animus, which is the type of education that Georgetown University was legally obligated to provide.

Indeed, the express language of Section 1981 states the term "make and enforce contracts" not only includes the "making, performance, modification and termination of contracts" but also "the enjoyment of ***all*** benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Clearly, a term of the implied contract to obtain a legal education was Plaintiff's right to obtain her law degree without being subject to any discriminatory conduct. *Cf. Tripp v. Long Island University*, 48 F. Supp. 2d 220, 224 (E.D.N.Y. 1999).

However, in the case *sub judice*, Plaintiff was simply denied the right to contract to obtain a legal education free of racial animus. Indeed, Plaintiff has alleged that she was discriminated against while she was a first year law student at Duke Law. First Am. Compl. at

¶¶ 35-38, 105-46.  Plaintiff has further alleged that although Plaintiff transferred to Georgetown Law, the Duke Defendants nevertheless contacted and conspired with persons at Georgetown Law to continue to discriminate against Plaintiff to adversely affect her professionally, personally and academically.  First Am. Comp. at ¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91.  More specifically, Plaintiff has alleged that persons at Duke Law conspired with persons at Georgetown Law to adversely affect Plaintiff's overall educational experience at Georgetown Law, including lowering and adversely affecting Plaintiff's grades in a number of courses, as well as adversely affecting Plaintiff's classroom experience, journal experience and job prospects.  First Am. Comp. at ¶¶ 147-48, 175-79, 186-91.  Plaintiff has alleged that the discriminatory acts that Plaintiff was subjected to was because of her race and ethnicity.  First Am. Compl. at ¶ 293.

Plaintiff has also alleged that as early as June of 1998, persons at Duke Law, in furtherance of the conspiracy to discriminate against Plaintiff, had also contacted the Government Defendants, and conspired with the them to illegally place and keep Plaintiff under electronic surveillance, so that they could obtain information to discriminate against Plaintiff.  First Am. Compl. at ¶¶ 38-39; 165-70.  Plaintiff has alleged that the she continued to be subject to the illegal electronic surveillance after she transferred to Georgetown Law, and that the Georgetown Defendants conspired with the Duke Defendants and the Government Defendants to keep Plaintiff under illegal electronic surveillance so they could obtain information to discriminate against Plaintiff.  First Am. Compl. at ¶¶ 39, 49, 60, 75.  In fact, Plaintiff has alleged that even though she graduated from law school in late May of 2000, the Duke Defendants, Georgetown Defendants, and Government Defendants, have all continued to conspire to keep Plaintiff under illegal electronic surveillance because they not only want to

discriminate against Plaintiff professionally, but also because they also wish to interfere with Plaintiff personally.  First Am. Compl. at ¶¶ 32, 46, 57, 64-65, 273-76, 292.

In fact, it should be noted that as Georgetown University has continued to conspire with the Duke Defendants and the Government Defendants to place and keep Plaintiff under illegal surveillance at places she has worked since she left law school, this would also constitute a violation of Section 1981.  Indeed, with respect to any place that Plaintiff has worked, she has clearly contracted to earn a living free of racial animus, *cf. Vietnamese Fishermen's Ass'n*, 518 F. Supp. at 1008, and the continuous presence of the illegal electronic surveillance to discriminate against her has violated this right.[2]

Further, it should also be noted that Plaintiff's right to "make and enforce contracts" is not the only right that has been impaired by the discriminatory conduct of Defendant Georgetown University.  Rather, under Section 1981, Plaintiff has also been denied her right to the "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," 42 U.S.C. § 1981, and Plaintiff is entitled to pursue these claims as well.  In fact, as Plaintiff stated in her Opposition to the Microsoft Defendants Motion to Dismiss, *see* Opp'n to Mot. to Dismiss at 31, Plaitniff has been deprived of all the protections that are afforded by federal, state and territorial wiretapping statutes, which include (1) that any electronic surveillance be authorized by a court; (2) that the surveillance be for legitimate law enforcement purposes; (3) that a government entity establish probable cause to secure court authorization for any electronic surveillance; and (4) that the information obtained from the

---

[2] Plaintiff would note that third parties can be held liable for violating and conspiring to violate an individual's contract rights under 42 U.S.C. § 1981.  *See Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir. 1975); *Vietnamese Fishermen's Ass'n*, 518 F. Supp. at 1008.; *Sullivan v. Little Hunting Park*, 396 U.S. 229, 237 (1969) (holding, in the context of 42 U.S.C. § 1982, that the right to lease was protected against the actions of third parties and the immediate lessor).

surveillance be subject to legal limitations as to how it may be used and to whom it can be disclosed. *See* 18 U.S.C. §§ 2510-2522; N.C. Gen. Stat. 15A-286-298; D.C. Code Ann. §§ 23-541-556; V.I. Code Ann. tit. 5, §§ 4101-4107.

