# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUZETTE RICHARDS, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL NO. 06-01179 (RCL) |
| | ) | |
| v. | ) | ACTION FOR DAMAGES, |
| | ) | DISCRIMINATION, AND |
| DUKE UNIVERSITY, DUKE UNIVERSITY | ) | DECLARATORY AND |
| SCHOOL OF LAW, DUKE UNIVERSITY | ) | INJUNCTIVE RELIEF |
| BOARD OF TRUSTEES, NANNERL | ) | |
| KEOHANE, in her personal and official | ) | |
| Capacity as President of Duke University, | ) | |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY LAW CENTER, | ) | |
| ALBERTO GONZALES, in his official capacity | ) | |
| as Attorney General of the United States, | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | **JURY TRIAL DEMANDED** |
| JOHN AND JANE DOES 1-10, | ) | |
| WILLIAM H. GATES, III, in his personal and | ) | |
| official capacity as Chairman of Microsoft | ) | |
| Corporation, STEVE BALLMER, in his personal | ) | |
| and official capacity as Chief Executive Officer | ) | |
| of Microsoft Corporation, MICROSOFT | ) | |
| CORPORATION, MICROSOFT EMPLOYEES | ) | |
| A-J, and MELINDA GATES, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY FROM THE MICROSOFT DEFENDANTS

**COMES NOW**, Plaintiff, *pro se*, and hereby respectfully submits her reply in further

support of her motion for leave to take jurisdictional discovery from Defendants William H.

Gates, III ("Bill Gates"), Steve Ballmer and Melinda Gates (collectively "Microsoft

Defendants").

**ARGUMENT**

1.    **PLAINTIFF HAS SPECIFICALLY ALLEGED THE EXISTENCE OF A CONSPIRACY AND THE MICROSOFT DEFENDANTS' PARTICIPATION IN THAT CONSPIRACY**

Contrary to arguments put forth by the Microsoft Defendants, Plaintiff's allegations regarding the existence of a conspiracy and the Microsoft Defendants participation in the conspiracy are not conclusory or speculative.  Rather, Plaintiff has alleged specific acts that the Microsoft Defendants have engaged in which support this Court exercising personal jurisdiction over all of the Microsoft Defendants under the conspiracy doctrine.

"As with other forms of personal jurisdiction, conspiracy jurisdiction requires a prima facie showing of pertinent jurisdictional facts."  *Jin v. Ministry of State Security*, 335 F. Supp. 2d 72, 78 (D.D.C. 2004).  "Indeed, the D.C. Circuit has stated that 'our cases clearly require unusually particularized pleading [of the elements of conspiracy jurisdiction]'."  *Id.* (quoting *Edmond v. United States Postal Service General Counsel*, 949 F.2d 415, 428 (D.C. Cir. 1991).  As such, to prevail under a theory of conspiracy jurisdiction, courts require "a prima facie showing of (1) a conspiracy (2) in which the defendant participated and (3) a co-conspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the conspiracy."  *Id.* (citing *Jung v. Ass'n of American Med. Colleges*, 300 F. Supp. 2d 119, 141 (D.D.C. 2004).  In addition, at least one Court in this jurisdiction has held that in addition to these three elements, a plaintiff must also show that a defendant purposely availed itself of the privilege of conducting activities in the forum to ensure that the Court's exercise of personal jurisdiction comports with the Due Process Clause.  *Jin*, 335 F. Supp. 2d at 80.

In the case *sub judice*, Plaintiff has established all of the elements discussed above.  First, Plaintiff has specifically demonstrated that there was a conspiracy in which Defendants Bill

Gates, Steve Ballmer and Melinda Gates participated.  To establish a civil conspiracy, a plaintiff

must show "(1) an agreement between two or more persons; (2) to participate in an unlawful act,

or in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of

the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme."  *Jin*,

335 F. Supp. 2d at 79 n.4.  Significantly, however,

> [a] plaintiff. . . need not prove that each participant in a conspiracy knew the exact limits
> of the illegal plan or the identity of all participants therein.  The conspirators must share
> the general conspiratorial objective, but they need not know all the details of the plan. . .
> or possess the same motives.

