# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SUZETTE RICHARDS,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-01179 (RCL)** |
| ) | |
| **DUKE UNIVERSITY, et. al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Duke University defendants' (Duke University, Duke University Law School, Duke University Board of Trustees and Nannerl Keohane) Motions [17, 18, 32] to Dismiss, the Georgetown University defendants' (Georgetown University and Georgetown University Law Center) Motions [11, 50] to Dismiss, the Government defendants' (Alberto Gonzales, Federal Bureau of Investigation, Department of Justice and John and Jane Does 1-10) Motion [DVI 200] to Dismiss[1], the Microsoft defendants' (Microsoft Corporation, William H. Gates, III, Steven A. Ballmer, Melinda F. Gates and Microsoft employees A-J) Motions [DVI 219, 43] to Dismiss, the Plaintiff's Motion [23] to Strike Exhibits Filed by the Georgetown University defendants, and the Plaintiff's Motion [48] for Leave to Take Jurisdictional Discovery.

Upon consideration of the motions, the oppositions thereto, the reply briefs, the

---

[1] All motions that were filed with the United States District Court for the District of the Virgin Islands prior to transfer to this Court will be noted with "DVI" before the docket number that the document was originally given by the District Court in the Virgin Islands.

applicable law, and the entire record herein, the Court concludes that the defendants' motions to dismiss will be GRANTED, the plaintiff's motion [23] to strike all exhibits filed by the Georgetown University defendants will be DENIED and the plaintiff's motion [48] for leave to take jurisdictional discovery will be DENIED.

## BACKGROUND

### I.  Facts

Plaintiff Suzette Richards submitted a complaint on May 8, 2003 and a subsequent amended complaint on June 5, 2003 asking the United States District Court for the District of the United States Virgin Islands, St. Croix Division, for declaratory and injunctive relief and punitive damages stemming from an alleged conspiracy among all of the named defendants to violate plaintiff's rights.  Plaintiff alleges fraud, discrimination based on race and national origin in violation of 42 U.S.C. § 2000d-200d-7, discrimination based on sex and sexual harassment in violation of 20 U.S.C. § 1681-1688, constitutional violations of plaintiff's First, Fourth, Fifth, Eighth and Thirteenth Amendment rights, violations of the Criminal Wiretapping Statute, 18 U.S.C. § 2510-2522, violations of 42 U.S.C. § 1981, § 1985, § 1986, intentional infliction of emotional distress, civil conspiracy, invasion of privacy, interference with prospective advantage and theft of intellectual property.  This case was transferred to this court from the United States District Court for the District of the Virgin Islands on June 28, 2006.

Though plaintiff alleges a vast conspiracy involving all of the named defendants extending over more than eight years, plaintiff's allegations are conclusory and too lengthy to recount in detail here.  In general, plaintiff alleges the following facts:

Plaintiff enrolled at Duke University Law School in the fall of 1997.  While at Duke,

2

Dean Sockwell, a dean of the law school, lied to her about how to take her law school exams which resulted in plaintiff receiving lower grades than other students; no African-American students had been placed onto the law school's law review or journals until the year that plaintiff transferred from Duke; and during a law school class, a professor falsely indicated that plaintiff was not a citizen of the United States. Plaintiff further alleges that Duke then engaged in illegal surveillance of her because officials at Duke were afraid that plaintiff would expose their discriminatory practices. This surveillance extended to plaintiff's home and car, followed her everywhere she went, and even resulted in exposure of plaintiff's private medical information.

Plaintiff then transferred to Georgetown University Law Center and enrolled there in the fall of 1998. Plaintiff alleges that Duke and Georgetown colluded and conspired to maintain the surveillance of plaintiff. Plaintiff was called on to speak in her Corporations class six or seven times during the semester while other students were not called on at all; Georgetown professors entered plaintiff's apartment and moved her books to determine whether she was completing her assignments; an article that plaintiff wrote for The Georgetown Journal of Gender and the Law was altered to include discussion of homosexual civil rights issues to make it appear that plaintiff was in fact a homosexual; and plaintiff's Civil Rights professor added a day on homosexual civil rights into his syllabus for the first time while plaintiff was a student in his class. Plaintiff graduated from Georgetown University Law Center in May of 2000.

Microsoft allegedly joined the conspiracy to continue the surveillance of plaintiff and gather information about her because William H. Gates, III, became physically attracted to her in September of 1999 and the Microsoft defendants feared that Gates would leave his wife, Melinda Gates, for plaintiff. The conspiracy and surveillance of plaintiff enabled Microsoft to steal

3

plaintiff's ideas, that she had only written down or spoken in the privacy of her own home, about generating revenue through wireless email, the affect of wireless technology on markets, and changing the name of Web TV to MSN TV.  Microsoft also included images and phrases on its website which described or were directed at plaintiff, an African-American woman, to harass her, including a picture of a pregnant African-American woman, implying that plaintiff was pregnant with William Gates' child.  Finally, the United States government was also conspiring with the other defendants and facilitating the surveillance of plaintiff.

## ANALYSIS

### I.  Lack of Personal Jurisdiction

####   A.   Legal Standard under Rule 12(b)(2)

According to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving that the court has personal jurisdiction over the defendant by showing that the defendant purposefully availed himself of the benefits of the forum state by establishing minimum contacts and that the exercise of  jurisdiction would comport with notions of fair play and substantial justice.  See Wiggins v. Equifax, 853 F. Supp. 500, 502 (D.D.C. 1994).  "Bare allegations and conclusory statements are insufficient" to establish personal jurisdiction over a defendant.  Capital Bank Int'l, Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 74 (D.D.C. 2003).  The plaintiff must instead "allege specific facts connecting each defendant with the forum state."  Schwartz v. CDI Japan, 938 F. Supp. 1, 7 (D.D.C. 1996).  A court does not have jurisdiction over the individual officers or employees of a corporation just because the court has jurisdiction over the corporation.  See Quinto v. Legal Times, 506 F. Supp. 554, 558 (D.D.C. 1981).