### V. PLAINTIFF HAS ALLEGED DEPRIVATIONS OF RIGHTS GUARANTEED AGAINST PRIVATE IMPAIRMENT AND AS SUCH, HAS STATED A CAUSE OF ACTION UNDER 42 U.S.C. § 1985(3)

Defendant Georgetown University has incorporated and adopted, by reference, all of the arguments that were made by the Microsoft Defendants and the Duke Defendants in regards to 42 U.S.C. § 1985(3). *See* Georgetown Univ. Mem. of Law at 8. Accordingly, Plaintiff hereby adopts and incorporates, by reference, all of the arguments that she made in Opposition to the Microsoft Defendants' and the Duke Defendants' Motion to Dismiss, in response to these arguments. *See* Pl.'s Opp'n to Duke Defs.' Mot. to Dismiss at 32-36; Pl.' s Opp'n to Microsoft Defs. Mot. to Dismiss at 32-36.

### VI. PLAINTIFF HAS STATED A CAUSE OF ACTION PURSUANT TO 42 U.S.C § 1986 AND THIS CAUSE OF ACTION IS NOT BARRED BY THE STATUTE OF LIMITATION

Defendant Georgetown University has incorporated and adopted, by reference, the arguments that were made by the Microsoft Defendants regarding 42 U.S.C. § 1986. *See* Georgetown Univ. Mem. of Law at 9. Accordingly, Plaintiff hereby incorporates and adopts by reference all of the arguments that she made in her Opposition to the Microsoft Defendants Motion to Dismiss, in response to those arguments. *See* Pl.'s Opp'n to Microsoft Defs.' Mot. to Dismiss at 36-37, 41-42.

In addition, Plaintiff would also state that as the Georgetown Defendants have continued to engage in discriminatory acts, through and beyond the filing of the Complaint, it is clear, under the continuing tort doctrine, that Plaintiff's claims for discrimination would not be barred

by any statute of limitation.  However, even if this Court were to find that the continuing tort
doctrine were not applicable, Plaintiff would still be able to recover for any acts of
discrimination that occurred in the year preceding the filing of the Complaint.  *See Jung,* 372
F.3d at 434.

**VII.    PLAINTIFF HAS STATED A CAUSE OF ACTION PURSUANT TO 18
           U.S.C. § 2520 AND THIS CAUSE OF ACTION IS NOT BARRED BY THE
           STATUTE OF LIMITATION**

Defendant Georgetown University has incorporated and adopted, by reference, the
arguments made by the Microsoft Defendants regarding 18 U.S.C. § 2520.  *See* Georgetown
Univ. Mem. of Law at 7.  Accordingly, Plaintiff hereby incorporates and adopts by reference all
of the arguments that she made in her Opposition to the Microsoft Defendants Motion to
Dismiss, in response to those arguments.  *See* Pl.'s Opp'n to Microsoft Defs.' Mot. to Dismiss at
38-42.

Indeed, as the Georgetown Defendants have continued to conspire to illegal place and
keep Plaintiff under illegal electronic surveillance, through and beyond the filing of the
Complaint, it is clear, under the continuing tort doctrine, that Plaintiff's claims for illegal
electronic surveillance would not be barred by any statute of limitation.  However, even if this
Court were to find that the continuing tort doctrine were not applicable, Plaintiff would still be
able to recover for any illegal surveillance that occurred in the two years preceding the filing of
the Complaint.  *See Jung,* 372 F.3d at 434.

**VIII.   PLAINTIFF HAS STATED A CLAIM OF CIVIL CONSPIRACY**

Defendant Georgetown University has incorporated and adopted, by reference, the
arguments made by the Duke Defendants regarding Plaintiff's cause of action for civil
conspiracy.  *See* Georgetown Univ. Mem. of Law at 10.  Accordingly, Plaintiff hereby

27

incorporates and adopts by reference all of the arguments that she made in her Opposition to the

Duke Defendants Motion to Dismiss, in response to those arguments.  *See* Pl.'s Opp'n to Duke

Defs.' Mot. to Dismiss at 36-39.