*Id.* at 80 (quoting *Hobson v. Wilson*, 737 F.2d 1, 51-52 (D.C. Cir. 1984).  Indeed, "to

demonstrate the existence of a conspiratorial agreement, it simply must be shown that there was

'a single plan, the essential nature and general scope of which [were] known to each person who

is to be held responsible for its consequences."  *Hobson*, 737 F.2d at 51-52.

In the case *sub judice*, even though Plaintiff had been discriminated against during her

first year of law school at Duke Law, she nevertheless chose to transfer to Georgetown Law,

which is located in the District of Columbia, to complete her legal education.  First Am. Compl.

at ¶¶ 31-32, 34-37, 104-06, 124-31.  However, persons at Duke Law nevertheless contacted and

conspired with persons at Georgetown Law to continue to discriminate against Plaintiff, and

adversely affect her academically, professionally and personally, to essentially undermine and

discredit any claim of discrimination that Plaintiff could make against them.  First Am. Comp. at

¶¶ 39, 59-60, 75, 170, 172-73, 175-79, 186-91.

In fact, persons at Duke Law did not just contact persons at Georgetown Law to

discriminate against Plaintiff.  Rather, they also contacted the Government Defendants and

conspired with them to illegally place and continuously keep Plaintiff under electronic

surveillance wherever Plaintiff has been, including in the District, so that they could obtain

information to discriminate against Plaintiff. First Am. Compl. at ¶¶ 38-39. In fact, Plaintiff

first realized she had to have been placed under some form of illegal electronic surveillance, as

early as June of 1998, when a conversation she had had in her home, in Durham, North Carolina,

at the end of her first year at Duke Law, about medical information, appeared to have been

disclosed to persons who should not have had that information. First Am. Compl. at ¶ 165.

Indeed, even after Plaintiff transferred to Georgetown Law, and was living in Washington, D.C.[1],

it nevertheless appeared, again, that medical information from an examination she had had at the

Gewirz Student Center, at Georgetown Law, had been disseminated to persons who should not

have had that information because of the illegal electronic surveillance. First Am. Compl. at ¶

60; D.C. Docket 47, Ex. 1, Decl. at ¶ 16.

Defendant Melinda Gates was on the Duke University Board of Trustees while Plaintiff

was being subject to this discrimination at Georgetown Law. First Am. Compl. at ¶¶ 31-32, 197;

D.C. Docket 43, Ex. B, Decl. of Melinda Gates at ¶ 5. Indeed, it should be noted that Defendant

Melinda Gates has admitted that she was on the Duke University Board of Trustees from 1996 to

2004, D.C. Docket 43, Ex. B, Decl. of Melinda Gates at ¶ 5, which constitutes the bulk of time

that Plaintiff was being discriminated against by the defendants in this case. *See* First Am.

Compl. at ¶¶ 31, 37-44, 197. However, like other members of the Board of Trustees, Defendant

Melinda Gates did not act to stop the discrimination, but instead conspired with the Duke

Defendants and the Government Defendants in violating Plaintiff's rights, and keeping Plaintiff

under illegal electronic surveillance. First Am. Compl. at ¶¶ 46-47, 200. In fact, Plaintiff knows

that Defendant Melinda Gates was involved in the illegal interception of statements that Plaintiff

---

[1]  Plaintiff lived in Washington, D.C. from January of 1999 through May of 1999 and from
August of 1999 through August of 2000. *See* D.C. Docket 47, Ex. 1, Decl. at ¶ 22.

made in her home because Plaintiff even read an article where statements that Plaintiff had made in her home in the Spring of 2000, while she was living in the District of Columbia, were actually attributed to Defendant Melinda Gates in the article.  First Am. Comp. at ¶¶ 248-50; Ex. 1, Decl. at ¶ 18.