In the District of Columbia, personal jurisdiction may be asserted over a defendant

according to D.C. Code § 13-423(a)(4)  which states, in relevant part: "A District of Columbia

court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a

claim for relief arising from the person's . . .  (4) causing tortious injury in the District of

Columbia by an act or omission outside the District of Columbia if he regularly does or solicits

business, engages in any other persistent course of conduct, or derives substantial revenue from

goods used or consumed, or services rendered, in the District of Columbia."

Besides D.C. Code § 13-423(a), plaintiff also relies on the conspiracy jurisdiction

doctrine to argue that this Court has personal jurisdiction over the Microsoft defendants and the

Duke defendants.  Under the conspiracy jurisdiction doctrine, a defendant's contact with the

forum can arise from the acts of co-conspirators within that forum.  See Jin v. Ministry of State

Sec. 335 F. Supp. 2d 72, 78 (D.D.C. 2004).  However, to assert jurisdiction under the conspiracy

jurisdiction doctrine, the plaintiff must make a prima facie showing of "(1) a conspiracy (2) in

which the  defendant participated and (3) a co-conspirator's overt act within the forum, subject to

the long-arm statute and in furtherance of the conspiracy."  Id.  Further, to be entitled to

jurisdictional discovery based on this doctrine, the plaintiff must specifically allege: "(1) the

existence of a conspiracy, (2) the non-resident's participation, and (3) an injury-causing act of the

conspiracy within the forum's boundaries."  Edmond v. United States Postal Service General

Counsel, 949 F. 2d 415, 425, 292 U.S. App. D.C. 240, 250 (D.C. Cir. 1991).

### B.  Duke Defendants

Plaintiff has not made a prima facie showing that this court can assert personal

jurisdiction over any of the Duke Defendants (Duke University, Duke University Law School,

Duke University Board of Trustess and University President Nannerl Keohane).  Duke University

is a private educational institution in the State of North Carolina and does not conduct business

or own property within the District of Columbia. (Duke Defs.' Mot. to Dismiss [17], Ex. 1)

Nannerl Keohane is a resident of New Jersey, has limited contact with the District of Columbia

in the form of attendance at an annual conference held in the District of Columbia, and owns no

property or bank accounts in the District of Columbia. (Duke Defs.' Mot. to Dismiss [17], Ex. 2)

This court cannot assert general jurisdiction over the Duke defendants because none of the Duke

defendants are residents of the District of Columbia and plaintiff does not allege that any of the

Duke defendants are domiciled or have a principal place of business in the District of Columbia.

Duke University's recruiting activities to meet with students in the District of Columbia,

the fact that students from the District of Columbia attend Duke University and Duke University

Law School and a small number of adjunct faculty at Duke University live in the District of

Columbia do not separately, or in the aggregate, constitute regular business, persistent conduct or

receipt of substantial revenue from the District of Columbia as required under the D.C. Code §

13-423(a)(4) to assert personal jurisdiction. Generally, colleges and universities are not subject

to personal jurisdiction in all states from which their students hail, as this would unfairly expose

them to litigation in many distant forums. See Scherer v. Curators of the Univ. of Missouri, 152

F. Supp. 2d 1278, 1284-86 (D. Kan. 2001). Duke's government relations and lobbying

connections to the District of Columbia also do not form a basis for asserting personal

jurisdiction because of a long-recognized "government contacts" exception to the "transacting

business" provision of a long-arm statute to allow for petitioning the government and the redress

of grievances. Naartex Consulting Corp. v. Watt, 722 F. 2d. 779, 787 (D.C. Cir. 1983).

### C.  Microsoft Defendants in Their Personal Capacity

This court also cannot properly assert personal jurisdiction over the individual Microsoft Defendants William H. Gates, III, Melinda F. Gates and Steven A. Ballmer in their personal or official capacities in this case.  Mr. and Mrs. Gates and Mr. Ballmer cannot be sued in this court in their personal capacities because they do not have sufficient minimum contacts in their personal capacity, outside of their work for Microsoft Corporation, to establish jurisdiction. They are all domiciled in the State of Washington and have only made trips to the District of Columbia in their official capacities representing Microsoft Corporation or the Bill & Melinda Gates Foundation.  (Microsoft Defs.' Mot. to Dismiss [43], 1-3).  Though Mr. Gates was a resident of the District of Columbia for three months in 1972, this Court finds this short period of residency, over three decades ago, is insufficient to support a finding of minimum contacts in this case and asserting jurisdiction over Mr. Gates would violate Due Process.  (Microsoft Defs.' Mot. to Dismiss [43], Ex. A).

Mr. and Mrs. Gates and Mr. Ballmer cannot be sued in this Court based on their activities within the scope of their employment with the Microsoft Corporation or the Bill & Melinda Gates Foundation because it is well-settled law that a court does not have jurisdiction over individual officers and employees of a corporation solely because the court has jurisdiction over the corporation.  See Wiggins v. Equifax, 853 F. Supp. 500, 503 (D.D.C. 1994).  Since Mr. and Mrs. Gates and Mr. Ballmer do not have sufficient personal contacts with the forum as stated above, but only official contacts within their capacity with the Microsoft Corporation or the Bill & Melinda Gates Foundation, this court cannot properly assert jurisdiction over them in this case.

### D.  Conspiracy Jurisdiction Doctrine

In addition, plaintiff's reliance on the conspiracy doctrine to assert personal jurisdiction over the Microsoft and Duke defendants is misplaced.  Plaintiff has not supported her theory of a conspiracy and illegal surveillance by the defendants with any sort of factual basis.  Plaintiff has not alleged enough facts to support a conspiracy at all, and none whatsoever to support a co-conspirator's overt act within the District of Columbia to establish jurisdiction based on the conspiracy doctrine.  Plaintiff's failure to allege a conspiracy is tied to this Court's lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and plaintiff's failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) which will be discussed in detail below.  At this point, it is sufficient for the Court to point out that plaintiff cannot, under the facts she has asserted, use the conspiracy jurisdiction doctrine to reach defendants that are otherwise outside the jurisdiction of this Court.