IX. **PLAINTIFF HAS STATED A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND THIS CAUSE OF ACTION WOULD NOT BE BARRED BY ANY STATUTE OF LIMITATION**

Plaintiff does not dispute that her claim for intentional infliction of emotional distress

would be governed by the three year statute of limitation that is stated in D.C. Code § 12-301(8).

Rather, what Plaintiff does dispute is that this three year statute of limitation could be applied to

bar her claims for intentional infliction of emotional distress, when the Georgetown Defendants

have engaged in continuous violations of her rights.  Indeed, as the Georgetown Defendants have

continued to conspire to discriminate against Plaintiff, and illegally place and keep Plaintiff

under illegal electronic surveillance, through and beyond the filing of the Complaint, it is clear,

under the continuing tort doctrine, that Plaintiff's claims for invasion of privacy would not be

barred by any statute of limitation.  However, even if this Court were to find that the continuing

tort doctrine were not applicable, Plaintiff would still be able to recover for any acts that

constitute an intentional infliction of emotional distress that occurred in the three (3) years

preceding the filing of the Complaint.  *See Jung,* 372 F.3d at 434.

Further, while Georgetown University has claimed that Plaintiff's claim for intentional

infliction of emotional distress would fail as a matter of law because Plaintiff has not set forth

sufficient evidence of outrageous conduct and emotional injury, *see* Georgetown Univ. Mem. of

Law at 10, this argument is misplaced.  Plaintiff is not required to offer evidence to survive a

motion to dismiss.  *See Sparrow*, 216 F.3d at 1115.  Rather, to satisfy the pleading requirements

Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (citing Rule 8(a)(2) of the Federal Rules of Civil Procedure). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'." *Id.* Plaintiff hereby incorporates the arguments she made in her Opposition to the Duke Defendants Motion to Dismiss, regarding intentional infliction emotional distress, in support of this assertion. *See* Pl.'s Opp'n to Duke Defs. Mot. to Dismiss at 39-41.

## X.  PLAINTIFF'S CLAIM FOR INVASION OF PRIVACY IS NOT BARRED BY THE STATUTE OF LIMITATION

Defendant Georgetown University has alleged that Plaintiff's claim for invasion of privacy would be barred by the one year statute of limitation provided in D.C. Code § 12-301(4). However, this argument is misplaced. First, Plaintiff submits that her claims for invasion of privacy would not be subject to the one year statute of limitation provided in D.C. Code § 12-301(4). Section 12-301(4) provides that claims "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment" shall be subject to a one year statute of limitation. However, Plaintiff has not brought an action for any of the causes listed in Section 12-301(4). Rather, Plaintiff has brought an action for invasion of privacy, and as it is not specifically listed in Section 12-301(4), or any other subsection, it would be governed by the residual three (3) year statute of limitation that is provided in Section 12-301(8).

Plaintiff does realize that to the extent her cause of action for invasion of privacy was intertwined with a cause of action stated in Section 12-301(4), then the cause of action for invasion of privacy would also be subject to the limitation period provided in Section 12-301(4). *See Saunders v. Nemati*, 580 A.2d 660, 665 (D.C. 1990). However, in this case, Plaintiff has not brought such a cause of action. "Invasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded." *Wolf v.*

29

*Regardie*, 553 A.2d 1213, 1216-17 (D.C. 1989). "The four constituent torts are (1) intrusion upon one's solitude; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit." *Id.* at 1217.

Here, Plaintiff has sought to recover for intrusion upon one's solitude and for public disclosure of private facts, because of the continuous illegal electronic surveillance that she has been subjected to which has lead to the disclosure of private information about her. Neither of these torts would be intertwined with any tort stated in Section 12-301(4). In fact, while Georgetown University has argued that invasion of privacy would be essentially a defamation type action, Plaintiff respectfully disputes this assertion, as a claim for intrusion upon one's solitude and for public disclosure of private facts would not involve anything to do with libel or slander, and as these claims would not implicate the publication of any false statement that is alleged to be defamatory, Plaintiff would not even be able to state a cause of action for defamation. *See generally Prins v. Int'l Telephone & Telegraph Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991). Accordingly, as Plaintiff has stated independent causes of action for invasion of privacy, that is not intertwined with any other cause of action for which a period of limitation is specifically provided for in Section 12-301, these claims would be governed by the residual three (3) year statute of limitation in Section 12-301(8). *See Saunders*, 580 A.2d at 665.