Although Defendant Bill Gates and Defendant Steve Ballmer knew that Plaintiff was being discriminated against by the Duke Defendants, the Government Defendants and the Georgetown Defendants, and that the illegal electronic surveillance that Plaintiff was being subjected to was being used to facilitate this discrimination, they nevertheless joined in the conspiracy to discriminate against Plaintiff during Plaintiff's third year of law school at Georgetown Law.  First Am. Compl. at ¶¶ 40, 46, 203-04, 262-63.  In fact, Defendants Bill Gates and Steve Ballmer intercepted statements that Plaintiff made in her home about wireless technology, in November of 1999, which resulted in them creating MSN Mobile.  First Am. Compl. at ¶¶ 207-08, 214; D.C. Docket 47, Ex. 1, Decl. at ¶ 17.  At the time these statements were intercepted, Plaintiff was a third year law student at Georgetown Law, and was actually on Thanksgiving break in North Carolina.  D.C. Docket 47, Ex. 1, Decl. at ¶ 17.

While Defendants Bill Gates and Steve Ballmer could have decided at that point, to cease intercepting information from the illegal surveillance, as they had to have known that Plaintiff, who was a law student at the time, was being subject to severe emotional distress by having her privacy invaded and her rights recklessly disregarded because of the illegal surveillance, First Am. Compl. at ¶ 73, they did not do so.  Instead, they continued to illegally intercept information from the illegal electronic surveillance and in September of 2000, they intercepted and used ideas that Plaintiff had written, in the same home that she was staying in in November of 1999, regarding the use of e-mails to generate revenue.  First Am. Compl. at ¶¶ 268-70; D.C. Docket

5

47, Ex. 1, Decl. at ¶ 19.  Then in February or March of 2001, they further intercepted and used

ideas Plaintiff had written regarding changing the name of Web TV to MSN TV, while Plaintiff

was a law clerk at what is now the Superior Court of the Virgin Islands.  First Am. Compl. at ¶¶

273-76; D.C. Docket 47, Ex. 1, Decl. at ¶ 20.  At no time, however, did the Microsoft

Defendants compensate Plaintiff for any of the ideas that they implemented and that Microsoft

Corporation profited from, and they certainly did not stop intercepting the surveillance.  First

Am. Compl. at ¶¶ 42-46, 278.

    Indeed, it should be noted that this is not a situation where the surveillance occurred for a

day or a week.  Rather, the surveillance that Plaintiff has been subjected to has occurred over a

number of years, in different places that Plaintiff has been, and has continued through today.

Indeed, it should be noted that Defendant Bill Gates and Defendant Steve Ballmer have even

allowed employees at Microsoft Corporation to use corporate resources to intercept the

surveillance, which has included listening devices and video surveillance, to obtain information

to degrade and harass Plaintiff.  First Am. Compl. at ¶¶ 42-46, 54, 233, 240, 264-66.

    In the case *sub judice*, it is clear, under the conspiracy doctrine, that when persons at

Duke Law contacted and conspired with the Government Defendants to illegally place and keep

Plaintiff under electronic surveillance in the District, in furtherance of the existing conspiracy to

discriminate against Plaintiff, and the Government Defendants placed Plaintiff under illegal

electronic surveillance in the District, the Duke Defendants committed acts within the District.

Further, it is also clear that when the Microsoft Defendants joined in this existing conspiracy to

discriminate against Plaintiff, to illegally place and keep Plaintiff under illegal electronic

surveillance, in the District, as well as other places, and the Government Defendants placed

Plaintiff under this surveillance, in the District, as well as other places, then the Microsoft

Defendants committed acts in the District as well.  Indeed, it should also be noted that Plaintiff's claims in this case arise out of the discrimination and the continuous illegal surveillance that she has been subjected to, in the District, as well as other places.  *See* First Am. Compl.