### E.  Plaintiff's Motion For Leave to Take Jurisdictional Discovery

Finally, in plaintiff's motion [48] for jurisdictional discovery with respect to the Duke defendants and the Microsoft defendants, plaintiff has not alleged the underlying conspiracy with enough specificity to warrant jurisdictional discovery based on the conspiracy doctrine. Plaintiff's allegations are conclusory and have little connection to one another such as her statement that law professors are "very much connected to each other, which would only have made it that much easier for persons at Duke Law to contact and conspire with persons at Georgetown Law to discriminate against Plaintiff."  (Pl.'s Opp'n [35], 12).  This Court will not allow plaintiff to undertake the sort of fishing expedition that the rules of jurisdictional discovery are designed to prevent.  Therefore, this court will deny plaintiff's motion [48] for leave to take

jurisdictional discovery regarding the Duke defendants and the Microsoft defendants.

## II.   Dismissal pursuant to Rule 12(b)(1) and Rule 12(b)(6)

Though this court does not have jurisdiction over the Microsoft defendants William H.

Gates, III, Melinda Gates, and Steven Ballmer, or any of the Duke defendants pursuant to Rule

12(b)(2), all of the counts against the Microsoft defendants and the Duke defendants, as well as

the Georgetown defendants and the Government defendants can be properly dismissed under

Rule 12(b)(1), Rule 12(b)(6) or alternatively, the relevant statute of limitations.

### A.   Legal Standard under Rule 12(b)(1)

Pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has

jurisdiction.  See Hilska v. Jones, 297 F. Supp. 2d 82, 86 (D.D.C. 2003); McNutt v. General

Motors Acceptance Corp. Of Indiana, 288 U.S. 178, 182 (1936).  "Because subject matter

jurisdiction focuses on the Court's power to hear a claim, however, the Court must give the

plaintiff's factual assertions closer scrutiny when reviewing a motion to dismiss for lack of

subject matter jurisdiction than reviewing a motion to dismiss for failure to state a claim upon

which relief can be granted under Rule 12(b)(6)."  Bernard v. U.S. Dep't. of Def., 362 F. Supp.

2d 272, 277 (D.D.C. 2003).  Unlike Rule 12(b)(6) motions, when a court is reviewing a

complaint under factual attack for lack of jurisdiction, "no presumption of truthfulness applies to

the factual allegations."  Ohio Nat'l Life Insurance Co. v. United States, 922 F.2d 320, 325 (6th

Cir. 1990).  To evaluate whether a court has subject matter jurisdiction over a claim, the court

may look to materials outside the pleadings.  See Herbert v. Nat'l Acad. of Sciences, 974 F. 2d

192, 197 (D.C. Cir. 1992).  Federal courts have found that claims that are "wholly insubstantial

or frivolous" lack subject matter jurisdiction to be heard.  Steel Co. v. Citizens for a Better

Environment, 523 U.S. 83, 89 (1998).  Under Rule 12(b)(1), a claim is "patently insubstantial" when it presents "no federal question suitable for decision."  Best v. Kelly, 39 F. 3d 328, 330 (D.C. Cir. 1991).  Claims that are "essentially fictious" or otherwise "fanciful claims" such as those that allege "bizarre conspiracy theories, any fantastic government manipulations of their will or mind, [or] any sort of supernatural intervention" warrant a dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.  Id. at 330-31.  In other words, a claim that is "so attenuated and insubstantial as to be absolutely devoid of merit" should be dismissed. Newburyport Water Co. v. Newburyport, 193 U.S. 561, 579 (1904).

### B.  Analysis under Rule 12(b)(1)

Relevant precedent in this Court and the District of Maryland is instructive in resolving the question of subject matter jurisdiction in this case.  In Carone-Ferdinand v. Central Intelligence Agency, plaintiffs, the family of Mr. Albert Carone-Ferdinand representing his estate, requested $38 million from the United States government alleging that the government and the CIA ordered Carone-Ferdinand, who they claim was an operative with the CIA, to smuggle cocaine into the United States, assassinate women and children in Mexico, and even assassinate President John F. Kennedy.  See 131 F. Supp. 2d 232, 232-34 (D.D.C. 2001).  The plaintiffs further alleged that because Carone-Ferdinand wanted to end his cooperation with the CIA, the CIA had him killed.  See id. at 234.  The court found that these allegations were essentially fictitious and exactly the type of "bizarre conspiracy theory" that warrants dismissal under Rule 12(b)(1).  Id. at 235.  The court found that plaintiff's evidence was patently false and lacked authenticity because it consisted of affidavits by former or deceased CIA officials who admitted criminal activity in documents with "frequent misspellings, absence of a grammar,

[and] bizarre free-association," and further attempts to verify the documents failed.  Id.

In O'Connor v. United States, O'Connor included a litany of bizarre allegations in his claim.  O'Connor alleged that he was subject to surveillance by the Drug Enforcement Agency ("DEA") in his home, his car, his office and at his parent's home during which the DEA would tamper with his belongings and even hired civilians to speak in code words to him to further this harassment.  See 159 F.R.D. 22, 24 (D. Md. 1994).  For example, O'Connor claimed that the DEA used signs and messages to harass him such as a license plate with the letters "TNT" which meant that he was "playing with dynamite."  Id.