Nevertheless, whether this Court applies the one or three year statute of limitation, Plaintiff would still be able to bring her causes of action for invasion of privacy. Indeed, as the Georgetown Defendants have continued to conspire to illegal place and keep Plaintiff under illegal electronic surveillance, through and beyond the filing of the Complaint, it is clear, under the continuing tort doctrine, that Plaintiff's claims for invasion of privacy would not be barred by

any statute of limitation.  However, even if this Court were to find that the continuing tort

doctrine were not applicable, Plaintiff would still be able to recover for any acts that constitute

an invasion of privacy that occurred in the year or the three (3) years preceding the filing of the

Complaint.  *See Jung,* 372 F.3d at 434.

## XI. PLAINTIFF HAS STATED A CAUSE OF ACTION FOR INTERFERENCE WITH PERSPECTIVE ADVANTAGE

Defendant Georgetown University has incorporated and adopted, by reference, the

arguments made by the Microsoft Defendants regarding Plaintiff's claim for interference with

perspective advantage.  *See* Duke Defs.' Mem. of Law at 33.  Accordingly, Plaintiff hereby

incorporates and adopts by reference all of the arguments that she made in her Opposition to the

Microsoft Defendants Motion to Dismiss, in response to those arguments.  *See* Pl.'s Opp'n to

Microsoft Defs.' Mot. to Dismiss at 42-44.

## XII.  PLAINTIFF HAS STATED A CAUSE OF ACTION FOR THE THEFT OF HER INTELLECTUAL PROPERTY

Duke Georgetown University has incorporated and adopted, by reference, the arguments

made by the Microsoft Defendants regarding Plaintiff's claim for the theft of her intellectual

property.  *See* Duke Defs.' Mem. of Law at 24.  Accordingly, Plaintiff hereby incorporates and

adopts by reference all of the arguments that she made in her Opposition to the Microsoft

Defendants Motion to Dismiss, in response to those arguments.  *See* Pl.'s Opp'n to Microsoft

Defs.' Mot. to Dismiss at 44-45.  In addition, Plaintiff would also add that Defendant

Georgetown University, like the other defendants in this case, should be held liable for all acts

that have been done as part of this conspiracy to violate Plaintiff's rights.  *See Qwest*

*Communications Corp. v. Weisz*, 278 F. Supp. 2d 1188, 1190 (S.D. Cal. 2003) ("Through

participation in the conspiracy, each coconspirator 'effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy'.").

**XIII.  SINCE NONE OF PLAINTIFF'S CLAIMS WOULD FAIL AS A MATTER OF LAW, PLAINTIFF WOULD BE ABLE TO RECOVER PUNITIVE DAMAGES**

Defendant Georgetown University has claimed that because all of Plaintiff's claims would fail as a matter of law, Plaintiff's claim for punitive damages would fail as well. However, as demonstrated herein, because none of Plaintiff's claims would fail as a matter of law, Plaintiff would be entitled to recover punitive damages.

## <u>CONCLUSION</u>

Accordingly, for all the foregoing reasons, the Defendant Georgetown University's Motion to Dismiss pursuant to Rule 12(b)(6) should be denied in its entirety.

Respectfully submitted,
ATTORNEY FOR PLAINTIFF,

DATED: November 14, 2006          _____/s/_____
                                  Suzette Richards, *Pro Se*
                                  P.O. Box 223875
                                  Christiansted, St. Croix  00822-3875
                                  Telephone: (340) 277-4808
                                  Fax: (340) 772-5785

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of November, 2006, a true and exact copy of the foregoing document was caused to be served via electronic notification upon:

Simone R. D. Francis, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802
Simone.francis@ogletreedeakins.com

Richard Hunter, Esq.
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820
rhunter@hcbvilaw.com

Michael J. Murphy, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, N.W., Fifth Floor
Washington, D.C. 20037
Michael.murphy@odnss.com

Elizabeth O'Brien, Esq.
Williams & Connolly LLP
725 Twelfth Street
Washington, D.C. 20002
eobrien@wc.com

Henry Feuerzeig, Esq.
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804
hfeurzeig@dtflaw.com

Benton G. Peterson, Esq.
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W., Room E4905
Washington, D.C. 20530
Benton.peterson@usdoj.gov

Charles E. Buffon, Esq.
Harry B. Roback, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
cbuffon@cov.com
hroback@cov.com

_____/s/_____
Suzette Richards, *Pro Se*