Further, Plaintiff has alleged that as a result of the discrimination that she has experienced, and the presence of the illegal electronic surveillance that has been used to further the discrimination that she has been subjected to, Plaintiff has suffered a number of injuries, which include loss of enjoyment of life, loss of reputation, loss of capacity to earn income, and emotional injuries that occurred here in the District when the acts were committed here against Plaintiff.  First Am. Compl. at ¶ 293.  In fact, it should be noted that even Plaintiff's expert, Dr. Steven Handwerker, diagnosed Plaintiff with Post Traumatic Stress Disorder because of the sort of discriminatory acts that the defendants in this case have subjected her to.  V.I. Docket at 72, Ex. 1.

Finally, it should also be noted that the exercise of personal jurisdiction over Defendants Bill Gates, Steve Ballmer and Melinda Gates, would comport with the Due Process Clause.  Indeed, as has been demonstrated above, it is clear that the Defendants Bill Gates, Steve Ballmer, and Melinda Gates, who all knowingly joined this conspiracy to violate Plaintiff's rights and who all committed acts in furtherance of this conspiracy to violate Plaintiff's rights, all purposely availed themselves of the privilege of conducting activities in this forum.  Indeed, in light of the conduct that the Microsoft Defendants have engaged in, it is clear that they all should have reasonably anticipated being haled into court in the District of Columbia.  In fact, for the Microsoft Defendants to attempt to assert otherwise would mean that they actually believed they could join in a conspiracy to violate Plaintiff's rights, in the District of Columbia and elsewhere, yet be immune from suit in a jurisdiction where they conspired to cause tortious injury.

Nevertheless, notwithstanding the allegations that Plaintiff has made in this case against the Microsoft Defendants, the Microsoft Defendants have actually attempted to argue that Plaintiff's allegations are conclusory and speculative and rest "solely on *post hoc, ergo propter hoc* rationale." Microsoft Defs. Opp'n to Mot. for Leave to Take Jurisdictional Disc. at 2. According to the Microsoft Defendants "if something happens after an occurrence (*post hoc*), it has not necessarily happened on account of that occurrence (*propter hoc*); hence the *post hoc ergo propter hoc* fallacy." Microsoft Defs. Reply in Supp. of Mot. to Dismiss Pursuant to Rule 12(b)(2) at 9 (citing *Bahura v. S.E.W. Investors*, 754 A.2d 928, 943 (D.C. 2000) (citations omitted).[2] However, these arguments are misplaced and should be rejected by this Court.

First, Plaintiff has specifically alleged the Microsoft Defendants intercepted the illegal electronic surveillance that Plaintiff was being subjected to, and has further provided specific instances in which information was intercepted from the illegal electronic surveillance by the Microsoft Defendants. First Am. Compl. at ¶¶ 40, 46-47, 207-08, 214, 248-50, 268-70, 273-76. While the Microsoft Defendants have tried to claim that Plaintiff's allegations rely "solely on *post hoc, ergo propter hoc* rationale", this argument should be rejected by this Court for the same reason that a similar argument was rejected in the *Bahura* case that has been relied on by the Microsoft Defendants. *See* D.C. Docket 51 at 9.

In *Bahura,* the D.C. Court of Appeals did state that "if something happens after an occurrence (*post hoc*), it has not necessarily happened on account of that occurrence (*propter hoc*); hence the *post hoc ergo propter hoc* fallacy." *Bahura*, 754 A.2d at 943. However, immediately after stating this, the D.C. Court of Appeals then stated that "neither obeisance to

---

[2] The Microsoft Defendants incorporated this argument, and all of the other arguments that they made in their Reply in Support of their Motion to Dismiss Pursuant to Rule 12(b)(2), in their Opposition to Plaintiff's Motion for Leave to take Jurisdictional Discovery. *See* D.C. Docket 51, at 2 n. 1.