In the matter before this Court, plaintiff's claims are just as fantastic and incredulous as the claims alleged by Carone-Ferdinand and O'Connor.  Plaintiff's case is strikingly similar to O'Connor because O'Connor was an attorney representing himself pro se, whose claim was dismissed despite the lucidity of his prose.  See id. at 26.  Plaintiff has demonstrated that she has an understanding of the law and can clearly express herself but the clarity with which she describes her bizarre conspiracy theory does not make it any less bizarre.  Like O'Connor, plaintiff alleges roving surveillance that followed her everywhere she went, even into a medical exam room.  (Pl.'s Opp'n [44], 19).  In O'Connor, the plaintiff alleged that he was accosted by people on the street who were hired by the DEA.  See 159 F.R.D. at 24.  In the instant case, plaintiff has similarly alleged that she was "public accosted by a man in a Kmart Store . . . in connection with a headline [referring to plaintiff] that appeared on the MSN website."  (Pl.'s Am. Compl. [DVI 17], ¶ 233).  Plaintiff's attempts to distinguish her case from O'Connor and Carone-Ferdinand are misguided because though the specific facts of the claims are different, plaintiff's claims are similarly fantastic to the point of being patently insubstantial and

11

warranting a dismissal under Rule 12(b)(1).  Plaintiff has only offered a "laundry list of wrongful acts" and conclusory allegations to support her theory of a conspiracy which is insufficient to allow the case to go forward.  Shoemaker v. U.S., 1997 U.S. Dist. LEXIS 2322 at *16 (D.N.Y 1997).  Plaintiff's claims are fantastic because she finds individualized meaning in general and benign actions by the defendants that are in no way related to her.  Plaintiff alleges that a photograph of Duke President Nannerl Keohane with "a very dark skinned child" on the cover of the Duke Alumni Magazine was part of the large "racist conspiracy" that she describes.  (Pl.'s Am. Compl. [DVI 17], ¶ 228).  Plaintiff even alleges that Microsoft has aired commercials praising its workers to "cater to potential jurors who may serve in this matter" because "the Microsoft defendants are aware that Plaintiff will be filing the instant action against them for the role they have played in this racist conspiracy."  (Pl.'s Am. Compl. [DVI 17], ¶ 282-284).

Further, plaintiff's reliance on Berlin Democratic Club v. Rumsfeld to survive a Rule 12(b)(1) motion is misplaced.  There, the court found allegations of government conspiracies and wiretapping to be justiciable because the surveillance and dissemination of private information, as specifically plead in that case, were beyond the bounds of legitimate intelligence activity.  See Berlin Democratic Club v. Rumsfeld, 410 F. Supp. 144, 149-150 (D.D.C. 1976).  Just because claims of government conspiracy and illegal surveillance were justiciable in Berlin Democratic Club has little bearing on the justiciability of the plaintiff's claims because it depends on the facts and the specificity of the allegations.  Plaintiff's proffered facts on which she bases her allegations of a conspiracy are speculative and unspecific.  For example, the overt acts relating to the conspiracy between Duke and Georgetown that Plaintiff offers are a professor calling on her on the first day of her Civil Rights class once she transferred to Georgetown and her article

12

written for The Georgetown Journal of Gender and the Law, being changed without her knowledge or consent. (Pl.'s Opp'n [35], 13-14). Plaintiff's attempts to string together such discrete, and in some instances benign, acts fail to form a conspiracy. Plaintiff's allegations are all speculative as exemplified by her statement that law professors are "very much connected to each other, which would only have made it that much easier for persons at Duke Law to contact and conspire with persons at Georgetown Law to discriminate against Plaintiff." Id. at 12. Plaintiff must allege more than the ease with which the defendants could have conspired but that they actually conspired against her. Therefore, simply because this Court has found claims of conspiracy justiciable in the past, does not mean that those claims are justiciable in this case.

The distinctions between Hilska v. Jones, on which the plaintiff relies heavily, and this case are fine but clear. In Hilska, this Court found that though the defendant's claims were implausible, they did not rise to the level of "frivolous" as required for dismissal under Rule 12(b)(1). See 297 F. Supp. 2d 82, 89 (D.D.C. 2003); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 623-24 (D.C. Cir.1997). Hilska alleged that he was deported and denied asylum as a result of a massive conspiracy involving President George W. Bush, the Attorney General, Senator Hillary Clinton and former President William J. Clinton, among others, in which there were acts of torture, extortion, assault, destruction of documents, and attempted murder. See Hilska, 297 F. Supp. 2d at 84. Specifically, plaintiff alleged he was purposefully given medication by the federal defendants that caused "a splitting headache, strong pain in the urinary tract and intense [swelling] in [his] feet," Senator and former President Clinton broke into and stole contents from his luggage while at an airport, and he was kept in a cold cell for over six months "for killing purposes" by the federal defendants. Id. at 89. The court in Hilska attempted

13

to define frivolous as "rising to the level of irrational or the wholly incredible," while emphasizing that frivolous is not "implausible, namely . . . doubtful, or of questionable merit." Id. at 87. The court determined that Hilska's claims were implausible and not frivolous. See id. at 89.

Evaluating the frivolity of a claim is always a fact-intensive endeavor which requires the definition of "frivolous" to be flexible. In the instant case, based on the facts that plaintiff has alleged, this Court finds that her claims are frivolous and patently insubstantial because it describes a "fantastic and delusional scenario." Best v. Kelly, 39 F.3d 328, 330-31 (D.C. Cir. 1994). Not only is it implausible, but it is irrational, that two prestigious universities, one of the most well-known companies in the world helmed by one of the most powerful men in the world, and the United States government would use their resources to engage in surveillance of plaintiff. Plaintiff, in her delusional allegations, even states that "many persons in corporate America" are also involved in the conspiracy to continue the surveillance over plaintiff. (Pl.'s Am. Compl. [DVI 17], ¶ 212-13).

Another difference between Hilska v. Jones and the instant case is the standard for a pro se plaintiff. The status of a pro se plaintiff, as an attorney or a non-attorney citizen, is one relevant factor in the analysis. Because plaintiff is an attorney, she is not automatically subject to the very liberal standards afforded to a non-attorney pro se plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the court. Hilska was a pro se plaintiff, not an attorney, and therefore his claims were allowed to survive a Rule 12(b)(1) motion to dismiss. See Hilska, 297 F. Supp. 2d at 83. However, in a case similar on its facts to the instant case, the Court dismissed O'Connor's claims when O'Connor was a pro

14

se attorney.  See O'Connor v. United States, 159 F.R.D. 22, 23 (D. Md. 1994).  Plaintiff has

shown, and the Third Circuit agreed in its determination that plaintiff did not need a guardian ad

litem, that she can protect her interests in this matter.  See Richards v. Duke Univ., 166 Fed.