Latin phrases nor [the Court's] more general obligation to exercise caution before converting 'after' into 'because' requires [them] to be blind to common-sense inferences from. . . timing." *Id.* The D.C. Court of Appeals then went on to explain that they had held, in several cases, that "the trier of fact was not required to attribute to coincidence the proximity in time between conduct and its alleged consequences, but could fairly infer a causal relationship." *Id.*

In fact, it should be noted that in most civil conspiracy cases, courts will usually have to infer the existence of a conspiracy, and a defendant's participation in a conspiracy, from indirect evidence. *See Halberstam v. Welch*, 705 F.2d 472, 486 (D.C. Cir. 1983); *Weishapl v. Sowers*, 771 A.2d 1014, 1024 (D.C. 2001) (acknowledging the use of circumstantial evidence to establish a conspiratorial agreement). Indeed, "[p]roof of a tacit, as opposed to explicit, understanding is sufficient to show agreement." *Halberstam*, 705 F.2d at 477. "The circumstances of the wrongdoing generally dictate what evidence is relevant or available in deciding whether an agreement exists." *Id.* "Factors like the relationship between the parties' acts, the time and place of their execution, and the duration of the joint activity influence the determination." *Id.*

In the case *sub judice*, based on the context of the Microsoft Defendants' acts, it is clear that there is sufficient evidence to find that the Microsoft Defendants joined in a conspiracy to violate Plaintiff's rights. In fact, the Microsoft Defendants are not the only defendants that have intercepted the illegal electronic surveillance that Plaintiff has been subjected to. Rather, the Duke Defendants and the Georgetown Defendants have also intercepted the illegal electronic surveillance, which has existed since June of 1998, and which has allowed for even information of a medical nature to be disseminated about Plaintiff. First Am. Compl. at ¶¶ 38-39, 46, 60, 165. As such, in light of all the discriminatory acts that have occurred in this case, it is clear that Plaintiff has sufficiently shown that there was an existence of a conspiracy in which the

Microsoft Defendants participated.  *See Jin*, 335 F. Supp. 2d at 80-82; *Halberstam*, 705 F.2d at 486-87.

## 2.        PLAINTIFF IS ENTITLED TO JURISDICTIONAL DISCOVERY

"As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted and this is no less true when discovery is directed to personal jurisdiction." *Edmond v. United States Postal Service General Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991). Indeed, "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."  *Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003) (citing *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996)).

The D.C. Circuit has held that when personal jurisdiction is based on the conspiracy doctrine, "it is an abuse of discretion to deny jurisdictional discovery where the plaintiff has specifically alleged: (1) the existence of a conspiracy; (2) the nonresident's participation; and (3) an injury-causing act of the conspiracy within the forum's boundaries."  *Edmond*, 949 F.2d at 425.  Although, generally speaking, "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."  *GTE*, 199 F.3d at 1351-52 (citing *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987)).  "In order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant."  *Diamond Chemical*, 268 F. Supp. at 15 (citations omitted).

In the case *sub judice*, Plaintiff has established that there was a conspiracy, in which Defendants Bill Gates, Steve Ballmer and Melinda Gates participated, and that there were injury

causing acts of the conspiracy within this jurisdiction. *See supra* at 2-9. As such, Plaintiff is entitled to jurisdictional discovery. *See Jin*, 335 F. Supp. 2d at 83-84 (granting plaintiff's request for jurisdictional discovery where plaintiff plead the three elements in *Edmond*). However, even if this Court finds that Plaintiff has not sufficiently plead the three elements in *Edmond*, she would still be entitled to jurisdictional discovery where she has a good faith belief, as she does here, that such discovery will be able to show that this court can exercise personal jurisdiction over these defendants. *See GTE*, 199 F.3d at 1351-52; *Diamond Chemical*, 268 F. Supp. at 15-16.