Appx. 595, 599 (3d Cir. 2006).  Therefore, because plaintiff is an attorney, and a knowledgeable

one at that, this Court will not give her all the benefits of the liberal standards that are afforded to

pro se litigants and plaintiff's pro se status will not weigh in favor of denying the defendants'

motions to dismiss.

### C.  Legal Standard under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6), this Court must construe the allegations and facts in the complaint in

the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences

that can be derived from the facts alleged.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

However, the Court does not have to accept asserted inferences or conclusory allegations that are

unsupported by facts set forth in plaintiff's complaint.  See Kowal v. MCI Communications

Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994);  Judicial Watch, Inc. v. Clinton, 880 F. Supp. 2d 1,

7 (D.D.C. 1995) (Lamberth, J.).  Even when proceeding pro se, the plaintiff must still meet the

notice requirements of Rule 8(a) of the Federal Rules of Civil Procedure and give the defendant

"fair notice of the plaintiff's claim and the grounds upon which it rests."  Ali v. District of

Columbia, 278 F.3d 1, 8 (D.C. Cir. 2002) (citing Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C.

Cir. 1983)). The Court will dismiss a claim pursuant to Rule 12(b)(6) only if defendant can

demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief."  Conley, 335 U.S. at 45-46.

### D.  Analysis under Rule 12(b)(6)

This court will dismiss all counts under either the relevant statute of limitations or failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) or both, as described below.[2]

### 1.  Count 1: Fraud

Plaintiff's allegations of fraud must fail because they are time-barred and do not plead the necessary elements of fraud with the required specificity.  The statute of limitations for a fraud claim in the District of Columbia is three years.  See D.C. Code § 12-301.  A tort action accrues, under District of Columbia law, "when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing."  Knight v. Furlow, 553 A.2d 1232, 1234 (D.C. 1989).  Plaintiff's allegations of fraud against the Duke defendants and the Georgetown defendants stem from plaintiff's belief that the purported anonymous grading systems at both schools were not in fact anonymous and misrepresentations that were made to Plaintiff by Dean Sockwell at Duke regarding how to take her law school exams.  Plaintiff was aware, by her own admission, of the supposed fraudulent grading scheme at Duke while she was a student at Duke law school during the academic year of 1997-1998 because plaintiff considered filing a claim against Duke for this alleged wrongdoing.  (Pl.'s Am. Compl. [DVI 17], ¶143-44).  The

---

[2] The D.C. Circuit has found that a sua sponte dismissal without leave to amend is reversible error and warrants a remand except when "the claimant cannot possibly win relief." Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990).  Here, this Court finds that dismissal with leave to amend would be futile because plaintiff would need an entirely fresh set of facts on which to base a claim because the facts alleged affirmatively preclude relief. See Davis v. District of Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998).  Therefore, plaintiff's claims will be dismissed without leave to amend.

misrepresentations that the Dean supposedly made to plaintiff occurred in April of 1998, while plaintiff was a student at Duke law school.  (Pl.'s Am. Compl. [DVI 17], ¶ 136).  Therefore, the claims of fraud against Duke accrued, at the latest, in May of 1998 and considerably more than three years prior to the filing of the complaint in the instant case on May 8, 2003.

Likewise, plaintiff's claim of fraud against Georgetown for a similar grading system that was supposed to be anonymous, but plaintiff believed was not, is also time-barred because any injury that plaintiff had would have accrued would have been while she was a student at Georgetown, prior to her graduation in May 2000.  Plaintiff again claimed that she had knowledge of the alleged fraud while she was attending Georgetown and, therefore, the statute of limitations began to run prior to May of 2000 and outside the three-year permissible period to bring a claim.  (Pl.'s Am. Compl. [DVI 17], ¶ 149).

Though plaintiff argues that the three-year statute of limitations does not apply to her claim of fraud or any of her other claims because they arise from continuing violations, her claim of fraud as well as most of the other claims discussed below are time-barred.  Plaintiff cites Page v. United States to support her argument that the statute of limitations begins to run, and the injury accrues, when the tortious conduct ceases in a case involving a continuous violation because in such a case, the injury might not be recognizable until the cumulative effect of the violation is known.  (Pl.'s Opp'n [44], 42).  However, in Page, the continuing violation was clearly distinguishable from the instant case because the plaintiff in Page was subject to many years of allegedly tortious drug treatment which the court found was gradual.  See Page v. United States, 729 F.2d 818, 819 (D.C. Cir. 1984).  The facts in Page were also governed by specific medical malpractice issues on which courts had previously found the statute of limitations does

not begin to run until the end of a course of treatment that is the basis for a malpractice claim to give the plaintiff opportunity to finish the corrective treatment before instituting an action. See id. at 823. In the instant case, plaintiff does not have a medical malpractice claim or allegations of the type of continuing violation that would warrant the application of the continuing tort doctrine. Additionally, subsequent decisions "have rejected the expansive application of the continuing tort doctrine exemplified in Page" and therefore, it is not applicable in this case. Beard v. Edmonson and Gallagher, 790 A.2d 541, 547 (D.C. 2002). This Court will not allow plaintiff to subvert the normal statute of limitations, for a claim that she admits that she was aware of prior to three years before filing her complaint, on the unsteady grounds of a continuing violation. The tortious activity that plaintiff alleges in this count, the fraudulent grading schemes at Duke and Georgetown and the misrepresentations by Dean Sockwell, are distinct actions or events, both from one another and from the other counts in her complaint, and these discrete incidents cannot be joined together as a continuing violation simply because plaintiff alleges that it was all part of an ongoing and widespread conspiracy. Though plaintiff repeatedly tries to rely on the continuing tort doctrine from Page v. United States to help her claims survive the relevant statute of limitations, the continuing tort doctrine is inapplicable to all of plaintiff's claims because the narrow set of facts to which the doctrine applies are not present in this case.