In fact, Plaintiff has requested that she be allowed to obtain jurisdictional discovery so that she can obtain information regarding Defendants Bill Gates, Steve Ballmer and Melinda Gates' knowledge of and involvement in the conspiracy to discriminate against her and violate her rights. Plaintiff has also requested that she be granted leave to take jurisdictional discovery to test the veracity of statements that Defendants Bill Gates, Steve Ballmer and Melinda Gates have made in their Declarations in support of their motion to dismiss. Indeed, Defendants Bill Gates, Steve Ballmer and Melinda Gates have all made statements, in their Declarations, that strain credulity, and Plaintiff should be allowed to test the veracity of the statements that these Defendants have proffered to defeat the jurisdiction of this Court.

Indeed, in the case *sub judice*, Defendant Melinda Gates, who has admitted that she sat on the Duke University Board of Trustees from 1996 to 2004, has actually claimed, in her Declaration proffered in support of the Microsoft Defendants' motion to dismiss for lack of personal jurisdiction, that she does not know Plaintiff, and "[t]he first time [she] ever learned of [Plaintiff's] existence was when [she] learned about this lawsuit." D.C. Docket 43, Ex. B, Decl. of Melinda Gates at ¶¶ 5, 8. However, this is a particularly questionable assertion. Indeed, not

even the Duke Defendants, who have also filed a motion to dismiss for lack of personal

jurisdiction, and who have submitted a Declaration, on behalf of Duke University Board of

Trustees, have denied that the knew Plaintiff, that they were aware that there was a conspiracy to

violate Plaintiff's rights, or that they were a part of the conspiracy to violate Plaintiff's rights.

*See* D.C. Docket at 17, Ex. 1, Decl. of Ms. Kate Hendricks.

      In fact, not even Defendant Nannerl Keohane, who was President of Duke University

from 1993 to 2004, which includes the bulk of the time that Plaintiff was being discriminated

against, and who, by virtue of her office, also served on the Duke University Board of Trustees

during that time, has denied knowing who Plaintiff is in the Declaration that she submitted in

support of the Duke Defendants' motion to dismiss for lack of personal jurisdiction.  *See* D.C.

Docket 17, Ex. 2, Decl. of Ms. Nannerl Keohane.  Indeed, former President Keohane does not

deny that she was aware that there was a conspiracy to violate Plaintiff's rights or that she was a

part of that conspiracy.  *Id.*  In fact, former President Keohane does not deny knowing that

Plaintiff was discriminated against while she was in law school, or that Plaintiff was subject to

illegal electronic surveillance.  *Id.*  As such, in light of this record, it is difficult to believe that

former President Keohane and other members of the Duke University Board of Trustees could

have been aware of, and indeed been a part of, this conspiracy to violate Plaintiff's rights, but

Defendant Melinda Gates, who was on the Board of Trustees from 1996 to 2004, was totally

oblivious to the ongoing violations of Plaintiff's rights.

      Further, even Defendants Bill Gates and Steve Ballmer have claimed, in the Declarations

submitted in support of the Microsoft Defendants' motion to dismiss for lack of personal

jurisdiction, that they do not know Plaintiff and that the first time they learned of Plaintiff's

existence was when they learned of this lawsuit.  D.C. Docket 43, Ex. A, Decl. of William H.

Gates, III at ¶ 7; Ex. C, Decl. of Steven Ballmer at ¶ 8. However, even these statements, in light

of the record in this case, are questionable. Indeed, Defendant Melinda Gates, who is married to

Defendant Bill Gates, served on the Duke University Board of Trustees for the bulk of the time

that Plaintiff was being discriminated against, and even the Duke Defendants are not denying

that there was a conspiracy to violate Plaintiff's rights and that Plaintiff was subject to illegal

electronic surveillance. In fact, in light of the extensive nature of the discrimination that Plaintiff

was subjected to, and the fact that Defendant Melinda Gates was on the Duke University Board

of Trustees during the bulk of this time, it is simply difficult to believe that Defendant Bill Gates,

and his friend and co-worker, Defendant Steve Ballmer, would not have been aware of the

discrimination that Plaintiff was being subjected to. Moreover, it should be noted that