Even if plaintiff's claim for fraud could survive the statute of limitations, she has not plead the elements of fraud with the required specificity. Under District of Columbia law, a plaintiff must make a prima facie showing of "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action taken by [plaintiff] in reliance upon representation, (6) which consequently resulted in provable

damages." <u>Dresser v. Sunderland Apartments Tenants Ass'n</u>, 465 A.2d 835, 839 (D.C. 1983).

Plaintiff has not met this standard because plaintiff has merely alleged that the anonymous

grading systems were not actually anonymous at both Duke and Georgetown.  Plaintiff has failed

to show how, if at all, she relied on this information, especially in regard to Georgetown where

she was supposedly aware of the alleged fraud prior to taking her exams.  (Pl.'s Am. Compl.

[DVI 17], ¶ 148-49).  Plaintiff clearly has not demonstrated any provable damages, though she

claims that she received lower grades than she would have otherwise, but fails to show on what

facts she is basing this assumption or what cognizable damages the lower grades in turn caused.

    With regard to the alleged lies that Dean Sockwell told plaintiff while at Duke about how

to take her law school examinations, plaintiff has not alleged a basis for a fraud claim on these

events.  Though plaintiff refers to this incident often in her complaint and pleadings, plaintiff has

refused to explain what Dean Sockwell's misrepresentation consisted of besides only loosely

referring to instructions and advice from Dean Sockwell on the manner in which to take law

school examinations.  (Pl.'s Am. Compl. [DVI 17], 22).  The Duke defendants correctly argue

that "there cannot be any truth or falsity, or material facts, in subjective advice from professors

[or deans] on how best to tackle law school exams" and therefore, plaintiff has failed to meet her

burden on the first two elements of a fraud claim.  (Duke Defs.' Mot. to Dismiss [32], 5).  These

allegations fail to meet the particularity requirement of Rule 9(b) of the Federal Rules of Civil

Procedure under which this court has found that the circumstances of fraud must be detailed with

particularity, specifically "the time, place and content" of the misrepresentations.  Plaintiff has

failed to explain any of the specific information regarding these misrepresentations such that it

can be considered sufficient to meet the particularly requirement.  Additionally, plaintiff has not

drawn any sort of causal connection between the false representation and the result, specifically her lower grades. The damages are clearly not "provable" under the last required element of fraud because to assert that plaintiff's grades were lowered directly and solely because of these misrepresentations is just a guess and impossible to substantiate.

Because plaintiff's claim for fraud is time-barred and plaintiff has not established a prima facie claim for fraud regarding either the anonymous grading systems at Duke and Georgetown or the alleged statements made to her by Dean Sockwell, Count I will be dismissed.

### 2. Counts 2 & 3: Racial and Sexual Discrimination

Plaintiff's claims for racial and sexual discrimination and sexual harassment are time-barred by the appropriate statutes of limitations. Plaintiff brings her claims for discrimination under Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972. Neither of these statutes have their own statute of limitations, but courts have borrowed the statute of limitations from 42 U.S.C. §1981 and §1983 which in turn, rely on the respective personal injury statute of limitations in a jurisdiction. See Wilson v. Garcia, 471 U.S. 261 (1985); Doe v. Howe Military School, 227 F.3d 981, 987 (7th Cir. 2000). In the District of Columbia, a personal injury action has a three-year statute of limitations and therefore, a Title VI or Title IX claim also has a three-year statute of limitations in the District of Columbia. See Carney v. American Univ., 151 F.3d 1090, 1096 (D.C. Cir. 1998). As noted in the previous section regarding plaintiff's fraud claims, a tort action accrues, under District of Columbia law, "when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." Knight v. Furlow, 553 A.2d 1232, 1234 (D.C. 1989).

Plaintiff was aware of the racial discrimination that she alleges at Duke University before she transferred to Georgetown University for her second year of law school in the fall of 1998 because the racial discrimination played a role in her decision to transfer. (Pl.'s Am. Compl. [DVI 17] ¶143, 162, 167). Plaintiff also states that she was aware of the racial and sexual discrimination and sexual harassment perpetrated by the other defendants during law school and into her third year of law school at Georgetown, which she vaguely describes as attempts to gather information of a sexual nature about her and the surveillance which stemmed from Mr. Gates' obsession with plaintiff as an African-American woman. (Pl.'s Am. Compl. [DVI 17], ¶ 154, 193, 202). Plaintiff graduated from Georgetown in May of 2000 and filed her complaint in this case on May 8, 2003. Because she was aware, by her own admissions, of the alleged racial and sexual discrimination and sexual harassment during her time at Duke and at Georgetown prior to graduation, her claims therefore fall outside the relevant three-year statute of limitations.

### 3.  Count 4: Constitutional Violations

Plaintiff alleges violations of her First, Fourth, Fifth, Eighth and Thirteenth Amendment rights stemming from the conspiracy she claims took place between Microsoft, Georgetown, Duke and the United States Government.

As a preliminary matter, plaintiff's claims for Eighth and Thirteenth Amendment violations must be dismissed because her claims, even if true, do not actually comprise Eighth or Thirteenth Amendment violations. The Eighth Amendment protects prisoners from cruel and unusual punishment. Because plaintiff is not a prisoner and has not had a formal adjudication of guilt brought against her, the Eighth Amendment does not apply. See City of Revere v. Mass. General Hosp., 463 U.S. 239, 244 (1983). Plaintiff's analogy that she was like a prisoner

because of the alleged surveillance lacks merit.  Similarly, plaintiff has no viable claim under the Thirteenth Amendment, which protects against slavery and involuntary servitude, because she has not alleged facts that she was enslaved or coerced in any way by the defendants.  Plaintiff's allegations do not describe any compulsory labor that she was forced to endure at the hands of the defendants.  See United States v. Kozminski, 487 U.S. 931, 943-44 (1988).