Defendants Bill Gates and Steve Ballmer are individuals that benefited from ideas that Plaintiff

gave to them electronically[3], *see* D.C. Docket 47, Ex. 1, Decl. at ¶ 23, and also from ideas that

they stole by virtue of the illegal electronic surveillance[4], *see id.* at ¶¶ 17, 19-20, 22, and their

---

[3]  Plaintiff did submit electronic suggestions to Microsoft regarding changes that could be made to the MSN website, in the Fall of 1999 and the Spring of 2000, and many of these changes were promptly implemented. First Am. Compl. at ¶ 216; D.C. Docket 47, Ex. 1, Decl. at ¶ 23. However, Plaintiff is not claiming that these ideas were stolen and she is not seeking any damages for these ideas which she freely gave to the Microsoft.

[4]  The Microsoft Defendants have tried to claim, in their Reply in further support of their motion to dismiss for lack of personal jurisdiction, that Plaintiff has somehow fantasized that her ideas were stolen by them by virtue of the illegal electronic surveillance. *See* D.C. Docket 51 at 6. However, Plaintiff submits that the illegal electronic surveillance that she has been subjected to, which has allowed for the theft of her intellectual property, is no fantasy. In fact, the illegal electronic surveillance has been discriminatory, and further amounts to cruel and unusual punishment and torture.

attempt to claim they had no knowledge of Plaintiff begs the question, whose communications did they possibly believe they were intercepting over all of these years?[5]

Surely, in consideration of the foregoing, Plaintiff would be entitled to obtain jurisdictional discovery to test the veracity of the statements have been made by Defendants Bill Gates, Melinda Gates, and Steve Ballmer, in support of their motion to dismiss for lack of personal jurisdiction.

## **CONCLUSION**

Accordingly, for all the foregoing reasons, in the event that this Court determines that there are insufficient grounds, on this record, to support jurisdiction over the Microsoft Defendants, Plaintiff hereby requests that she be granted leave to take jurisdictional discovery.

Respectfully submitted,
ATTORNEY FOR PLAINTIFF,

DATED: November 27, 2006                _____/s/_____
Suzette Richards, *Pro Se*
P.O. Box 223875
Christiansted, St. Croix  00822-3875
Telephone: (340) 277-4808
Fax: (340) 772-5785

---

[5] Plaintiff is aware that the Microsoft Defendants have tried to imply that the ideas they stole from her were commonly known and presumably could have come from another source.  *See* D.C. Docket 51 at 5-6.  However, notwithstanding the sort of statements they have included in their Reply, they have not submitted any evidence stating where the ideas they implemented came from, or for that matter, who implemented them, and as such, this Court should disregard the speculative assertions being made by the Microsoft Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of November, 2006, a true and exact copy of the foregoing document was caused to be served via electronic notification upon:

Simone R. D. Francis, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C.
The Tunick Building, Suite 202
1336 Beltjen Road
St. Thomas, U.S. Virgin Islands  00802
Simone.francis@ogletreedeakins.com

Richard Hunter, Esq.
Hunter, Cole & Bennett
Pentheny Bld., 3rd Floor
1138 King Street, Suite 301
Christiansted, St. Croix  00820
rhunter@hcbvilaw.com

Michael J. Murphy, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, N.W., Fifth Floor
Washington, D.C. 20037
Michael.murphy@odnss.com

Elizabeth O'Brien, Esq.
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, D.C.  20005
eobrien@wc.com

Henry Feuerzeig, Esq.
Dudley, Topper & Feuerzeig
1A Frederiksberg Gade
P.O. Box 756
St. Thomas, V.I. 00804
hfeurzeig@dtflaw.com

Benton G. Peterson, Esq.
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W., Room E4905
Washington, D.C. 20530
Benton.peterson@usdoj.gov

Charles E. Buffon, Esq.
Harry B. Roback, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
cbuffon@cov.com
hroback@cov.com

_____/s/_____
Suzette Richards, *Pro Se*