Generally, constitutional protections of individual rights and liberties only apply to actions by governmental bodies.  See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 619 (1991).  To incorporate the Microsoft, Duke and Georgetown defendants into her claim, plaintiff relies on Bivens v. Six Unknown Narcotics Agents, in which the Supreme Court found that individual federal agents could be sued for damages in their individual capacity for alleged violations of the Fourth Amendment.  See 403 U.S. 388 (1971).  However, plaintiff's reliance is misplaced because courts have declined to extend liability beyond the specific facts in Bivens and specifically, to private or corporate entities.  In Kauffmann v. Anglo-American Sch. of Sofia, the court reasoned that Bivens liability specifically should not be stretched to cover private entities.  See 28 F.3d 1223, 1227 (D.C.Cir. 1994).  Microsoft is a private corporation and Duke and Georgetown are also private entities because, though Duke and Georgetown receive some federal funds, it is well-settled law that the receipt of these funds do not elevate these private educational institutions to the status of "state actor."  See Spark v. Catholic Univ. of America, 510 F.2d 1277, 1282 (D.C. Cir. 1975).  Because there is no private right of action, under Bivens or any other line of cases, to obtain damages from a private entity for constitutional violations, plaintiff's claims under Count 4 against the Microsoft defendants, the Duke defendants and the Georgetown defendants must all be dismissed.

Plaintiff's claim against the Government defendants for constitutional violations fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  Though plaintiff is not required to offer proof or evidence at this stage, plaintiff is required to state facts that support her claim as opposed to mere conclusory allegations.  Plaintiff's allegations  against the Government are brief, though her motions are voluminous, and vague.  Plaintiff only claims that the Government was involved in the conspiracy to keep her under surveillance by offering material and support for the surveillance but offers nothing more in the way of specific facts or allegations associated with this claim. (Pl.'s Am. Compl. [DVI 17], ¶ 38-9, 57, 69).  These vague and conclusory statements  are exactly the type of unsupported allegations that this Court does not have to accept and are properly dismissed pursuant to Rule 12(b)(6).  See Judicial Watch, Inc. v. Clinton, 880 F. Supp. 2d 1, 7 (D.D.C. 1995) (Lamberth, J.).

### 4.  Count 5: Violation of 18 U.S.C. § 2520

Plaintiff's claim that the defendants violated 18 U.S.C. § 2520 is time-barred.  The statute prevents the illegal interception, disclosure or intentional use of wire, oral or electronic communication and allows an individual to recover damages for such wrongdoing from a person or entity other than the United States.  Section 2520(e) provides for a two-year statute of limitations, such that a civil action must be filed within two years of when the claimant first had reasonable opportunity to discover the violation.  Though plaintiff fails to pinpoint specific dates or instances of surveillance, it is clear that the surveillance she alleges, if true, would have begun well outside of the two-year statute of limitations.  Plaintiff filed her complaint on May 8, 2003. Plaintiff alleges that the illegal surveillance began during her time at Duke, because officials at Duke were aware of her impending transfer to Georgetown before she had told them and plaintiff

left Duke in the spring of 1998.  Plaintiff was also aware of the surveillance during her time at

Georgetown, and realized that Microsoft was involved in the surveillance some time in late 1999.

Therefore, assuming her facts were true, plaintiff had knowledge of, as well as a reasonable

opportunity to discover, the violation prior to two years before she filed her complaint, so her

claim under Count 5 must be dismissed.

Additionally, even if plaintiff's claim had survived the statute of limitations, she fails to

allege any of the five distinct elements that are needed to bring a cause of action under the

statute.  A plaintiff must prove that the defendant: "(1) intentionally (2) intercepted, endeavored

to intercept or procured another person to intercept or endeavor to intercept (3) the contents of

(4) an electronic communication (5) using a device."  Blumofe v. Pharmatrak, Inc. (In re

Pharmatrak Privacy Litig.), 329 F.3d 9, 18 (1st Cir. 2003).  Plaintiff has not specifically alleged

any of the five necessary elements and her unsupported connections and conclusions are

insufficient to serve as the basis of this claim.  Therefore, plaintiff's claim under Count 5 for

violations of 18 U.S.C. § 2520 must also be dismissed for failure to state a claim upon which

relief can be granted pursuant to Rule 12(b)(6).

### 5.  Counts 6, 7 & 8: Violations of 42 U.S.C. § 1981, § 1985 and § 1986

Plaintiff brings claims for violations of 42 U.S.C. § 1981, § 1985 and § 1986 against all

the defendants in this case.  As a preliminary matter, 42 U.S.C. § 1981 explicitly refer to actions

by state actors in that "the rights protected by this section are protected against impairment by

nongovernmental discrimination and impairment under color of State law."  42 U.S.C. § 1981(c).

 Where the plaintiff does not allege state action in the complaint, such as here where none of the

defendants, Microsoft, Duke, Georgetown and the United States Government, are state actors,

claims brought under § 1981 must be dismissed.  See Bilello v. Kum & Go, 374 F.3d 656 (8th Cir. 2004); Davis-Warren Auctioneers, J.V. v. FDIC, 215 F.3d 1159, 1161 (10th Cir. 2000).

42 U.S.C. § 1981(a) ensures that all citizens "have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence" as well as enjoy the "full and equal benefits of all laws and proceedings."  To bring a claim for a violation of §1981, the plaintiff must show that there was a contractual relationship that was impaired.  See Domino's Pizza v. McDonald, 126 S.Ct. 1246, 1249 (2006).  Plaintiff has not alleged any contractual relationship with Microsoft or the Government.  Even if plaintiff's relationships with Duke and Georgetown were contractual to the extent that they entered a contractual relationship for her legal education, that relationship was not impaired nor were her rights violated because she graduated with a law degree, worked in private legal practice and was employed by a court in the Virgin Islands.  Plaintiff's vague attempts to show impairment by arguing that the defendants have interfered with plaintiff's "right to contract to obtain a legal education free of racial animus", and they have further interfered with plaintiff's right to earn a living free of racial discrimination, are simply unsubstantiated and not a valid foundation for a § 1981 claim.  (Pl.'s Opp'n [53], 23).

Under 42 U.S.C. § 1985(3), it is illegal for individuals or parties to conspire to deprive any person or class of person of their civil rights or equal protection of the laws.  As discussed above, plaintiff has not alleged facts, as opposed to conclusory and unsupported allegations, of a conspiracy, so her claim of a violation of her rights under 42 U.S.C. § 1985 must be dismissed.

42 U.S.C. § 1986 punishes those who have knowledge of a conspiracy, as mentioned in § 1985, and failed to prevent such wrongdoing.  Since plaintiff's claim under 42 U.S.C. § 1985

fails, her claim under 42 U.S.C. § 1986 must also be dismissed because there is no conspiracy of which any of the defendants can be liable for failing to prevent. Additionally, § 1986 has a one-year statute of limitations to bring a claim once a cause of action under the state has accrued. Plaintiff's allegations show that, if true, she had knowledge of the ongoing conspiracy, well before May 8, 2002 (one year prior to her filing of the complaint) and therefore her claim is time-barred.

### 6. Count 9: Intentional Infliction of Emotional Distress

For a successful claim of intentional infliction of emotional distress, a plaintiff must demonstrate "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982). In the instant case, plaintiff has failed to show either of the required elements of extreme and outrageous conduct or severe emotional distress. Plaintiff failed to specify what conduct by the defendants was extreme and outrageous. Additionally, plaintiff has not alleged an injury that amounts to severe emotional distress because she was not prevented from obtaining her law degree or working as a result of the alleged surveillance. Accordingly, plaintiff's claim for intentional infliction of emotional distress must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### 7. Count 10: Civil Conspiracy

In the District of Columbia, a plaintiff must prove four necessary elements to make a claim for civil conspiracy: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt

act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983). Furthermore, "there is no recognized independent tort action for civil conspiracy in the District of Columbia" because a claim for civil conspiracy must be initially based on an underlying tortious act. Id. at 479. In the instant case, plaintiff has not alleged with any specificity or particularity that there was an underlying tort or a conspiracy to warrant a claim for civil conspiracy. Therefore, plaintiff's claim for civil conspiracy must be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

### 8. Count 11: Invasion of Privacy

Plaintiff's claim for invasion of privacy must be dismissed because it is time-barred by the relevant statute of limitations. A one-year statute of limitations for invasion of privacy claims has been instituted in the District of Columbia. See Grunseth v. Marriott Corp., 872 F. Supp. 1069, 1074 (D.D.C. 1995). Plaintiff, in the instant case, does not clearly allege from what facts her invasion of privacy claim arises but it is most likely from the alleged surveillance. Plaintiff, by her own admission, became aware of the alleged surveillance at some time just before or during her second year of law school, between May and August of 1998, because information gained from the surveillance was used "humiliate, embarrass and discriminate" against her during this time. (Pl.'s Am. Compl. [DVI 17], ¶ 166). Plaintiff did not file the complaint in this case until May 8, 2003. Therefore, plaintiff's claim was well outside the one-year statute of limitations for an invasion of privacy claim and Count 11 must be dismissed.

### 9. Counts 12: Interference with Prospective Advantage

Plaintiff has failed to state a claim for interference with prospective advantage upon

which relief can be granted.  The District of Columbia Court of Appeals has described

prospective advantage as "business expectancies, not grounded on present contractual

relationships but which are commercially reasonable to anticipate, [and] are considered to be

property."  McManus v. MCI Communs. Corp., 748 A.2d 949, 957 (D.C. 2000).  A court will not

consider to be a prospective advantage a consequence or relationship that is too attenuated or

remote.  Microsoft defendants correctly argue that because plaintiff has failed to allege the

existence of a "valid business relationship [with any of the defendants] that supposedly was

thwarted by the defendant's conduct," (Microsoft Defs.' Reply [28], 22) plaintiff's claim must be

dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### 10.   Count 13: Theft of Intellectual Property

Plaintiff alleges in her complaint that the Microsoft defendants stole her intellectual

property in the form of ideas about wireless email, ways for the company to increase revenue and

changing the name of Microsoft's Web TV to MSN TV.  (Pl.'s Am. Compl. [DVI 17], ¶ 268-69).

As a threshold matter, it is well-settled law that an "idea of itself is not patentable."  Gottschalk

v. Benson, 409 U.S. 63, 67 (1972).  Plaintiff has simply alleged on this count that the Microsoft

defendants stole her ideas and nothing more, and therefore, her claim for theft of intellectual

property must be dismissed for failure to state a claim upon which relief can be granted pursuant

to Rule 12(b)(6).

### 11.   Count 14: Punitive Damages

Plaintiff's claim for punitive damages must be dismissed following the dismissal of all

the underlying claims in this case.

**E.   Plaintiff's Motion to Strike Georgetown Defendant's Exhibits**

In light of the dismissal of all of plaintiff's substantive claims, plaintiff's motion [23] to strike all exhibits filed by the Georgetown defendants will be DENIED as moot.

## CONCLUSION

For the reasons stated herein, the Court will grant the Duke defendants' motions [17, 18, 32] to dismiss, the Georgetown defendants' motions [11, 50] to dismiss, the Government defendants' motion [DVI 200] to dismiss, and the Microsoft defendants' motions [DVI 219, 43] to dismiss.  The Court will deny plaintiff's motion [48] for leave to take jurisdictional discovery and plaintiff's motion [23] to strike the Georgetown defendant's exhibits.

A separate Order will issue this date.

Signed by Royce C. Lamberth, United States District Judge, March 30, 2007.